UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALE S.A.,<br><br>        Petitioner,<br><br>   v.<br><br>BSG RESOURCES LIMITED,<br><br>        Respondent. | Case No. 19-cv-3619-VSB<br><br>Hon. Vernon S. Broderick |

**MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR RECOGNITION AND ENFORCEMENT OF A FOREIGN ARBITRATION AWARD AND IN SUPPORT OF CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO ADJOURN THE DECISION ON THE ENFORCEMENT OF THE AWARD**

Frederick D. Hyman (NY 2553832)
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com

*Counsel for BSG Resources Limited*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---:|
| PRELIMINARY STATEMENT | | 1 |
| BACKGROUND | | 1 |
| I. | Factual background to the dispute between BSGR and Vale | 1 |
| II. | The LCIA Arbitration | 2 |
| III. | Post-Arbitration Proceedings in this Court and in the English High Court | 3 |
| IV. | BSGR's Administration in Guernsey and Chapter 15 Bankruptcy Petition in the Southern District of New York | 4 |
| ARGUMENT | | 4 |
| I. | Because the Award has been suspended under the laws of the United Kingdom, the Court should refuse to recognize and enforce the Award. | 5 |
| II. | In the alternative, the Court should adjourn its decision whether to recognize and enforce the Award until the United Kingdom courts fully and finally resolve BSGR's challenge to the Award. | 6 |
| | A. The Court should defer recognition of the Award in the interest of international comity and to avoid an inconsistent outcome with the Award's review in the United Kingdom. | 7 |
| | B. The scope of the pending review of the Award in the United Kingdom weighs in favor of deferring enforcement. | 10 |
| | C. Deferring enforcement will cause Vale no harm but will prevent significant irreparable harm to BSGR. | 11 |
| CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aperture Software GmbH v. Avocent Huntsville Corp.*
   No. 5:14-CV-00211-JHE, 2015 WL 12838967 (N.D. Ala. Jan. 5, 2015) .................................9

*BSG Resources Limited v. Soros*
   Case No. 17-cv-02726-JFK-OTW (S.D.N.Y. Apr. 14, 2017) ...................................................11

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*
   156 F.3d 310 (2d Cir. 1998)................................................................................................ 6-11

*In re Lazarus Burman Assocs.*
   161 B.R. 891 (Bankr. E.D.N.Y. 1993)...................................................................................12

*InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.*
   166 F. Supp. 3d 463 (S.D.N.Y. 2016).............................................................................. 6, 8-10

*Nedagro B.V. v. Zao Konversbank*
   No. 02 CIV. 3946(HB), 2003 WL 151997 (S.D.N.Y. Jan. 21, 2003) ................................... 8-9

*Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*
   281 B.R. 231 (Bankr. D. Del. 2002) ......................................................................................12

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*
   864 F.3d 172 (2d Cir. 2017)....................................................................................................8

**STATUTES**

9 U.S.C § 207........................................................................................................................................4

**OTHER AUTHORITIES**

English Civil Procedural Rule 62.18(9)(a)–(b)....................................................................................3

## PRELIMINARY STATEMENT

Petitioner Vale S.A. asks this Court to recognize and enforce an arbitration award rendered in the United Kingdom against Respondent BSG Resources Limited ("BSGR") in excess of $1.2 billion. That award currently is unenforceable under United Kingdom law. Vale's request that this Court enforce the award violates the fundamental principle of comity that underlies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). The Court should refuse to recognize and enforce an award that Vale cannot enforce in the jurisdiction in which it was rendered.

In the alternative, the Court should defer a decision about whether to recognize and enforce the arbitration award until BSGR completes its challenge to the award in the courts of the United Kingdom. This result will avoid the possibility of this Court recognizing an award that is later nullified in the originating jurisdiction. That result facilitates international comity and judicial efficiency, and furthers BSGR's efforts to complete an orderly and equitable reorganization through the judicial insolvency procedure in the United Kingdom.

Accordingly, BSGR requests that this Court decline to recognize the arbitration award and dismiss Vale's petition, or grant BSGR's motion to adjourn the decision on the petition until the challenge to the underlying arbitration award is resolved in the United Kingdom.

## BACKGROUND

### I. Factual background to the dispute between BSGR and Vale

In 2008, BSGR obtained rights to an iron ore mining concession from the Guinean government during the presidency of Lansana Conté. (Petition to Recognize and Enforce Award ("Petition," ECF No. 1, at ¶ 6.) To develop that mining concession, BSGR approached Vale to negotiate a joint venture. (*Id.* ¶ 7.) Vale conducted substantial due diligence to understand how BSGR obtained its mining concessions. (Petitioner's Mem. of Law, ECF No. 5, at 3.) The parties

then formed a joint venture—the "VBG Joint Venture"—on April 30, 2010. (Petition at ¶ 12.) The VBG Joint Venture was governed by a Joint Venture Agreement and a Shareholders' Agreement, both dated April 30, 2010. (Blackman Decl., ECF No. 4, Ex. B & C.) Both agreements provide that all disputes are subject to arbitration in London under the London Court of International Arbitration ("LCIA") Rules. (*Id.*, Ex. B at § 16.10; *id.*, Ex. C at § 17.10.)

In 2011, Alpha Condé was elected President of the Republic of Guinea. (Hyman Decl. Ex. G, ¶ 13.) Following President Condé's election, BSGR and the VBG Joint Venture faced obstruction in developing the mining rights. (*Id.*) President Condé established a review committee to investigate how certain mining rights—including BSGR's—had been obtained. (Petition at ¶ 12) Throughout the review process, BSGR complained about the lack of due process and apparent prejudice shown by the review committee. (Hyman Decl. Ex. G, ¶ 13; *see also id.* ¶ 18.) At the committee's recommendation, the Guinean government stripped BSGR and the VBG Joint Venture of their mining rights. (Petition at ¶ 16.) BSGR denied—and continues to deny—the allegations made against it in the Guinean investigation. (Hyman Decl. Ex. G, ¶ 13.)

## II. The LCIA Arbitration

In April 2014, Vale filed a Request for Arbitration with the LCIA seeking return of its investments in the mining concessions. (Petition at ¶ 15.) In accordance with the arbitration agreements, each party nominated one arbitrator. (Blackman Decl. Ex. B at § 16.10(b); *id.* Ex. C at § 17.10(b).) Those two arbitrators jointly selected a chairperson. (*Id.*) In May 2016, BSGR challenged the arbitral tribunal, alleging bias and unfairness. (Hyman Decl. Ex. C, ¶¶ 26-27, 37; Blackman Decl. Ex. A, ¶¶ 65, 66.4.) An independent division of the LCIA Court agreed with one of BSGR's challenges and removed the chairperson because of bias. (Blackman Decl. Ex. A at ¶¶ 82, 96.) The arbitrators and LCIA then appointed a new chairperson. (*Id.* ¶¶ 92, 96.)

The arbitral tribunal held the merits hearing from February 20 to February 22, 2017. (Blackman Decl. Ex. A, ¶ 139.) As early as October 2016, BSGR notified the tribunal that its counsel was unavailable on those dates. The tribunal declined to reschedule the hearing. (*Id.* ¶¶ 114-15.) Over two years later, on April 4, 2019, the LCIA tribunal entered an award in favor of Vale for over $1.2 billion plus pre- and post- award interest. (Petition at ¶ 34.)

## III. Post-Arbitration Proceedings in this Court and in the English High Court

On April 18, 2019, Vale filed an application for an Enforcement Order with the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) ("English High Court") to enforce the Award in England and Wales. (Hyman Decl. Ex. A.) English Civil Procedural Rule 62.18(9)(a)–(b) provides that defendants have 14 days to apply to set aside enforcement orders and that awards cannot be enforced during that time. (*See also* Hyman Decl. Ex. B at ¶¶ 3-4.) Despite this rule, only a few days later, Vale filed a petition to recognize and enforce the Award in this Court.

On May 9, 2019, the English High Court issued an Enforcement Order. (Hyman Decl. Ex. B.) The Enforcement Order states that the Award "must not be enforced until after the end of the 14-day period" in which BSGR is entitled to apply to set aside the Order. (*Id.* at ¶¶ 3-4.) If BSGR does so, the Enforcement Order states that the Award "must not be enforced . . . until after that application has been finally disposed of." (*Id.* at ¶ 4 (citing CPR 62.18(9)(b).)

On May 10, 2019, BSGR filed a timely challenge to the Award in the English High Court. (Hyman Decl. Ex. C.) BSGR brought its challenge under Section 68 of the English Arbitration Act of 1996, alleging that serious irregularities in the arbitral proceedings warrant setting aside the Award in whole or in part. (*Id.* at ¶¶ 2-3.) In support of its application, BSGR cited: (1) a pattern of conduct giving rise to apparent bias; (2) a failure to conduct the

proceedings fairly and impartially so as to give each party a reasonable opportunity to present its case; and (3) a failure to address an important issue. (*Id.* at ¶ 3.)

On May 23, 2019, BSGR filed an application with the English High Court to set aside the May 9 Enforcement Order. (Hyman Decl. Ex. D.) BSGR made this application on the basis that its separate challenge to the arbitral proceedings, if successful, would set aside or annul the Award. Vale is automatically stayed from enforcing the Award pending final determination of the May 23 application. (Hyman Decl. Ex. B at ¶ 4, citing CPR 62.18(9)(b).) The English High Court has not yet decided BSGR's set-aside application or BSGR's challenge to the Award. The proceedings are ongoing.

## IV.  BSGR's Administration in Guernsey and Chapter 15 Bankruptcy Petition in the Southern District of New York

BSGR is a non-cellular limited liability company incorporated in Guernsey. (Hyman Decl. Ex. G, ¶ 8.) On February 27, 2018, BSGR applied to the Guernsey Royal Court to be placed into Administration, which is the insolvency procedure in the United Kingdom. The Guernsey Court issued an order on March 6, 2018, commencing the BSGR Administration. (*Id.* ¶ 35.) The Guernsey Court has appointed two Administrators to oversee BSGR during Administration. (*Id.* ¶ 4.) The Guernsey Administration is ongoing. (*Id.* ¶ 36.)

On June 3, 2019, BSGR filed a Chapter 15 petition in the Southern District of New York, seeking recognition of a foreign proceeding. (Hyman Decl. Ex. E.) A recognition hearing on the Chapter 15 petition is currently scheduled for July 10, 2019.

## ARGUMENT

The Federal Arbitration Act requires a court to enforce an arbitration award governed by the Convention unless the court "finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention." 9 U.S.C § 207. In this case, the Court

4

should refuse to recognize the Award under Article V(1)(e) because the Award has been suspended by the English High Court. Vale is improperly attempting to enforce an Award in this Court that it cannot enforce in the jurisdiction where the Award originated.

In the alternative, the Court should defer a decision about whether to recognize and enforce the Award until BSGR's challenge to the Award in the courts of the United Kingdom is fully and finally resolved. Deferring recognition of the Award will not harm Vale, but will protect against the possibility of inconsistent outcomes in this Court and the courts of the United Kingdom that are reviewing BSGR's challenge. International comity and judicial efficiency dictate that the Court defer its decision until BSGR's challenge has been decided.

I.   **Because the Award has been suspended under the laws of the United Kingdom, the Court should refuse to recognize and enforce the Award.**

Article V(1)(e) of the Convention provides that a court may refuse to recognize and enforce an award that "has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." This provision applies here because the Award has been "suspended by a competent authority of the country in which . . . that award was made."

On May 9, 2019, the English High Court issued the Enforcement Order. That order provided Vale with "permission under section 66(1) of the Arbitration Act 1996 to enforce the Award in the same manner as a judgment or order of the High Court to the same effect." (Hyman Decl. Ex. B at ¶ 1.) But it also provided that if BSGR timely applied to set aside the Enforcement Order, "the Award must not be enforced . . . until after that application has been finally disposed of." (Hyman Decl. Ex. B at ¶ 4.) On May 23, 2019, BSGR timely applied to set aside the Enforcement Order. (Hyman Decl. Ex. D.) By the Enforcement Order's terms, BSGR's application automatically prevents enforcement of the Award. That application remains pending.

By ordering that the Award "must not be enforced" under the express language of the Enforcement Order, the English High Court has suspended the Award. The Court should therefore decline to recognize or enforce the Award under Article V(1)(e) of the Convention and should dismiss Vale's petition.

**II.     In the alternative, the Court should adjourn its decision whether to recognize and enforce the Award until the United Kingdom courts fully and finally resolve BSGR's challenge to the Award.**

"[W]here a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998). The Convention therefore grants courts with authority to defer enforcement of a foreign arbitration award until proceedings to challenge the award are complete. Article VI of the Convention provides:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V (1) (e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

"The decision on whether to stay an enforcement proceeding is a matter that lies in the court's discretion . . . ." *InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.*, 166 F. Supp. 3d 463, 470 (S.D.N.Y. 2016). In *Europcar*, the Second Circuit established six factors that courts should balance in evaluating a request to adjourn enforcement under Article VI:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country, . . . ; and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

156 F.3d at 317-18 (internal citation omitted). Of these six factors, the first and second "should weigh more heavily in the district court's determination." *Id.* at 318.

In every case, the first *Europcar* factor weighs against adjournment, which "impedes the goals of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *Id.* at 317. But the first factor is not determinative. It is in "inherent tension" with the "competing concerns" reflected in the other *Europcar* factors. *Id.* at 317. In this case, each of the other *Europcar* factors strongly supports a decision to defer enforcement of the Award until proceedings in the United Kingdom are complete.

A. **The Court should defer recognition of the Award in the interest of international comity and to avoid an inconsistent outcome with the Award's review in the United Kingdom.**

The second and fourth *Europcar* factors reflect the Convention's strong interest in facilitating international comity. Except in "rare circumstances" not present here, an award may

not be recognized or enforced under Article V(1)(e) if it has been set aside in the originating country. *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 184 (2d Cir. 2017). Accordingly, recognition of a foreign award before the resolution of proceedings to challenge that award in the originating country risks inconsistent outcomes.

Adjourning the enforcement proceedings avoids this problem. It allows courts in the originating jurisdiction to review the arbitration award and the recognizing court to proceed based on the outcome of that review. That approach prevents any risk that a court in the United States will enforce an award later deemed invalid by the originating jurisdiction. *See InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.*, 166 F. Supp. 3d 463, 471 (S.D.N.Y. 2016) ([D]eferring a decision in this proceeding may avoid inconsistent results."); *Nedagro B.V. v. Zao Konversbank*, No. 02 CIV. 3946(HB), 2003 WL 151997, at *7 (S.D.N.Y. Jan. 21, 2003) (adjourning decision on enforcement "to avoid the possibility of an inconsistent result").

The interest in facilitating international comity is at its zenith in a case like this one, where "it is the plaintiff who first sought to enforce his award in the originating country." *Europcar*, 156 F.3d at 317. Under those circumstances, "the argument for enforcement by the plaintiff in the district court loses force because the possibility of conflicting results and the consequent offense to international comity can be laid at the plaintiff's door." *Id.* at 317.

Vale first sought to enforce the Award in English High Court on April 18, 2019, several days before it filed the petition in this Court. (Hyman Decl. Ex. A.) Vale obtained the Enforcement Order from the English High Court, which was then stayed by BSGR's challenge to the Enforcement Order and Award. (Hyman Decl. Ex. B, Ex. D.) Given the status of the proceedings in the English High Court, continuing these enforcement proceedings would be an affront to concerns of international comity. Vale is seeking to enforce an award in this Court that

it cannot enforce in the originating jurisdiction. These proceedings are an end run around the stay of enforcement that is in place in the United Kingdom under the Enforcement Order and by operation of United Kingdom law.

Under these circumstances, the fourth factor takes on more significance. *See Aperture Software GmbH v. Avocent Huntsville Corp.*, No. 5:14-CV-00211-JHE, 2015 WL 12838967, at *5 (N.D. Ala. Jan. 5, 2015) (noting that concerns of international comity weigh more strongly where "a proceeding is already pending in a foreign court of first instance before the enforcement action is filed"). For example, in *Nedagro B.V.*, a court in this District described the fourth *Europcar* factor as "perhaps most important" where "it was petitioner who first sought to enforce its award in the originating country." 2003 WL 151997, at *7. The petitioner in that case, like Vale here, attempted to confirm the arbitration award in the originating country before petitioning for recognition in the United States. Because the petitioner's strategic decision to proceed in the originating jurisdiction first "rais[ed] 'concerns of international comity' vis-á-vis its petition to confirm the [foreign] award in this Court," the court adjourned enforcement proceedings in the United States. *Id.* The Court should do the same here.

Furthermore, BSGR challenged the Award in the English High Court just three weeks after Vale sought to enforce the Award in that court. BSGR thus "acted promptly to have the Award annulled" and that "prompt action . . . has resulted in a situation where there is likely to be a prompt decision by the [English High Court] without any inordinate delay." *InterDigital Commc'ns*, 166 F. Supp. 3d at 472. BSGR's challenge in the English High Court is not "intended to hinder or delay resolution," nor is it "frivolous, or . . . an abusive tactic . . . to forestall the resolution" of this dispute. *Id.* at 473. To the contrary, BSGR has raised substantial issues about

the basic fairness of how the arbitration was conducted. (*See* Hyman Decl. Ex. C.) The Court should allow the English High Court to resolve those issues before enforcing the Award.

> **B.** **The scope of the pending review of the Award in the United Kingdom weighs in favor of deferring enforcement.**

The third *Europcar* factor also favors adjournment of enforcement proceedings. "The limited scope of review allowed under the Convention . . . favors deference to proceedings in the originating country that involve less deferential standards of review on the premise that, under these circumstances, a foreign court well-versed in its own law is better suited to determine the validity of the award." *Europcar*, 156 F.3d at 317. "While this Court would be limited to the grounds specified in Article V of the New York Convention as grounds to refuse to enforce the Award, the court in . . . the originating country could also rely on its local law to set aside the Award." *InterDigital Commc'ns*, 166 F. Supp. 3d at 470.

As reflected in the application BSGR filed in the English High Court to challenge the Award, English law provides BSGR with a number of arguments about the procedural defects in the arbitration, including that the arbitrators:

- Conducted themselves in a manner that reflects a pattern of bias;

- Made prejudicial evidentiary decisions to exclude critical evidence from the proceedings;

- Refused to reschedule the final arbitration hearing and thereby deprived BSGR of its counsel of choice; and

- Failed to reconsider decisions taken by a prior member of the arbitration panel who was removed for bias.

(Hyman Decl. Ex. C.) The Convention does not recognize these arguments as grounds for refusing to recognize or enforce the Award. Accordingly, the third factor weighs in favor of an

adjournment so that the English High Court can decide these issues before Vale enforces the Award.

> **C. Deferring enforcement will cause Vale no harm but will prevent significant irreparable harm to BSGR.**

Finally, the balance of possible hardships to the parties—the fifth *Europcar* factor—also weighs in favor of deferring enforcement. As Vale recognizes (Petition ¶ 2), since March 6, 2018, BSGR has been in administration in a proceeding under Part XXI of the Companies (Guernsey) Law, 2008 (the "Guernsey Administration"), pending before the Royal Court of Guernsey (Ordinary Division). On June 3, 2019, BSGR filed a Petition for Recognition of a Foreign Proceeding under Chapter 15 of the United States Bankruptcy Code in the Bankruptcy Court for this District (Case No. 19-11845-shl). (Hyman Decl. Ex. E.) As described in the Declaration of Malcolm Cohen in support of the Chapter 15 petition, BSGR's only asset in the United States is a contingent litigation interest against George Soros and certain entities he controls. (Hyman Decl. Ex. G at ¶ 27.) Through the Soros action, BSGR and its co-plaintiffs seek to recover over $10 billion in damages arising from wrongful conduct of the Soros Defendants. (Hyman Decl. Ex. G at ¶ 29.) The litigation is docketed in this Court under the caption *BSG Resources Limited v. Soros*, Case No. 17-cv-02726-JFK-OTW (S.D.N.Y. Apr. 14, 2017). (Hyman Decl. Ex. G. at ¶ 30.)

BSGR's viability as a business depends, in large part, upon its ability to prosecute without interference the Soros action and to recover the proceeds in that litigation. Vale may use an order from this Court recognizing the Award to encumber or interfere with the Soros action. Such a result will severely impair BSGR's reorganization efforts. If BSGR cannot protect and preserve its interests in the Soros claim, it will not be able to undergo a successful restructuring. That would, in turn, thwart the purpose of the Guernsey Administration and Chapter 15 of the

Bankruptcy Code to the detriment of BSGR's stakeholders. Deferring a decision to enforce the Award will prevent that irreparable harm and assist the Guernsey Court in its efforts to oversee an equitable reorganization under Part XXI of the Companies (Guernsey) Law, 2008. *See In re Lazarus Burman Assocs*., 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) (noting that, in the context of a bankruptcy proceeding, the public interest is "in promoting a successful reorganization"); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests.").

By contrast, Vale will suffer no harm as a result of the Court deferring enforcement proceedings. Vale is a creditor of BSGR. It will benefit from an orderly and equitable reorganization of BSGR in the Guernsey Administration. Its claim will be handled in those proceedings.

## CONCLUSION

The Court should refuse to recognize and enforce the Award and dismiss the petition. In the alternative, the Court should defer decision on whether to recognize and enforce the Award until BSGR's challenge to the Award is fully and finally decided.

Respectfully submitted,

/s/ Frederick D. Hyman
Frederick D. Hyman (NY 2553832)
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
RHyman@duanemorris.com

*Counsel for BSG Resources Limited*

June 4, 2019

DM1\9664339.7

# CERTIFICATE OF SERVICE

The undersigned certifies that on June 4, 2019, the foregoing document was served on the following counsel of record for Plaintiff via electronic notification through the Court's e-filing system:

Emily Justine Balter
Cleary Gottlieb Steen & Hamilton LLP (NYC)
One Liberty Plaza
New York, NY 10006
Email: ebalter@cgsh.com

Jeffrey A. Rosenthal
Cleary Gottlieb
One Liberty Plaza
New York, NY 10006
Email: jrosenthal@cgsh.com

Samuel Loewenson Levander
Cleary Gottlieb Steen & Hamilton LLP (NYC)
One Liberty Plaza
New York, NY 10006
Email: slevander@cgsh.com

Jonathan I. Blackman
Cleary Gottlieb
One Liberty Plaza
New York, NY 10006
212-225-2000
Email: maofiling@cgsh.com

/s/ Frederick D. Hyman
Frederick D. Hyman