CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jonathan I. Blackman
Jeffrey A. Rosenthal
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Vale S.A.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VALE S.A.<br><br>          Petitioner,<br><br>     -against-<br><br>BSG RESOURCES LIMITED,<br><br>          Respondent. | Case No. 19-cv-3619-VSB |

### **DECLARATION OF JONATHAN PATRICK KNOX KELLY**

I, Jonathan Patrick Knox Kelly, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury under the laws of the Unites States of America as follows:

1.    I am a partner in the London office of Cleary Gottlieb Steen & Hamilton LLP, counsel to the petitioner, Vale S.A. ("Vale"). I am a solicitor of the Senior Courts of England and Wales. I qualified as a solicitor in 1989 and became a partner at a former firm in 1995 and a partner at Cleary Gottlieb Steen & Hamilton LLP in 2010. My practice focuses on substantial English and international commercial litigation and arbitration. I submit this declaration in support of Vale's petition for recognition and enforcement of a foreign arbitration award.

2. I have personal knowledge of the facts stated in this declaration, acquired during the course and scope of my work as counsel to Vale throughout the five-year arbitration proceedings which resulted in the Final Award dated April 4, 2019, issued by an arbitration tribunal (the "Tribunal") in LCIA Arbitration No. 142683 (the "Award" or the "Final Award"). I remain counsel to Vale in the proceedings relating to the Challenge Application and the Set Aside Application (each as defined below and, together, the "English Proceedings").

Background to the English Proceedings

3. On April 18, 2019, Vale applied for permission in the English High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) (the "English High Court") to enforce the Award in the same manner as a judgment or order of the English High Court to the same effect, pursuant to section 66(1) of the Arbitration Act 1996.

4. As part of Vale's application, it included a proposed order that could be entered by the English High Court. Although Vale's application is exhibited as Ex. A to the Declaration of Frederick D. Hyman, dated June 4, 2019 ("Hyman Declaration"), that exhibit omits Vale's draft order. This draft order is attached as Exhibit A hereto.

5. On May 9, 2019, Vale was granted this order by Mr. Justice Bryan (the "Enforcement Order"). *See* Hyman Declaration, Ex. B (the Enforcement Order).

6. As prescribed by the English Civil Procedure Rules ("CPR"), the procedural code of the English civil courts, the Enforcement Order contains the statement that, "[p]ursuant to the provisions of CPR 62.18(9)(b), the Award must not be enforced until after the end of the 14-day period referred to in paragraph 3 above, or if an application is made by the Defendant within that period to set aside this Order, until after that application has been finally disposed of." CPR

2

62.18(10)(b) requires that any order giving permission for enforcement contain this standard statement and it was included by my firm in the draft order that formed part of Vale's application for permission to enforce the Award in England and Wales on April 18, 2019.  CPR 62.18 is attached as <u>Exhibit B</u> hereto.

7. On May 10, 2019, BSGR filed a separate application to challenge the Award on the grounds of alleged serious irregularity affecting the Tribunal, the proceedings or the Award pursuant to sections 68 and 24 of the Arbitration Act 1996 (the "Challenge Application").

8. On May 23, 2019, BSGR filed an application for an order to set aside the Enforcement Order or, in the alternative, to stay the Enforcement Order until the determination of the Challenge Proceedings (the "Set Aside Application").  Hyman Declaration, Ex. D.  The sole basis for the Set Aside Application was stated to be "the existence of and reasons set out in [BSGR's] section 68 challenge."

<u>English law issues raised by BSGR</u>

9. I have had an opportunity to consider BSGR's Memorandum of Law in Opposition to Petition for Recognition and Enforcement of a Foreign Arbitration Award and in Support of Cross-Motion to Dismiss or, in the Alternative, to Adjourn the Decision on the Enforcement of the Award dated June 4, 2019 (the "Opposition").  BSGR advances a number of points which relate to English law and the English Proceedings.  As relates to BSGR's opposition to Vale's petition to the Award, BSGR asserts that "the English High Court has suspended the Award" and requests that enforcement be refused under Article V(1)(e) of the New York Convention.  Opposition at 5-6.  To make this argument, BSGR relies upon the text of the Enforcement Order, which is described above at ¶ 6.

10. Under English law, section 58(1) of the Arbitration Act 1996, the statute which governs arbitration proceedings and sets out the law in relation to the enforcement of arbitration awards in England and Wales, states that "[u]nless otherwise agreed by the parties, an award made by the tribunal pursuant to an arbitration agreement is final and binding both on the parties and on any persons claiming through or under them."

11. Further, there is no provision of the Arbitration Act 1996 that provides that enforcement under the Enforcement Order must be stayed pending resolution of a challenge to an award, such as the Challenge Application. This is not to be confused with the effect of the Set Aside Application on enforcement.

12. The wording of the Enforcement Order that BSGR references arises from CPR 62.18(9), described above. It is important to set out the context for that rule. CPR Part 62 provides for a process by which an award (whether domestic or foreign) can be enforced. In most cases, the award creditor is entitled to obtain a judgment permitting enforcement of an award in England on an *ex parte* (or without notice) basis; that is, the first the award debtor will hear of the enforcement proceedings is when he is served with the order granted by the court *permitting* enforcement. To avoid the unfairness of (for example) assets being seized before the award debtor has had any opportunity to challenge the enforcement order, CPR 62.18(9) prohibits the enforcement order being acted upon until the award debtor has been given a chance to set aside the *ex parte* order (usually 14 days after service) and, if such a challenge is brought, until it has been determined.

13. Therefore, while BSGR's Opposition may have given the impression that the prohibition on enforcement was deliberately added by the English High Court, CPR 62.18(9) is

simply a procedural mechanism to ensure that the award debtor is entitled to be heard before an award can be enforced as if it were an English judgment. That procedural mechanism is in no way intended to suspend the award itself.

14. Accordingly, the English High Court in *Y v S* [2015] EWHC 612 (Comm), attached as Exhibit C hereto, held at paragraph 20 that "the effect of CPR 62.18(9) is to prohibit any enforcement in fact for a period pending any application by the respondent to set aside such order and, if such application be made, until determination of such application." The English High Court in that case described the order obtained pursuant to section 66 of the Arbitration Act 1996 as an "*order nisi*" (a conditional order to show cause). This does not equate to an automatic or any suspension of the Award itself but instead means that the English court cannot itself grant measures of enforcement during that period.

15. The judge in *Y v S* assumed without deciding, at paragraphs 18 and 19, that the English court does have an inherent power to "suspend" an award made in England. However, he held that any such power would have to be exercised with ("at the very least") "caution" given that the Arbitration Act 1996 imposes strict limits on court intervention. It would be entirely inconsistent with that to conclude that every award is automatically suspended, without any judicial consideration at all, simply because the award debtor has applied to set aside an *ex parte* enforcement order. For the avoidance of doubt, BSGR has not made any application to the English court to exercise its inherent jurisdiction to "suspend" the award.

16. Further, while discussing the effect of a prohibition on enforcement similar to that required under CPR 62.18(9), the judge stated at paragraph 16 that he was "prepared to assume that in that context (i.e. an application made pursuant to CPR 62.18(9)), the effect of such

5

language would ordinarily <u>not extend and not be intended to extend to enforcement proceedings which might be taken outside of this jurisdiction</u> [emphasis added]."

17.     This demonstrates that CPR 62.18(9) is plainly not purporting to suspend the underlying award itself, or else enforcement proceedings outside the jurisdiction would likely be affected.

18.     Relatedly, the English High Court, when interpreting section 103(2)(f) of the Arbitration Act 1996, which reproduces the substance of Article V(1)(e) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards 1958 (the "Convention"), in *IPCO (Nigeria) Ltd v Nigerian National Petroleum Corp.* [2005] EWHC 726 (Comm), attached as <u>Exhibit D</u> hereto, found that this section "is only applicable when there has been an <u>order or decision</u> suspending the award by the court in the country of origin of the award ('the country of origin'). Section 103(2)(f) is not triggered automatically by a *challenge* brought before the court in the country of origin. This conclusion flows from the wording of section 103(2)(f) itself, it is supported by leading commentators (Van den Berg, The New York Convention of 1958 (1981), at p. 352, Fouchard, Gaillard, Goldman on International Commercial Arbitration (1999), at pp. 980–1) and it is consistent with the provisions of s. 103(5) of the Act [which reproduces the substance of Article VI of the Convention]—which would be otiose, or at least curious, if an application to the court in the country of origin automatically resulted in the award being suspended [emphasis added]."

19.     The sources cited by this decision are also instructive. For instance, Fouchard Gaillard Goldman on International Commercial Arbitration (1999), pp. 980-81, relevant excerpts of which are attached as <u>Exhibit E</u> hereto, explains that although "the word 'suspended' is not

defined in the Convention[,] [i]t is generally taken to refer to the case where a court suspects there to be a defect liable to affect the validity of the award and prevents enforcement of the award until the issue has been decided by the court with jurisdiction over an application to set the award aside. . . . [T]he text of the Convention requires the award to be suspended 'by a competent authority,' which would appear to exclude a suspension operating automatically under the law of the country of origin." As noted above, the Enforcement Order's reference to an adjournment of Vale's ability to enforce the Award "operate[s] automatically" under English law and was not a decision which involved any judicial consideration of the particular contents or characteristics of the Award or of BSGR's challenge to it.

I certify pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 18, 2019
London, United Kingdom

_____
Jonathan Patrick Knox Kelly
(jkelly@cgsh.com)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
2 London Wall Place
London EC2Y 5AU, England
T: +44 20 7614 2266