# Exhibit C

QB

**341**

A **Y v S.**
[2015] EWHC 612 (Comm)

Queen's Bench Division (Commercial Court).
Eder J.

B Judgment delivered 13 March 2015.

C

*Arbitration – Award – Enforcement – Without notice order preventing enforcement unnecessary and inappropriate – English procedure preventing enforcement for a period pending application to set aside leave to enforce – Permission to enter judgment in terms of award – Order restricting enforcement pending determination of challenge to award not conditional on provision of security – Arbitration Act 1996, s. 66, 67, 70(7) – Civil Procedure Rules 1998, r. 62.18.*

D

**These were applications by the defendant ('S') to discharge an order preventing enforcement of an arbitration award prior to determination of a challenge to the award under the Arbitration Act 1996, s. 67, and for leave under s. 66 to enforce the award.**

E

**S was a Russian national, based in Russia and in business in the real-estate sector. It was S's case that he had entered into an agreement with another Russian national (Y), and that disputes under the agreement had been referred to arbitration. In the arbitration, Y asserted that the agreement, including the arbitration agreement, was not binding and that therefore the tribunal had no jurisdiction. The tribunal rejected that assertion and numerous other defences advanced and by its award substantially upheld S's case in the sum of approximately US$72m together with interest.**

F

**Y issued an arbitration claim challenging the tribunal's jurisdiction under s. 67(1)(a) and seeking a stay of any enforcement of the award prior to determination of that challenge.**

G

**Y then obtained a without notice order that no steps were to be taken by S to enforce the award prior to the determination of Y's s. 67 challenge to the award. The order was subsequently varied to permit S to take steps to enforce the award outside the jurisdiction and to preserve assets for enforcement. S took protective proceedings seeking to preserve assets for the purpose of enforcing the award in California and Cyprus.**

H

*Held*, **granting the discharge application and the s. 66 application on terms:**

**1. The original order and the order as varied were both unnecessary and inappropriate. The order was not intended to, and did not, apply to any enforcement proceedings that might be taken abroad. So far as any possible**

A
**enforcement steps in England were concerned, there was no evidence that Y
had any assets within the jurisdiction and no suggestion of S intending to seek
enforcement within the jurisdiction. In any event, any enforcement of the award
in the same manner as a judgment within the jurisdiction required the leave of
the court and, although CPR r. 62.18 in effect permitted an application for leave
to enforce being made without notice and the grant of an order nisi, the effect
B
of r. 62.18(9) was to prohibit any enforcement in fact for a period pending any
application by the respondent to set aside such order and, if such application was
made, until determination of it. It followed that there was no practical need for
the order, either in its original form or as varied, and it was discharged.**

C
**2. S should be given permission to enter judgment in the terms of the award
pursuant to s. 66(2) of the 1996 Act, but Y should be given a period of time to apply
to set aside that order and no steps should be taken to enforce the award within
the jurisdiction until that period expired or any application made by Y within
that period had been finally disposed of. The court rejected S's submission that
any order restricting enforcement of the award pending determination of Y's s.
D
67 challenge should be conditional upon Y providing security in the full amount
due under the award. There was nothing in r. 62.18 which contemplated that such
temporary prohibition on enforcement could be made subject to an order for the
provision of security. Section 70(7) only applied to s. 67, s. 68 and s. 69 and not
to an application for leave to enforce under s. 66. Consistently with s. 70(7), any
E
application for security for the amount in dispute had to be made in the context
of a discrete application under s. 67, s. 68 or s. 69 supported by adequate evidence
pursuant to that statutory provision. If that was wrong, the court's approach to
the question of security should in principle be similar under s. 66 and s. 70(7). On
that basis it could not be said that the s. 67 challenge was 'flimsy', nor that there
was any relevant prejudice of the kind referred to in the authorities.**

F
The following cases were referred to in the judgment:

*Apis AS v Fantazia Kereskedelmi KFT* [2001] 1 All ER (Comm) 348.
*Continental Transfer Technique Ltd v Nigeria* [2010] EWHC 780 (Comm).
*IPCO (Nigeria) Ltd v Nigerian National Petroleum Corp* [2005] EWHC 726
G
(Comm); [2005] 1 CLC 613.
*Konkola Copper Mines plc v U&M Mining Zambia Ltd* [2015] 1 CLC xxx; [2014]
EWHC 2146 (Comm).
*Mobile Telesystems Finance SA v Nomihold Securities Inc* [2011] EWCA Civ 1040;
[2011] 2 CLC 856.
H
*Socadec SA v Pan Afric Impex Co Ltd* [2003] EWHC 2086 (QB).
*Soleh Boneh International v Uganda and National Housing Corp* [1993] 2 Ll Rep
208.
*Ust-Kamenogorsk Hydropower Plant JSC v AES Ust-Kamenogorsk Hydropower
Plant LLP* [2013] UKSC 35; [2013] 1 CLC 1069.

**Y v S**
*(Eder J)*

A     Ricky Diwan QC and Jeremy Brier (instructed by Gibson Dunn & Crutcher LLP) for the respondent/claimant.

    Alan MacLean QC and Andrew Scott (instructed by Baker & McKenzie) for the applicant/defendant.

B
### JUDGMENT

**Eder J:**

C     1. These are applications by the defendant ('S') (i) to discharge paragraph 2 of the order of Flaux J dated 12 December 2014 ('the Flaux J order') as varied by the order of Andrews J dated 22 December 2014 ('the Andrews J order') ('the discharge application'); and (ii) for leave under s. 66 of the *Arbitration Act* 1996 (the '1996 Act') to enforce an LCIA award dated 11 November 2014 ('the award') ('the s. 66 application').

D     2. The applications arise in somewhat unusual circumstances which I would summarise briefly as follows.

    3. S is a Russian national, based in Russia, and in business in the real-estate sector. It is S's case (inter alia) that on 3 March 2008, he entered into an agreement
E with Y (the alleged 'March 2008 agreement'), a Russian national, and that disputes thereafter arose under the March 2008 agreement. Those disputes were referred to arbitration pursuant to the alleged arbitration agreement contained in the March 2008 agreement. In the arbitration, Y asserted, in effect that the March 2008 agreement (including the arbitration agreement) was not binding and that in any event it did not contain an arbitration agreement; and that therefore the tribunal had no jurisdiction. In
F the event, the tribunal rejected that assertion and numerous other defences advanced on their behalf; and by its award, the Tribunal substantially upheld S's case in the sum of approximately US$72m. Together with interest, it is S's case that a total of approximately US$84.2 million is due under the award.

G     4. On 9 December 2014, Y issued an arbitration claim purporting to challenge the tribunal's jurisdiction under s. 67(1)(a) of the 1996 Act on various grounds relating to the SHA. S's case is that such challenge is baseless. The arbitration claim also included an application for '… a *stay* of any enforcement of the Award prior to its determination of this challenge under section 67(1)(a) of the Arbitration Act 1996'
H (emphasis added). On 10 December 2014, that application was made on behalf of Y to Flaux J without notice to S. In the event, Flaux J made an order on paper inter alia in the following terms:

> '2. No steps to be taken by [S] to enforce the Award prior to the determination of [Y's] challenge to the Award in these proceedings under section 67 of the Arbitration Act 1996.

                                            

**Y v S**
(*Eder* J)

A

'3. [S] may apply to set aside or vary this Order within 7 days of service of the same.'

The order was served on S on the evening of 15 December 2014, with the result that the set aside date fell in the court vacation.

B

5. On 22 December 2014, an oral application was made to the court without notice on behalf of S to vary the Flaux J order by discharging paragraph 2 in its entirety. That application came before Andrews J as the vacation judge. The application was made on grounds that there was no legal basis for paragraph 2 of the Flaux J order; that it was improperly obtained on a without notice basis; and that it was liable seriously to prejudice S unless discharged. As appears from a note of that hearing, Andrews J expressed concern that what appeared to be an injunction, restraining enforcement steps anywhere in the world, including against K, had been obtained on a without notice application, without a hearing, and without Y having proffered any cross-undertaking in damages to the court; and apparently stated that she recognised S's legitimate concern that, unless discharged or varied, paragraph 2 of the Flaux J order might prevent the foreign protective proceedings under consideration.

C

D

6. Notwithstanding these concerns, Andrews J was not prepared to discharge paragraph 2 of the Flaux order at a without notice hearing but instead varied it as follows:

E

'1. Paragraph 2 of the Order of the Honourable Mr Justice Flaux dated 12 December 2014 (the "Order") shall be varied such that:

(1) In respect of the Claimant, the Defendant shall have permission to take steps in jurisdictions other than England and Wales (including without limitation Cyprus) for the purposes of enforcing the Award to the extent of commencing enforcement proceedings and taking steps to preserve assets for enforcement.

F

(2) It shall not apply to any step to enforce the Award against K.

G

2. The Application, the evidence filed in support of it, ancillary material such as a note of the hearing, and this Order (the "Application Materials"), shall be served on the Claimant by 4pm on 31 December 2014.

3. Paragraph 2 of the Order as varied shall be discharged unless the Claimant within 7 days of being served with the Application Materials sends to the Defendant's solicitors a letter stating that the Claimant will provide to the Court a cross-undertaking in damages in respect of that paragraph, secured by payment into Court or provision of alternative security in a form and amount which is acceptable to the Defendant or the Court. Any dispute as to the form and/or amount of such security shall be a matter to be determined by a Commercial

H

**QB**
**Y v S**
*(Eder* J)
**345**

A    Court Judge. If the parties are agreed that the cross-undertaking is in appropriate terms as to form and amount of security, then the cross-undertaking may be incorporated into the Order by consent.

      4. The Claimant may apply to set aside or vary this Order within 7 days of service of the same.

B

      5. Costs reserved.

      6. Liberty to apply.'

C    7. On 31 December 2014, S served Y with the Andrews J order and associated materials. Thereafter, the parties' solicitors corresponded regarding S's position that paragraph 2 of the Flaux J order ought never to have been made; and (without prejudice to that position) the fortification required to satisfy the cross-undertaking that Andrews J envisaged. Meanwhile, S has pursued (and continues to pursue) protective proceedings seeking to preserve assets for the purpose of enforcing the award in California and Cyprus.

D

      8. Before turning to consider the two main applications before the court, it is convenient to make certain initial observations about the scheme of the 1996 Act and the procedural rules relating to the enforcement of an arbitration award.

E

      9. First, I would refer to s. 1 of the 1996 Act which provides in material part as follows:

      'The provisions of this Part are founded on the following principles, and shall be construed accordingly–

F

      (a) …

      (b) …

G    (c) in matters governed by this Part the court should not intervene except as provided by this Part.'

In this context, as submitted by Mr Diwan QC, it is important to note what was said by Lord Mance in *Ust-Kamenogorsk Hydropower v AES Ust-Kamenogorsk Hydropower* [2013] 1 CLC 1069 at para 33:

H

      'The use of the word "should" in section 1(c) was also a deliberate departure from the more prescriptive "shall" appearing in article 5 of the UNCITRAL Model Law. Article 5 reads that "In matters governed by this Law, no court shall intervene except where so provided in this Law". Article 5 had been the subject of forceful critique in *A New Arbitration Act?*, the 1989 report on the

A
UNCITRAL Model Law by the DAC at a time when its chair was Lord Justice Mustill, who had also represented the United Kingdom at UNCITRAL. Even in matters which might be regarded as falling within Part 1, it is clear that section 1(c) implies a need for caution, rather than an absolute prohibition, before any court intervention.'

B
10. Section 66 of the 1996 provides in material part as follows:

'66. *Enforcement of the award*

C
(1) An award made by the tribunal pursuant to an arbitration agreement may, by leave of the court, be enforced in the same manner as a judgment or order of the court to the same effect.

(2) Where leave is so given, judgment may be entered in terms of the award.

D
(3) Leave to enforce an award shall not be given where, or to the extent that, the person against whom it is sought to be enforced shows that the tribunal lacked substantive jurisdiction to make the award.

The right to raise such an objection may have been lost (see section 73).

E
(4) Nothing in this section affects the recognition or enforcement of an award under any other enactment or rule of law, in particular under Part II of the Arbitration Act 1950 (enforcement of awards under Geneva Convention) or the provisions of Part III of this Act relating to the recognition and enforcement of awards under the New York Convention or by an action on the award.'

F
As appears from sub-section (1) above and implicit in the words 'may' and 'by leave of the court', it is plain that the court has a discretion whether or not to grant leave to enforce an award in the same manner as a judgment or order of the court.

11. In general, the procedural rules relating to the enforcement of arbitration awards are governed by CPR r. 62.17 and 18 which provide in material part as follows:

G
'62.17 – *Scope of this Section*

This Section of this Part applies to all arbitration enforcement proceedings other than by a claim on the award.

H
62.18 – *Enforcement of awards*

(1) An application for permission under–

(a) section 66 of the 1996 Act;

A        …

         to enforce an award in the same manner as a judgment or order may be made
         without notice in an arbitration claim form.
         …

B        (9) Within 14 days after service of the order or, if the order is to be served out of
         the jurisdiction, within such other period as the court may set–

         (a) the defendant may apply to set aside the order; and

C        (b) the award must not be enforced until after–

         (i) the end of that period; or

         (ii) any application made by the defendant within that period has been finally
         disposed of.

D        (10) The order must contain a statement of–

         (a) the right to make an application to set the order aside; and

E        (b) the restrictions on enforcement under rule 62.18(9)(b).'

         12. As to these procedural rules, Mr Diwan made a number of submissions which
         I would summarise as follows:

F        (i) CPR 62.18 is the exclusive and mandatory regime or mechanism for seeking to
         enforce an arbitral award pursuant to s. 66 (and s. 101) of the 1996 Act which requires
         that: (1) this should be done by way of arbitration claim form (CPR 62.18(1)); and (2)
         the party seeking permission is precluded from enforcing the arbitral award until the
         time for making a challenge to the award has expired or the challenge, if made, has
         been finally disposed of: CPR 62.18(9) and (10).

G
         (ii) In other words, pursuant to this mechanism, the enforcing party, with the
         permission of the court, obtains an interim order of enforcement or an order 'nisi'
         only, pending the final disposal of any challenge: see *Continental Transfer Technique
         Ltd v Nigeria* [2010] EWHC 780 (Comm) at paragraphs 3–5; *MTS v Nomihold
         Securities* [2011] 2 CLC 856 (CA) at paragraph 10.
H
         (iii) These provisions fulfil this jurisdiction's obligations under the Convention on
         the Recognition and Enforcement of Foreign Arbitral Awards (1958) (the 'New
         York Convention') not to permit enforcement of awards until the final disposal
         of any challenge to the award. These provisions thus constitute an automatic case
         management order to be made in relation to such orders for permission to enforce.

**Y v S**                    **[2015] 1 CLC**
                                (*Eder* J)

A

So far as necessary, I consider these submissions further below.

13. Finally, at this stage, I would refer to s. 70 of the 1996 Act which provides in material part as follows:

B

'*Challenge or appeal: supplementary provisions*

(1) The following provisions apply to an application or appeal under section 67, 68 or 69.

…

C

(7) The court may order that any money payable under the award shall be brought into court or otherwise secured pending the determination of the application or appeal, and may direct that the application or appeal be dismissed if the order is not complied with.'

D

14. Against this background, I turn to consider the two main applications before the court as referred to above. In that context, Mr Diwan submitted that I should consider the s. 66 application first because (i) this raised a short question of law on the mandatory nature of the restriction on obtaining a final order on enforcement at this stage; and (ii) if Y is correct on the construction of CPR 62.18, the discharge application is necessarily subsumed within and superseded by the s. 66 application. I see some force in that submission. However, the discharge application relates to events first in time and, whilst recognising that there is a potential interrelationship between the two applications, it seems to me preferable to deal first with the discharge application.

E

F

**The discharge application**

15. There was some dispute as to the true nature of paragraph 2 of the Flaux J order. Mr Maclean QC submitted that, in truth, it was in the nature of an injunction. Mr Diwan QC submitted that this was not so; that it was a 'normal order' involving no 'worldwide restriction' in the absence of express words to that effect; that it was, in effect, no more than a 'case management restriction' precluding S from taking steps to obtain a final order enforcing the award in the same manner as a judgment of the court prior to the court determining the s. 67 challenge; that the language of the order tracked the language of an order that would ordinarily have been made if S had applied under s. 66 of the 1996 Act for leave to enforce the award and an order had been made under CPR 62.18(9); and that S had wrongly interpreted the Flaux J order as a worldwide anti-enforcement injunction (which it is not) rather than a 'case management stay' on obtaining a final order on enforcement pending the s. 67 challenge to ensure that the established regime for the enforcement of awards is respected.

G

H

A

16. As to these submissions, Mr Diwan would seem to be right in saying that the language of paragraph 2 of the Flaux J order tracks the language of CPR 62.18(9); and I am prepared to assume that in that context (i.e. an application made pursuant to CPR 62.18(9)), the effect of such language would ordinarily not extend and not

B
be intended to extend to enforcement proceedings which might be taken outside of this jurisdiction. However, in the present circumstances, i.e. where the Flaux J order was obtained otherwise than in the context of an application pursuant to CPR 62.18, it seems to me that, on its face, Mr Maclean QC is right, i.e. the language would appear to be unrestricted. In that context, it is perhaps noteworthy that that is how Andrews J appears to have understood its effect. At the very least, it seems to me that

C
the wording is ambiguous and requires clarification if it is not – and not intended – to extend to enforcement proceedings abroad; and in my view, it is important that there should be no ambiguity at all. To a certain extent, the wording as modified by Andrews J provides some clarification. However, as submitted by Mr Maclean and as I understood Mr Diwan to accept, the wording should, in any event, be modified

D
to make plain that the restriction on enforcement does not apply to any steps that might be taken to enforce the award outside this jurisdiction. Thankfully, this served to narrow considerably the scope of the disputes between the parties.

17. That leaves the more fundamental question i.e. should the original orders of both Flaux J and Andrews J have been granted at all? In summary, Mr Diwan

E
submitted that the grant of such an order made sense as a matter of 'sensible case management' and that it was supported by the decision of HH Judge Raymond Jack QC in *Apis AS v Fantazia Kereskedelmi KFT* [2001] 1 All ER (Comm) 348 where absent any application for leave to enforce the award in that case under s. 66 (see p 353b–c) it appears at p 356b that an order was made prohibiting steps being taken to enforce such award in England. The underlying reasoning which persuaded the judge

F
to make that order appears at p 353a–j viz:

'An arbitration award is not a judgment. Section 66 of the 1996 Act provides that an award may be enforced in the same manner as a judgment if the leave of the court is obtained. Until that occurs the usual processes of enforcement or

G
execution appropriate to a judgment cannot be employed. So until leave is given, no question of staying execution can arise. Once leave has been given, a stay of execution under RSC Ord 45, r 11 is unlikely to be appropriate. I refer to *Far Eastern Shipping Co v AKP Soveonflot* [1995] 1 Lloyd's Rep 520. No leave here has been sought under s. 66 of the 1996 Act. Nor is it likely to be. For I am told that the buyers have no assets in England.

H

There is no provision in the Arbitration Acts which provides for the court to make an order preventing steps being taken to enforce an award. Counsel have not found any case in which the court has been asked to make such an order. There is, however, some assistance in s. 103 of the 1996 Act. This provides:

A
"(1) Recognition or enforcement of a New York Convention award shall not be refused except in the following cases.

(2) Recognition or enforcement of the award may be refused if the person against whom it is invoked proves …"

B
I can omit (a) and (b):

"(c) that he was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case …"

C
I can then go to (f):

"that the award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, it was made."

D
This reflects art V of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 10 June 1958; UN TS 330 (1959); Cmnd 6419) of 10 June 1958, called the New York Convention. The United Kingdom and Slovakia are parties to the convention, though it is unclear on the information provided to me whether Slovakia is a party because of the accedence of the former Czechoslovakia or because Slovakia itself has acceded.

E

Article V and s. 103.2(f) presuppose that an award may be suspended by a competent authority in the country in which it is made, which authority – I may presume – will normally be the appropriate court. It is but a small step further to hypothesise that such a suspension may be ordered pending an application to set the award aside, perhaps on grounds referred to earlier in the subsection. If an award is suspended, it will be deprived of immediate effect. The article and the section thus pre-suppose that one court has power to order that an award shall not have effect depending on the determination of an application to set it aside and this may be relied on to resist enforcement by a court in another country. In the case of the section, the two countries are a foreign country and England respectively. *It is a short further step to ascribe the same power to suspend to the English court in respect of awards made in England, to the enforcement of which art V of the convention will apply abroad. The parties are right to accept that under its inherent jurisdiction the English court has the power in question here*.' (emphasis added)

F

G

H

18. As appears from this passage, the judge considered that the court had a general power to 'suspend' enforcement of an award made in England. It also appears that the parties in that case accepted that such power derived from the inherent jurisdiction of the court.

A    19. Without deciding the point and for present purposes only, I am prepared to
assume in favour of Mr Diwan that the court has an inherent jurisdiction to make
an order suspending enforcement of the award in England as the court did in *Apis*.
However, it is plain from the terms of s. 1(c) of the 1996 Act that the Court 'should
not intervene except as provided by this Part of the Act'; and although, as stated
by Lord Mance in *AES* (see above), this is not an absolute prohibition, the wording
B    implies the need, at the very least, for 'caution' before any court intervention.

    20. Here, it seems to me that it was both unnecessary and inappropriate for the
court to grant the original order as appears in paragraph 2 of the Flaux J order or
as subsequently varied by Andrews J for the following reasons. First, as Mr Diwan
C    accepts (and indeed asserts) it was not intended to – and did not – apply to any
enforcement proceedings that might be taken abroad. Second, so far as any possible
enforcement steps in England are concerned, there is no evidence that Y has any assets
within this jurisdiction and no suggestion (at least at the moment) of S intending to
seek enforcement within this jurisdiction. In any event, any enforcement of the award
in the same manner as a judgment or order within this jurisdiction requires the leave
D    of the court and although, as noted above, CPR 62.18 in effect permits an application
for leave to enforce being made without notice and the grant of an order nisi, the
effect of CPR 62.18(9) is to prohibit any enforcement in fact for a period pending any
application by the respondent to set aside such order and, if such application be made,
until determination of such application. In other words, there was no real risk of S
E    seeking to take steps to enforce the award because if S did make an application for
an order pursuant to s. 66 of the 1996 Act, the only order that S would have obtained
is an order nisi which would have been subject to the automatic and mandatory
restrictions in CPR 62.18(9) and which would have protected Y's position. In these
circumstances, I see no or no sufficient practical need for paragraph 2 of the Flaux J
order either in its original form or as varied by Andrews J.
F

    21. For these reasons, I would accede to the discharge application, i.e. I would
discharge paragraph 2 of the Flaux J order as varied by the Andrews J order.

    22. I should mention that Mr Maclean submitted in the alternative that the Flaux J
G    order should be set aside on the basis that Y's application failed properly to draw the
judge's attention to the highly unusual nature of the order sought, in serious breach
of his duties of full and frank disclosure and fair presentation on a without notice
application. Given my conclusion as stated above, it is unnecessary to consider this
alternative submission.

H

### The s. 66 application

    23. It is important to understand that the application made by Mr Maclean under
this head on behalf of S is that the court should now make an unrestricted final order
granting leave to enforce the award in the same manner as a judgment or order of the

**352**
      **Y v S**
      *(Eder* J)
      **[2015] 1 CLC**

A
court i.e. before the disposal of Y's pending s. 67 challenge which, following a recent directions hearing by Flaux J, is now fixed for a 4-day hearing in June 2015.

B
24. In essence, Mr Diwan submitted that such application should be rejected in particular because (i) it is contrary to the mandatory and exclusive regime for the enforcement of arbitration awards under CPR 62.18; and (ii) such an order would be in breach of this country's treaty obligations under the New York Convention and would deprive S of his New York Convention defences. As to the former, he referred, in particular, to *Russell on Arbitration* (23rd edn), paras 8-219 and 8-224; and *Merkin, Arbitration Law* at paras 19.18 and 19.19.

C
25. In the course of the argument in relation to this application, there was much debate as to (a) whether CPR 62.18 provides an exclusive code for the enforcement of arbitration awards; (b) if an application is made for leave to enforce an award pursuant thereto, whether the court is in effect inevitably bound to make an order as stipulated in CPR 62.18(9) i.e. prohibiting enforcement *pro tem*; (c) whether the court might be able to vary or 'suspend' the terms of such order so as to require, for example, the respondent to put up security for the amount of the award as part of its general discretion which arises under s. 66 of the 1996 Act whether or not to grant leave to enforce an award; and (d) in that context what is the proper approach of the court in determining whether any security should be ordered and, in particular, whether the test in *Soleh Boneh International v Uganda* [1993] 2 Ll Rep 208 applied. In this context, I was also referred to the decision of Mackay J in *Socadec SA v Pan Afric Impex Co Ltd* [2003] EWHC 2086 (QB).

D

E

F
26. Interesting as the debate in respect of these matters may be, I do not consider that it is necessary to deal with them – at least in any detail. I accept that the present procedural position is unusual i.e. whereas normally, the original application for leave to enforce is made without notice pursuant to CPR 62.18, the fact is that this application comes on with notice. However, of itself, I do not consider that this should mean that I should reject the application for that reason. Any such suggestion would, in my view, not only be contrary to the overriding objective but also absurd – and I did not understand Mr Diwan to suggest otherwise. However, I do not consider that the mere fact that this application comes on with notice should put S in any better position that he would otherwise have been in if the application had come on without notice in the usual way. On this basis alone, it is my conclusion that Mr Maclean is not entitled to a final order now in the terms he seeks; or, at the very least, I would decline to make such final order in the exercise of my discretion.

G

H
27. Initially, it appeared that Y's position was that the application by S for leave to enforce was inevitably doomed because (i) CPR 62.18 is mandatory i.e. in effect, it requires any such application to be made by a separate arbitration claim; and (ii) here, S had not issued a separate arbitration claim but had instead issued an application notice. However, in the event, Mr Diwan was prepared to accept that this was not necessarily fatal. To this extent, there was some narrowing of the ground between the

**QB**                                    **Y v S**                                **353**
                                         (*Eder* J)

A   parties and Mr Diwan suggested in his skeleton argument that the appropriate order
    in this context should be:

        '1. Permission be given to [S] to enter judgment in the terms of the Award
        pursuant to s. 66(2) of the 1996 Act.

B
        2. No steps be taken to enforce the Award prior to final disposal of the s. 67
        challenge.'

    This formulation follows the broad structure of the kind of order that would normally
    be made without notice under CPR 62.18.

C
        28. In light of the above and subject to three points, I agree that that this seems the
    appropriate order to make.

        29. The first point concerns the scope of paragraph 2 of this suggested draft order.
    Mr Diwan accepted that the prohibition in that paragraph relates only to steps that
D   might otherwise be taken within this jurisdiction; and in my view, this should be
    made plain by incorporating these words i.e. 'within this jurisdiction' after the word
    'Award' in that paragraph 2.

        30. The second point also concerns the formulation of paragraph 2 of this suggested
E   draft order. Following the structure of CPR 62.18(9), the prohibition against taking
    steps to enforce is normally linked to a potential future application to set aside the
    order for leave to enforce. Here, I recognise that an application under s. 67 of the
    1996 Act has already been issued; and this explains the wording suggested by Mr
    Diwan. However, in my view and subject to any further submissions from counsel,
F   the appropriate wording should be as follows:

        '1. Subject to paragraph 2, permission be given to [S] to enter judgment in the
        terms of the Award pursuant to s. 66(2) of the 1996 Act.

        2. By [date], Y may apply to set aside this order.

G
        3. No steps be taken to enforce the Award within this jurisdiction prior to [date]
        or any application made by Y within that period has been finally disposed of.'

    No doubt, the application to set aside may refer to the existing s. 67 application and/
    or the same grounds. But it seems to me that this wording is more appropriate because
H   it follows the structure of CPR 62.18.

        31. The third point is more fundamental. It concerns the question of a possible
    order requiring Y to put up security for the amount in dispute. I have already referred
    to this in part. Here, Mr Maclean submitted that any order restricting enforcement of
    the award pending determination of Y's s. 67 challenge should be conditional upon

**354**                                    **Y v S**                          **[2015] 1 CLC**
                                         (*Eder* J)

A   Y providing adequate security i.e. the full amount due under the award. In support of
    that submission he relied upon *Apis AS v Fantazia Kereskedelmi KFT* and *Socadec
    SA v Pan Afric Impex Co Ltd*. Although the former was a case where there was no
    existing s. 66 application, I accept that these decisions appear to support an argument
    that the court may, in an appropriate case, make any order restricting enforcement of
    an award conditional upon the respondent putting up security. Mr Maclean forcefully
B   submitted that such an argument is also consistent with the discretion under s. 66
    of the 1996 Act as to whether or not to grant leave to enforce i.e. if the court has a
    discretion to refuse enforcement, presumably it can grant leave to enforce on terms.

    32. In principle, I see much force in this argument. However, it is not clear to me
C   how such an argument fits in with the overall scheme of CPR 62.18 including, in
    particular, CPR 62.18(9); nor how the approach of the court to the question of the
    provision of security in *Apis* and *Socadec* fits in with the approach of the court under
    s. 70(7) of the 1996 Act: see *Konkola Copper Mines plc v U&M Mining Zambia
    Ltd* [2014] EWHC 2146 (Comm) at [37]–[44]. Further, contrary to Mr Maclean's
    submissions, I was not persuaded that he derived any assistance from Article VI of
D   the New York Convention.

    33. Sadly, the time allowed for the present hearing (two hours including judgment)
    was insufficient to permit proper consideration of this argument. This is unfortunate
    because it raises a point of some considerable practical importance. My tentative view
E   is that CPR 62.18(9) speaks for itself i.e. in principle, a successful party is *prima facie*
    entitled to an order nisi granting leave to enforce an arbitration award as prescribed
    by CPR 62.18(9) but if an application to set aside such order is issued then (subject
    possibly to a counter strike-out application) the award must not be enforced until
    such application is disposed of. There is nothing in CPR 62.18 which contemplates
    that such temporary prohibition against enforcement may be made subject to an
F   order for the provision of security. As it seems to me, this is also consistent with (i)
    the decision of this court in *IPCO (Nigeria) v Nigerian National Petroleum* [2005]
    1 CLC 613 at [20] where an enforcement order was held to be defective because the
    restriction on enforcement was not inserted into the order obtained; and (ii) s. 70(7)
    of the 1996 Act only applies to ss 67, 68 and 69 of the 1996 Act i.e. it does not apply
    to any application for leave to enforce under s. 66 of the 1996 Act. Consistent with s.
G   70(7), it seems to me that any application for an order requiring provision of security
    for the amount of dispute must be made in the context of a discrete application under
    ss 67, 68 or 69 supported by adequate evidence pursuant to that statutory provision.

    34. Even if that is wrong, it seems to me that the approach of the court to that
H   question, i.e. whether or not to order the provision of security for the amount in
    dispute, should in principle be similar under s. 66 as it is under s. 70(7). As to the
    latter, I would refer to my recent judgment in *Konkola Copper Mines plc v U&M
    Mining Zambia Ltd* [2015] 1 CLC xxx; [2014] EWHC 2146 (Comm) at [37]–[44]
    where I considered, and followed, the earlier authorities in the context of s. 70(7).
    Here, I should emphasise that Mr Diwan submitted that there had been insufficient

A   time to put in further evidence to deal with Mr Maclean's argument in this context.
Be that as it may, it is, in my view, quite impossible for me to say that the s. 67
challenge is 'flimsy'; nor am I persuaded that there is any relevant prejudice of
the kind referred to in the authorities given in particular the matters already stated
above. On this basis, I would, in the exercise of my discretion, reject Mr Maclean's
submission that I should make the order restricting enforcement conditional on the
B   provision of security.

35. For the avoidance of doubt, I should emphasise that there is no present
application before me under s. 70(7) of the 1996 Act; and that nothing that I say
should preclude any such application in the future or otherwise affect the court's
C   consideration of such application if and when it is ever made.

**Conclusion**

36. For these reasons, I would grant the discharge application and the s. 66
application in the terms stated above subject to any further submissions as to the
D   precise form of wording; but I would, in effect, reject Mr Maclean's submission that
the latter should be conditional on the provision of security by Y. The order should
also include liberty to apply both generally and, in particular, to permit S to make an
application (if so advised) pursuant to s. 70(7) of the 1996 Act. Accordingly, counsel
are requested to seek to agree a draft order (including consequential matters). Failing
E   agreement, I will deal with any outstanding issues.

(*Order accordingly*)
_____

F

G

H