# Exhibit E

 KluwerArbitration

**Document information**

**Publication**

Fouchard Gaillard Goldman on International Commercial Arbitration

**Bibliographic reference**

'Part 6 : Chapter II - International Conventions', in Emmanuel Gaillard and John Savage (eds), Fouchard Gaillard Goldman on International Commercial Arbitration, (© Kluwer Law International; Kluwer Law International 1999) pp. 963 - 1002

## Part 6 : Chapter II - International Conventions

1663. – The recognition and enforcement of arbitral awards has been addressed in a number of international conventions.

The 1923 Geneva Protocol on Arbitration Clauses in Commercial Matters is primarily concerned with the recognition of the validity of arbitration agreements and the jurisdiction of national courts to rule on questions of arbitral procedure. However, it already envisaged that each contracting state should undertake to "ensure the execution by its authorities and in accordance with the provisions of its national laws of arbitral awards made in its own territory"pursuant to the Protocol's rules regarding arbitration agreements and arbitrators' jurisdiction. (1) In contrast, the 1927 Geneva Convention principally dealt with "the Execution of Foreign Arbitral Awards." (2) The principle was laid down for the first time in that Convention that the courts responsible for enforcing an award cannot review its merits. The Convention also set forth a number of substantive rules which have since become well established, including the requirements of compliance with due process and the limits of the arbitration agreement. Besides these rules, the Convention subjected the enforcement of awards to a number of rules framed in terms of jurisdiction and applicable law, and did not specify the limits of the review of awards which should be carried out by the courts in recognition and enforcement actions. The fact that the authors of the Convention failed to even harmonize the choice of law rules to be used by the courts of the place of enforcement underlines the inadequacy of this approach. (3)

Significant progress was made by the 1958 New York Convention, which still constitutes the main instrument used to enforce arbitral awards throughout the world. (4) Its continuing relevance was confirmed in 1985 by the UNCITRAL Model Law which, on the subject of the recognition and enforcement of foreign arbitral awards, simply adopted the provisions of the New York Convention. (5) Although too conservative, (6) this decision is nonetheless a tribute to the important role played over the past 40 years by the New York Convention.



The Geneva Convention of April 21, 1961, known as the European Convention owing to its regional character, addresses a number of different issues arising in international arbitration. (7) It only deals with the recognition and enforcement of awards indirectly, listing a limited number of grounds on which a decision to set aside an award at the seat of arbitration or in the country under the law of which the award was made will be recognized by the countries applying the Convention. In so doing it required the Contracting States– some 23 years prior to the *Norsolor-Hilmarton* case law (8) –to recognize awards set aside in the country of origin on grounds which are not found in the limitative list set forth in the Convention. (9)

Within its scope of application, the 1965 Washington Convention provides an extremely effective mechanism for the recognition and enforcement of ICSID awards. However, as ICSID arbitration is totally autonomous, awards are reviewed–sometimes in excessive detail–within the ICSID system by *ad hoc* committees. (10)

Other conventions, mostly regional, complement the existing mechanisms governing the recognition and enforcement of arbitral awards.

These include the Inter-American Convention on International Commercial Arbitration, signed in Panama on January 30, 1975, which is modeled on the New York Convention. (11) There is some debate as to its exact scope. It undoubtedly applies in relations between the countries which have ratified it and, as it contains no reciprocity condition, it may also apply to the enforcement of awards made in non-signatory countries. (12)

In addition, the 1987 Amman Arab Convention on Commercial Arbitration, (13) which established an Arab Centre for Commercial Arbitration based in Rabat, Morocco, provides that awards made under the auspices of the Centre can only be refused enforcement by the supreme courts of contracting states where the award is contrary to public policy. (14)



There are also a number of bilateral conventions concerning the recognition and enforcement in one country of arbitral awards made in the other contracting state. (15)

The existence of these bilateral conventions, and the fact that the benefit of some multilateral conventions such as the New York Convention may be subject to a reciprocity condition (Art. I(3)), make the application of these various instruments one of the important factors to be taken into account when selecting the seat of arbitration. (16)

1664. – The relationships between these various conventions are complex and sometimes raise awkward conflicts. Most authors consider that such conflicts should be resolved by applying the principle of maximum effectiveness, so that the convention most favorable to the recognition and enforcement of the award should prevail. In fact, conventions on

© 2019 Kluwer Law International, a Wolters Kluwer Company. All rights reserved.

Although an award which is set aside in its country of origin loses the benefit of the New York Convention, it can nevertheless be recognized by the legal system of another country under the law of that second country, even if that second country is a party to the Convention. The Convention clearly sets forth only the minimum conditions for the recognition and enforcement of awards, and it is not opposed to the idea that the law of a particular jurisdiction may be more liberal (Art. II). This has been confirmed on a number of occasions by both the French courts, as French law has considerably relaxed its conditions governing enforcement as compared to the New York Convention and, more recently, by courts in the United States. (81)

1688. – The rule whereby the setting aside of an award in its country of origin causes it to lose the benefit of the New York Convention has prompted some authors to suggest that the absence of any possibility of an action to set aside the award in the country of origin would likewise lead the benefit of the Convention to be lost. This argument, which is in effect the denial of the idea that "a-national" awards can be considered as being "foreign" for the purposes of the Convention, (82) is based on a particular conception of the Convention's general philosophy. That conception assumes that the purpose of a convention on the recognition and enforcement of arbitral awards is to avoid having two different courts review the award and to determine where the primary review should be performed, so as to ensure that the importance of court control in other jurisdictions will be reduced accordingly. Against that background, it is argued that the drafters of the New York Convention chose to have the principal review carried out in the country of origin of the award, in order to lessen court intervention in the host country. Having attributed jurisdiction to the country of the seat or to the country the law of which was chosen by the parties to govern the procedure, the Convention places no restrictions on the extent of the review performed there. On the other hand, it does determine the maximum extent of the review in the host country. The temptation is to conclude that the necessary counterpart of limited court control in the host country is the existence of an action to set aside the award in the country of origin. (83)

That is the philosophy underlying conventions on the mutual recognition of judgments, as well as double taxation treaties, the object of which is essentially to allocate jurisdiction. The same philosophy had powerful advocates in the context of arbitration. (84)

It is that interpretation of the Convention which has prompted the question of whether awards made in countries which allow the parties to waive actions to set aside still retain the benefit of the Convention. The issue arose, between 1985 and 1998, with respect to awards made in Belgium in cases having no connection with Belgium other than the location of the seat of arbitration. Article 1717, paragraph 4 of the Belgian Judicial Code excluded, prior to its modification by the law of May 19, 1998, all actions to set awards aside in those circumstances. The question still arises today for awards made in Switzerland, Tunisia, Belgium and Sweden, where the parties have exercised their option to exclude all actions to set the award aside. (85)

1689. – Commentators have been virtually unanimous in rejecting if not the conception of the New York Convention on which it is based, then at least the conclusion drawn from that conception whereby awards made in Belgium, Switzerland or Sweden in respect of which no recourse is available locally do not enjoy the benefit of the New York Convention. (86)

The rejection of that conclusion was inevitable, given that neither the text nor the structure of the New York Convention allow the exclusion from its scope of awards made in countries which choose to allow actions to set aside to be waived in certain circumstances or even to exclude such recourse altogether. As far as its text is concerned, the Convention states that it applies to binding foreign awards, subject to reciprocity. It would unquestionably be adding to this text to consider that it applies only to foreign awards which, though binding, may be the object of an action to set them aside in the country of origin. Admittedly, the Convention attributes jurisdiction to the courts of the country of origin to rule on actions to set awards aside. However, that is not accompanied by any requirement dictating how strict (87) or how lax such control should be. In addition, the analogy with conventions on the mutual recognition of judgments is misleading. Those conventions are based on reciprocal trust between the legal systems of the various state signatories, which is meaningless in arbitration, as no state can guarantee the quality of awards made on its territory. (88)

2) Effect of a Suspension

1690. – Under Article , paragraph 1(e) of the Convention, recognition and enforcement may also be refused if the award has been suspended by a competent authority of the country in which, or under the law of which, the award was made.

The word "suspended" is not defined in the Convention. It is generally taken to refer to the case where a court suspects there to be a defect liable to affect the validity of the award and prevents enforcement of the award until the issue has been decided by the court with jurisdiction over an application to set the award aside. (89)

In a 1979 decision, the Swedish Supreme Court held that the suspension of enforcement proceedings which, in certain countries such as France, (90) results automatically from the commencement of an action to set an award aside, cannot be considered a suspension within the meaning of Article , paragraph 1(e) of the New York Convention. (91) This

© 2019 Kluwer Law International, a Wolters Kluwer Company. All rights reserved.

decision is correct in our view, because the text of the Convention requires the award to be suspended "by a competent authority," which would appear to exclude a suspension operating automatically under the law of the country of origin. Furthermore, it would have been dangerous to have made the serious consequence of losing the benefit of the Convention contingent upon a procedural rule of the country of origin to which the Convention does not refer. Thus, both the terms used and the underlying purpose of the text lead to the conclusion that the authors of the Convention intended to refer to suspensions resulting from a court decision–even if only provisional–as only a court decision provides an indication of any doubts which the country of origin might harbor towards an award. (92)

b) Effect, in the Host Country, of Proceedings to Set Aside or Suspend the Award Pending in the Country of Origin

1691. – Article I of the Convention states that:

[i]f an application for the setting aside or suspension of the award has been made to a competent authority referred to in article (1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

This provision achieves a compromise between two equally legitimate concerns. The authors of the Convention wanted to ensure that a party wishing to frustrate the enforcement of an award could not prevent the operation of the Convention simply by initiating proceedings to set aside (or suspend) the award in the country of origin. However, they also wanted to ensure that the rule whereby an award loses the benefit of the Convention if it is set aside (or suspended) in its country of origin could not be defeated by the rapid ● enforcement of the award in another jurisdiction while the issue was still pending in the country of origin.

Taking those two constraints into account, the Convention's authors decided to leave it to the courts of the host country to assess whether the grounds underpinning the action to set aside (or suspend) the award are sufficiently serious for there to be a genuine risk that the award will in fact be set aside. (93) If that is the case, they can refuse recognition or enforcement, or grant it on condition that security be given, so that in the event that the award is subsequently set aside (or suspended), the previously existing situation can be restored. The courts of the host country have full discretion in deciding on this question. (94)

1692. – This system clearly does not exclude all risk of diverging interpretations between the country of origin and the host country as to the seriousness of the grounds invoked. (95) However, that is a limitation inherent in the Convention once it allows court control in the country of origin to coexist with court control in the host country, without giving full precedence to either jurisdiction and without even limiting the grounds which can be used to justify an action in the country of origin.

This risk of diverging interpretations leads to a question as to the consequences, in the host country, of the setting aside of an award in the country of origin after it has been enforced in the host country. Some commentators consider that in such cases the courts which ordered enforcement could revoke their decision and retroactively apply Article , paragraph 1(e) to deprive the award set aside of the benefit of the Convention. (96) However, given that the Convention is silent as to how to resolve this problem–which generally results from inadequate coordination between proceedings in the host country and those in the country of origin–the law of the host country must determine the finality of the enforcement order and, in particular, must decide whether certain events justify its withdrawal or variation. The French courts do not appear to exclude that possibility. In a 1970 decision, the Paris Tribunal of First Instance granted enforcement of an award made ● in India, notwithstanding the existence of the possibility of recourse before the Indian courts in the future. However, the Tribunal carefully observed that any enforcement of the award by the winning party in the arbitration would be "at its own risks." (97) Of course, these risks are minimized by the case law according to which an award set aside in the country of origin can be nevertheless enforced in France if it meets the ordinary standards of enforcement of awards in that jurisdiction. (98)

1693. – As discussed above, (99) the New York Convention makes a distinction between two types of grounds on which recognition and enforcement may be refused: those which must be raised by the party resisting recognition or enforcement and those which can be raised by the courts of the host country on their own motion. The list of grounds is exhaustive, and it of course excludes any revision of the merits of the award. (100)

A. – Grounds Which Must Be Raised by the Party Resisting Recognition or Enforcement

1694. – In addition to the ground described in Article , paragraph 1(e) concerning the setting aside or suspension of an award in the country of origin, (101) the grounds for refusing to grant recognition or enforcement of an award which must be raised by the party

8

© 2019 Kluwer Law International, a Wolters Kluwer Company. All rights reserved.