CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jonathan I. Blackman
Jeffrey A. Rosenthal
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Vale S.A.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VALE S.A.,<br><br>      Petitioner,<br><br>-against-<br><br>BSG RESOURCES LIMITED,<br><br>      Respondent. | Case No. 19-cv-3619-VSB |

**DECLARATION OF JONATHAN PATRICK KNOX KELLY IN OPPOSITION TO RESPONDENT'S CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO ADJOURN THE DECISION ON THE ENFORCEMENT OF THE AWARD**

     I, Jonathan Patrick Knox Kelly, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury under the laws of the Unites States of America as follows:

     1.     I am a partner in the London office of Cleary Gottlieb Steen & Hamilton LLP, counsel to the petitioner, Vale S.A. ("Vale"). I am a solicitor of the Senior Courts of England and Wales. I qualified as a solicitor in 1989 and became a partner at a former firm in 1995 and a partner at Cleary Gottlieb Steen & Hamilton LLP in 2010. My practice focuses on substantial English and international commercial litigation and arbitration. I submit this declaration in opposition to BSG Resources Limited (in administration) ("BSGR")'s cross-motion to dismiss

or, in the alternative, to adjourn the decision on the enforcement of an arbitral award.

2. I have personal knowledge of the facts stated in this declaration, acquired during the course and scope of my work as counsel to Vale throughout the five-year arbitration proceedings which resulted in the Final Award dated April 4, 2019, issued by an arbitration tribunal (the "Tribunal") in LCIA Arbitration No. 142683 (the "Award" or the "Final Award"). I remain counsel to Vale in the proceedings relating to the Challenge Application and the Set Aside Application (each as defined below and, together, the "English Proceedings").

Background to the English Proceedings

3. On April 18, 2019, Vale applied for permission in the English High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) (the "English High Court") to enforce the Award in the same manner as a judgment or order of the English High Court to the same effect, pursuant to section 66(1) of the Arbitration Act 1996.

4. As part of Vale's application, it included a proposed order that could be entered by the English High Court. On May 9, 2019, Vale was granted this order by Mr. Justice Bryan (the "Enforcement Order"). *See* Decl. of Frederick D. Hyman, dated June 4, 2019 ("Hyman Declaration"), Ex. B (the Enforcement Order).

5. As prescribed by the English Civil Procedure Rules ("CPR"), the procedural code of the English civil courts, the Enforcement Order contains the statement that, "[p]ursuant to the provisions of CPR 62.18(9)(b), the Award must not be enforced until after the end of the 14-day period referred to in paragraph 3 above, or if an application is made by the Defendant within that period to set aside this Order, until after that application has been finally disposed of." CPR

2

62.18(10)(b) requires that any order giving permission for enforcement contain this standard statement and it was included by my firm in the draft order that formed part of Vale's application for permission to enforce the Award in England and Wales on April 18, 2019.  CPR 62.18 is attached as <u>Exhibit A</u> hereto.

6. On May 10, 2019, BSGR filed a separate application to challenge the Award on the grounds of alleged serious irregularity affecting the Tribunal, the proceedings or the Award pursuant to sections 68 and 24 of the Arbitration Act 1996 (the "Challenge Application").

7. On May 23, 2019, BSGR filed an application for an order to set aside the Enforcement Order or, in the alternative, to stay the Enforcement Order until the determination of the Challenge Proceedings (the "Set Aside Application").  Hyman Decl., Ex. D.  The sole basis for the Set Aside Application was stated to be "the existence of and reasons set out in [BSGR's] section 68 challenge."

8. On May 24, 2019, in the cover letter to my firm enclosing the documents forming its Set Aside Application, attached as <u>Exhibit B</u> hereto, BSGR's counsel requested that the Challenge Application and the Set Aside be heard and determined together.

9. On May 30, 2019, my firm responded that it did not agree to this request, on the basis that this would result in a delay to Vale's ability to enforce the Award in England.  My firm's letter is attached as <u>Exhibit C</u> hereto.  That issue has not yet been decided by the English High Court.

10. On June 7, 2019, Vale filed evidence in response to BSGR's Set Aside Application.  In this evidence, Vale explains that BSGR has not put forward any of the accepted

3

grounds to set aside the Enforcement Order; it has not suggested that the Tribunal lacked substantive jurisdiction for the purposes of section 66(3) of the Arbitration Act 1996 or that enforcement should be refused on the grounds of public policy. Vale also put forward its position that the court should not stay the Enforcement Order because, among other things, this will result in a risk of prejudice to Vale's ability to enforce the Award.

The context of BSGR's Challenge Application

11. Vale's deadline to file its evidence in response to BSGR's Challenge Application is not until tomorrow, June 19, 2019. Vale will be opposing BSGR's Challenge Application on the basis that the Challenge Application is extremely weak and is simply the latest obstructive tactic intended to delay Vale's enforcement of the Award. The reasons for this are as follows:

- BSGR's first argument in the Challenge Application is that there is an alleged "pattern of conduct" giving rise to apparent bias affecting the Tribunal. This allegation is not supported by any direct or even circumstantial evidence of bias. It is based on a number of decisions made by the tribunal which (on any proper analysis) were well within the Tribunal's decision-making powers or procedural discretion. It repeats various of the arguments previously dismissed as being totally without merit. In fact the Tribunal, which consisted of three experienced and highly-regarded arbitration practitioners, acted with scrupulous fairness and delivered a very detailed and carefully considered 280-page Award which considered all of the evidence and arguments despite BSGR's boycott of the proceedings. *See, e.g.*, Declaration of Jonathan I. Blackman in Support of Vale's Petition to Enforce the Award, Ex. A (Final Award) ¶¶ 162-63, 171.

- The second argument is an allegation of failure on the part of the Tribunal to conduct the proceedings fairly and impartially as between the parties, give each party a reasonable opportunity of putting its case and dealing with that of its opponent, or to adopt procedures so as to provide a fair means for the resolution of the matters falling to be determined.  This is framed as an alternative to BSGR's first argument and relies on the same allegations.  Vale considers this ground of challenge to be without merit for the same reasons.

- Finally, BSGR alleges a failure to deal with an issue, namely its argument that once the Tribunal found that the joint venture agreement had been frustrated, damages were limited to recovery of Vale's initial payment to BSGR.  However, BSGR never argued that damages for fraudulent misrepresentation would be limited in this way. In fact, the Tribunal referred to and considered the argument that BSGR *did* make about the proper recovery in respect of frustration.  The argument which it is said that the Tribunal failed to consider is in any event hopeless and simply wrong as a matter of English law.

12.     It is notable that BSGR has previously sought relief from the English courts for the same conduct and alleged "bias" by the Tribunal that now forms the basis of this Challenge Application.  When BSGR previously presented these complaints to the English High Court, in the context of an effort to remove two members of the Tribunal, the Honorable Mr. Justice Popplewell, High Court Judge, dismissed the challenge and later described BSGR's submission as "totally without merit" and as having been supported by evidence that "mischaracterized the nature of some of the underlying proceedings in a way which was seriously misleading."  On February 9, 2017, the English High Court ordered BSGR to pay £180,000 in costs to Vale, partly

on an *indemnity* basis, which reflected the Court's disapproval of BSGR's conduct of the proceedings. This order is attached as Exhibit D hereto. BSGR has so far refused to comply with this order and pay the costs to Vale. The English Court of Appeal, in its order determining BSGR's application for leave to appeal the judgment of Mr. Justice Popplewell, found that there would be "no realistic prospect of the Court of Appeal, if it had jurisdiction, which it does not, holding that [the conclusions of Mr. Justice Popplewell] were erroneous."

English law issues raised by BSGR

13.     I have had an opportunity to consider BSGR's Memorandum of Law in Opposition to Petition for Recognition and Enforcement of a Foreign Arbitration Award and in Support of Cross-Motion to Dismiss or, in the Alternative, to Adjourn the Decision on the Enforcement of the Award dated June 4, 2019 (the "Cross-Motion"). BSGR advances a number of points which relate to English law and the English Proceedings.

14.     Firstly, as I explain in my declaration in support of Vale's petition to enforce the Award (the "Kelly Declaration in Support of Petition to Enforce"), filed on June 18, 2019, BSGR is wrong to assert in its Cross-Motion that "the English High Court has suspended the Award" or that it has imposed any restrictions on the Award's enforcement in a foreign jurisdiction.

15.     Secondly, in its Cross-Motion, BSGR states that "English law provides BSGR with a number of arguments about the procedural defects in the arbitration" and then lists a number of allegations as to the arbitrators' conduct. Cross-Motion at 10. BSGR states that "[t]he Convention does not recognize these arguments as grounds for refusing to recognize or enforce the Award" and concludes that the present proceedings ought to be adjourned so that the English High Court can decide these issues. *Id.*

16.     In fact, the grounds upon which BSGR's Challenge Application is based are that of serious irregularity pursuant to sections 24(a) and (d)(i) of the Arbitration Act 1996, the statute which governs arbitration proceedings and sets out the law in relation to the enforcement of arbitration awards in England and Wales, (that circumstances exist that give rise to justifiable doubts about the impartiality of an arbitrator and that he has refused or failed properly to conduct proceedings); section 68(2)(a) of the Arbitration Act 1996 (a failure by the tribunal to comply with its general duty under section 33 to act fairly and impartially as between the parties, giving each party a reasonable opportunity of putting his case and dealing with that of his opponent and to adopt procedures suitable to the circumstances of the particular case); and section 68(2)(d) of the Arbitration Act 1996 (failure by the tribunal to deal with all the issues that were put to it). Essentially, as one can immediately see, these are all grounds relating to due process and fundamental unfairness.

17.     The Report of the Department Advisory Committee on Arbitration Law (the "DAC Report") – which was prepared by the committee which drafted the Arbitration Act 1996, and is regularly referred to and relied upon by the English courts as authoritative guidance on the meaning of the Act – notes that the grounds for challenging an award for serious irregularity "reflect[…] the internationally accepted view that the Court should be able to correct serious failure to comply with the "due process" of arbitral proceedings: cf. Article 34 of the [UNCITRAL] Model Law [on International Commercial Arbitration]". The relevant page is attached as page 34 of Exhibit E hereto.  It is therefore wrong for BSGR to suggest that English law provides purely parochial grounds for interfering with an award which are wider than the internationally recognized standards of due process; although expressed in more particularized

7

terms, section 68 of the Arbitration Act 1996 is intended to reflect due process standards applied internationally.

18.     For further context, I note that challenges under section 68 of the Arbitration Act 1996 are rarely successful.  The most recent published statistics of which I am aware, attached as <u>Exhibit F</u> hereto, from the English Commercial Court Users' Group in March 2018 showed that between 2015 and March 2018, only one out of 112 such challenges was successful (a 0.9% success rate).  I am not aware of more recent statistics, but my understanding based on interactions with colleagues and other professionals is that it remains the case that only a very small number of challenges are successful.  The threshold for a successful challenge is very high. In a passage from the DAC Report, at paragraph 280, which is regularly cited by the English courts, it is said that "it is only in those cases where it can be said that what has happened is so far removed from what could reasonably be expected of the arbitral process that we would expect the Court to take action".  English courts are reluctant to intervene in the outcome of arbitration proceedings and will do so only where substantial injustice is caused.

19.     Our view is that BSGR's challenge is particularly weak and highly unlikely to succeed for the reasons set out above in ¶ 11.

20.     <u>Third</u>, BSGR has requested a deferral of the decision on whether to recognize and enforce the arbitration Award in the Unites States "until BSGR completes its challenge to the award in the courts of the United Kingdom." Cross-Motion at 6.  As to such timing, BSGR has requested that the Set Aside Application and the Challenge Application be heard and determined together.  As set out above, in ¶¶ 9-10, Vale has opposed this request.

21.     The Challenge Application, even if heard separately to the Set Aside Application, is likely to require a hearing lasting at least two days. This time estimate may be slightly increased if BSGR is successful in its request that the Challenge Application and Set Aside Application are heard together. In either case, after consulting the English High Court's calendar, I can see that, as of June 18, 2019, the earliest available hearing date for a hearing lasting at least two days was in February 2020. This is subject to change as the English High Court's calendar is updated on a regular basis.

I certify pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 18, 2019
London, United Kingdom

_Jonathan P. Kelly_
Jonathan Patrick Knox Kelly
(jkelly@cgsh.com)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
2 London Wall Place
London EC2Y 5AU, England
T: +44 20 7614 2266