# Exhibit F

# Commercial Court Users' Group

## Meeting Report

13 March 2018

- Users' Group Membership

  Popplewell J, Judge in Charge of the Commercial Court, welcomed the attendees.  He reported on the recent changes to the make up of the Users' Group, which had been aimed at ensuring that as many as possible of those groups who have an interest in the running of the Court were represented and could feedback.

- Statistics
  Popplewell J reported on the general and arbitration statistics.  In particular:
    - Arbitration (approx 30% of claims issued)
        - S 69
            - 2015: 20 of 60 granted, appeal successful 4
            - 2016: 0 of 46 permission granted, appeal successful 0
            - 2017 (to date): 10 of 56 granted, appeal successful 1
        - Section 68
            - 2015: 1 successful challenge of 34
            - 2016: 0 successful challenges of 31
            - 2017 (to date): 0 successful challenges of 47

        - The Court will look at the possibility of generating statistics on s68 applications dismissed on
    - Claims Issued:
        - 2017: 987 cases were issued in the Commercial and 203 cases were issued in the London Circuit Commercial Court.
        - 2016: 1003 cases were issued in the Commercial and Admiralty Court, and 180 cases were issued in the Mercantile Court.
        - 2015: 1090 cases were issued in the Commercial and Admiralty Court, and 209 cases were issued in the Mercantile Court. These figures reflect the spike that occurred before the April 2015 filing fee increase. Specifically, in March 2015 there were 3 times the number of cases usually filed, which skew the figures for that year.
    - Trials: 168 Admiralty and Commercial trials were listed in 2017; of those 58 took place = a settlement/ adjournment rate of 65%
    - Applications in 2017:
        - 509 applications were listed for hearing in 2017 in the Admiralty and Commercial Court; of those 420 stood up.

- o   4,878 applications were dealt with by a judge on documents (4,646 Commercial/ 108 Admiralty/ 124 Financial List).

  - Lead times –
    - o   applications ½ April 1 day June
    - o   trials 1-2 days September, 2-3 days/week Oct, longer hearings from January 2019. See for regular updates: https://www.gov.uk/guidance/commercial-court-hearing-and-trial-dates

- CE File

  Popplewell J and Joe Quinn (Senior Listing Officer) emphasised the importance of compliance with the provisions of the Guide as regards applications on documents (see F4.1 in particular). The high degree of on-compliance had required the issuing of a specific direction on 29 January stating that non-compliant filings would be rejected.  The direction can be viewed  [ https://www.judiciary.gov.uk/publications/electronic-filing-of-applications-to-be-dealt-with-without-a-hearing/ ]:

- View from the Listing Office

  Joe Quinn emphasised the importance of parties filling out and filing a fixing sheet for every application.  These documents are very important to enable the Court to deal with cases efficiently – for example to ensure that the parties can be contacted at speed if necessary.

  He also emphasised the importance of communication with the list office, especially if cases are felt to require expedition.

- Disclosure

  Robin Knowles J and Ed Crosse reported on the Gloster Disclosure Review, explaining that there had been a lot of consultation in London and elsewhere.  That exercise is now at an end, with good feedback being absorbed by the working group.  Finished product will go to the Rules Committee in April/May.
  The proposal is for a 2 years pilot in BPC London and regionally, a living pilot with opportunity for feedback and ongoing monitoring/development.  The aim is to shape and fine tune the proposals in the course of the pilot.  Start date end this year/start of next.
  It was reported that on the whole everyone sees this as an opportunity to make a continued success of disclosure but it was emphasised that the pilot does require effort to make a cultural shift.
  EC reported on the level of feedback received: over 250 pages of feedback from associations, edisclosure specialists, clients etc.  Not all feedback agreed with the proposals, but there has been detailed debate inter alia on:  duty to disclose adverse documents, improving the concept

on basic disclosure, feedback on models, the need for training in professions and on the judicial side particularly re aspects of technology.

- **Witness statements**
  Popplewell J reported that this topic was being raised because there was a fairly widespread feeling that in this area the tools we have at the moment are not doing the trick, and not even saving costs, let alone getting "best evidence". He pointed out that good evidence in chief is very compelling and often best evidence. It is felt to be unfair on good witnesses that all they can do is put in their statement, and then face cross examination; there is no opportunity for them to tell their story live. There is a limit to what being conscious of this problem can do. The result is that theatre can win. The question is what to do – a briefing paper circulated indicated some outline possibilities.
  The meeting agreed that this is real problem and endorsed the creation of a working party to consider the problems and the possible solutions or improvements, such as the extent to which some limited examination in chief could be provided for, and the extent to which this can be addressed at the CMC stage or would require consideration at the PTR. The possibility of a menu option was floated.
  The potential implications for the practice in arbitration was noted; in particular it was important to note that the idea was not to go backwards towards blanket oral examination in chief, which would involve longer hearings and potential increase and front loading of costs. The importance of keeping this well in mind when looking at potential changes was emphasised.
  Robin Knowles J noted that it was possible without reform for parties to put forward imaginative solutions at the CMC – eg live examination in chief re a key meeting. This would provide a way to see what the system was already capable of and to evaluate possible routes.
  The Admiralty Users Group noted the benefits of the practice in collision claims which involved defining issues and at the same time identifying which issues need oral evidence.
  It was agreed to put together a working party with a suitable range of representatives of different interest groups. The possibility of putting a question on the appropriateness of examination in chief on the CMIS was mentioned.

- **Commercial Court Guide**
  Robin Knowles J updated on the forthcoming hard copy of the Guide. This is likely to be out in early summer.

- **Shorter and Flexible Trial Schemes Pilot**
  Cockerill J noted that the Shorter and Flexible Trials Schemes were currently being reviewed with a view to making them permanent once the current pilot scheme expires in October. Very sueful feedback had been received from members of the Users' Group and any further feedback would still be welcomed.