# Exhibit E

<u>London Court of International Arbitration</u>
<u>In the Matter of an Arbitration</u>

**Vale S.A.**

– Claimant –

– v. –

**BSG Resources Limited**

– Respondent –

LCIA ARBITRATION. NO. 142683

---

**Second Decision on Document Production**

---

*Members of the Tribunal*
Mr. David A.R. Williams, QC
Mr. Michael Hwang, SC
Judge Charles N. Brower, President

*Secretary of the Tribunal*
Mr. Michael P. Daly

15 February 2016

I.     INTRODUCTION ...................................................................................................1

II.    PROCEDURAL COMMENT ................................................................................1

III.   RULES GOVERNING DOCUMENT PRODUCTION ........................................2

IV.    GENERAL ARGUMENTS RAISED BY THE PARTIES.....................................2

       i.    Vale's Arguments .......................................................................................3

       ii.   BSGR's Arguments.....................................................................................5

       iii.  Tribunal's Analysis and Ruling...................................................................7

V.     SPECIFIC ARGUMENTS RAISED BY THE PARTIES .....................................9

       a.   Michael Noy ..............................................................................................10

       i.    Vale's Arguments .....................................................................................11

       ii.   BSGR's Arguments...................................................................................12

       iii.  Tribunal's Analysis and Ruling.................................................................12

       b.   Mahmoud Thiam ........................................................................................13

       i.    Vale's Arguments .....................................................................................14

       ii.   BSGR's Arguments...................................................................................15

       iii.  Tribunal's Analysis and Ruling.................................................................16

       c.   Marc Bonnant.............................................................................................17

       i.    Vale's Arguments .....................................................................................20

       ii.   BSGR's Arguments...................................................................................22

       iii.  Tribunal's Analysis and Ruling.................................................................26

       d.   The Balda Internal Investigation Report ...................................................30

       i.    Vale's Arguments .....................................................................................31

       ii.   BSGR's Arguments...................................................................................32

       iii.  Tribunal's Analysis and Ruling.................................................................34

       e.   Onyx ..........................................................................................................37

       i.    Vale's Arguments .....................................................................................38

       ii.   BSGR's Arguments...................................................................................39

       iii.  Tribunal's Analysis and Ruling.................................................................40

       f.   Specific Documents (i) Through (xi)..........................................................41

       g.   Skadden's Advice Concerning Pentler.......................................................44

       i.    Vale's Arguments .....................................................................................45

       ii.   BSGR's Arguments...................................................................................46

iii.    Tribunal's Analysis and Ruling ...................................................... 47

**h.    Frédéric Cilins's Criminal Defense** ...................................................... **47**

    i.    Vale's Arguments ...................................................................... 48

    ii.    BSGR's Arguments ...................................................................... 49

    iii.    Tribunal's Analysis and Ruling ...................................................... 50

**i.    Redactions** ...................................................................................... **50**

    i.    Vale's Arguments ...................................................................... 51

    ii.    BSGR's Arguments ...................................................................... 53

    iii.    Tribunal's Analysis and Ruling ...................................................... 55

**j.    Remedies** ...................................................................................... **59**

    i.    Vale's Arguments ...................................................................... 59

    ii.    BSGR's Arguments ...................................................................... 60

    iii.    Tribunal's Analysis and Ruling ...................................................... 60

**k.    Documents Produced by BSGR in the U.S. Litigation** ...................................... **60**

    i.    Vale's Arguments ...................................................................... 61

    ii.    BSGR's Arguments ...................................................................... 62

    iii.    Tribunal's Analysis and Ruling ...................................................... 63

**VI.    CONCLUSION** ...................................................................................... **64**

## I.  INTRODUCTION

1.    On 17 October 2015, this Tribunal issued a Decision on Document Production ("First Decision on Document Production"), including two attachments with rulings on individual document requests set forth in Redfern Schedules.  The Parties originally had until 4 November 2015 to make the required productions along with any corresponding privilege logs.[1]  Based on an agreement between the Parties, the Tribunal shifted the deadline to 18 November 2015 for the production of documents and 3 December 2015 for the disclosure of privilege logs.[2]

2.    This Second Decision on Document Production is intended to resolve questions arising out of the First Decision on Document Production.  It deals with arguments raised by Vale that BSGR has not fulfilled its production obligations.  The Tribunal has received submissions, including hundreds of pages of attachments, on 14 December 2015, 24 December 2015, 29 December 2015, 8 January 2016, 20 January 2016, and 26 January 2016.  It also heard oral arguments from the Parties via teleconference on 4 February 2016.  In response to a request from the Tribunal, Vale submitted on 6 February 2016 three proposed "certifications" for BSGR to complete, explaining the efforts undertaken by its counsel to obtain documents responsive to Vale's requests.  On 8 February 2016 BSGR submitted comments concerning Vale's proposal and two counter-proposals for certifications.

3.    Because the written and oral submissions of the Parties are extensive and raise many discrete issues and sub-issues, this Second Decision on Document Production does not end with a traditional *dispositif*, providing enumerated rulings on the issues raised.  Instead, the Tribunal has inserted its analysis and rulings within the body of each section of this Decision devoted to a particular issue.  The Decision uses headings to separate the different issues at stake and to make clear when the Tribunal is summarizing the argument of a Party and when it is providing its own analysis and ruling.

## II.  PROCEDURAL COMMENT

4.    Because the immediate dispute arose in mid-December, the Parties ended up filing their submissions over the course of a holiday period, and both sides requested certain

---

[1] *See* Procedural Order No. 6 dated 19 Aug. 2015.

[2] *See* Procedural Order No. 8 dated 4 Nov. 2015.

adjustments to the Tribunal's deadlines for their submissions. Additional disagreements between them arose in relation to their extension requests, including arguments concerning "parity of time."

5. For the future, the Parties should note that in the Tribunal's view the correct principle is simply fairness to both Parties. The time allocated to the Parties for filings will depend on the circumstances of the documents to be filed at the time of filing. In other words, requests for extensions of time are decided based on the Tribunal's evaluation of the reasons for the request for extension and not simply based on equality of time to both Parties; if certain circumstances make it reasonable for one party to have a longer time for a filing, then the extension may be granted on the merits of the application, but that does not necessarily result in an equivalent extension of time for the other Party if those special circumstances do not apply to that other Party.

## III.  RULES GOVERNING DOCUMENT PRODUCTION

6. As set forth in paragraphs 3–6 of the Tribunal's First Decision on Document Production and paragraphs 4, 7, and 12 of the Tribunal's Procedural Order No. 2, the Tribunal's authority in ruling on the Parties' document-production disputes stems from the 1998 LCIA Rules ("LCIA Rules"), the 2010 IBA Rules on the Taking of Evidence in International Arbitration ("IBA Rules"), and English law as the *lex arbitri* and the governing law applicable to this dispute.

## IV.  GENERAL ARGUMENTS RAISED BY THE PARTIES

7. The Parties' current disagreements require the Tribunal to revisit a central objection previously raised by BSGR that neither BSGR, nor any of its subsidiaries, is in possession, custody, or control of many of the documents requested by Vale. Paragraph 14 of the First Decision on Document Production addressed this issue, stating that the Tribunal "may direct BSGR to make a good faith effort [to obtain and produce] documents even if those documents are held by third parties," and paragraphs 15–20 provided additional details concerning the general formulations used by the Tribunal in response to many of Vale's requests.[3]

---

[3] Those formulations were: **(1)** "[The Request is GRANTED.]  In addition to searching its own files and those of its subsidiaries, BSGR is directed to use its best efforts to obtain and produce responsive documents, including by seeking to obtain copies of the relevant documents from other business entities with which BSGR has a close relationship or from any witness(es) put  by BSGR in this arbitration." **(2)** "[The Request is GRANTED], but only to the extent that the requested documents are in the possession, custody, or control of BSGR, its

2

### i.   Vale's Arguments

8.   Vale brought the instant dispute to the attention of the Tribunal because it finds that "there are significant deficiencies in BSGR's Production that violate the Tribunal's [First Decision on Document Production]."[4]   In particular, it accuses BSGR of withholding documents and using improper redactions to circumvent its production obligations.

9.   Vale also complains that BSGR has delayed its production of materials to Vale and thereby prejudiced Vale's ability to prepare its Statement of Reply (due on 3 March 2016).[5]   BSGR waited nearly two weeks after the Tribunal's First Decision on Document Production to write its witnesses and affiliates to request documents, and many of BSGR's productions arrived far after the production deadlines cited above.   In Vale's letter dated 20 January 2016, it informed the Tribunal that BSGR had produced only on 14 January 2016 an "internal investigation report" dated 29 July 2015.

10.   In Vale's view, BSGR has not used its "best efforts" to obtain documents because it has made only *pro forma*, "tokenistic" requests for information from relevant third parties without any actual interest in obtaining responsive documents.[6]   It describes BSGR's correspondence with third parties as an "elaborate shell game" of "hide the ball" whereby "one of Beny Steinmetz's lawyers 'asks' another of his lawyers for assistance in collecting documents the Tribunal ordered BSGR to produce from its corporate family, and the latter 'refuses.'"[7]   Vale insists that Mr. Steinmetz exercises control over BSGR and virtually all of the documents in question, yet BSGR has avoided obtaining and producing those documents by claiming that Steinmetz's Swiss lawyer (Marc Bonnant) has refused access.

11.   Vale argues that the Tribunal's First Decision on Document Production already determined that the business entities within BSGR's "circle of affiliates" were entities with which BSGR has a "close relationship" and thus entities over which BSGR's principal, Mr. Steinmetz, has control.   Those affiliates include the Balda Foundation ("Balda" or "Balda Foundation"), Nysco Management Corporation Limited ("Nysco"),

---

subsidiaries, or the witness(es) it has put forward in this arbitration." **(3)** "[The Request is GRANTED], but only to the extent that the requested documents are in the possession, custody, or control of BSGR or of its subsidiaries."

[4] Letter from Vale to the Tribunal dated 14 Dec. 2015, at 1–2.

[5] Letter from Vale to the Tribunal dated 14 Dec. 2015, at 8.

[6] Letter from Vale to the Tribunal dated 14 Dec. 2015, at 3.

[7] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 2.

Onyx Financial Advisors ("Onyx"), Pentler Holdings ("Pentler"), and BSG Metals and Mining Limited (BVI).[8]

12.   In Vale's written submissions it called upon the Tribunal to alleviate the substantial prejudice resulting from BSGR's inadequate productions by striking from the record portions of BSGR's witness statements that rely on unproduced documents, drawing adverse inferences, assigning costs, or directing BSGR's counsel to submit certifications of their interactions with third parties demonstrating all attempts to obtain responsive documents.   During the telephonic hearing held on 4 February 2016 Vale's counsel clarified its request for relief, by explaining that "[o]n the question of remedy, it is obviously not the time to ask the tribunal to make specific adverse inferences or strike specific items of testimony, but we think it is appropriate that the tribunal affirm quite clearly that it has that power and you will exercise it at the appropriate time."[9]

13.   Vale states that its proposed "certifications" submitted to the Tribunal on 6 February 2016 are modeled on the certifications required by the standard "Disclosure Statement" used in English litigation under Rule 31.10 of the English Civil Procedure Rules.

14.   Vale's proposed certifications take three forms: (1) a certification concerning efforts taken to search and produce documents in the possession, custody, or control of BSGR, Onyx, and Mr. Steinmetz; (2) a certification concerning efforts taken to search and produce documents in the possession, custody, or control of business entities with which BSGR has a "close relationship," namely the Balda Foundation, Onyx, Pentler, BSG Metals and Mining Limited (BVI), Nysco, and Windpoint; and (3) a certification concerning efforts taken to search and produce documents in the possession, custody, or control of any (ostensibly) third-party witnesses whom BSGR has put forward as witnesses on its own behalf in this arbitration.

15.   Vale cites Article 14.2 of the LCIA Rules, which provides the Tribunal with the "widest discretion" to discharge its duties.   It also refers to the English Arbitration Act, which authorizes the Tribunal to exclude from the record assertions "about which a party has failed to comply with a direction to produce documents,"[10] and Vale notes

---

[8] *See* First Decision on Document Production ¶ 16 ("To be clear, the phrase 'other business entities with which BSGR has a close relationship' as used in the Tribunal's rulings is meant to embrace what BSGR refers to as its 'circle of affiliates,' including entities such as the Balda Foundation, ONYX, Pentler, BSG Metals and Mining Limited (BVI), Nysco, and Windpoint."). Further details of these entities are provided below. The Parties have also submitted separate charts of the corporate structure relating to BSGR. *See* R-201, R-203, R-204, R-219, and Appendices B and C to Claimant's Statement of Claim.

[9] Hearing Tr. at 18:13–18.

[10] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 17.

4

that the IBA Rules do not limit the consequences applicable to a party failing to comply with production orders.

### ii.   BSGR's Arguments

16.   BSGR rejects Vale's "very serious allegations" and provides background details of the steps it has taken to date to ensure that responsive documents would be protected and preserved.[11]   When it learned of the arrest of Frédéric Cilins,[12] Onyx, as BSGR's management and administrative services provider, arranged for all of its potentially relevant servers across different cities to be "imaged" without filters.   Electronic devices of "custodians," including Mr. Steinmetz, were imaged without filters.   BSGR collected documents from 206 "custodians," including all of its witnesses in this arbitration save for those "not affiliated with BSGR or Onyx" (Messrs. Noy, Lev Ran, Cilins, and Thiam).   Hard copies of documents in Onyx's and BSGR's offices were scanned, and data was uploaded to a review platform.   BSGR's counsel also wrote to the Serious Fraud Office in the UK concerning the status of BSGR's documents.

17.   After receiving Vale's Redfern Schedule, BSGR explains that its contractors produced a spreadsheet to assist it.   It ran searches against electronic and hard copy documents held by BSGR and Onyx employees, including documents in the possession and control of BSGR's witnesses in this arbitration.[13]   It also retained a French-speaking lawyer to ensure that responsive foreign language documents were captured and reviewed.

18.   BSGR confirms that it has engaged in a good faith effort to obtain responsive documents from third parties.   With its letter to the Tribunal dated 24 December 2015, BSGR submitted a 95-page annex of correspondence showing the requests its counsel made to third parties, together with the responses.   Further details of the correspondence relating to specific entities and individuals are set forth below.   In general, BSGR's counsel wrote to the third parties likely to be possessing responsive documents, it provided the pertinent details of the Tribunal's rulings and requested cooperation and "urgent attention."

---

[11] *See generally* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 2–4.

[12] As explained further below, Mr. Cilins submitted a witness statement of behalf of BSGR in this arbitration. He pleaded guilty to obstruction of justice in the United States.

[13] Specifically: Beny Steinmetz, Dag Cramer, Sandra Merloni-Horemans, Asher Avidan, Daniel Pollak, David Barnett, Yossie Tchelet, Patrick Saada, David Clark, and Marc Struik.   *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 2.

19. BSGR produced documents to Vale on 18 November 2015, 3 December 2015, 4 December 2015, 14 December 2015, 24 December 2015, and 13 January 2016.[14] During the teleconference hearing on 4 February 2016, BSGR confirmed that it had provided Vale with more than 12,500 pages of documents.[15]

20. BSGR refutes Vale's theory that BSGR is engaging in a "corporate shell game." In particular, it alleges that it has not conspired with Mr. Steinmetz's lawyer, Mr. Bonnant, or any other entity, to avoid the production of documents responsive to Vale's document requests.[16] BSGR states that Vale has ignored critical distinctions between the different roles and duties of Mr. Bonnant with respect to Mr. Steinmetz, Balda, and Nysco.[17] In any event, BSGR makes clear that "it is not in BSGR's best interests to withhold documents on which it seeks to rely."[18]

21. BSGR also rejects Vale's theory that the Tribunal is empowered to apply any remedies other than the drawing of adverse inferences or the assignment of costs. It cites the Tribunal's First Decision on Document Production, which provided: "The Parties are reminded that they are under an obligation to act in good faith. Failure by a Party to conduct itself in good faith may entail serious consequences, including adverse inferences and consequences as to the assignment of the costs of the arbitration."[19] BSGR also cites Articles 9.5 and 9.7 of the IBA Rules for the same proposition.[20]

22. BSGR distances itself from the conduct of third parties in the event that the Tribunal decides to draw adverse inferences. It maintains that BSGR "cannot sensibly be expected to ensure the production of a document held by a third party, or punished for the decisions made by those third parties."[21] For example, in relation to one of its witnesses (Mr. Thiam), BSGR claims that "it is difficult to see on what basis the

---

[14] *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 3; *see also* Letter from Vale to the Tribunal dated 20 Jan. 2016.

[15] Hearing Tr. at 19:17–19.

[16] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 4.

[17] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 4.

[18] Letter from BSGR to the Tribunal dated 24 Dec. 2016, at 2.

[19] First Decision on Document Production ¶ 27.

[20] They provide: "If a Party fails without satisfactory explanation to produce any Document requested in a Request to Produce to which it has not objected in due time or fails to produce any Document ordered to be produced by the Arbitral Tribunal, *the Arbitral Tribunal may infer that such document would be adverse to the interests of that Party*. . . . If the Arbitral Tribunal determines that a Party has failed to conduct itself in good faith in the taking of evidence, the Arbitral Tribunal may, in addition to any other measures available under these Rules, take such failure into account in its *assignment of the costs of the arbitration, including costs arising out of or in connection with the taking of evidence*." (Emphasis added.)

[21] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 6.

Tribunal can draw an adverse inference against BSGR based on the conduct of Mr. Thiam."[22]

23.   BSGR raises several criticisms of the "certifications" proposed by Vale.  It asserts that Vale's proposals go beyond the certifications envisioned by Vale's prior correspondence.  BSGR also argues that Vale's certifications differ from the standard "Disclosure Statement" used in English litigation which are designed for the disclosing party itself, not its legal representative.  BSGR also states that its officers or lawyers "can only certify what was actually undertaken and not what Vale believes should have been undertaken."[23]  BSGR accuses Vale of seeking to know BSGR's search terms for tactical reasons and it rejects Vale's proposal of summarizing any communications with third parties other than those already submitted to the Tribunal because "[t]here are no other written communications with those affiliates and witnesses."[24]  Nor does BSGR see "any useful purpose" in identifying by Bates Number those documents received from its affiliates and witnesses, as such a step would "merely add[] additional time and cost."[25]  BSGR's proposed certifications eliminate many of the questions proposed by Vale and combine the template for witnesses and business affiliates.

### iii.   Tribunal's Analysis and Ruling

24.   The Tribunal does not at present make any general adverse findings or rulings concerning BSGR's conduct, or that of its affiliates or lawyers, concerning the efforts they have undertaken to date with regard to document production.  The Parties should be aware, however, that the Tribunal has reviewed their arguments and all of the attached documents carefully.  It will not hesitate to rule against BSGR (or Vale) should it conclude at a later stage that either has been obstructing the document production process, but it reserves judgment on the record before it at this time. If either Party knows that it has yet to comply with any aspect of its document production obligations, the Tribunal directs that Party to use its best efforts to ensure compliance immediately.

25.   Many of the questions raised by Vale go beyond the types of inquiries that typically surface during the document exchange phase of an international arbitration.  By urging the Tribunal to rule against BSGR at this stage of the proceeding, Vale is essentially

---

[22] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 6.

[23] Letter from BSGR to the Tribunal dated 8 Feb. 2016, at 2.

[24] Letter from BSGR to the Tribunal dated 8 Feb. 2016, at 2.

[25] Letter from BSGR to the Tribunal dated 8 Feb. 2016, at 2.

asking the Tribunal to make factual findings, potentially touching on the merits of this dispute, about the ultimate control within BSGR's corporate structure and about the interactions among its witnesses and business affiliates. The Tribunal is reluctant to engage in such factual findings at this stage of the proceedings — i.e., before receiving all submissions on the merits and conducting an evidentiary hearing.

26. On the other hand, the Tribunal understands the significance of obtaining a complete record of evidence in order to decide this highly fact-specific dispute, involving serious allegations of fraud and corruption. And the Tribunal remains mindful of Vale's entitlement to know, reasonably in advance of an evidentiary hearing, the evidence on which its opposing party will rely.[26]

27. It is with these two objectives in mind that the Tribunal has gone about trying to resolve the issues raised by Vale.

28. The Tribunal declines to apply most of the broad remedies put forward by Vale at this stage of the proceedings. But the Tribunal reserves _all_ of its rights and authority to apply any remedy that might be appropriate later in this proceeding. In this regard, BSGR should bear in mind that the Tribunal has duly noted each instance in which one of BSGR's witnesses or affiliates has refused to produce documents.

29. Because many of the documents requested by Claimant in this arbitration are held not by BSGR, but by third parties, the Tribunal must rely on the communications and assurances provided to it by BSGR and its counsel concerning those third parties. Given this situation, the Tribunal finds it appropriate that BSGR's counsel submit detailed information concerning its efforts to obtain and produce documents held by those third parties. The Tribunal accepts the three proposed certifications submitted by Vale to the Tribunal on 6 February 2016 as appropriate formats for that purpose, but as amended below in Paragraph 32. The Tribunal has not found the alternative forms of certifications proposed by BSGR to be adequate to the present needs as seen by the Tribunal.

30. The Tribunal disagrees with BSGR that Vale's proposed certifications are too extensive. Even if English Civil Procedure Rule 31.10 is usually invoked in relation to the disclosing party itself (rather than counsel), the Tribunal considers BSGR's counsel best suited to complete the certifications in this arbitration because it seems that very

---

[26] _See_ Letter from Vale to the Tribunal dated 29 Dec. 2015, at 17 n.74 (citing paragraph 3 of the Preamble to the IBA Rules).

few of the key documents are held by BSGR and the Tribunal is entirely reliant on counsel's assertions concerning third parties.  Subparagraph (7) of Rule 31.10 suggests that counsel to a party may submit such a certification in any event.[27]

31.   The Tribunal would modify the three certifications proposed by Vale only to the extent that each certification should also account for this Second Decision on Document Production.   The first full paragraph of each of the three proposed certifications provides as follows:

> The undersigned partners at Mishcon de Reya LLP, representing Respondent BSGR Resources Limited in *Vale S.A. v. BSG Resources Limited* (LCIA Arbitration No. 142683), supervised and managed the collection and obtaining of documents responsive to the Tribunal's 17 October 2015 Decision on Document Production and its ruling on Vale's Redfern Schedule (collectively the "Requests") as follows . . . .

32.   The bolded text below shall be inserted into the first paragraph of each of the certifications:

> The undersigned partners at Mishcon de Reya LLP, representing Respondent BSGR Resources Limited in *Vale S.A. v. BSG Resources Limited* (LCIA Arbitration No. 142683), supervised and managed the collection and obtaining of documents responsive to the Tribunal's 17 October 2015 Decision on Document Production and its ruling on Vale's Redfern Schedule (collectively the "Requests") **as well as to the Tribunal's Second Decision on Document Production** as follows . . . .

33.   BSGR's counsel are hereby directed to complete, execute, and submit to Claimant and the Tribunal each of the three certifications in the form proposed by Vale and as amended Paragraph 32.  The affirmations by counsel set forth in the certifications must be accepted by the Tribunal at this point.  If, however, it should come to pass at a later stage of the proceedings that any of these statements proves not to be true, the Tribunal reserves all of its powers to deal with any such situation at that time.

## V.   SPECIFIC ARGUMENTS RAISED BY THE PARTIES

34.   The Tribunal follows the same basic order of specific issues addressed by the Parties in their written submissions.

---

[27] It states: "Where the party making the disclosure statement is a company, firm, association or other organisation, the statement must also — (a) identify the person making the statement; and (b) explain why he is considered an appropriate person to make the statement."

### a.  Michael Noy

35.  Michael Noy has submitted a witness statement on behalf of BSGR.  He is an Israeli businessman and one of three shareholders in Pentler.  The Annex submitted with BSGR's letter to the Tribunal dated 24 December 2015 indicates that BSGR's counsel sent a letter to Mr. Noy on 26 October 2015, to convey the pertinent aspects of the Tribunal's First Decision on Document Production, to further request "cooperation in searching for responsive documents," and to call for his "urgent attention."[28]  Mr. Noy responded via e-mail that he was "on vacation until November 5th" and "unable to consult any of [his] documents or [his] partners."  He also mentioned, "In the place I am I can hardly open the attachments of your emails."[29]  BSGR's counsel wrote him a follow-up letter on 5 November 2015, stating: "We would be grateful if you could now update us on whether you are in a position to cooperate with the document requests."[30] On 16 November 2015, Mr. Noy responded:

> Sorry for late answering.  I was on holiday and did not have time to review any documents.  I would like very much to cooperate, however I also want to take [] legal advice.  I will be in touch with you as soon as possible.[31]

36.  On 18 November 2015 BSGR's counsel again wrote to Mr. Noy, forwarding a letter from Ms. Sandra Merloni-Horemans and seeking his confirmation that he would provide BSGR's counsel with documents involving Pentler (in which Mr. Noy was a principal).[32]  Mr. Noy provided such confirmation on 26 November 2015.[33]  BSGR's counsel e-mailed a letter to Mr. Noy again on 18 December 2015, which memorialized a meeting that had been held between Mr. Noy and BSGR's counsel, listing specific documents in a two-page chart that were responsive to Vale's requests, and sought Mr. Noy's agreement to produce them "as soon as possible."[34]  Beyond that list, the letter also referred to a series of hard copy printouts of emails "which on the face of them look like they may be privileged," and it sought to discuss this issue more with Mr.

---

[28] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 66–68).

[29] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 78).

[30] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 80).

[31] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 85).

[32] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 86).

[33] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 89).

[34] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 91–93).

Noy.[35]   Mr. Noy responded the same day and provided his authorization to "use the documents mentioned in your email."[36]

### i.   Vale's Arguments[37]

37.   Vale complains that BSGR has produced no documents from Mr. Noy on the ostensible basis that Mr. Noy has been "overseas."  For example, during the telephonic hearing on 4 February 2016 Vale pointed out that Mr. Noy has not produced any documents in response to Vale's Request No. 45.[38]  In his 39-page witness statement, Mr. Noy relied on many documents that BSGR should now produce.[39]  Vale notes that by 29 December 2015 BSGR still had not produced documents from Mr. Noy five weeks after the production deadline (although Vale also recognizes that BSGR expected to make a production the first week of January).  Vale also cites a letter from Respondent's counsel to Mr. Noy dated 18 December 2015, in which counsel referred to a series of e-mails that "look like they may be privileged."[40]  Vale blames BSGR's counsel for "suggesting to Mr. Noy that he withhold such documents from production."[41]  Vale further asserts that no documents could be privileged, in any event, after they had been shared by Mr. Noy with BSGR.

38.   Vale requests that the Tribunal direct BSGR to produce all responsive documents from Mr. Noy forthwith, or explain its continued failure to do so.

---

[35] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 93).

[36] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 94).

[37] *See* Letter from Vale to the Tribunal dated 14 Dec. 2015, at 3–4; Letter from Vale to the Tribunal dated 29 Dec. 2015, at 8–10.

[38] Hearing Tr. at 16:15–19.  That request sought: "Documents from the Relevant Period relating to payments made from accounts at Bank Leumi Le Israel BM Tel Aviv held by: a. Mr. Noy; and b. Pentler."  The Tribunal granted the request on the following terms: "BSGR is directed to use its best efforts to find out from its witness in this arbitration, Mr. Noy, and from Pentler, whether there are any documents covered by Vale's request which have not been produced in the U.S. action. If so, BSGR is directed to use its best efforts to obtain copies of those documents and produce them to Vale, but only to the extent that they relate to the issues at stake in this arbitration, including the 'Bribery Issue.'"

[39] According to Vale, these include two agreements involving Pentler and Mr. Daou (see Letter from Vale to the Tribunal dated 14 Dec. 2015, at 3) and they also include five categories of documents listed as (i) to (v) on page 9 of Vale's Letter to the Tribunal dated 29 Dec. 2015.

[40] *See* BSGR's Letter to the Tribunal dated 24 Dec. 2015 (Annex I at 93).

[41] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 9.

## ii.    BSGR's Arguments[42]

39.   BSGR responds that Mr. Noy is not a Party to this arbitration; he has never been employed by BSGR; his documents are not in the possession, custody, or control of BSGR; and BSGR has used its best efforts to obtain responsive documents from him. BSGR informs the Tribunal that Mr. Noy was travelling during the period of document production, and he maintains his records primarily in hard copy form, making it impossible for Mr. Noy to assist in producing documents unless he was in the same physical location as his documents.   It produced copies of correspondence between BSGR's counsel and Mr. Noy to demonstrate it has maintained a dialogue with him about the document requests.   BSGR's counsel rejects the "extremely serious allegation" that anyone suggested Mr. Noy withhold responsive documents under the dishonest cover of privilege.   It observes that Mr. Noy showed documents to BSGR under an agreement that they remain at the direction of Mr. Noy (citing English law that if a privileged document is disclosed to a third party on express terms concerning preservation of confidentiality, privilege remains against the outside world).

40.   BSGR asserts that it would produce documents the first week of January 2016 and had already produced documents on 18 November 2015.   BSGR requests that the Tribunal direct Vale's counsel to withdraw its "defamatory" allegation against BSGR's counsel that Mr. Noy withhold documents as privileged.

## iii.    Tribunal's Analysis and Ruling

41.   The Tribunal acknowledges BSGR's statement that it "has now produced the documents provided to it by Mr. Noy."[43]   In the event that BSGR has not produced all responsive documents to Vale from Mr. Noy, including with respect to Vale's Request No. 45, the Tribunal directs BSGR now to make a good faith effort to obtain any outstanding responsive documents from Mr. Noy and produce them to Vale immediately.   The Tribunal also instructs BSGR's counsel to detail their interactions with Mr. Noy in the form of the relevant certification as directed in Paragraph 33 above.   The Tribunal makes no ruling regarding BSGR's request set forth in Paragraph 40 above.

---

[42] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 3–4; Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 13–15; Hearing Tr. at 29:9–23.

[43] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 14; *see also* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 3 ("Mr. Noy has agreed to produce responsive documents to BSGR, and we expect to be in a position to produce these to Vale in the first week of January.").

### b. Mahmoud Thiam

42.  Mr. Thiam has submitted a witness statement on behalf of BSGR.  He is an investment banker based in New York and former Minister of Mines, Geology, Energy and Hydraulics for the Republic of Guinea.

43.  BSGR submitted copies of correspondence between its counsel and counsel for Mr. Thiam at Sullivan & Worcester LLP.  It shows that BSGR's counsel contacted Sullivan & Worcester on 27 October 2015 to convey the pertinent aspects of the Tribunal's First Decision on Document Production, to request "cooperation in searching for responsive documents," and to call for his "urgent attention."[44]  Mr. Thiam's lawyer responded on 30 October 2015, stating that Mr. Thiam was traveling in South Africa but that a response would come the following week.[45]  On 17 November 2015 Sullivan & Worcester wrote to BSGR's counsel:

> While Mr. Thiam is open to cooperating in searching for responsive documents, [doing so in relation] to certain requests would be unduly burdensome for Mr. Thiam.  In addition, Mr. Thiam will not produce documents responsive to certain requests because the requests seek private, confidential information that Mr. Thiam will not disclose.[46]

44.  The letter then addressed Mr. Thiam's responses to individual document requests.[47]  On 27 November, BSGR's counsel forwarded to Mr. Thiam's lawyers a letter from Vale consenting to the designation of certain evidence to be produced by Mr. Thiam as confidential in the arbitration.[48]  On 1 December 2015 Mr. Thiam's counsel wrote back to BSGR stating that Mr. Thiam was content with Vale's confidentiality agreement, he expected to produce a 2006 agreement by the end of the week, and he would not produce any additional documents to Vale responsive to Request No. 69 in this

---

[44] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 52–53).

[45] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 58).

[46] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 59–60).

[47] A breakdown of Mr. Thiam's responses is set forth on page 5 of the Letter from BSGR to the Tribunal dated 24 Dec. 2015.  In particular: **Request No. 67** (Thiam chose not to provide documents on the ground that they are private and confidential); **Request No. 68** (same as last); **Request No. 70(a)** (Thiam is continuing to search for documents); **Request No. 70(b)** (Thiam declined to provide documents on the ground that they are private and confidential and any search would be unduly burdensome); **Request No. 71(a)** (Thiam takes the position that no responsive documents exist); **Request No. 71(b)** (Thiam chose not to provide documents because any search would be unduly burdensome); and **Request No. 71(c)** (Thiam takes the position that no responsive documents exist and in any event Thiam believes that any search would be unduly burdensome); *see also* Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 59–60).

[48] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 62–63).

arbitration because any search would be "unduly burdensome."[49]  Mr. Thiam's counsel sent a further letter on 22 December 2015, explaining that in fact Mr. Thiam had not located the 2006 agreement referred to in the last letter but that he continued searching for it.[50]

### i.   Vale's Arguments[51]

45.   Vale argues that BSGR only produced Mr. Thiam's documents more than two weeks after the deadline, and it failed to produce the "vast majority" of responsive documents to Vale's Requests Nos. 67, 68, 70(b) and 71 because Mr. Thiam claims the documents are "private and confidential" or that producing them would be "unduly burdensome." Vale focuses in particular on Request No. 67 (seeking proof of his employment compensation and business revenues),[52] which the Tribunal granted.[53]  Vale insists that without the withheld documents, Vale will not be able to test Mr. Thiam's assertions that payments and gifts he received from BSGR and its affiliates were "legitimate."

46.   Vale further notes that Mr. Thiam asserted a "common interest" legal privilege with BSGR in *Rio Tinto plc v. Vale S.A.*, et al., Civil Action No. 14-cv-3042 (S.D.N.Y.) (the "U.S. litigation"),[54] and it refers to this assertion as further proof that a close factual relationship exists between Mr. Thiam and BSGR as well as Beny Steinmetz.  Vale expects to detail the relationship between Mr. Thiam and Respondent further but it claims to be hindered by Mr. Thiam's refusal to produce documents.

47.   In its written submissions to the Tribunal Vale also advanced arguments relating to documents Mr. Thiam had introduced into the U.S. litigation, which were protected by a confidentiality order.  Vale updated the Tribunal during the telephonic hearing that it

---

[49] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 64).

[50] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 65).

[51] *See* Letter from Vale to the Tribunal dated 14 Dec. 2015, at 4–5; Letter from Vale to the Tribunal dated 29 Dec. 2015, at 10–11; Hearing Tr. at 17:7–22, 41:24–43:16.

[52] That request specifically sought the following:

> "Documents sufficient to establish:
>
> (a) Mr. Thiam's annual compensation (including salaries, bonuses and commissions) (i) from 1994 to 2004, while he was employed at Merrill Lynch (Thiam Witness Statement, ¶¶ 7–9), and (ii) from 2004 to January 2009, while he was employed at UBS (Thiam Witness Statement, ¶¶ 10, 14); and
>
> (b) Mr. Thiam's 'revenue from some on-going business ventures outside of the bank' (Thiam Witness Statement, ¶ 14)."

[53] The Tribunal ruled: "The Request is GRANTED, but only to the extent that the requested documents are in the possession, custody, or control of BSGR, its subsidiaries, or any witness(es) it has put forward in this arbitration."

[54] In this Decision, the Tribunal will also refer to the U.S. District Court for the Southern District of New York as the "U.S. Court."

was no longer pursuing relief from this Tribunal on that subject.[55]   It informed the Tribunal that the U.S. court granted Vale a right to use 83 of Mr. Thiam's documents submitted in the U.S. litigation in this arbitration.[56]

48.   If Mr. Thiam persists in refusing to produce documents, Vale requests that the Tribunal strike from the record all references, including in his witness statement, to Mr. Thiam's assertions concerning his finances, properties and the "legitimacy" of payments and compensation he received from BSGR.   Alternatively, Vale asks the Tribunal to draw adverse inferences.

### ii.   BSGR's Arguments[57]

49.   BSGR observes in the first place that all of the arguments it advanced with respect to Mr. Noy apply equally to Mr. Thiam, who is also a third party and has never been employed by BSGR.

50.   BSGR argues that Vale has overlooked the correspondence between BSGR's lawyers and Mr. Thiam's lawyers, which resulted in detailed responses to Vale's requests. BSGR admits that Mr. Thiam has chosen to provide only some of the documents requested by Vale but not others. Notwithstanding this aspect of Mr. Thiam's decision, BSGR maintains that it has still met its own obligation to use its "best efforts" in compliance with the Tribunal's First Decision on Document Production.  If Vale wishes to cross-examine Mr. Thiam on this issue at the hearing, BSGR states "so be it."[58] BSGR further points out that Mr. Thiam did not put any documents at issue in this arbitration because he did not refer to any specific documents in his witness statement. He only stated, for example, that he was "remunerated very well during [his] time at both Merrill and UBS," without reference to any particular tax returns or pay slips.

51.   In response to Vale's argument about a "common interest" legal privilege between Mr. Thiam and BSGR, Respondent points out that Mr. Thiam — not BSGR — raised the privilege in the U.S. litigation.   In any event, the assertion of that privilege does not indicate a close personal relationship.   It only indicates that Mr. Thiam and BSGR shared a similar legal position and a common accuser (Rio Tinto).

---

[55] Hearing Tr. at 17:17–22.

[56] Hearing Tr. at 43:7–10, 48:21–24.

[57] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 4–7; Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 15–17; Hearing Tr. at 21:13–23:8, 46:4–47:18.

[58] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 5.

52. In relation to the issue of documents from the U.S. litigation, BSGR confirmed during the telephonic hearing that the U.S. court granted Vale a right to use 83 of Mr. Thiam's documents in this arbitration.[59]

53. BSGR asserts that Vale has no basis to request that the Tribunal strike any portion of Mr. Thiam's witness statement from the record.  While it disagrees that BSGR is in breach of its duty to act in good faith, the Tribunal "may, if it sees fit, punish BSGR in costs or draw adverse inferences."[60]

### iii.   Tribunal's Analysis and Ruling

54. With reference to the Tribunal's general analysis set forth above, the Tribunal at this point will not draw adverse inferences or strike any portion of Mr. Thiam's witness statement.  However, it reserves all of its rights.  The Tribunal takes specific note in this regard of Mr. Thiam's refusal to produce certain documents, which the Tribunal had already found relevant and material to this arbitration, on the basis that they contain "private, confidential information" or that searching for them would be "unduly burdensome." Without now deciding whether Mr. Thiam's first witness statement amounts to an explicit reliance on documentary evidence of his financial income, the Tribunal has duly noted his decision to deny Vale access to that evidence, and it will weigh that decision in the course of this proceeding.  With respect to any documents that are responsive to Vale's requests in this dispute, approved by the Tribunal, but which Mr. Thiam has not yet produced (and is willing to produce), the Tribunal directs BSGR to use its best efforts to obtain and produce those documents to Vale immediately. The Tribunal also instructs BSGR's counsel to detail their interactions with Mr. Thiam in the form of the relevant certification as directed in Paragraph 33 above.

55. The Tribunal is not persuaded at this point that Mr. Thiam's assertion of a common interest legal privilege in the U.S. litigation amounts to conclusive proof of a close factual relationship between Thiam and Respondent.  Of course, the Tribunal will consider that factor along with other factors should Vale further pursue its theory of close relations between the witness and Respondent in its further written and oral submissions.

---

[59] Hearing Tr. at 23:5–8.

[60] Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 6.

56.     With respect to documents in the U.S. litigation, Vale is no longer pursuing relief in relation to Mr. Thiam's documents made available in the U.S. litigation.  As such, the Tribunal issues no ruling with respect to Mr. Thiam's documents in the U.S. litigation .

### c.   Marc Bonnant

57.     This section deals with BSGR's correspondence with Marc Bonnant, a Swiss lawyer who acts as President of Balda, Director of Nysco, and Swiss counsel for Beny Steinmetz.[61]   The Balda Foundation is an irrevocable trust established in the Principality of Liechtenstein, the beneficiaries of which are Beny Steinmetz and other members of his immediate family.  It wholly owns Nysco (which is incorporated in the British Virgin Islands), which wholly owns BSGR (the Respondent in this arbitration). Mr. Steinmetz has submitted a witness statement on behalf of BSGR in this arbitration. He claims to have no role on the board or as an employee of any of the BSG companies, the Balda Foundation, or Nysco, but instead is contracted to advise individual companies that make up the BSG Group, including BSGR.

58.     Also mentioned in this section are Sandra Merloni-Horemans and the term the "BSGR Entities."  Ms. Merloni-Horemans submitted a witness statement on behalf of BSGR in this arbitration, which states that she worked for Onyx between 1998 and December 2014.   Onyx is a company incorporated in the British Virgin Islands to provide management services and other business support functions to the Balda Foundation. Ms. Merloni-Horemans, along with Mr. Steinmetz, was interviewed by Swiss law enforcement officials as part of an investigation into BSGR's mining activities in Guinea.  The term "BSG Entities" was defined in Request No. 4 of Vale's Redfern Schedule to include 12 corporate entities.[62]

59.     BSGR's counsel in this arbitration contacted Marc Bonnant to convey certain rulings from the Tribunal's First Decision on Document Production, to request "cooperation in searching for responsive documents," and to call for his "urgent attention."   Mr. Bonnant responded slightly differently with respect to Balda, Nysco, and Steinmetz.

---

[61] *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 4.

[62] They are: **(1)** BSGR (the Respondent in this arbitration); **(2)** BSG Resources (Guinea) Limited (Guernsey); **(3)** BSG Resources Limited (Jersey); **(4)** BSG Metals and Mining Limited (BVI); **(5)** BSG Resources Steel Holdings Limited (BVI); **(6)** BSG Resources (Guinea) Limited (BVI); **(7)** BSG Resources (Guinea) Sàrl (Guinea); **(8)** BSGR Treasury Services Limited (BVI); **(9)** BSGR Guinea and Logistic and Maintenance Services Sàrl; **(10)** BSGR Resources (Liberia) Limited (BVI); **(11)** BSG (Liberia) Limited (Liberia); and **(12)** Windpoint.

60.     First, in relation to the Balda Foundation on 10 November 2015 Mr. Bonnant responded to a letter from BSGR's counsel dated 29 October 2015 as follows:

> The counsel[63] of the Balda Foundation does not intend to, and cannot, respond to your request.
>
> The Balda Foundation is not required to provide any justification of its position.  It nevertheless states that it is not [a] party to the above-mentioned arbitration proceedings and informs you, in addition, that pursuant to its bylaws, it is obligated to secrecy with respect to any third party.
>
> The counsel of the Foundation may, under very restrictive conditions, exempt itself from this obligation with respect exclusively to a beneficiary of the Foundation.
>
> [BSGR], which is a party to the above-mentioned arbitration proceedings, is not such a beneficiary.[64]

61.     On 12 November 2015, BSGR's counsel sent a follow-up letter to Mr. Bonnant, stating:

> While you are correct that BSGR is the party to the proceedings and that BSGR is not a beneficiary of the Balda foundation, the class of beneficiaries does include Mr. Steinmetz.  We would be grateful if you would confirm whether Mr. Steinmetz's participation as a witness in the proceedings falls within one of the restrictive conditions which would allow for the release of documents from the Balda Foundation.[65]

62.     Mr. Bonnant replied on 13 November 2015:

> Assuming that Mr. Beny Steinmetz is a beneficiary of [the Balda Foundation] and assuming that he has requested that Foundation's Board should be supplied with the documents that you have requested from me, his request shall not be fulfilled.[66]
>
> The Foundation's Board considers that the fact that Mr. Beny Steinmetz has been called to testify in the abovementioned arbitral

---

[63] The word "counsel," found in the first and third paragraphs of the text quoted above, is a translation of the "le conseil" in the original letter.  The Tribunal notes that that term is defined as "council, board" in Dictionnaire Economique et Juridique (5th ed. 2000) at 67.

[64] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 6) (translation).

[65] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 8).

[66] Based on the original French version of the letter, the Tribunal understands the sentence to read: "Assuming that Mr. Beny Steinmetz is a beneficiary of the Balda Foundation's board and assuming that he has requested that by the Foundation's Board he should be placed in possession of the documents that you have requested from me, his request shall not be fulfilled."

proceedings is not a sufficient reason for him to be exempt from his confidentiality obligation *erga omnes*.[67]

63.    Second, when BSGR's counsel contacted Mr. Bonnant on 29 October 2015 with a request for assistance relating to Nysco, Mr. Bonnant responded on 10 November 2015:

> Nysco Management Corporation Limited did not attend the aforementioned arbitration procedure. It considers that it does not have to communicate to third parties information regarding its organisation and its business, in particular its financial statements and the minutes of its Board of Directors' meetings.
>
> Hence, our position is not to follow-up your request.[68]

64.    BSGR's counsel subsequently asked Mr. Bonnant on 12 November 2015 to "confirm whether you will be in a position to provide these documents."[69]   Mr. Bonnant responded on 13 November 2015: "Nysco Management Corporation Limited's position on this matter remains the same."[70]

65.    Third, in relation to Beny Steinmetz, Mr. Bonnant sent BSGR's counsel on 10 November 2015 the statements provided by 15 witnesses as part of the Swiss investigation, providing:

> With the consent of the Prosecutor, Claudio Mascotto, who is investigating the proceedings in Geneva, I can send you the statements of the various witnesses heard, by way of Letters Rogatory, in Conakry on 6–11 July 2015.[71]

66.    BSGR's counsel thanked Mr. Bonnant for the transcripts of interviews conducted by Swiss authorities in Geneva and made the following further request on 12 November 2015:

> The documents you provided respond to request number 61(b) of Vale's Redfern schedule. We also sought to obtain from you documents responsive to request 61(a), which we set out below for ease of reference:
>
> "*Documents communicated to or obtained by one or more of the BSG Entities and ONYX in the course of their participation in the*

---

[67] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 10) (translation).

[68] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 25) (translation).

[69] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 28).

[70] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 28) (translation).

[71] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 16–17) (translation).

> *Swiss criminal proceedings related to instructions one or more of the BSG Entities and ONYX made to Pentler or Messrs. Cilins, Noy or Lev Ran related to their activities in Guinea.*"
>
> We understand from our recent telephone conversation (Libson/Bonnant) that no such documents exist. We would be grateful if you would confirm in writing that our understanding is correct.[72]

67. Mr. Bonnant responded on 13 November 2015:

> Neither "BSG Entities" nor Onyx is a party in the Geneva criminal proceedings.
>
> For this reason, the question regarding the documents that they would have sent or received within the framework of these proceedings is not pertinent.
>
> Consequently, it is not within Mr. Beny Steinmetz's power to follow up on your request.[73]

### i.   Vale's Arguments[74]

68. Vale advances three arguments. First, Vale asserts that the "reasoning" provided by Mr. Bonnant in the above-referred correspondence amounts to an "absurd non-sequitur" and "meaningless excuses."[75] It is irrelevant, in Vale's view, that Balda, Nysco, and Mr. Steinmetz are not formally Parties to this arbitration. Vale frames Mr. Steinmetz as "the principal of BSGR and the primary catalyst for nearly every action that underlies this proceeding."[76] It argues that Mr. Steinmetz must have control over documents of the Balda Foundation because he is its beneficiary, and the same holds true for Nysco. BSGR's correspondence with Mr. Bonnant represents an "elaborate shell game" of "hide the ball."[77] During the telephonic hearing, Vale referred to a passage from Balda's bylaws, stating:

> [N]otwithstanding any restrictions on the disclosure of information imposed by the Statutes or By-Laws, the Foundation Council shall within a reasonable time answer all reasonable enquiries and requests of the Protector in relation to the Foundation and its

---

[72] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 18).

[73] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex I at 20) (translation).

[74] *See* Letter from Vale to the Tribunal dated 29 Dec. 2015, at 3–6; Hearing Tr. at 3:13–8, 12:13–15:8, 37:13–39:24.

[75] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 4.

[76] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 4.

[77] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 2.

> operation and provide him with copies of any documents relevant
> to such enquiries and requests.[78]

69.   Vale infers from this text that Mr. Steinmetz must be "the Protector" and thus "all the elaborate arguments we have heard about Balda's confidentiality crumble."[79]

70.   Second, Vale states that the communications from BSGR's counsel to Balda and Nysco only informed Mr. Bonnant about the Tribunal's rulings with respect to Vale's Requests Nos. 1, 2, 3, and 52, but BSGR should have also informed Mr. Bonnant, and sought his assistance, with respect to Requests Nos. 3, 7, 8, 9, 10, 11, 12, 18, 22, 24, 29, 30, 35, 36, 47, 51, 53, 61, 62, 65, and 71.[80]   Vale maintains that BSGR did not use its "best efforts" to obtain documents in relation to the later group of requests.

71.   Third, Vale points to two particular categories of documents that BSGR has refused to produce: (1) the *procés verbaux* of the testimony from Mr. Steinmetz and Ms. Merloni-Horemans taken in the Swiss criminal proceeding; and (2) documents seized by Swiss authorities from Mr. Steinmetz's home and private aircraft.   Vale claims that both categories fall within its Request No. 61, which the Tribunal granted,[81] and which provided:

> The following Documents concerning the ongoing investigation into the acquisition of the Mining Rights (the "Swiss Investigation"):
>
> (a) Documents communicated to or obtained by one or more of the BSG Entities and ONYX in the course of their participation in the Swiss criminal proceedings related to instructions one or more of the BSG Entities and ONYX made to Pentler or Messrs. Cilins, Noy or Lev Ran related to their activities in Guinea; and
>
> (b) The transcripts (*procés verbaux*) of the interviews conducted by the Swiss authorities in Guinea in or around 6–12 July 2015 as reported by various news sources, including the interviews of (i) Ahmed Tidiane Souré, (ii) Jean Marie Doré, and (iii) Louncény Nabe.

---

[78] *See* Hearing Tr. at 4:20–5:17 (quoting Exhibit R-246 at 6–7).

[79] Hearing Tr. at 5:11–17.

[80] *See* Hearing Tr. at 4:4–9, 6:17–8:21.

[81] The Tribunal's ruling provided: "The Request is GRANTED, subject to legal privilege.   In addition to searching its own files and those of its subsidiaries, BSGR is directed to use its best efforts to obtain and produce responsive documents, including by seeking to obtain copies of the relevant documents from other business entities with which BSGR has a close relationship or from any witness(es) put forward by BSGR in this arbitration."

72.    Vale argues that if the only reason that the testimony of Mr. Steinmetz and Ms. Merloni-Horemans does not fit within Request No. 61(b) is that the interviews did not take place in July 2015, that is "beyond hair-splitting."[82]  In any event, Vale maintains that the documents in question fall within 61(b) even if they do not fall within 61(a).

73.    The seized documents, according to Vale, are the same documents that Mr. Steinmetz (through Mr. Bonnant) unsuccessfully sought to prevent the Swiss authorities from turning over to Guinean and U.S. law enforcement authorities.  Vale insists they are responsive to its Request No. 61(a); it suggests that BSGR's lawyers recognized the same; and it dismisses Mr. Bonnant's reason for refusing to produce documents (i.e., because "[n]either 'BSG Entities' nor Onyx is a party in the Geneva criminal proceedings") as irrelevant.  During the hearing, Vale argued that Onyx, or Onyx's Swiss affiliate, was a party to the Swiss proceeding, although referred to by an anonymous designation in court documents.[83]  According to Vale, the documents taken from Mr. Steinmetz's house and airplane are in the possession of Mr. Bonnant, and Mr. Steinmetz has no reason not to direct Mr. Bonnant to produce them to Vale.[84]

74.    Vale also suggests that the seized documents fall within other requests it made.  For example, it claims that an internal audit report (presumably among the documents seized) is responsive to Vale's Request No. 53.  Vale points out that the report was referenced in Swiss court decisions relating to the Swiss investigation.

75.    Vale ultimately requests that the Tribunal order BSGR to produce all documents that were seized from Mr. Steinmetz's home and aircraft as well as the transcripts (*procés verbaux*) of the interviews of Mr. Steinmetz and Ms. Merloni-Horemans conducted in connection with the Swiss proceedings.

### ii.    BSGR's Arguments[85]

76.    BSGR responds to Vale's first general argument by denying having conspired with Mr. Bonnant, or any other entity, to avoid producing documents.  It states that Vale has ignored critical distinctions between the three different roles played by Mr. Bonnant — President of Balda, board member of Nysco, and Mr. Steinmetz's Swiss lawyer.  While BSGR notes that it is "disappointing" that Mr. Bonnant was "unable to cooperate with

---

[82] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 4; Hearing Tr. at 40:19–41:23.

[83] Hearing Tr. at 10:4–13.

[84] Hearing Tr. at 14:24–15:7.

[85] *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 4–12; Hearing Tr. at 24:20–27:22, 34:16–35:23, 43:19–46:3.

BSGR's requests," it is also "unclear what further efforts could have been made by BSGR."[86]  BSGR addresses Mr. Bonnant's duties with respect to each role in more detail.

77.    In relation to the Balda Foundation, Mr. Steinmetz does not control Mr. Bonnant, but rather Mr. Bonnant looks to his own fiduciary duties, the laws of Liechtenstein, and the by-laws of Balda. The documents requested are corporate documents, not personal documents, further confirming that Mr. Steinmetz had no authority to direct Mr. Bonnant's performance.  Mr. Bonnant is answerable to the board of Balda (on which Mr. Steinmetz does not sit).  During the telephonic hearing held on 4 February 2016, BSGR also refuted Vale's suggestion that Mr. Steinmetz has a right to access Balda's documents via the by-laws of the foundation.  In particular, BSGR repeatedly denied that Mr. Steinmetz is the "Protector" as referred to in the by-laws.[87]  When Vale's counsel sought to learn the identity of the "Protector" if not Mr. Steinmetz,[88] BSGR's counsel simply reiterated that Mr. Steinmetz is not the "Protector."[89]  BSGR's subsequent correspondence suggests that there is no "Protector."[90]

78.    Nor does Mr. Steinmetz direct Mr. Bonnant in relation to Nysco, according to BSGR. Instead, Mr. Bonnant's decision-making as a board member of Nysco falls outside of Mr. Steinmetz's control.

79.    Mr. Bonnant also complied with Vale's requests to him in his capacity as Mr. Steinmetz's Swiss lawyer.  Vale is mistaken that Mr. Bonnant refused to produce "any" documents from Mr. Steinmetz.  BSGR confirms that Mr. Steinmetz's documents were searched, and responsive documents were produced (for example, his French and Israeli passports).  In any event, Mr. Bonnant did produce all documents responsive to Request 61(b) and no documents exist that are responsive to 61(a).

80.    BSGR's counsel responded to Vale's second argument during the telephonic hearing as follows:

>    Mr. Blackman then listed a long list of the requests and said in relation to those Balda should have been asked for[,] all of those

---

[86] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 6.

[87] Hearing Tr. at 25:10–11, 34:20–21.

[88] Hearing Tr. at 37:12–19.

[89] Hearing Tr. at 44:20–25.

[90] *See* Letter from BSGR to the Tribunal dated 8 Feb. 2016 (attached proposed certificate for Affiliates/Witnesses, at (c)) ("As regards the Balda Foundation, we certify that the President of that Foundation, Marc Bonnant, has confirmed that there is no Protector.").

documents.  But the fact is that in relation to those requests, we have those documents and we provide them.

So, for example, he listed request number 53.  We disclosed all those documents.  He listed request number 62[] which disclosed . . . all those documents.  He mentioned request number 61 and we asked Monsieur Bonnant about that.

So for that long list there is no point and no need and no requirement on us to ask Mr. Bonnant where we have the documents and are able to provide them.  And to the extent that we didn't, we asked him.

. . .

[W]e did not need to ask for documents we already had provided, and that's the case in relation to a number of the requests that my learned friend read out in a long list, including the ones I have mentioned.[91]

81.  BSGR responds to Vale's third argument by asserting that neither the Swiss transcripts (*procés verbaux*) nor the documents seized by the Swiss authorities are responsive to Vale's Redfern requests.  The transcripts are not responsive to Vale's Request No. 61. Sub-part (b) of that request called for specific transcripts of interviews with three other individuals but failed to include either Mr. Steinmetz or Ms. Merloni-Horemans. Additionally, sub-part (b) targeted interviews that took place in July 2015, whereas neither Mr. Steinmetz nor Ms. Merloni-Horemans was interviewed by the Swiss authorities in July 2015.  Nor do the transcripts in question fall under sub-part (a) of Request No. 61 because of the limiting language found in the request:

> (a) Documents communicated to or obtained by one or more of the BSG Entities and ONYX in the course of their participation in the Swiss criminal proceedings related to instructions one or more of the BSG Entities and ONYX made to Pentler or Messrs. Cilins, Noy or Lev Ran related to their activities in Guinea . . . .

82.  According to BSGR's interpretation of this text, documents will only fall within the request if they concern instructions made by specific entities to Pentler principals which relate to Guinea and if they were communicated to or were obtained by the BSG Entities and Onyx during the Swiss proceedings.  BSGR states that the BSG Entities and Onyx are not parties to the Swiss proceedings, and they have not received any evidential documents in the course of such proceedings.  Thus, BSGR affirms that Mr.

---

[91] Hearing Tr. at 25:19–26:7, 34:23–35:1.

24

Bonnant's response — i.e., that the request was "not pertinent" because "[n]either 'BSG Entities' nor Onyx is a party in the Geneva criminal proceedings" — was proper.

83. During the teleconference BSGR denied Vale's assertion that Onyx is a party to the Swiss proceedings.  According to BSGR, "an application was made against [Onyx] for documents" in the Swiss proceedings, but "Onyx has no access to the documents in those proceedings because it's not a party to it."[92]  BSGR informed the Tribunal that the actual Parties to the Swiss case are Beny Steinmetz, Sandra Merloni-Horemans, and Frédéric Cilins.[93]

84. BSGR refers to Vale's attempt to obtain copies of the documents seized by Swiss authorities as "an entirely new set of documents which were not requested [anywhere] in its Redfern Schedule."[94]  It disputes Vale's suggestion that the documents respond to Request No. 61(a) for similar reasons as set forth above.  On any reading by BSGR, that request is directed only at those documents which relate to instructions from a BSG Entity or Onyx to Pentler or its principals; and even then, those documents will only be responsive if they were communicated to or obtained by a BSG Entity or Onyx in the Swiss proceedings.  But Mr. Steinmetz is not a "BSG Entity," and his documents relating to instructions of Pentler have already been produced in response to other requests.[95]  In any event, Vale's attempt to obtain these documents is an illegitimate effort to correct errors or omissions in its own Redfern Schedule.  Its new request is neither narrow and specific nor relevant and material to the case as required by the IBA Rules.

85. As for the "internal audit report" referred to in the Swiss decisions, BSGR argues that the subject of the Swiss decision and the documents sought by Request No. 53 are not the same.  In fact, BSGR did produce documents responsive to Request No. 53, including "the conclusion of the 'internal audit'" in response to Request 53(c).[96]  In its 8 January 2015 submission, BSGR informed the Tribunal that it had obtained a "full copy" of the internal audit which it promised to produce the following week.[97]

---

[92] Hearing Tr. at 35:15–16.

[93] Hearing Tr. at 27:16–17.

[94] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 8.

[95] BSGR cited Vale's Requests Nos. 15, 16, 17, 21, 23, 36, 48, and 57.  *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 9.

[96] *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 11.

[97] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 11–12.

### iii.   Tribunal's Analysis and Ruling

86.   Vale's first argument — focused on the broader relations between Mr. Bonnant, Mr. Steinmetz, the Balda Foundation, and Nysco on the one hand, and BSGR on the other hand — does not call upon the Tribunal to make a specific ruling.  The Tribunal cannot draw any conclusions at this time regarding issues of interrelations or the existence of control among the various entities and individuals affiliated with BSGR which ultimately are issues for the merits.  It does take careful note of all instances in which Balda, Onyx, and Mr. Steinmetz are alleged by Claimant to have refused to provide certain documents despite the Tribunal having granted requests for documents in their possession.  The Tribunal reserves all of its rights to weigh those facts accordingly at the appropriate time.  The Tribunal also instructs BSGR's counsel to detail their interactions with Mr. Bonnant, or other relevant individuals, in the form of the relevant certification as directed in Paragraph 33 above.

87.   In respect of Vale's second argument, the Tribunal agrees with Vale that BSGR shall provide each affiliate with copies of _all_ of Vale's requests which the Tribunal granted under the broadest terms set forth in paragraphs 15 and 16 of its First Decision on Document Production.[98]  Likewise, the Tribunal is of the view that BSGR shall provide to its witnesses copies of all of Vale's requests which the Tribunal granted in the terms set forth in paragraphs 15–18 of its First Decision on Document Production.[99]  The Tribunal directs BSGR to comply immediately with these directions to the extent it has not yet done so.

88.   Vale's third argument requires the Tribunal to make a decision with respect to two categories of documents.  Vale requests that the Tribunal direct BSGR to produce or use its best efforts to produce transcripts of interviews with Mr. Steinmetz and Ms. Merloni-Horemans conducted as part of the Swiss investigation as well as documents seized by the Swiss authorities.  The Tribunal decides to grant Vale's request concerning both groups of documents on the terms set forth below.

---

[98] _See_ First Decision on Document Production ¶ 15 ("[The Request is GRANTED.]  In addition to searching its own files and those of its subsidiaries, BSGR is directed to use its best efforts to obtain and produce responsive documents, including by seeking to obtain copies of the relevant documents from other business entities with which BSGR has a close relationship or from any witness(es) put  by BSGR in this arbitration.").

[99] _See_ First Decision on Document Production ¶ 15; _id._ ¶ 17 ("[The Request is GRANTED], but only to the extent that the requested documents are in the possession, custody, or control of BSGR, its subsidiaries, or the witness(es) it has put forward in this arbitration.").

89. The Tribunal finds that the transcripts fall within Vale's Request No. 61.  In the first instance, they fall within Request No. 61(b), seeking:

> The transcripts (*procés verbaux*) of the interviews conducted by the Swiss authorities in Guinea in or around 6–12 July 2015 as reported by various news sources, including the interviews of (i) Ahmed Tidiane Souré, (ii) Jean Marie Doré, and (iii) Louncény Nabe.

90. BSGR seeks to classify the Steinmetz/Merloni-Horemans interviews as falling outside of this request because neither individual appears in the enumerated list of names found at the end of the request and because the Steinmetz/Merloni-Horemans interviews apparently did not take place in July 2015.  The Tribunal finds the language of Vale's request less restrictive than BSGR's interpretation. The three names listed in the request did not constitute a complete list ("***including*** the interviews of…"), nor was the date range exclusive ("***in or around*** 6–12 July 2015") (Emphasis added.)  More importantly, the Tribunal is persuaded that interviews of Mr. Steinmetz and Ms. Merloni-Horemans — both of whom are witnesses in this arbitration — are indeed relevant and material in this arbitration.[100]

91. Vale also justifies its application for production of the transcripts under sub-part (a) of Request No. 61. The Tribunal is not convinced that Vale's wording on which BSGR relies is to be construed as BSGR does, given that the express aim of Vale's request was clear and focused on central documents.  Request 61(a) called for:

> (a) Documents communicated to or obtained by one or more of the BSG Entities and ONYX in the course of their participation in the Swiss criminal proceedings related to instructions one or more of the BSG Entities and ONYX made to Pentler or Messrs. Cilins, Noy or Lev Ran related to their activities in Guinea . . . .

92. The Tribunal is aware that the language employed by Vale does contain some restrictive language, especially the qualification limiting the request to documents communicated to the "BSG Entities" and Onyx.  But Vale made it known in the second column of its Redfern Schedule ("Relevance and Materiality of the Requested Documents") the assumptions upon which the request was based:

> Swiss law enforcement authorities are investigating BSGR's mining activities in Guinea, and have recently interviewed witnesses in Guinea pursuant to these efforts (see note 15).  Vale

---

[100] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 16–17.

> understands that BSGR's counsel in the arbitration was invited to participate in these interviews and that the BSG Entities and ONYX are entitled to the transcripts (*procés verbaux*) of the interviews under Swiss law and procedure.
>
> Vale also understands that, as a matter of Swiss law and procedure, the Swiss authorities will have communicated to the BSG Entities and/or ONYX selected, relevant documentary evidence that was uncovered during the investigation.
>
> The requested Documents are relevant and material to further showing that BSGR engaged in corrupt acts to acquire the Mining Rights.

93.  In other words, based on the information it had, Vale understood that the BSG Entities and Onyx were parties in the Swiss proceeding, thus it focused on them.  BSGR's main defense essentially attacks this assumption as inaccurate and then seeks to avoid the request altogether.  Apparently, the "BSG Entities" and Onyx are not parties to the Swiss proceeding, so they have not received the transcripts or the other documents concerning that investigation.  But the Tribunal notes that BSGR has not denied that it has access, or the right to request access via Mr. Steinmetz and Mr. Bonnant, to the documents from the Swiss proceeding.

94.  The Tribunal notes that BSGR has also pointed out further limiting language found in Vale's Request No. 61(a) — that the documents sought must concern "instructions one or more of the BSG Entities and ONYX made to Pentler or Messrs. Cilins, Noy or Lev Ran related to their activities in Guinea."  The Tribunal does not ignore this qualification to Vale's request, but it reconfirms that BSGR should not be permitted to avoid compliance on the basis that instructions came from a person or entity related to BSGR which is not "the BSG Entities and ONYX."  In other words, the Tribunal finds that Vale should be permitted access to the Steinmetz and Merloni-Horemans transcripts under Request No. 61(a) (in addition to its right via Request No. 61(b)), "related to instructions . . . made to Pentler or Messrs. Cilins, Noy or Lev Ran related to their activities in Guinea."

95.  The Tribunal separately finds that BSGR should use its best efforts to obtain and produce copies of the documents seized by Swiss authorities.  It recognizes that Vale could have specified more clearly in its Redfern schedule that it sought documents subject of the Swiss seizure.  BSGR correctly points out that nowhere in its Redfern Schedule does Vale ask explicitly for documents seized from Mr. Steinmetz's home

and aircraft. Vale, instead, argues that the seized documents must fall within the same Request No. 61(a), analyzed above.

96.   Looking again to Vale's comments accompanying its request, the Tribunal notes that Vale did refer to the Swiss "raid" in the third column of its Redfern Schedule corresponding to its Request No. 61 ("Claimant's Responses to Respondent's Objections"):

> The MLA Request also directs the Swiss prosecutor to raid the domicile or residence of Mr. Steinmetz and the offices of ONYX (Exhibit C-94, p. 7), as indeed they have done.
>
> Thus BSGR is at the center of the inquiry relating to its bribery and corruption, and the English, Guinean and Swiss authorities clearly and correctly perceive Mr. Steinmetz, Ms. Merloni-Horemans and ONYX to be closely affiliated with BSGR (and within its control).  Mr. Steinmetz's attorney Mr. Marc Bonnant has access to these documents and has indeed referenced them in public press statements.  In short, Mr. Steinmetz and hence BSGR have control of documents received by them in the Swiss criminal proceedings, have used them in the arbitration when it suits their purposes and cannot hide behind either non-existent Swiss law prohibitions or purported "lack of control" to avoid producing this key evidence. (Emphasis added.)

97.   Based on the full context of Vale's Request No. 61(a) the Tribunal finds that the aim of Vale's request covered all documents from the Swiss criminal proceedings related to instructions made to Pentler or its principals concerning Guinea, including any such documents that were seized by the Swiss authorities.  The Tribunal directs BSGR to use its best efforts to obtain and produce to Vale the transcripts of interviews with Mr. Steinmetz and Ms. Merloni-Horemans conducted as part of the Swiss investigation as well as the documents seized by the Swiss authorities .

98.   The Tribunal observes that even if it did not find that Vale's Request No. 61 specifically covered the documents in question in this section, the Tribunal would exercise its own authority to direct the production of these documents.  Recall that Article 22.1(e)–(f) of the 1998 LCIA Rules provides:

> Unless the parties at any time agree otherwise in writing, ***the Arbitral Tribunal shall have the power***, on the application of any party or ***of its own motion***, but in either case only after giving the parties a reasonable opportunity to state their views:
>
> . . .

to order any party to produce to the Arbitral Tribunal, and to the other parties for inspection, and to supply copies of, any documents or classes of documents in their possession, custody or power which the Arbitral Tribunal determines to be relevant . . . . (Emphasis added.)

99.   Likewise, the Article 3.10 of the IBA Rules states:

At any time before the arbitration is concluded, the Arbitral Tribunal may (i) request any Party to produce Documents, (ii) request any Party to use its best efforts to take or (iii) itself take, any step that it considers appropriate to obtain Documents from any person or organization.

100.  Before turning to the next matter of contention, the Tribunal notes that the Parties appear to have resolved their dispute concerning an "internal audit" relating to Vale's Request No. 53.  BSGR informed the Tribunal that it had obtained a "full copy" of the internal audit which it appears to have produced.[101]  Accordingly, the Tribunal issues no ruling on that specific issue.

### d.  The Balda Internal Investigation Report

101.  In its letter dated 20 January 2016, Vale informed the Tribunal that BSGR had disclosed to Vale on 14 January 2016 an internal investigation report into BSGR's iron ore investment in Guinea dated 29 July 2015.  The report was prepared by two lawyers, Louis Freeh and Joseph Lieberman, who were hired by the Balda Foundation to investigate the charges that BSGR engaged in bribery and corruption in obtaining its Guinean mining rights.  Upon disclosing the report to Vale, BSGR's counsel stated:

At the date of the deadline for production, the Report was privileged and not in the possession, custody or control of BSGR. We now understand that the Report was released to Mr. Steinmetz for the purpose of his defence in the Swiss proceeding and that it was provided to the Swiss authorities on 23 December 2015 and to this firm on 28 December 2015.[102]

102.  The "Summary of Conclusions" in the report itself states:

Based on our investigation to date, we discovered no direct, credible evidence to prove that (i) Beny Steinmetz or BSGR violated the FCPA ["Foreign Corrupt Practices Act"] in connection with obtaining or maintaining mining rights in Guinea,

---

[101] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 11–12.

[102] First Attachment to Letter from Vale to the Tribunal dated 20 Jan. 2016.

or (ii) Beny Steinmetz or other BSGR personnel violated U.S. obstruction of justice statutes in connection with [Frédéric Cilins's] interactions with Madamie Touré in April 2013.[103]

103. Among other things, the internal investigation report provides that "Investigative Counsel reviewed materials provided by BSGR, and publicly available information" including "more than 4,000 documents Skadden identified as 'relevant'" and "thousands of additional documents identified by our targeted searches of an existing document database."[104]  It states that "we did not undertake a complete collection and review of all BSGR documents, and instead used documents collected and reviewed by Skadden."[105]

### i.   Vale's Arguments[106]

104. Vale argues that two points emerge from BSGR's disclosure of the internal investigation report.  First, it further exposes the "artificiality" of BSGR's efforts to avoid production of documents from Balda.  In other words, when it suits Mr. Steinmetz's desires, Balda will readily provide documents to him for use in legal proceedings, but when he wishes to avoid producing documents, Balda becomes a wholly separate legal entity over which Steinmetz has no control.

105. Second, Vale contends that the documents referred to on the face of the report are documents responsive to Vale's Request No. 66,[107] which was granted by the Tribunal,[108] but which BSGR has not produced.  Vale points out that the request sought

---

[103] Second Attachment to Letter from Vale to the Tribunal dated 20 Jan. 2016, at 4.

[104] Second Attachment to Letter from Vale to the Tribunal dated 20 Jan. 2016, at 1.

[105] Second Attachment to Letter from Vale to the Tribunal dated 20 Jan. 2016, at 3.

[106] Letter from Vale to the Tribunal dated 20 Jan. 2016; Hearing Tr. at 17:23–18:12, 39:25–40:18.

[107] That request sought:

"The following Documents relating to the 'investigations' referenced in the Steinmetz Witness Statement, ¶ 3:

(a) Documents provided in or around September 2014 in support of the investigations conducted by one or more of Louis Freeh, Joseph Lieberman and Alan Dershowitz as reported by various news sources;

(b) Documents provided in or around April and May 2012 in support of the investigations and audits conducted by Mr. Pollak (Pollak Witness Statement, ¶¶ 41-48); and

(c) The BSG Entities' auditors' internal audits, including the E&Y audit of payments to Mrs. Touré and Matinda & Co. Ltd. (Clark Witness Statement, ¶ 65);

(d) The list of all of the "leading investigators" referenced in the Steinmetz Witness Statement, ¶ 3(b); and

(e) The observations, conclusions and reports of these investigations."

[108] The Tribunal granted the request on the following terms: "The Request is GRANTED, subject to legal privilege, and only to the extent that the requested documents are in the possession, custody, or control of BSGR, its subsidiaries, or the witnesses it has put forward in this arbitration."

not only the report itself, but also "[d]ocuments provided in or around September 2014 in support of the investigations conducted by one or more of Louis Freeh, Joseph Lieberman and Alan Dershowitz as reported by various news sources."  Vale interprets this to mean that BSGR must produce "all the documents now identified in the Report, subject to legal privilege," and BSGR and Balda have waived that privilege by producing the report in the Swiss proceedings.[109]  Vale believes that the majority of the files reviewed by the investigators have not been produced by BSGR to Vale because the report states that BSGR and Balda shared 6,000 or more documents with the investigators, yet BSGR has produced less than 2,600 documents to Vale in this arbitration.

106. In sum, Vale takes the position that BSGR cannot be allowed to produce the summary of a self-serving investigation conducted into its own wrongdoing, but withhold the responsive documents underlying the investigation.  It requests that the Tribunal order BSGR to produce the documents provided to the investigators for the purpose of conducting their review that led to the report.

### ii.    BSGR's Arguments[110]

107. BSGR states that it provided the report to Vale as part of its ongoing disclosure obligations unrelated to any complaints raised by Vale.  It notes that the report was privileged at the date of the document production deadline and BSGR only became aware that the report had been shared with the Swiss officials on 28 December 2015 (thus breaking the privilege), and it was first provided to BSGR's counsel on 5 January 2016.

108. BSGR responds to Vale's first point by explaining that its production of this report has nothing to do with Balda's refusal to provide corporate documents to Vale.  The position Vale has taken ignores the confidentiality provisions in Balda's by-laws.  By contrast, confidentiality does not attach to the report. Nor is there anything "artificial" about Balda's status as a separate entity with its own interests.

109. In response to Vale's second argument, BSGR disagrees that "the entirety of the documents reviewed (but not necessarily relied upon)" by investigative counsel are "necessarily responsive to [Vale's] Redfern requests."[111]  Mr. Freeh and Mr. Lieberman

---

[109] Letter from Vale to the Tribunal dated 20 Jan. 2016, at 3.

[110] Letter from BSGR to the Tribunal dated 26 Jan. 2016; Hearing Tr. at 23:9–24:19.

[111] Letter from BSGR to the Tribunal dated 26 Jan. 2016, at 2.

were "provided with a certain set of documents by Skadden and had access to other documents which are not particularised in the Report.  Neither we, nor BSGR, know what documents Mr. Freeh and Mr. Lieberman independently reviewed."[112]  But the documents provided did come from "exactly the same universe of documents which were searched against by BSGR [in response to Vale's requests]."[113]

110.  BSGR argues that the documents reviewed by Messrs. Freeh and Lieberman are not responsive to Request No. 66 for three reasons: (a) to the extent they were privileged, they remain so; (b) the entire universe of documents was not relied upon "in support" of their investigation; and (c) the documents were not provided "in or around September 2014" as required by the request.[114]  In any event, "[a]ll documents which Mr. Freeh and Mr. Lieberman reviewed and which are responsive to Vale's Redfern requests (and not some different conception of relevance) have already been produced."[115]  That the documents in question were marked "relevant" by Skadden at the time does not change this conclusion because they were only "relevant" to an entirely different set of parameters; the review focused on potential FCPA liability, and the investigation was commissioned before the Guinean Technical Committee published its report and before Vale filed this arbitration.  Vale's request is based on a misplaced conception of discovery.  To the extent the documents referred to in the report were privileged, that privilege has not been waived.

111.  Finally, BSGR submits that "as a matter of practicality" it is "not in a position to reassemble a category of documents shared by a different law firm with two third-party investigators commissioned by a non-party to this arbitration."[116]  To do so would make no sense because "[w]e simply do not know the entirety of the documents reviewed by the investigators."[117]  During the telephonic hearing, BSGR's counsel reiterated: "[W]e are not able to reassemble those documents.  Mr. Freeh and Mr. Lieberman did their own searches and we do not know . . . [the documents] that were sent to them and could not reassemble it."[118]  In a letter to the Tribunal following the hearing, BSGR stated that "we have made enquiries of Mr. Freeh and Mr. Lieberman and confirm that we

---

[112] Letter from BSGR to the Tribunal dated 26 Jan. 2016, at 2.

[113] Letter from BSGR to the Tribunal dated 26 Jan. 2016, at 2.

[114] Letter from BSGR to the Tribunal dated 26 Jan. 2016, at 2.

[115] Letter from BSGR to the Tribunal dated 26 Jan. 2016, at 2–3.

[116] Letter from BSGR to the Tribunal dated 26 Jan. 2016, at 3.

[117] Letter from BSGR to the Tribunal dated 26 Jan. 2016, at 3.

[118] Hearing Tr. at 24:7–11.

have performed searches against all of the documents they were provided with. Accordingly, all documents which were reviewed by Mr. Freeh and Mr. Lieberman and which are responsive to Vale's Redfern Schedule and the Decision have already been produced."[119]

### iii.    Tribunal's Analysis and Ruling

112.  The Tribunal is not required to issue a ruling concerning Vale's first argument.  It does take note of BSGR's submission that Balda's by-laws do not apply to the investigation report, in contrast to Balda's corporate documents discussed in Section V.c. above.

113.  The Tribunal resolves Vale's second argument by reaffirming its prior ruling and concluding that BSGR is required to produce to Vale all documents provided to the internal investigators, subject to legal privilege.  The Tribunal disagrees with BSGR's position that the documents reviewed by Messrs. Freeh and Lieberman are not responsive to Vale's Request No. 66, in particular sub-part (a), which sought:

> The following Documents relating to the "investigations" referenced in the Steinmetz Witness Statement, ¶ 3:
>
> (a) Documents provided in or around September 2014 in support of the investigations conducted by one or more of Louis Freeh, Joseph Lieberman and Alan Dershowitz as reported by various news sources.

114.  In the Redfern Schedule, BSGR objected to the request "on the grounds that documentation in the possession, custody or control of BSGR and its subsidiaries is protected from disclosure by privilege - Article 9(2)(b)." The Tribunal granted the request "subject to legal privilege, and only to the extent that the requested documents are in the possession, custody, or control of BSGR, its subsidiaries, or the witnesses it has put forward in this arbitration."

115.  BSGR now argues that the documents sought by Vale do not fall within this request because of the phrases "in support of the investigations" and "in or around September 2014."  As with the Tribunal's analysis set forth in Section V.c.iii. above, the Tribunal does not understand Vale's request to be as narrow as BSGR contends.  In any event, it finds that the documents in question are relevant and material to the dispute, so that even if it did not find that Vale's request explicitly covered the documents, the Tribunal would exercise its own authority to direct the production of these documents.

---

[119] Letter from BSGR to the Tribunal dated 8 Feb. 2016, at 2.

116. That Request No. 66 sought documents "provided . . . in support of the investigations" conducted by BSGR's investigative counsel does not mean that BSGR may restrict its production to those documents "relied upon" by the investigators, rather than the "entirely of the documents reviewed."  The request did not seek only documents that *supported the conclusion of the investigators*, but documents provided to Freeh and Lieberman *in support of their conducting the investigation*.  To rule otherwise could suggest BSGR only had the obligation to produce the factual documents that the investigators found most compelling in arriving at their conclusion favorable to BSGR.

117. Nor is Vale's reference in the Redfern Schedule to "September 2014" fatal to the relief it seeks. Vale's request estimated the time period that documents were provided but did not set strict limits ("***in or around*** September 2014") (Emphasis added.)  And the footnote linked to Request 66(a) cited a news article dated 11 September 2014 entitled "Steinmetz Trust Said to Hire Lieberman, Ex-FBI Head on Probe," thus explaining why Vale understood that documents were provided to investigators during that time period.

118. The Tribunal is not persuaded by BSGR's argument that documents provided to the investigators are not responsive to Vale's request simply because they were gathered before the initiation of Guinea's investigation or this arbitration and were collected for the purpose of assessing potential U.S. domestic law liability.  The timing of the investigation vis-à-vis the Guinean and LCIA proceedings does not bear upon the relevance and materiality of the documents that were part of the investigation. Although the legal issues at stake before this Tribunal may not be the same as those in an FCPA context, the underlying facts at the center of the investigation were fundamentally the same as those at the core of this dispute — whether or not BSGR or its agents engaged in fraud and corruption.  In fact, paragraph 3 of Beny Steinmetz's witness statement submitted in this arbitration (cited in Vale's Request No. 66) appears to confirm the relevance of the investigation to the factual disputes in this arbitration.  It provides:

> Neither I nor anyone associated with BSG Resources Limited (BSGR) is, was or has been involved in any type of unlawful or criminal activity. The reasons I can say this with such confidence are:
>
> . . .
>
> Insofar as the allegations concern matters others are said to have done, the Balda Foundation and BSGR have instigated the widest

> possible enquiries within the BSG businesses by leading
> investigators who have had the fullest access to every document
> and person in the organisation and who have concluded that there
> has been no wrongdoing. I have fully supported these
> investigations.

119. BSGR also raises a privilege defense. As a preliminary matter, both Parties agree that BSGR may not assert privilege over the report itself, which it waived when it provided the report to the Swiss authorities and then to Vale. But BSGR asserts that to the extent investigative counsel reviewed any underlying privileged documents during the investigation, those underlying documents remain privileged, therefore BSGR must not produce them to Vale now.

120. The Tribunal reaffirms its ruling as set forth in the Redfern Schedule that it granted Vale's request "subject to legal privilege." In an effort to anticipate and prevent any future disagreements between the Parties, the Tribunal clarifies its ruling as follows. BSGR is obligated to produce the documents provided to Messrs. Freeh and Lieberman in the course of their investigation, but it may withhold documents that contain legally privileged information — e.g., memos providing legal advice concerning U.S. law on the FCPA or obstruction of justice, correspondence relating to potential claims from Vale, legal strategy, and so forth. BSGR is, however, obligated to produce all underlying documents provided to the investigators that do not contain legal advice or requests for such advice. In that sense, the Tribunal does not agree with Vale that BSGR necessarily waived any privilege that might have attached to _all_ documents provided to BSGR's investigators.

121. Finally, the Tribunal is not convinced by BSGR's argument that production of the documents in question would be impractical. BSGR suggests that it would impose difficulties to reassemble the documents shared with the investigators because Skadden, not Mishcon de Reya (BSGR's counsel in this arbitration), collected and sent the group of documents to the investigative counsel ("Neither we, nor BSGR, know what documents Mr. Freeh and Mr. Lieberman independently reviewed."). The Tribunal cannot accept this as a basis to deny Vale access to the documents in question. The first page of the investigation report itself provides that in addition to work product provided by Skadden, "Investigative Counsel reviewed **materials provided by BSGR**, and publicly available information." (Emphasis added.) In response to questions posed by the Chairman of the Tribunal during the telephonic hearing of 4 February 2016, BSGR's counsel could not explain why it was impossible for BSGR to reconstruct the

group of documents provided by Skadden to the investigators.[120]  The Tribunal sees no reason why BSGR could not now identify the entirety of the documents provided to Messrs. Freeh and Lieberman, including the documents collected by Skadden.

122. In sum, the Tribunal reaffirms its ruling and directs BSGR to use its best efforts to produce to Vale all documents provided to Messrs. Freeh and Lieberman in the course of their investigation that resulted in their report of 29 July 2015, subject to legal privilege.

### e.  Onyx

123. As noted previously, Onyx is a company incorporated in the British Virgin Islands to provide management services and other business support functions to the Balda Foundation.  Onyx previously acted as a trustee and administrator to Pentler (a company established by three of BSGR's witnesses — Michael Noy, Frédéric Cilins, and Avraham Lev Ran — which purchased shares in BSGR's subsidiary).  Dag Lars Cramer, the CEO of Onyx, submitted a witness statement of behalf of BSGR in this arbitration.  Onyx provides management, accounting, investment advisory and public relations services to the BSG group.  Sandra Merloni-Horemans, who also submitted a witness statement on behalf of BSGR in this arbitration, states that she worked with Onyx between 1998 and December 2014.

124. BSGR submitted copies of its correspondence with Onyx, showing that BSGR's counsel wrote to Mr. Cramer on 29 October 2015 to convey certain aspects of the Tribunal's First Decision on Document Production, to request "cooperation in searching for responsive documents," and to call for his "urgent attention."[121]  On 9 November 2015, Mr. Cramer responded, stating:

> In response to part B, please contact Sandra Merloni-Horemans for details of the relationship between the various Onyx entities enlisted.
>
> In response to part C, I do not know whether documents exist which are responsive to the request set out in your schedule, however I confirm that I will cooperate with your firm to conduct a reasonable search for documents which are in the possession of

---

[120] Hearing Tr. at 56:12–59:19.

[121] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex 1 at 43–45).

Onyx and which are responsive to the request set out in your schedule.[122]

125.  Correspondence submitted by BSGR also shows that on 16 November 2015, Ms. Merloni-Horemans sent a letter to Michael Noy on Onyx letterhead (although as indicated above in Paragraph 123, according to her witness statement, she stopped working with Onyx nearly a year earlier), stating:

> I have copies of some documents which are responsive from the time that Onyx Financial Advisors ("Onyx") was acting as a trustee and administrator to Pentler Holdings Limited ("Pentler"), although the complete set of original documents was sent to the agents who took over Onyx's role on November 28, 2006.
>
> [Listing responsive documents]
>
> Please confirm whether I have the permission of the Pentler[] shareholders to provide these documents to Mishcon de Reya for production to Vale.[123]

126.  Mr. Noy responded on 26 November 2015, providing his authorization.[124]

### i.   Vale's Arguments[125]

127.  Vale complains that BSGR's counsel only wrote to Mr. Cramer "nearly two weeks after the [Tribunal's First Decision on Document Production]."[126]  It claims that Mr. Cramer "acts as if he were a stranger to BSGR, which of course he is not," citing evidence suggesting that Mr. Cramer is a director of BSGR.[127]  Vale further argues that although Mr. Cramer ostensibly agreed to cooperate by searching for documents possessed by Onyx, it is not clear whether he actually did so.  BSGR apparently did collect documents from Onyx in the context of the U.S. litigation, and the Swiss authorities seized documents from Onyx's premises, and also seized documents from Mr. Steinmetz's airplane and house, but Vale claims that it does not appear that all of the relevant responsive documents have been produced to it.

128.  In particular, Vale points out that Mr. Cramer referred BSGR's counsel to Ms. Merloni-Horemans, an improper delegation of responsibility considering that Ms. Merloni-

---

[122] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex 1 at 51).

[123] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex 1 at 88).

[124] Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex 1 at 89).

[125] *See* Letter from Vale to the Tribunal dated 29 Dec. 2015, at 6–8; Hearing Tr. at 8:11–12:12.

[126] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 6.

[127] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 6–7 & n.25; Hearing Tr. at 12:3–12.

Horemans claims she was no longer employed by Onyx at that time,[128] and in any event, Mr. Cramer exhibited to his witness statement a corporate structure diagram showing his control of Onyx (R-240).   Although Ms. Merloni-Horemans says she produced certain Pentler documents, after obtaining authorization from Mr. Noy, the correspondence submitted by BSGR suggests that a complete set of responsive documents is possessed by "agents who took over Onyx's role [in 2006],"[129] yet there is no evidence of BSGR's correspondence with those "agents."

129. During the telephonic hearing, Vale also noted that the letter from BSGR's counsel to Mr. Cramer dated 29 October 2015 only sought assistance in relation to Vale's Requests Nos. 4–14, 24, 61, and 62.[130]   Vale asserts that BSGR improperly omitted Requests Nos. 18, 22, 29, 30, 36, 37, 51, and 53 from its communication to Mr. Cramer.[131]

130. In sum, Vale alleges that there is no reason to believe that anyone has conducted a full search of Onyx's documents or produced all of the relevant documents and requests the Tribunal to direct BSGR to exercise its "best efforts" to obtain and produce all the relevant Onyx documents.

### ii.   BSGR's Arguments[132]

131. BSGR submits that Vale's arguments with respect to Onyx are moot as BSGR already collected documents from all Onyx servers and produced the responsive documents.   It describes the correspondence between its counsel and Mr. Cramer as a "belt and braces" approach.[133]   BSGR rejects Vale's assertion that it had a duty to produce any documents seized from Onyx by the Swiss authorities because Vale never specifically requested those documents in its Redfern Schedule.   Addressing Vale's contention that BSGR has not made sufficient efforts to obtain and produce the "original Pentler documents" sent to the "agents," Vale is aware of the identity of those "agents" (i.e., a "Mr. Bilman").   BSGR has no responsibility to seek to obtain documents from Mr. Bilman because he is not a subsidiary of BSGR, a business entity with which BSGR

---

[128] Vale questions that statement, too, noting that Ms. Merloni-Horemans signed a letter on Onyx letterhead after her purported resignation from the company. *See* Letter from Vale to the Tribunal dated 29 Dec. 2015, at 8 n.33.

[129] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 8.

[130] Hearing Tr. at 8:11–16.

[131] Hearing Tr. at 8:16–9:10.

[132] *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 12–13; Hearing Tr. at 27:23–29:8.

[133] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 12.

has a close relationship, or a witness introduced by BSGR in this arbitration.  In any event, BSGR has already produced the "full contents" of the "Pentler file" in Onyx's possession in response to Vale's Request No. 12.  BSGR did not address the individual document requests cited by Vale during the teleconference other than with respect to the arguments reflected in Section V.c.ii. above concerning Marc. Bonnant.

### iii.    Tribunal's Analysis and Ruling

132.   As set forth above, the Tribunal disagrees with BSGR's position that it has no obligation to produce documents seized by the Swiss authorities.  The Tribunal directs BSGR to use its best efforts to obtain and produce to Vale those documents that were seized from Onyx and fall within Vale's Request No. 61(a) as explicated by the Tribunal in Section V.c.iii above.

133.   The Tribunal acknowledges BSGR's assurances that it has otherwise conducted proper searches, used its best efforts, and produced all responsive documents to Vale's requests, including "the full contents of the Pentler file."  In the event that BSGR has not produced all responsive documents to Vale relating to Onyx, the Tribunal directs BSGR now to make a good faith effort to obtain such documents not yet produced and produce them to Vale immediately.  The Tribunal also instructs BSGR's counsel to detail their interactions with Onyx, or its officials or agents, in the form of the relevant certification as directed in Paragraph 33 above.

134.   For the avoidance of doubt, if BSGR has not produced documents from Onyx because Onyx (through Mr. Cramer, Ms. Merloni-Horemans, or someone else) transferred possession of those documents to Mr. Bilman or some other "agent," the Tribunal sees no reason why BSGR should not now use its best efforts to obtain and produce copies of those documents.  Consequently, BSGR is directed to use it best efforts at effecting the production of those documents.

135.   The Tribunal also reiterates its ruling set forth in Paragraph 87 above.  To the extent BSGR has not shared with Onyx all of Vale's requests granted by the Tribunal on the terms set forth in paragraphs 15 and 16 of the Tribunal's First Decision on Document Production, the Tribunal directs BSGR to do so now as part of its obligation to use its "best efforts" to obtain and produce documents.

### f.   Specific Documents (i) Through (xi)[134]

136. This section follows the roman numeral designations introduced in Vale's Letter to the Tribunal dated 14 December 2015, at 5–6.   It traces the arguments of Vale[135] and BSGR[136] and then provides the Tribunal's analysis and ruling.

137. **Item (i) Vale**: Vale initially argued that BSGR had not produced a specific document responsive to its Request No. 23, but in its second submission Vale acknowledged BSGR had disclosed a responsive document via its letter of 24 December 2015 (followed by production the first week of January).   Due to late production, Vale claims bad faith on the part of BSGR.   **BSGR**: BSGR confirmed that it produced a responsive document and denied the existence of any bad faith or sinister motive.   **The Tribunal**: No ruling is made at this time.   The Tribunal reserves judgment on the issue.

138. **Item (ii) Vale**: Vale initially argued that BSGR had yet to produce other documents responsive to its Request No. 23, but in its second submission Vale acknowledged that BSGR had disclosed responsive documents via its letter of 24 December 2015 (followed by production the first week of January).   Due to late production, Vale claims bad faith on the part of BSGR.   **BSGR**: BSGR stated that it already had produced responsive documents, and it confirmed that it identified and produced one additional document with its letter of 24 December 2015 (followed by production the first week of January).   It denied the existence of any bad faith or sinister motive.   **The Tribunal**: No ruling is made at this time.   The Tribunal reserves judgment on the issue.

139. **Item (iii) Vale**: Vale initially argued that BSGR had yet to produce other documents responsive to its Request No. 31, but in its second submission Vale acknowledged BSGR had disclosed responsive documents via its letter of 24 December 2015 (followed by production the first week of January).   Due to late production, Vale claims bad faith on the part of BSGR.   **BSGR**: BSGR argued that Vale meant to refer to Request No. 29 — not Request No. 31 — and it stated that it had located documents, which it enclosed with its letter dated 24 December 2015 (followed by production the

---

[134] *See* Letter from Vale to the Tribunal dated 14 Dec. 2015, at 5–6; Letter from Vale to the Tribunal dated 29 Dec. 2015, at 11–12; Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 7–8; Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 17–18.

[135] *See* Letter from Vale to the Tribunal dated 14 Dec. 2015, at 5–6; Letter from Vale to the Tribunal dated 29 Dec. 2015, at 11–12.

[136] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 7–8; Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 17–18.

first week of January).  It denied the existence of any bad faith or sinister motive.  **The Tribunal**: No ruling is made at this time.  The Tribunal reserves judgment on the issue.

140.  **Item (iv) Vale**: Vale initially claimed that BSGR had not produced documents in response to its Request No. 31.  In its second submission, Vale acknowledged BSGR's statement that it had located no responsive documents and Vale stated that it "will at the appropriate time request an adverse inference be drawn."  **BSGR**: Although BSGR initially disputed whether the requested documents fell within the scope of Request No. 31, it confirmed that it ran a search and located no responsive documents (other than certain invoices which BSGR claims were produced).  BSGR further stated that if Vale should request the Tribunal to draw adverse inferences, BSGR "will respond at the appropriate time and its position is, for current purposes, reserved."  **The Tribunal**: No ruling is requested at this time.

141.  **Item (v) Vale**: Vale argued that BSGR had not produced documents in response to its Request No. 48(e). Specifically, Vale argued that BSGR had not produced a written claim that was filed with the Guinean police in 2009 by BSGR against a "Mr. Bah." When BSGR claimed that no responsive documents existed, Vale stated that "BSGR's explanation that it filed a claim against Aboubacar Bah reporting criminal acts with the Guinean police in 2009 but that no documents exist to evidence that claim defies credulity."  Vale "will at the appropriate time request an adverse inference be drawn." **BSGR**: BSGR stated that no documents were found evidencing the claim filed against Mr. Bah.  It went on that "[t]his should come as no surprise to Vale" based on a witness statement offered by Daniel Pollak.  BSGR further stated that if Vale should request that the Tribunal draw adverse inferences, BSGR "will respond at the appropriate time and its position is, for current purposes, reserved."  **The Tribunal**: No ruling is requested at this time.

142.  **Item (vi) Vale**: Vale requested the "'threatening letters' from Mr. Bah to Ms. Merloni-Horemans referenced in the Merloni-Horemans Witness Statement ¶ 30" in relation to Request No. 48(f). When BSGR stated that it could not locate responsive documents, Vale replied that "BSGR's claim that it cannot locate the very letters on which Ms. Merloni-Horemans relies in her witness statement casts grave doubt on her testimony, and Vale will at the appropriate time request an adverse inference be drawn."  **BSGR**: BSGR stated that "[n]either BSGR nor Ms. Merloni-Horemans has located the letters from Mr. Bah that Ms. Merloni-Horemans recalls receiving."  BSGR further stated that if Vale should request the Tribunal to draw adverse inferences, BSGR "will respond at

the appropriate time and its position is, for current purposes, reserved." **The Tribunal**: No ruling is requested at this time.

143. **Item (vii)** Vale and BSGR made arguments concerning the Swiss transcripts (*procés verbaux*) of Mr. Steinmetz and Ms. Merloni-Horemans.  Their arguments and the Tribunal's analysis and ruling are set forth in Section V.c above.

144. **Item (viii) Vale**: Vale argued that BSGR had not produced all pages of Mr. Steinmetz's Israeli passport between 1 January 2006 and 13 March 2006, responsive to Vale's Request No. 65(a).  When BSGR responded that it could not locate the passport, Vale stated that Mr. Steinmetz's failure to locate the passport for the dates of January 2006 to 13 March 2006, "the exact time period during which Vale's evidence shows he travelled to Guinea," "strains belief."  Vale requested that Mr. Steinmetz's testimony denying his presence in Guinea before March 2006 be stricken from the record, or it alternatively requested an adverse inference be drawn.  **BSGR**: BSGR initially stated that Mr. Steinmetz's passport prior to March 2006 had not been located by BSGR or its witnesses but that it had provided all pages of his passport issued in March 2006.  In its second submission BSGR noted that it had gone to the "trouble of obtaining customs records and other documents to evidence Mr. Steinmetz's whereabouts during the relevant period," and BSGR stated that it had also produced "full flight logs for the two aircraft owned by Mr. Steinmetz" during the relevant period.[137]  BSGR also reported that it had located the missing passport as of 8 January 2016 and produced the document that same day.[138]  It claimed that the delay was "not sinister."  **The Tribunal**: No ruling is made at this time.  The Tribunal reserves judgment on the issue.

145. **Item (ix) Vale**: Vale argued that BSGR had not produced the passenger details for BSGR's private aircraft, "Challenger 601," responsive to Vale's Request No. 65(b). When BSGR responded that it did not maintain such records, Vale requested that Mr. Steinmetz's testimony denying his presence in Guinea before March 2006 be stricken from the record, or it alternatively requested an adverse inference be drawn.  **BSGR**: BSGR stated that "[n]o passenger details are retained or required to be retained for the private aircrafts Challenger 601 or Global Express 5000.  All flight related details retained for the private aircraft have been produced."  As noted above, BSGR also observed that it had obtained and produced customs records and full flight logs for the

---

[137] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 18.

[138] BSGR did note that the newly recovered passport appeared to have expired in 2004 but stated that "further enquiries revealed that there was an extension to the passport and it in fact includes stamps from early 2006."

two aircraft owned by Steinmetz during the relevant period.  **The Tribunal**: No ruling is made at this time.  The Tribunal reserves judgment on the issue.  .

146. **Item (x)** Same as Item (ix) in relation to aircraft "Global Express 5000."

147. **Item (xi) Vale**: Vale claimed that BSGR had not produced pages missing from the "audit results report" for BSG Resources Limited (Guernsey) for the year ended 31 December 2010 in response to Request No. 4.[139]  When BSGR responded that it could not locate the missing pages of the report, Vale called BSGR's claim "improbable" and stated "at the very least BSGR could request and obtain a complete version of the report from its auditor, and the author of the report, Ernst & Young."  **BSGR**: BSGR stated that the "only version" of the "audit results report" for the year 2010 that it was able to locate was the one it produced with missing pages.  It noted that it had produced the "Consolidated and Company Financial Statements" to which the report related.  In its second submission, BSGR noted that it was only obliged to produce "audited financial statements," which it had done "in full."  BSGR described the "audit results report" (the subject of Vale's complaint) as a "different document" — a report for the board, and "not strictly responsive to the request."  BSGR argued that it should not be obligated to incur the time and expense of chasing missing pages from a document that need not have been produced.  **The Tribunal**: Having reviewed the language of Vale's Request No. 4(b) — which sought "audited financial statements for the Relevant Period" — the Tribunal agrees with BSGR that production of a board report concerning those financial statements is not required by the request.  BSGR is not obligated to search for and produce the missing pages to the report.

### g.  Skadden's Advice Concerning Pentler

148. As noted above, Pentler is the business entity of Michael Noy, Frédéric Cilins, and Abraham Lev Ran, which held shares of BSGR's subsidiary, BSGR Resources (Guinea) Limited BVI, in the past.  Vale claims that Pentler served as an intermediary for BSGR to make illegal payments, and it argues that BSGR should have disclosed, but did not disclose, the existence of Pentler to Vale at the time that Vale and BSGR entered into the Framework Agreement.

149. This Section relates to Vale's Request No. 19 for "[t]he correspondence, minutes of meetings and memoranda sufficient to establish the content of Skadden's advice to

---

[139] That request provided: "For each of the following entities (the 'BSG Entities'): . . . (b) The audited financial statements for the Relevant Period . . . ."

BSGR not to disclose to Vale BSGR's relationship with Pentler (Statement of Defence, ¶ 102; Steinmetz Witness Statement, ¶ 78)."  The Tribunal's decision in relation to that request was as follows:

> The Tribunal acknowledges BSGR's admission that "there has been a waiver of privilege in respect of advice given by Skadden to BSGR at the time."  Given BSGR's further statement that "there are no documents containing that advice," **NO DECISION** is required from the Tribunal.
>
> In response to Vale's request that "BSGR should be ordered to produce evidence confirming that it undertook best efforts to locate Documents responsive to the Request, including by requesting all such documents from Skadden," the Request is **GRANTED**, but only insofar as the Tribunal directs BSGR to inform the Tribunal of what efforts it took to obtain copies of the requested documents.

150.  BSGR provided the following explanation of the efforts it took to obtain the requested documents in a letter to Vale dated 18 November 2015:

> In respect of Vale's Request no. 19, the Tribunal has ordered BSGR to explain "what efforts it took to obtain copies of the requested documents".
>
> We were able to satisfy ourselves that there are no documents containing the advice referred to in this request because we reviewed the relevant files created by BSGR's former legal advisers, Skadden Arps, in advance of preparing BSGR's Statement of Defence.  There is no record of the advice in documentary form.[140]

### i.   Vale's Arguments[141]

151.  Vale complains that BSGR has not sufficiently informed the Tribunal of the efforts it took to locate responsive documents.  It cites BSGR's letter to Vale dated 18 November 2015, which suggested that BSGR had only reviewed Skadden's files, but not its own files or those of its agents.  Vale describes BSGR's efforts as "wholly inadequate" because Vale's request was not limited to documents created by Skadden, but also included e-mails or other writings summarizing or commenting on the advice.

152.  Vale also claims that BSGR's further confirmations that no documents exist only serve to cast further doubt on BSGR's claim.  If BSGR thought it necessary to seek legal

---

[140] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex 2, at 2).

[141] *See* Letter from Vale to the Tribunal dated 14 Dec. 2015, at 6–7; Letter from Vale to the Tribunal dated 29 Dec. 2015, at 12.

advice on this issue, it must have considered the issue an important one.  And BSGR's privilege log submitted to Vale in this arbitration shows that it had extensive communications with Skadden, so it is unlikely that nobody memorialized the advice concerning Pentler.

153. Vale requests that the Tribunal strike from the record any reference to the advice from Skadden.  It further requests that BSGR "be ordered to identify who at Skadden purportedly provided this advice to BSGR and when such advice was provided, as well as explain, as certified by Mishcon . . . what search was made of the files of BSGR's agents and affiliates to locate documents related to this purposed advice."[142]  Vale states that it will seek an adverse inference at the appropriate time.

### ii.   BSGR's Arguments[143]

154. BSGR apologizes to the Tribunal that it initially sent the explanation of its efforts only to Vale's counsel and not to the Tribunal.  In any event, it explains that it remains BSGR's position that no responsive documents exist.  In response to Vale's position that BSGR should have searched files beyond its own, BSGR explains that it did search the documents of its witnesses (in particular, Messrs. Cramer and Barnett and Ms. Merloni-Horemans) but found no responsive documents.  It observes that the role of Pentler was "not a major consideration" for BSGR during the 2010 negotiations, and thus Skadden did not reduce every detail of advice to writing, as is often the case with transactional lawyers.  Pentler was merely one of many variables discussed with Skadden and such advice was given face to face.  BSGR states that it was unclear what point Vale sought to make by referring to BSGR's privilege log.

155. BSGR rejects Vale's request that BSGR be ordered to identify who provided the relevant advice and when.  BSGR's counsel further advised that it is not willing to provide Vale with any certification.[144]  These matters can be addressed at the evidentiary hearing, and in any event, the drawing of adverse inferences would be the appropriate remedy, if necessary.

---

[142] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 12.

[143] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 8–9; Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 18–19; Hearing Tr. at 29:23–30:20.

[144] Hearing Tr. at 30:13–20.

### iii.    Tribunal's Analysis and Ruling

156.   The Tribunal finds BSGR's explanations inadequate.  In response to the Tribunal's direction that BSGR "inform the Tribunal of what efforts it took to obtain copies of the requested documents," BSGR simply provided (to Vale) that it "reviewed the relevant files created by BSGR's former legal advisers, Skadden Arps, in advance of preparing BSGR's Statement of Defence."    BSGR did not submit to the Tribunal any correspondence or other evidence showing how it attempted to locate the relevant documents, the scope of the search, terms used, etc.  The Tribunal recognizes that BSGR has repeatedly and adamantly denied the existence of any responsive documents. But its position in that regard was already established by the time the Tribunal issued its First Decision on Document Production.  The Tribunal's ruling was focused on the nature of BSGR's search efforts, not whether or not responsive documents existed.

157.   The Tribunal instructs BSGR's counsel to detail their interactions with all relevant witnesses or affiliates in the form of the relevant certification as directed in Paragraph 33 above.  BSGR should note that Request No. 19 covered more documents than those containing Skadden's actual advice to BSGR — which do not exist, according to the BSGR — but extended to include "correspondence, minutes of meetings and memoranda *sufficient to establish* the content of Skadden's advice." (Emphasis added.) Thus, the request covered documents discussing, reacting to, or commenting on Skadden's advice.   In addition to providing the information contemplated by the aforementioned certifications, BSGR's counsel shall include in the relevant certifications the identity of the Skadden lawyer(s) who gave the advice referred to concerning Pentler and the identity of the person(s) receiving the advice on behalf of BSGR.

158.   The Tribunal makes no further ruling at this time.  It reserves judgment on the issue.

### h.  Frédéric Cilins's Criminal Defense

159.   Frédéric Cilins is a French businessman who pleaded guilty to obstruction of justice in the United States.  He has submitted one witness statement on behalf of BSGR in this arbitration.  In its Request No. 60,[145] Vale requested documents showing that BSGR or

---

[145] That request was as follows:

"For the period from 14 April 2013 through the end of January 2015, the following Documents concerning the criminal proceedings in the Southern District of New York, case no. 13 CR 315 (WHP) (see, e.g., Exhibits C-10, C-117, C-150, C-152, and C-153):

its affiliates funded or were otherwise involved in the defense strategy for the U.S. criminal proceedings of Mr. Cilins.  The Tribunal ruled on Vale's request as follows:

> The Request is **DENIED** on the basis of legal privilege. In so ruling, the Tribunal acknowledges BSGR's statement that "there are no documents responsive to Request no[.] 60(a), (b) and (d)."
>
> In response to Vale's statement that BSGR "does not explain the steps that it took to ascertain that no such Document exists," the Tribunal directs BSGR to inform the Tribunal of what efforts it took to obtain copies of the requested documents.

160. BSGR provided the following explanation of the efforts it took to obtain the requested documents in a letter to Vale dated 18 November 2015:

> In respect of Vale's Request no. 60, the Tribunal has ordered BSGR to explain "what efforts it took to obtain copies of the requested documents".  The following electronic searches were carried out in relation to this request:
>
> (1) search terms applied — Cooley OR "Lehr, Fischer & Feldman" OR Lehr OR "Michelle P. Smith" OR Michelle (period applied — 14 April 2013 to 31 January 2015); and
>
> (2) a search for any emails to or from Mr. Cilins after 1 April 2013 on BSGR's databases.
>
> No responsive documents were found.[146]

   **i.    Vale's Arguments**[147]

161. As with Request No. 19 (discussed in the preceding Section), Vale argues that BSGR has not sufficiently informed the Tribunal of its efforts to obtain responsive documents.

---

a.    Invoices issued to one or more of Mr. Cilins and the BSG Entities by one or more of Mr. Cilins' New York and Florida criminal defence attorneys, Cooley LLP, Lehr, Fischer & Feldman, and the Law Office of Michelle P. Smith, P.A.;

b.    Payments, bank statements, withdrawal slips, wire transfers and copies of checks made by one or more of the BSG Entities, directly or indirectly, to any person in respect of the foregoing invoices;

c.    Correspondence, minutes of meetings and internal memoranda between one or more of Mr. Cilins, the BSG Entities, the above-mentioned law firms and attorneys in connection with the foregoing criminal proceedings;

d.    Payments, bank statements, withdrawal slips, wire transfers and copies of checks made by one or more of the BSG Entities in respect of Mr. Cilins' US$75,000 fine in connection with the foregoing criminal proceedings; and

e.    Any agreements between Mr. Cilins and one or more of the BSG Entities regarding a common defence privilege."

[146] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015 (Annex 2, at 3).

[147] *See* Letter from Vale to the Tribunal dated 14 Dec. 2015, at 7–8; Letter from Vale to the Tribunal dated 29 Dec. 2015, at 12–13.

Vale takes the position that BSGR's searches appear "designed to evade" rather than to identify responsive documents.  Although BSGR provided its search terms, it did not identify the universe of documents to which those search terms were applied, and BSGR's search for emails to or from Mr. Cilins was insufficient, because communications could have been through his attorneys, business partners, or family members.

162.  Vale informs the Tribunal that it will write to BSGR to confer regarding a proper search.  Vale also argues that BSGR's statements that it did not fund the defense of Mr. Cilins did not address the possibility that BSGR indirectly funded the defense.  Vale points out that in the U.S. litigation, BSGR applied similar search terms involving Mr. Cilins, resulting in 9,228 document hits.

163.  Vale requests that the Tribunal order BSGR to undertake further efforts to determine whether documents responsive to Request No. 60 exist.  It maintains that "BSGR must conduct an appropriate search of all communications it had with Mr. Cilins's erstwhile business partners, as well as with his attorneys, during the relevant period and produce any bank statements that may indicate wire transfers to them during that same period."[148]

### ii.   BSGR's Arguments[149]

164.  BSGR notes that Vale's criticisms in relation to this matter mirror those set forth in relation to Request No. 19.  BSGR continues to deny that it funded the defense of Mr. Cilins.  It informs the Tribunal (and provides copies of correspondence) showing that it told Vale the search terms BSGR applied "to all of those documents held by BSGR across its various servers."[150]   In response to Vale's request that BSGR expand its search to include communications with business partners or family members of Mr. Cilins, BSGR argues that it cannot be expected to waste such time and costs.  Nonetheless, BSGR agrees to engage with Vale further and suggests that Vale's counsel provide it with its proposed revised search terms.

---

[148] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 13.

[149] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 9–10; Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 19–20; Hearing Tr. at 30:21–31:3.

[150] Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 10.

165.  BSGR further provides that it "did not fund Mr. Cilins's criminal defence, whether directly or through a third party."[151]  As for the high number of hits obtained in a similar search in the context of the U.S. litigation, BSGR explains that there was a high volume of internal e-mail traffic in response to the media attention resulting from the arrest of Mr. Cilins; it also observes that searching for the first name "Fred" or "Frederic" resulted in documents involving other BSGR team members.  It maintains, however, that none of the e-mail traffic was responsive to Request No. 60, nor did it prove or suggest that BSGR funded the criminal defense proceedings.

### iii.   Tribunal's Analysis and Ruling

166.  The Tribunal finds BSGR's explanations inadequate.  Even though BSGR has provided more information concerning its search efforts in relation to this subject than in relation to Vale's Request No. 19, it has still failed to clearly identify the universe of documents to which its search terms were applied, and BSGR's searches did not cover communications through the attorneys, business partners, or family members of Mr. Cilins.  Nor does the Tribunal find BSGR's reason for refusing to expand its search — that it "cannot be expected to waste such time and costs" — compelling.  The Tribunal instructs BSGR's counsel to detail their interactions with all relevant witnesses or affiliates in the form of the relevant certification as directed in Paragraph 33 above.

### i.   Redactions

167.  Vale argues that BSGR has improperly redacted certain information from its productions to Vale.  BSGR, in its letter to the Tribunal dated 8 January 2016, for the first time argued that Vale had done the same in its own productions.[152]  Because Vale has not had an opportunity to address BSGR's arguments about Vale's redactions, the Tribunal will not address them in this Decision.  It urges the Parties to confer and seek to resolve any new issues relating to Vale's redactions among themselves.

168.  In relation to the redactions in BSGR's productions, both Parties raise arguments concerning Articles 9.2(a) and 9.2(e) of the IBA Rules, which state:

---

[151] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 19.

[152] *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 21–23 ("In fact, Vale is guilty of precisely the same error. . . .  BSGR's review of Vale's production is ongoing.  Once that review is complete, we will be writing to Cleary Gottlieb on a range of issues, including that set out above.  BSGR will seek to avoid troubling the Tribunal on these points unless absolutely necessary.  Of course, the Tribunal will understand that BSGR's position in that regard is strictly and expressly reserved.").

> The Arbitral Tribunal shall, at the request of a Party or on its own motion, exclude from evidence or production any Document, statement, oral testimony or inspection for any of the following reasons:
>
> (a) lack of sufficient relevance to the case or materiality to its outcome;
>
> . . .
>
> (e) grounds of commercial or technical confidentiality that the Arbitral Tribunal determines to be compelling.

169. The Parties also cite their internal correspondence in which they attempted to agree on certain guidelines for their document productions.  In particular, on 2 November 2015, Vale to wrote a letter to BSGR, stating:

> Regarding other redactions, we reject your proposal that documents responsive to Requests that the Tribunal granted, or to which either party agreed (so that the Tribunal did not need to make a ruling on the Request), can be redacted for purported lack of "relevance." However, we would agree to redacting portions of documents where those portions are not responsive to any Request and are wholly unrelated to the issues in the arbitration (for example, board materials that discuss subjects wholly unrelated to Guinean operations). Such redactions should briefly identify the basis for the redaction, *e.g.*, "Redacted as Not Responsive – discussion of non-Guinea operations." Vale expects such redactions will be few, and reserves its right to request in good faith additional information to substantiate any such redactions.[153]

170. On 12 November 2015, BSGR responded: "We refer to your letter dated 2 November 2015, and can confirm our agreement to your latest proposals as regards the privilege log and redactions."[154]

### i.   Vale's Arguments[155]

171. Vale argues that there are a number of documents in BSGR's productions with improper redactions of non-privileged information.  BSGR has "extensively" redacted bank statements and other payment documents.  Vale claims that it will be prevented from testing the truthfulness of statements made by BSGR and its witnesses about payments made to Pentler unless it can review full unredacted bank statements.

---

[153] Letter from Vale to the Tribunal dated 29 Dec. 2015 (Appendix at 193).

[154] Letter from Vale to the Tribunal dated 29 Dec. 2015 (Appendix at 195).

[155] *See* Letter from Vale to the Tribunal dated 14 Dec. 2015, at 8; Letter from Vale to the Tribunal dated 29 Dec. 2015, at 13–16.

172. Vale's second submission to the Tribunal advances two main arguments.  First, it accuses BSGR of taking a "slipshod approach" to applying its redactions.  In particular, Vale claims that BSGR in several instances produced multiple versions of a single document — one wholly unredacted and others with redactions, but that none of the redactions actually was of privileged information.

173. Vale raises five examples of documents in which BSGR appears to have redacted too much information: **(a)** In a 6 May 2012 e-mail chain, BSGR redacted Mr. Steinmetz's comments to a newspaper article, just inserting the word "privileged," although those comments appear in full in other versions of the same document produced by BSGR;[156] **(b)** Vale refers generally to 23 pages of e-mail chains concerning other news stories showing certain information as redacted as "privileged";[157] **(c)** BSGR produced a seven-page document, including a coversheet with payment instructions for a Mr. Ghassan Boutros (a BSGR intermediary in Guinea, according to Vale) and six additional pages that Vale believes would contain context and justification for the payment but which are redacted, stating "Redacted as not responsive — non-LMS related";[158] **(d)** BSGR produced 10 pages of JP Morgan bank statements disclosing payments related to Pentler but redacting other material, including the account number which Vale claims would prove a link between BSGR and Pentler (that redaction states "Redacted as not responsive — non-Guinea related payment," and the other redactions either insert black boxes over the text or state "all redacted banking information non-responsive other than transactions relating to Pentler settlement");[159] and **(e)** BSGR produced a July 2009 financial statement with "extensive redactions" (stating "All redactions in this document are made on the basis that information is non responsive — non-Guinea project related payments"), although Vale claims that the entirety of the document is directly responsive to its requests.[160]

174. Vale characterizes BSGR's approach as improper "self-help redactions" and asserts that BSGR has acted inconsistently with Articles 9.2(a) and 9.2(e) of the IBA Rules, as quoted above.  Vale contends that only the Tribunal, not BSGR, has authority to

---

[156] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 13–14 & nn.58, 60; *id.* (Appendix at 92, 100, 108).

[157] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 14; *id.* (Appendix at 129–52, see especially pp. 126, 143).

[158] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 14; *id.* (Appendix at 153–59).

[159] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 14; *id.* (Appendix at 169–78).  The account number is redacted on page 174 of the Appendix.

[160] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 15; *id.* (Appendix at 179–91).

determine whether it would be proper to redact a certain document.  It focuses on the language from those IBA provisions that "the arbitral tribunal retains the discretion to determine . . . considerations of confidentiality or sensitivity" and that the "tribunal must find the concerns to be 'compelling' in order to exclude the evidence."[161] Vale indicates that the correct procedure to establish such "compelling" concerns would require review by the Tribunal, an independent expert, or "counsel only" review.[162]

175. Vale also asserts that BSGR violated the Parties' mutual arrangement for redactions set forth in their correspondence of 2 November 2015 and 12 November 2015 (quoted above).  In Vale's view, it only agreed to "few" redactions and reserved the "right to request in good faith additional information to substantiate any such redactions," whereas BSGR has "frequently redacted bank statements and payment documents."[163]

176. Vale also argues that the Tribunal already denied any claim from BSGR that documents could be redacted for irrelevance or commercial sensitivity because the Tribunal's First Decision on Document Production and accompanying Redfern granted certain requests subject only to legal privilege.  Vale points out that in opposing Vale's requests relating to bank statements or payments in the Redfern Schedule, BSGR failed to raise objections on the basis of commercial confidentiality.[164]

177. Vale requests that the Tribunal order BSGR to produce all bank statements and payment documents in unredacted form, or appropriately substantiate each of the redactions it has made.

## ii.   BSGR's Arguments[165]

178. As a preliminary matter, BSGR explains that it is involved in projects unrelated to the matters in dispute in this arbitration, and thus it takes the position that it cannot be required to disclose irrelevant, confidential, and commercially sensitive information from those other projects.  It points out that Vale is a competitor, and thus BSGR should not have to "open its books," save to the extent that it relates to matters in

---

[161] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 15.

[162] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 15 n.68 (citing IBA Working Party, *Commentary on the New IBA Rules of Evidence in International Commercial Arbitration*, B.L.I. Issue 2, 23 (2000)).

[163] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 16; *id.* (Appendix at 193).

[164] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 16 n.71.

[165] *See* Letter from BSGR to the Tribunal dated 24 Dec. 2015, at 10–11; Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 20–24; Hearing Tr. at 31:4–32:25.

dispute in this arbitration.[166]  It states that any large-scale document production carries with it the risk of minor errors and inconsistencies.  In any event, BSGR asserts that Vale should have raised the issues relating to its redactions in inter-party correspondence.

179. BSGR responds to Vale's arguments about individual documents, discussed in Paragraph 173 above, as follows: **(a)** BSGR accepts that a passage from the 6 May 2012 e-mail was incorrectly redacted, yet Vale suffered no prejudice because the unredacted version appears elsewhere;[167]  **(b)** BSGR does not offer any comments concerning the 23 pages of e-mail chains showing certain information as redacted;[168] **(c)** BSGR denies any wrongdoing with respect to the document that reflects payment instructions for Mr. Ghassan Boutros, stating that the first page of the document discloses relevant information and the other six pages were properly redacted as they relate to payments unconnected to the issues arising in this arbitration;[169]  **(d)** BSGR concedes that it improperly redacted an account number on one page of the JP Morgan bank statement but maintains that no prejudice was suffered because the account number is disclosed on every other page of the document;[170] and **(e)** BSGR maintains that it was entitled to redact all the details unrelated to the Guinea/Simandou project in its July 2009 Monthly Financial Report and that passages relating to Guinea have, in fact, been disclosed.[171]

180. BSGR interprets Articles 9.2(a) and 9.2(e) of the IBA Rules as entitling a producing party to withhold documents, or parts of those documents, on grounds of relevance or commercial sensitivity.  It does not dispute that the Tribunal is the ultimate arbiter over redactions but maintains that in practice the producing party always bears the primary responsibility for redacting irrelevant or commercially sensitive passages from among any potentially relevant documents it may produce.

181. In response to Vale's suggestion that the documents giving rise to this controversy could be reviewed by the Tribunal or an independent expert, BSGR states:

---

[166] Hearing Tr. at 31:10–13.

[167] Letter from Vale to the Tribunal dated 29 Dec. 2015 (Appendix at 92, 108).

[168] *See* Letter from Vale to the Tribunal dated 29 Dec. 2015 (Appendix at 129–52).

[169] Letter from Vale to the Tribunal dated 29 Dec. 2015 (Appendix at 153–59).

[170] Letter from Vale to the Tribunal dated 29 Dec. 2015 (Appendix at 169–78).

[171] Letter from Vale to the Tribunal dated 29 Dec. 2015 (Appendix at 179–91).

> Should the Tribunal wish to review the documents referred to by
> Vale, or appoint an independent expert to carry out that review,
> BSGR would be pleased to facilitate that review.   BSGR has
> nothing to hide, although that does not entitle Vale to secure
> access to documents to which it is not entitled.
>
> . . .
>
> [S]hould BSGR be ordered by the Tribunal to share with it, but not
> Vale, those documents containing redactions made on BSGR's
> behalf, BSGR would be pleased to resolve this issue in that
> manner.[172]

182.   BSGR disagrees with Vale's interpretation of the Tribunal's First Decision on
Document Production, namely that the Tribunal only authorized the Parties to redact
documents on the basis of legal privilege.   According to BSGR, commercial confidence
is only being asserted here over non-responsive documents, or non-responsive passages
from responsive documents, and there is nothing in the Tribunal's First Decision on
Document Production requiring the Parties to produce non-responsive documents.

### iii.   Tribunal's Analysis and Ruling

183.   As noted above, the Tribunal makes no ruling at this time concerning any disputes
relating to redactions in Vale's document productions.   The Tribunal restricts its
analysis and decision in this section to the issues surrounding redactions in BSGR's
document production.

184.   Before addressing each of the arguments raised by the Parties, the Tribunal recalls that
it included two short passages in its First Decision on Document Production entitled
"Privilege" and "Production Procedures," which are instructive.   The section on
"Privilege" provided:

> As is customary in complex international arbitrations, both Parties
> have objected to some requests from the other side on the basis of
> privilege.     The Tribunal's rulings in the attached Redfern
> schedules are intended to account for each occasion in which a
> Party has raised an objection based on privilege.   The Tribunal
> offers the following additional guidance to the Parties as they go
> about preparing their respective document productions, including
> any necessary privilege logs, in the coming weeks:
>
> Where the Tribunal either denied a request on the basis of
> privilege or on some other basis, the Party on the receiving end of
> the document request has no duty to search for responsive

---

[172] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 23–24.

documents or to list them on a privilege log.  On the other hand, where the Tribunal has granted a request (or any portion thereof) "subject to legal privilege," the Party on the receiving end of the document request does have a duty to search for responsive documents, but it may list any privileged documents falling within that request on a privilege log.  Similarly, where the Tribunal has granted a request (or any portion thereof) without any reference to privilege, the Party on the receiving end of the document request has a duty to search for responsive documents, and it should either produce the document or list it on a privilege log along with some justification.

The Tribunal reminds the Parties that if they will be exchanging privilege logs, they should use the same format.  As is set forth in paragraph 12(b) of Procedural Order No. 2: "Before the deadline for the production of documents, the Parties shall confer and come to an agreed procedure for the content and format of any necessary privilege logs."  Privilege logs shall only be sent to the Tribunal if, after consultation between the Parties, the Parties require some intervention or additional ruling by the Tribunal.[173]

185.  The portion on "Production Procedures" provided:

The Tribunal invites the Parties to consult and agree on the modalities of production of all documents ordered by the Tribunal.  It urges the Parties – before production – to settle on a joint approach concerning such issues as bates numbering and indices, including, for example, whether the producing Party shall disclose at the time of production which documents correspond to which requests.  Unless the Parties agree otherwise, the Tribunal expects that all documents produced shall not be sent to the Tribunal in the first instance, but only to the opposing Party.[174]

186.  The Tribunal reaffirms its rulings from the First Decision on Document Production in full.[175]  BSGR shall produce to Vale all bank statements and payment documents that respond to any of Vale's granted requests in unredacted form unless full production was otherwise explicitly exempted by the First Decision on Document Production.  Because neither Party broke down its arguments relating to redactions on a request-by-request basis, the Tribunal does not do so in its analysis here.  Suffice it to clarify that where

---

[173] First Decision on Document Production ¶¶ 23–25.

[174] First Decision on Document Production ¶ 26.

[175] The Tribunal notes that both Parties agree that it has the authority to rule on this issue.  *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 23 ("[T]he Tribunal is the ultimate arbiter of whether a document, or passages from a document, are relevant and/or can be redacted on grounds of commercial sensitivity."); *see also* Letter from Vale to the Tribunal dated 29 Dec. 2015, at 15 ("[T]he Tribunal, not BSGR, is the ultimate authority to determine whether it is proper to redact a relevant document on grounds of partial irrelevance or commercial sensitivity.").

the Tribunal granted a particular request for production of banking and financial documents, it found the entirety of the targeted documents relevant and material, subject only to legal privilege where applicable.

187. The Tribunal finds it especially important in an arbitration focused on allegations of fraud and corruption that both of the Parties and the Tribunal be permitted to examine complete copies of financial evidence.  Without unredacted versions of such documents, the Tribunal will be unable to assess the truthfulness of the serious allegations raised.  The Tribunal is troubled by the redactions found in the sample documents submitted by Vale to the Tribunal which show how BSGR redacted certain portions of its financial documents before disclosing them to Vale.  The flow of funds from BSGR and its circle of affiliates shown in their own documents, even if ostensibly unrelated to Guinea or the Simandou project, could shed valuable light on the issues under consideration in this arbitration.  Without making any findings or assumptions about what the full factual record in this case will reveal on the merits, the Tribunal understands that evidence of fraud and corruption can transcend the boundaries imposed by a particular project or a country.

188. In the inter-Party correspondence exchanged on 2 November 2015 and 12 November 2015 it appears that the Parties sought to "agree on the modalities of production," as they had been invited to do by the Tribunal,[176] and that they decided that a Party may "redact[] portions of documents where those portions are not responsive to any Request and are wholly unrelated to the issues in the arbitration," and such "redactions should briefly identify the basis for the redaction."[177]  The Tribunal's ruling is consistent with this arrangement.  In particular, the Tribunal does not find that any portions of Respondent's bank statements or payment documents, which are responsive to Vale's granted requests, could be "not responsive to any Request" or "wholly unrelated to the issues in the arbitration."

189. BSGR asserts that certain passages found within those documents are "commercially sensitive" and therefore non-responsive.  But BSGR either failed to raise any objections relating to commercial sensitivity in Vale's Redfern Schedule, or where it did so, the Tribunal granted Vale's request or did so only subject to legal privilege.  The Tribunal thus does not find that such considerations now warrant the exclusion of complete

---

[176] Tribunal's First Decision on Document Production, ¶ 26.

[177] Letter from Vale to the Tribunal dated 29 Dec. 2015 (Appendix at 193, 195).

versions of responsive documents from production.  The Tribunal's ruling is also consistent with Article 3.4 of the IBA Rules 2010 which states:

> Within the time ordered by the Arbitral Tribunal, the Party to whom the Request to Produce is addressed shall produce to the other Parties and, if the Arbitral Tribunal so orders, to it, all the Documents requested in its possession, custody or control as to which it makes no objection.

190. Based on the above analysis, the Tribunal sees no utility in asking BSGR to "substantiate" its redactions or to submit copies of the documents to the Tribunal or to an independent expert for review.

191. In relation to the individual documents discussed by the Parties, the Tribunal rules as follows:  **(a)** The Tribunal acknowledges BSGR's statement that it improperly redacted a passage from the 6 May 2012 e-mail.  Given that BSGR has already produced an unredacted version of the same document to Vale, no further ruling is required from the Tribunal.  **(b)** BSGR did not address the e-mails concerning news articles found in pages 129–52 of the Appendix to Vale's letter dated 29 December 2015.[178]  The Tribunal notes that the documents in question relate to news articles, not bank statements or payment documents.  Nonetheless, BSGR has put forward no reason whatsoever to have withheld production of the redacted material.  The Tribunal directs BSGR to provide unredacted versions of the documents to Vale.  **(c)** The Tribunal directs BSGR to produce unredacted versions of the documents to Vale.  **(d)** The Tribunal acknowledges BSGR's statement that it improperly redacted a bank account number on one page of the JP Morgan bank statement.  But BSGR has not responded to Vale's additional complaint that the other redactions found in the document are improper.   The Tribunal directs BSGR to produce an unredacted version of the document to Vale.  **(e)** The Tribunal directs BSGR to produce an unredacted version of the document to Vale.

192. Going forward, the Tribunal is of the view that for any documents produced by either Party, whether pursuant to a request or voluntary disclosure, redactions should not be made before production.  The Tribunal draws the Parties' attention to the last sentence of Article 3.7 of the IBA Rules ("Any such Document [i.e. documents ordered to be produced] shall be produced to the other Parties and, if the Arbitral Tribunal so orders,

---

[178] *See* Letter from Vale to the Tribunal dated 29 Dec. 2015, at 14; *id.* (Appendix at 129–52, see especially pp. 126, 143).

to it") and to Article 9.2 of the same ("The Arbitral Tribunal shall, **at the request of a Party**…exclude from evidence or production any Document, statement… for any of the following reasons." [Emphasis added.]) Ideally, when there is a Redfern Schedule, or a standalone request for production, the Party declining to produce should state its reservation (in addition to its primary ground for non-disclosure) that, if the Tribunal does order production, there would need to be redactions (giving the broad areas of redaction and the reasons thereof). The Tribunal would then hear the requesting Party's response to the request for redaction and, if the Tribunal permits redaction, only then should the redactions be made.

### j.  Remedies

#### i.  Vale's Arguments[179]

193.  Vale requests:

> [T]he Tribunal should order BSGR to obtain and produce the documents Vale has requested, *inter alia* (a) those documents within the possession, custody, or control of BSGR's "circle of affiliates" and its own witnesses, including those documents its witnesses have referred to and relied on in the preparation of their witness statements, (b) all bank statements and payment documents in unredacted form (or to substantiate each redaction made in those documents), [and] (c) to otherwise remedy the deficiencies in its Production as described herein and in the 14 December 2015 Letter, including by having its lawyers certify to BSGR's interactions with its circle of affiliates, witnesses, and third parties regarding document production. . . . Further, in the event BSGR continues to violate the Tribunal's Decision by refusing to remedy the myriad deficiencies in its Production, Vale asks that the Tribunal take appropriate steps to alleviate the substantial resulting prejudice on Vale by either striking from the record portions of BSGR's witness statements relying on unproduced documents and/or by drawing negative inferences with regard to subjects about which responsive documents have not been produced.[180]

194.  Vale insists that while the Tribunal may draw adverse inferences, it is not limited to that remedy.  It maintains that the Tribunal indisputably has the power to strike from the record a Party's contentions as to which it has failed to produce documents in response to a Tribunal order.  It cites Article 14.2 of the LCIA Rules (providing the

---

[179] *See* Letter from Vale to the Tribunal dated 29 Dec. 2015, at 16–18; Hearing Tr. at 18:13–19:7.
[180] Letter from Vale to the Tribunal dated 29 Dec. 2015, at 18.

Tribunal with the "widest discretion" to discharge its duties).  Vale also points out that the IBA Rules nowhere state that adverse inferences and costs are the only possible consequences for a Party's failure to comply with document production orders.  And Vale states that the English Arbitration Act of 1996 expressly authorizes the Tribunal to exclude from the record assertions when a party has failed to comply with a production order.

### ii.    BSGR's Arguments[181]

195.  BSGR calls Vale's request that the Tribunal strike sections of BSGR's witness statements "wholly inappropriate."[182]   The removal of evidence from witness statements would be contrary to the obligation on the Tribunal set forth in Section 33(1)(a) of the Arbitration Act that each Party be given "a reasonable opportunity of putting his case, and dealing with that of his opponent."  BSGR maintains that the Tribunal is not in a position to decide what weight to attach to any particular item of evidence at this stage of the proceedings.

### iii.    Tribunal's Analysis and Ruling

196.  The Tribunal has already addressed the arguments outlined here in other parts of this Decision.  The Tribunal's ruling on BSGR's redactions can be found in Section V.i.iii above, and its ruling on Vale's proposed certifications can be found in Section IV.iii. above.  In response to Vale's requests that the Tribunal strike evidence from the record or apply adverse inferences, the Tribunal issues no ruling at this time and reserves judgment on the issue.

### k.  Documents Produced by BSGR in the U.S. Litigation

197.  As noted in Section V.b. above, Vale initially raised, but then withdrew, a request that the Tribunal rule on certain documents produced by Mr. Thiam in the U.S. litigation. During the telephonic hearing held on 4 February 2016, Vale raised a different request, namely that the Tribunal order BSGR to permit Vale to use in this arbitration the documents produced by BSGR in the U.S. litigation.[183]   The Chairman of the Tribunal suggested that the Parties first attempt to agree on a list of BSGR's documents from the

---

[181] *See* Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 24–27; Hearing Tr. at 33:1–34:15.
[182] Letter from BSGR to the Tribunal dated 8 Jan. 2016, at 24–25.
[183] Hearing Tr. at 50:22–51:7.

U.S. litigation which Vale could introduce in this arbitration, and the Parties accepted the Chairman's proposed course of action.[184]   Yet on 10 February 2016 Vale submitted a letter to the Tribunal (attaching inter-Party correspondence), informing the Tribunal that the Parties had failed to come to agreement and explaining that Vale now seeks a ruling from the Tribunal, as set forth in detail in Paragraphs 198 to 200 below.  On 11 February 2016 BSGR responded to Vale's letter.

### i.   Vale's Arguments[185]

198.   Vale points out that BSGR's documents from the U.S. litigation were already produced by BSGR to Vale in the course of that proceeding.  The dispute between the Parties only arises because BSGR has refused to allow Vale to use the same documents in this arbitration since they are protected by a confidentiality order in the U.S. litigation.  If BSGR would simply agree that Vale can use them in this arbitration, BSGR would not have to produce anything more and Vale would not be required to obtain permission from the U.S. court or Rio Tinto (the plaintiff in the U.S. litigation).[186]

199.   Vale explains that on 5 February 2016 it provided a list to BSGR of 28 BSGR documents from the U.S. litigation, yet BSGR only agreed to give Vale permission to use 10 of those documents and BSGR challenged the responsiveness of the remaining documents to Vale's Redfern Schedule.  Rather than engage in further debate and delay, Vale wrote to the Tribunal on 10 February 2016, seeking relief.

200.   Vale specifically requests that the Tribunal either (i) direct BSGR to permit Vale to use in this arbitration any documents produced by BSGR in the U.S. litigation; or (ii) order that Vale can use in this arbitration the 16 documents listed in Annex A to Vale's letter to the Tribunal of 10 February 2016 as to which BSGR so far has denied Vale permission to use them in this arbitration.   Vale prefers the former type of relief because it would "avoid the necessity of Vale returning to the Tribunal for further direction should BSGR's Rejoinder include assertions that are contradicted by other documents produced in the U.S. litigation."[187]

---

[184] Hearing Tr. at 52:23–53:3, 54:22–55:13.

[185] Letter from Vale to the Tribunal dated 10 Feb. 2016; Hearing Tr. at 17:7–22, 43:11–15, 48:2–52:4.
[186] Hearing Tr. at 48:2–50:21.
[187] Letter from Vale to the Tribunal dated 10 Feb. 2016, at 2.

ii.   **BSGR's Arguments**[188]

201. BSGR does not dispute that Vale already possesses copies of all of BSGR's documents produced in the U.S. litigation and that the disclosing party to the U.S. litigation can waive its rights to confidentiality over the documents produced in the U.S. litigation.[189] BSGR argues that Vale already had the chance to review all of BSGR's documents from the U.S. litigation and target the relevant documents in its Redfern Schedule. Vale did not ask for the production of all of BSGR's documents in Vale's original Redfern Schedule because such a request would have been too broad to be granted. Vale's right to BSGR's documents is thus limited to those already ordered by the Tribunal.

202. BSGR cites arguments made by Vale in response to BSGR's document requests to point out alleged inconsistencies in Vale's position.  In particular, page five of BSGR's Redfern Schedule reflects the following argument from Vale:

> There has already been voluminous document production in the RICO Proceedings – which, unlike the present arbitration, are taking place under broad U.S. discovery rules. While many of the documents produced in the RICO Proceedings are subject to confidentiality restrictions prohibiting their use in the arbitration, the parties have had the unique opportunity to review each other's productions to identify specific documents that each would like to use in the arbitration. ***Accordingly, in its own Redfern Schedule, Vale has requested certain documents produced in the RICO Proceedings, and did so through narrow and specific requests for documents in BSGR's possession, so as to comply with the procedural rules applicable in this arbitration***. In sharp contrast, BSGR's Requests for documents produced in the RICO Proceedings are overbroad and non-specific, copied, sometimes nearly *verbatim*, from Rio Tinto's document requests in the RICO Proceedings, which were in many instances ruled by the U.S. court to be too broad even under the expansive U.S. rules, or limited by agreement of the parties because of such overbreadth. Such a "fishing expedition" is not only the antithesis of the "narrow and specific" category of documents required by IBA Rules Art. 3(3)(a)(ii), but also is inexplicable given that ***BSGR was uniquely able to identify, as Vale did, specific documents relevant to the arbitration based on the document productions already made in the RICO Proceedings***, but failed to do so. (Emphasis added.)

203. BSGR asserts that it agreed with Vale with respect to 10 of the 28 documents put forward by Vale because those 10 documents were responsive to Vale's requests, were

---

[188] Letter from BSGR to the Tribunal dated 11 Feb. 2016; Hearing Tr. at 21:13–23:8, 52:6–54:2.
[189] Hearing Tr. at 21:13–18, 52:7–9.

already in the possession of Vale, and most of them had already been produced by BSGR in this arbitration anyway.  BSGR maintains that the remaining 18 documents are not responsive to Vale's requests.

### iii.    Tribunal's Analysis and Ruling

204. This subject differs from the other issues addressed in this Decision in that it does not concern the *actual production of documents*.  Rather, Vale has called upon the Tribunal to rule on Vale's ability to *use documents* from BSGR in this arbitration that Vale *already possesses*.  The only obstacle for Vale is BSGR's refusal to waive its rights under the U.S. protective order.

205. Having reviewed the list of documents set forth in Annex A to Vale's letter of 10 February 2016, the Tribunal finds that the 16 documents described by Vale appear relevant and material to this dispute.  In fact, however, the Tribunal does not view this issue as a question of relevance and materiality.  Nor does the Tribunal find it useful to determine whether the documents produced by BSGR in the U.S. litigation fall within the requests set forth in Vale's Redfern Schedule.  The point is that Vale already has the documents in question.  The Tribunal sees no reason why Vale should not be permitted to use them in this arbitration to the extent it decides to do so.  The Tribunal's ruling on how to weigh the actual evidentiary value of such as those documents as are actually introduced into this arbitration will take place only after the Tribunal has heard all of the Parties' arguments on the merits.

206. The logic of the Tribunal's analysis extends beyond the subset of 16 documents put forward by Vale and covers all documents produced by BSGR in the U.S. litigation.  As such, the Tribunal directs BSGR to permit Vale to introduce into this arbitration any document produced by BSGR in the U.S. litigation.

207. The Tribunal observes that the application before it only required the Tribunal to rule on BSGR's documents in the U.S. litigation, not Vale's documents in the U.S. litigation.  During the telephonic hearing held on 4 February 2016, counsel for Vale indicated that the Parties' ongoing discussions concerning the adequacy of Vale's document productions "would be facilitated frankly by a ruling by the tribunal on this question of the documents in the Rio [Tinto] case, because some of [BSGR's] complaints are about that subject."[190]

---

[190] Hearing Tr. at 61:14–18.

208. The authority of the Tribunal to grant the relief granted in Paragraph 206 above the Tribunal is found, *inter alia*, in the LCIA Arbitration Rules (1998), in particular Articles 14.1, 14.2 and 22.1(c), (d) and (e), and the English Arbitration Act (1996), in particular Sections 33 and 34(2)(d) and (g).  This includes the authority of the Tribunal to draw adverse inferences with respect to the merits of Claimant's case in the event BSGR declines to grant permission for Claimant to use BSGR's documents submitted in the U.S. litigation as directed in Paragraph 206.

## VI.  CONCLUSION

209. As discussed in Paragraph 3 of this Decision, the Tribunal's rulings with respect to each of the various subjects raised by the Parties can be found within the Sections of this Decision devoted to those subjects.  The Tribunal directs the Parties to review this Decision in its entirety and comply with the Tribunal's rulings in an efficient and good faith manner.  BSGR shall take all measures to comply with all terms of this Decision as soon as possible.  The Tribunal anticipates the possibility, given the terms of this Decision, that Vale may seek to extend the deadline for its Reply submission, currently scheduled for 3 March 2016, so that it has sufficient time to review BSGR's additional disclosures.  If so, it requests that Vale first confer with BSGR in an attempt to agree on the new proposed deadline before seeking permission from the Tribunal.

Dated: 15 February 2016

Charles N. Brower

Charles N. Brower

Chairman of the Tribunal

*On behalf of the Tribunal*