# Exhibit F

London Court of International Arbitration
In the Matter of an Arbitration

**Vale S.A.**

– Claimant –

– v. –

**BSG Resources Limited**

– Respondent –

LCIA ARBITRATION. NO. 142683

---

# Third Decision on Document Production

---

*Members of the Tribunal*

Mr. David A.R. Williams, QC

Mr. Michael Hwang, SC

Judge Charles N. Brower, President

*Secretary of the Tribunal*

Mr. Michael P. Daly

18 March 2016

I. INTRODUCTION .......... 1

II. VALE'S ARGUMENTS .......... 3

III. BSGR'S ARGUMENTS .......... 4

IV. ANALYSIS AND RULING FROM THE TRIBUNAL .......... 6

V. CONCLUSION .......... 8

## I. INTRODUCTION

1. On 17 October 2015, this Tribunal issued its First Decision on Document Production, including two attachments with rulings on individual document requests set forth in Redfern Schedules.[1] Paragraph 24 of the First Decision on Document Production stated:

> Where the Tribunal either denied a request on the basis of privilege or on some other basis, the Party on the receiving end of the document request has no duty to search for responsive documents or to list them on a privilege log. On the other hand, where the Tribunal has granted a request (or any portion thereof) "subject to legal privilege," the Party on the receiving end of the document request does have a duty to search for responsive documents, but it may list any privileged documents falling within that request on a privilege log. Similarly, where the Tribunal has granted a request (or any portion thereof) without any reference to privilege, the Party on the receiving end of the document request has a duty to search for responsive documents, and it should either produce the document or list it on a privilege log along with some justification.

2. The Tribunal's rulings on the individual document requests issued with its First Decision on Document Production included its ruling on Request No. 61(a) from Vale's Redfern Schedule. That Request called for

> [t]he following Documents concerning the ongoing investigation into the acquisition of the Mining Rights (the "Swiss Investigation"): (a). Documents communicated to or obtained by one or more of the BSG Entities and ONYX in the course of their participation in the Swiss criminal proceedings related to instructions one or more of the BSG Entities and ONYX made to Pentler or Messrs. Cilins, Noy or Lev Ran related to their activities in Guinea…

3. BSGR objected to the request, among other reasons, because "the requested documentation is protected from disclosure on the grounds of legal impediment or privilege – Article 9(2)(b)."

4. The Tribunal ruled on Request No. 61 as follows:

[1] Unless otherwise specified above, the abbreviations used in this Tribunal's First and Second Decisions on Document Production shall also apply to this Decision.

> The Request is **GRANTED**, ***subject to legal privilege***. In addition to searching its own files and those of its subsidiaries, BSGR is directed to use its best efforts to obtain and produce responsive documents, including by seeking to obtain copies of the relevant documents from other business entities with which BSGR has a close relationship or from any witness(es) put forward by BSGR in this arbitration. (Emphasis added.)

5. Following the First Decision on Document Production, Vale raised arguments in correspondence to the Tribunal that BSGR had failed to fulfill its obligations as mandated by the Tribunal. After considering hundreds of pages of letters and attachments from the Parties, the Tribunal issued its Second Decision on Document Production on 15 February 2016. Among other things, the Second Decision on Document Production made clear that BSGR was obligated to produce to Vale the documents seized by Swiss law enforcement authorities from Beny Steinmetz and Onyx in response to Vale's Request No. 61(a).[2]

6. After the Tribunal issued its Second Decision on Document Production, BSGR sent five letters to the Tribunal providing updates regarding its ongoing efforts to comply with the Tribunal's rulings.[3] The letters indicated that, with respect to the documents seized by the Swiss authorities from Mr. Steinmetz and Onyx, BSGR was reviewing its forthcoming productions for privileged documents, which it intended to withhold.[4]

---

[2] *See* Second Decision on Document Production ¶ 88 ("Vale requests that the Tribunal direct BSGR to produce or use its best efforts to produce transcripts of interviews with Mr. Steinmetz and Ms. Merloni-Horemans conducted as part of the Swiss investigation as well as documents seized by the Swiss authorities. The Tribunal decides to grant Vale's request concerning both groups of documents on the terms set forth below.); *id.*, ¶ 95 ("The Tribunal separately finds that BSGR should use its best efforts to obtain and produce copies of the documents seized by Swiss authorities."); *id.*, ¶ 97 ("Based on the full context of Vale's Request No. 61(a) the Tribunal finds that the aim of Vale's request covered all documents from the Swiss criminal proceedings related to instructions made to Pentler or it principals concerning Guinea, including any such documents that were seized by the Swiss authorities."); *id.*, ¶ 132 ("As set forth above, the Tribunal disagrees with BSGR's position that it has no obligation to produce documents seized by the Swiss authorities. The Tribunal directs BSGR to use its best efforts to obtain and produce to Vale those documents that were seized from Onyx and fall within Vale's Request No. 61(a) as explicated by the Tribunal … above.").

[3] *See* Letters from BSGR to the Tribunal dated 19 February 2016, 26 February 2016, 4 March 2016, 11 March 2016, and 18 March 2016.

[4] *See* Letter from BSGR to the Tribunal dated 26 Feb. 2016 ("Onyx's Swiss lawyer holds approximately 10 files of the approximately 40–60 files which were seized. The approximately 10 files were scanned onto a USB stick which we received at lunchtime today. We are in the process of uploading those documents onto a review platform. Once the upload is complete, ***we will review the material for privileged documents with a view to providing Vale with the non-privileged documents shortly thereafter***."); Letter from BSGR to the Tribunal dated 4 Mar. 2016 ("BSGR is to use its best efforts to obtain and produce to Vale the documents seized [from Mr. Steinmetz] by the Swiss authorities. Mr. Bonnant has provided us with hard copies of those documents that were in his possession. To date we have provided Vale with the first of 5 of the files we have received, ***subject to the removal of any privileged documents. The review for privilege is ongoing in relation to the remaining files***."); Letter from BSGR to the Tribunal dated 11 Mar. 2016 ("BSGR is to use its best efforts to obtain and produce to Vale the documents seized by the Swiss Authorities [from Mr. Steinmetz]. Mr. Bonnant has

7. On 13 March 2016, the Tribunal wrote to the Parties to "observe[] that BSGR's correspondence refers to documents that BSGR intends to withhold on the basis of privilege." It went on:

> Although the Second Decision on Document Production did not make specific reference to privilege logs, the Tribunal is of the view that BSGR shall produce an updated privilege log to Vale for any documents that it intends to withhold on that basis in accordance with paragraphs 23–25 of the Tribunal's First Decision on Document Production. This is necessary to proper case management as it will be required in order for the Claimant to evaluate claims of privilege with respect to specific documents withheld on the basis of claimed privilege and for the Tribunal to rule on any objections that may be made by the Claimant to such claims of privilege.

8. On 15 March 2016, Vale submitted a letter to the Tribunal triggering the instant dispute. The Tribunal invited BSGR to submit a response on 16 March 2016, which it did.

## II. VALE'S ARGUMENTS

9. Vale accuses BSGR of "continued efforts to delay complying with the Tribunal's [Second Decision on Document Production]" with respect to documents seized in Switzerland from Mr. Steinmetz and Onyx. Vale reserves the right to challenge BSGR's claims for privilege after having an opportunity to review BSGR's privilege log.

10. Vale also argues that BSGR has no right anyway to claim privilege over any of the documents seized by the Swiss authorities:

> [I]n the case of the previously seized Onyx and Steinmetz documents, BSGR has expressed an intent to withhold documents as purportedly privileged when ***it is clear that no such legitimate claim can be made***.
>
> BSGR has told us that on 26 February 2016, it received from Onyx 10 binders of documents that had been seized from Onyx's premises by Swiss authorities, ***all of which the Tribunal ordered BSGR to produce*** in its 15 February 2016 Second Decision on

---

provided us with hard copies of those documents that were in his possession. We have now provided Vale with the equivalent of an additional 6 files of documents, ***subject to the removal of any privileged documents. The review for privilege is ongoing in relation to the remaining file***. . . . We expect to be in a position to produce the documents seized from Onyx which have been provided to us by Onyx's Swiss lawyer, ***subject to privilege***, by early next week."). (Emphasis added.)

> Document Production. It is now more than two weeks since BSGR received these documents – and only 10 days before Vale's Statement of Reply is now due – but ***BSGR has yet to produce a single document*** from these Onyx binders.
>
> BSGR says that the delay is due to its conducting a privilege review, but ***BSGR cannot claim privilege over any of the documents from these 10 binders***. These 10 binders contain the documents that were turned over to the U.S. and Guinean authorities at the direction of the Swiss courts. The Swiss courts have already rejected BSGR's efforts to claim privilege over documents in this collection, as fully described in Vale's 29 December 2015 letter to the Tribunal. In brief, the Swiss courts ruled that BSGR's argument that some of these documents were covered by attorney-client privilege "must yield, in this case, to the public interest in investigating acts of corruption whose economic, financial and political consequences are significant," and ordered production of all the documents without allowing any of them to be protected as privileged. BSGR cannot resurrect its rejected privilege arguments here to avoid producing documents that the Swiss court found cannot enjoy such protection, and that this Tribunal has expressly ordered BSGR to turn over.
>
> …
>
> Similarly, any documents seized from Beny Steinmetz and transmitted to the U.S. and Guinean authorities cannot be protected as privileged. Vale's understanding is that ***all the documents seized from Steinmetz were transmitted to these authorities***, and while BSGR has produced many of them it continues to delay completing this production while it conducts an unwarranted privilege review. Vale thus asks that the Tribunal also direct BSGR to produce ***all Steinmetz documents that were transmitted to the U.S. and/or Guinean authorities without withholding any for privilege***. (Emphasis added.)

11. Vale requests that the Tribunal direct BSGR to immediately produce to Vale all documents from the 10 binders BSGR received from Onyx on 26 February 2016 and all documents the Swiss authorities seized from Mr. Steinmetz that were transmitted to the United States or Guinean authorities.

## III. BSGR'S ARGUMENTS

12. BSGR criticizes the Tribunal's rulings concerning document productions. It accuses the Tribunal of "the total and unquestioning acceptance of all of Vale's requests in every stage of this discovery process to date."
13. BSGR also argues that the Tribunal has a duty to exclude from production those documents that are not sufficiently relevant to the case or material to its outcome based

on Article 9(2)(a) of the IBA Rules, and that the Tribunal's rulings ignore or are in "sheer breach of the IBA Rules and a violation of the Tribunal's mandate."

> Although this Tribunal acknowledges in para. 6 of its Second Decision that the IBA Rules apply, in reality, this Tribunal has decided to ignore the IBA Rules and set out in a completely different and unacceptable direction.
>
> The effect of the Tribunal's Second Decision on discovery has been to force our client to produce reams of irrelevant and immaterial but confidential and commercially sensitive material. We told you that this would be the case. The Second Decision has led to the disclosure of 1,000s of pages of documents that, on any construction, are simply not discoverable under the IBA Rules or any other test. Not only has this exercise been disproportionate in terms of administrative burden and cost on our client, it has led to BSGR's production of irrelevant, immaterial, confidential and, sometimes personal, documents. It is blatantly unacceptable that this should continue. Our client should never have been put in a position that it was forced to disclose this type of material to Vale, and it is a serious deficiency in the processes - that this Tribunal is responsible for stewarding – that it has.

14. In relation to the documents seized by the Swiss authorities from Onyx, BSGR argues as follows:

> In respect of the Onyx documents in particular, during the course of the review for privilege, it has become clear to our client that there is a significant amount of irrelevant, immaterial, confidential, commercially sensitive, and sometimes personal, documents included in them.
>
> Accordingly, the Onyx material is now being searched for documents that are sufficiently relevant and material to its outcome, in other words, any document that touches upon Guinea or the issues in the case. Similar exercises will be undertaken in relation to the other documents yet to be disclosed. To ease Vale's concerns, BSGR confirms that any of Onyx's bank statements which were included in the seized documents provided to it will be produced to Vale.

15. BSGR's letter does not specifically address Mr. Steinmetz. But BSGR appears to argue that the documents seized from him should not be produced insofar as the Swiss court decision cited by Vale is not controlling:

> On a different note and in relation to Vale's arguments in relation to the privilege review undertaken by our client, it is not correct that privilege has been lost as a result of a Swiss Criminal Court decision. That decision was issued in different proceedings,

> between different parties (with Vale not being one of them), in another jurisdiction, under a different applicable law. The Swiss Criminal Court decision does not bind this Tribunal, nor does it constitute res judicata.
>
> In addition, even this Tribunal, in para. 120 of the Second Decision, allowed our client to withhold documents that contain legally privileged information. There is no justification why the legal privilege exemption would apply only to the documents provided to Messrs. Freeh and Lieberman and not to the documents that were seized in Onyx offices.

## IV. ANALYSIS AND RULING FROM THE TRIBUNAL

16. The Tribunal denies Vale's request for relief and reaffirms its First and Second Decisions on Document Production.

17. In particular, paragraph 24 of the Tribunal's First Decision on Document Production stated that "where the Tribunal has granted a request (or any portion thereof) 'subject to legal privilege,' the Party on the receiving end of the document request does have a duty to search for responsive documents, ***but it may list any privileged documents falling within that request on a privilege log***." (Emphasis added.) The pertinent part of the Tribunal's ruling concerning Vale's Request No. 61(a) stated: "The Request is GRANTED, ***subject to legal privilege***." (Emphasis added.)

18. The Tribunal's Second Decision on Document Production clarified the Tribunal's ruling with respect to Vale's Request No. 61(a) insofar as it specifically directed BSGR to produce to Vale the documents seized by the Swiss authorities from Mr. Steinmetz and from Onyx. But it did not explicitly reconsider or reverse any aspect of the First Decision on Document Production. Nor did it address privilege with respect to the documents seized by the Swiss authorities from Mr. Steinmetz and Onyx.[5] Therefore, BSGR remains free to withhold those documents otherwise responsive to Request No. 61(a) subject to legal privilege.

19. Vale's arguments do not address the Tribunal's prior express ruling on privilege relating to Request No. 61(a). Instead, Vale appears to argue that BSGR may not properly claim privilege over any documents as a matter of Swiss law. The Tribunal notes that in Vale's letter to the Tribunal of 15 March 2016, Vale "reserve[d] its right

---

[5] BSGR cites paragraph 120 of the Second Decision on Document Production for the opposite proposition, but that paragraph does not relate to the documents seized by Swiss law enforcement from Mr. Steinmetz and Onyx, but rather relates to the Tribunal's ruling that BSGR produce to Vale the documents given to external counsel (Louis Freeh and Joseph Lieberman) as part of an internal investigation they conducted for the Balda Foundation.

to challenge BSGR's privilege claims until after it has had an opportunity to review the revised privilege log the Tribunal has instructed BSGR to provide." This Third Decision on Document Production shall not preclude Vale from challenging BSGR's application of privilege over documents it withholds once BSGR actually submits a privilege log to Vale. To the extent that Vale does raise challenges and intends to invoke the Swiss court decisions it cited in its letters to the Tribunal of 29 December 2015 and 15 March 2016, the Tribunal would invite Vale to submit full English translations of all such relevant court decisions,[6] including any decisions relating to Onyx,[7] and explain how the Tribunal should weigh those decisions.

20. In response to Vale's arguments that BSGR has delayed its efforts to comply with its obligation to produce documents seized in Switzerland from Mr. Steinmetz and Onyx, the Tribunal, subject to any substantiated objections from BSGR, directs BSGR to produce all remaining documents pursuant to the Tribunal's First and Second Decisions on Document Production and submit any necessary privilege log(s) to Vale on or before 24 March 2016 (the deadline for Vale's Reply submission). As set forth in further detail below, Respondent will have an opportunity to propose an alternative deadline, provided it explains why the extension is necessary.

21. Before concluding its analysis, the Tribunal notes that three points raised in BSGR's letter of 16 March 2016 require a response from the Tribunal.

22. First, the Tribunal does not accept BSGR's characterization of the First and Second Decisions on Document Production as "total and unquestioning acceptance [by the Tribunal] of all of Vale's requests in every stage of this discovery process." The individual rulings on the Parties' Redfern schedules granted and denied requests from both Parties. The Tribunal stands by all of its rulings and sees no need now to justify its decisions as anything less than fair, impartial, thorough — and unanimous.

23. Second, the Tribunal has neither ignored nor breached the IBA Rules on the Taking of Evidence in International Arbitration. The Tribunal points out that it is not bound, in any strict sense, by the IBA Rules, but rather the Parties have agreed that the Tribunal may look to the IBA Rules merely "as guidelines." *See* Tribunal's Procedural Order No. 2 dated 5 Nov. 2014, ¶ 12. Accordingly, the Tribunal has respected the Parties'

[6] Pages 1–69 of the attachment to Vale's letter dated 29 December 2015 reflect Swiss court decisions, but most of the pages are in French.

[7] The Tribunal observes that the Swiss court decision cited by Vale appears to relate to Mr. Steinmetz.

agreement and been guided by the IBA Rules in all of its document production rulings to date.

24. Third, BSGR's letter suggests that BSGR has decided to withhold documents from production if it deems those documents "irrelevant, immaterial, confidential, commercially sensitive, [or] personal." BSGR's letter of 18 March 2016 also states that BSGR has produced to Vale 2,700 pages of documents seized by the Swiss authorities from Onyx, but "in accordance with the terms of our letter to the Tribunal dated 16 March 2016" BSGR has only produced "documents that are sufficiently relevant and material to the outcome of the case." As should be clear by this point, the Tribunal ruled that the BSGR has an obligation to produce all of the documents seized by the Swiss authorities from Mr. Steinmetz and Onyx subject only to legal privilege and not subject to any further qualifications. BSGR shall comply with those terms. Unless BSGR can point to a ruling found in the Tribunal's First nor Second Decisions on Document Production permitting it to withhold documents on any other basis, it cannot do so guided by its own self-judgment as to the relevance and materiality of documents.

25. The Tribunal points out that all of its document production rulings have taken into account the "Bribery Issue" lying at the center of this dispute. It is within that context that the Tribunal has set the relevant parameters for what it deems relevant and material. That the scope of documents either Party must produce may be wider than in other arbitrations is a byproduct of the Tribunal's aim to resolve the dispute in the fairest manner possible and based on a full record of evidence. The Tribunal expects both Parties to act in good faith as they complete the document production process.

## V. CONCLUSION

26. For all of the reasons set forth above, the Tribunal decides as follows:

    a. Vale's request is denied.

    b. The Tribunal, subject to any substantiated objections from BSGR, directs BSGR to produce all remaining documents pursuant to the Tribunal's First and Second Decisions on Document Production and submit any necessary privilege log(s) to Vale on or before **24 March 2016**.

c. **On or before 21 March 2016** BSGR shall either confirm to the Tribunal that it will complete its document production obligations by **24 March 2016** or explain in detail why it will be unable to do so.

d. If Vale decides to challenge any entries in the privilege log(s) BSGR submits to it, the Tribunal directs Vale to confer with BSGR first and attempt to agree on a procedure for the Parties to follow in dealing with the privilege log(s). The procedure shall permit enough time for the Tribunal to rule on any privilege issues well before BSGR's Rejoinder is due on 24 June 2016, allowing both Parties to comment on any additional documents BSGR might have to produce in their final pre-hearing submissions (BSGR's Rejoinder and Vale's final submission due on 27 July 2016).

Dated: 18 March 2016

Charles N. Brower

Charles N. Brower
Chairman of the Tribunal
*On behalf of the Tribunal*