# Exhibit H

```
 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Case No. 19-11845-shl

 4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 5    In the Matter of:

 6

 7    BSG RESOURCES LIMITED (IN ADMINISTRATION) and WILLIAM

 8    CALLEWAERT and MALCOLM COHEN, as JOINT ADMINISTRATORS,

 9

10            Debtors.

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                    United States Bankruptcy Court

14                    One Bowling Green

15                    New York, NY  10004

16

17                    June 4, 2019

18                    2:18 PM

19

20

21    B E F O R E :

22    HON SEAN H. LANE

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  MATTHEW
```

1    HEARING re FIRST DAY CHAPTER 15 HEARING

2

3    HEARING re Doc. #7 Ex-Parte Motion For Temporary Restraining

4    Order And Relief Pursuant To Sections 1519 And 105(A) Of The

5    Bankruptcy Code

6

7    HEARING re Doc. #8 Motion To Approve / Application For An

8    Order (I) Scheduling Recognition Hearing, (II) Specifying

9    Deadline For Filing Objections And (III) Specifying Form And

10   Manner Of Notice

11

12   HEARING re Doc. #10 Motion to File Under Seal Re: Affidavit

13   of Peter Harold Driver

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
                                              Page 3

 1    A P P E A R A N C E S :

 2

 3    DUANE MORRIS LLP

 4         Attorneys for Joint Administrators of BSG Resources

 5         1540 Broadway

 6         New York, NY 10036

 7

 8    BY:  FREDERICK D. HYMAN

 9

10    DUANE MORRIS LLP

11         Attorneys for Joint Administrators of BSG Resources

12         222 Delaware Avenue, Suite 1600

13         Wilmington, DE 19801

14

15    BY:  JARRET P. HITCHINGS

16

17    WILLKIE FARR & GALLAGHER LLP

18         Attorneys for George Soros and the OSF Entities

19         787 Seventh Avenue

20         New York, NY 10019

21

22    BY:  BENJAMIN P. MCCALLEN

23         JAMES FITZMAURICE

24

25
```

Page 4

1   CLEARY GOTTLIEB STEEN & HAMILTON LLP

2        Attorneys for Vale S.A.

3        One Liberty Plaza

4        New York, NY 10006

5

6   BY:  LISA M. SCHWEITZER

7        JONATHAN BLACKMAN

8

9   ALSO PRESENT TELEPHONICALLY:

10

11  MALCOLM COHEN

12  SAM DINGLE

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  We are here for BSG Resources Limited,

3     a Chapter 15 case that was just filed.

4              So let me get appearances from counsel.

5              MR. HYMAN:  Good afternoon, Your Honor.  Rick

6     Hyman from DuaneMorris.  We represent the foreign

7     representative as joint administrators for BSG Resources.

8     I'm here with my colleague Jarret Hitchings who submitted a

9     pro hoc last night.  I believe the order was entered today.

10             THE COURT:  Great.

11             MR. HYMAN:  Thank you.

12             THE COURT:  All right.  Thank you.

13             MS. SCHWEITZER:  Good afternoon, Your Honor.  Lisa

14     Schweitzer from Cleary Gottlieb for Vale, with my partner

15     John Blackman, also from Cleary Gottlieb.

16             THE COURT:  All right.  Thank you very much.

17             Anyone else whose -- come on up, and just make

18     sure that we -- you can use any microphone, just to make

19     sure we get your appearance noted.

20             MR. BLACKMAN:  Sure.  Jonathan Blackman from

21     Cleary Gottlieb.

22             MS. SCHWEITZER:  He's talking about the person in

23     back of you.

24             MR. BLACKMAN:  Oh, behind me.  I was wondering,

25     because --

```
 1              THE COURT:  Yeah, they come from all directions.
 2              MR. MCCALLEN:  Good afternoon, Your Honor.
 3    Benjamin McCallen, Willkie Farr & Gallagher on behalf of
 4    George Soros and the OSF entities.
 5              THE COURT:  All right.  Thank you.
 6              MR. MCCALLEN:  Thank you, Your Honor.
 7              THE COURT:  Anyone else who's making an
 8    appearance?
 9              All right.  With that, I'll hand it over to
10    counsel to walk us through what we need to accomplish today.
11              MR. HYMAN:  Good morning, Your Honor.  And we
12    appreciate you making the time for us on such short notice.
13              We did, as you noticed, file the petition
14    yesterday --
15              THE COURT:  Right.
16              MR. HYMAN:  -- along with an assortment of first
17    day pleadings.
18              THE COURT:  I saw that.  And thank you for your
19    speed in getting the binders to chambers.  I appreciate
20    that.  It's -- it makes a big difference, because I tend to
21    be a paper person for a lot of things still, perhaps it's a
22    character failing.  And so it ends up if I don't get the
23    binders by a certain point I end up just needing prints
24    repeatedly and then assembling my own binder.  So this is
25    much preferable and thank you very much --
```

1           MR. HYMAN:  And --

2           THE COURT:  -- because I know you didn't have a

3     lot of time to do that.

4           MR. HYMAN:  Yeah.  And, unfortunately, we were a

5     little bit jammed and we made sure to get them down to you

6     as soon as possibly close to --

7           THE COURT:  No, it was fine.

8           MR. HYMAN:  -- 5 p.m.

9           THE COURT:  The timing was great.

10          MR. HYMAN:  Unfortunately what that did is it

11    delayed our service on some of the other creditors, by a

12    short period of time.  And we did seek to get them documents

13    as soon as possible.  Just for your benefit, Your Honor, and

14    we filed the certificate of service this morning.

15          We had delivered copies of the various first day

16    pleadings by email, and delivery, and by FedEx to Cleary

17    Gottlieb yesterday.  We delivered copies by email and FedEx

18    to Willkie Farr attorneys yesterday as well.  In addition,

19    we delivered FedEx'd copies to Vale, LSL, that was one of

20    the Debtor's creditors, and Standard Chartered, another one

21    of the Debtor's creditors, by FedEx to their addresses

22    overseas, which were the only addresses that we had.  We

23    didn't have any addresses for counsel for those creditors.

24          THE COURT:  All right.

25          MR. HYMAN:  All right.  We're here today on three

Page 8

1    matters.  The first matter is an ex parte application for a

2    temporary restraining order bridging us either to a hearing

3    on a TRO, or alternatively, to a recognition hearing which

4    we hope to set up.  Second is the application for that

5    scheduling order, effectively scheduling a hearing on the

6    recognition, specifying a date for objections, and approving

7    the form of notice.  Lastly, you'll notice that we filed a

8    motion to file a declaration, really an affidavit, under

9    seal, with this Court.

10           Perhaps -- we can take these in any order,

11   whatever is Your Honor's preference.

12           THE COURT:  All right.  So for scheduling, I

13   looked at the calendar and I thought perhaps July 10th in

14   the afternoon might work, say 2:30, unless, after we get

15   through matters today people are anticipating a -- something

16   more lengthy or evidentiary at that point, but you can let

17   me know.  And folks, obviously I'll hear from everybody,

18   will let me know whether you think that's the case.  But

19   certainly even if that is the case, we could certainly start

20   it on that date and then see where we go from there.

21           MR. HYMAN:  Okay.  I should step back for a

22   moment, Your Honor, and mention that on the phone we have

23   Malcolm Cohen, who is one of the two joint administrators in

24   the case.

25           THE COURT:  All right.

1          MR. HYMAN:  And is the declarant in connection

2     with the first day pleadings.  We also have Sam Dingle from

3     Ogier who is counsel to the joint administrator's resident

4     in Guernsey to the extent Your Honor had any questions

5     regarding Guernsey law.

6          THE COURT:  All right.  And with that -- thank you

7     very much for that.  Is there anybody else, beyond those two

8     individuals that have already been identified, who's on the

9     telephone for this case?  All right.

10          MR. HYMAN:  Okay.  So before we finalize the

11     scheduling, I would like to comment, to Malcolm Cohen, who

12     would be, presumably, required to come over for purposes of

13     the deposition, perhaps, or live testimony, depending on how

14     things play out.  So before we finalize the scheduling, we'd

15     like to confirm with our joint administrator who has to --

16          THE COURT:  All right.  That's fine.

17          MR. HYMAN:  -- travel many miles to get here.

18          THE COURT:  I was just throwing out some dates,

19     and I thought that would be an appropriate date for purposes

20     of giving you time for notice, while at the same time trying

21     to steer clear of some other things on my calendar that are

22     of uncertain duration at this point.

23          So I have -- currently have some other hearings

24     earlier that -- well, I won't bore you with the details.  So

25     we'll throw that out and we'll put in a pin that for the

1       moment and return back to it in a minute.

2                 MR. HYMAN:  Yeah, I think we'd recommended July

3       11th, so I imagine that July 10th works --

4                 THE COURT:  All right.

5                 MR. HYMAN:  -- perfectly well, but we'd just want

6       to confirm.

7                 THE COURT:  Okay.  Great.

8                 MR. HYMAN:  We had submitted, as I mentioned, the

9       declaration of Malcolm Cohen, in support of various first

10      day pleadings, in addition to ultimate recognition.  You may

11      note, if you had an opportunity to review that, Mr. Cohen's

12      declaration does cite to an affidavit of, I'm sorry, it's

13      Peter Driver --

14                THE COURT:  right.

15                MR. HYMAN:  -- who was one of the members of the

16      board of the directors of BSG Resources.  And it submitted

17      that paper in connection with its administrator order in

18      Guernsey.

19                Under the terms of the Guernsey order, those --

20      that declaration was submitted in camera and remains under

21      seal.  While certain of the information that is contained in

22      that declaration has been made public since that date, there

23      is no authorization, from the court in Guernsey, to release

24      it.  There is some additional information that remains

25      subject to some commercial sensitivity.  And we had

Page 11

1    suggested here, Your Honor, with our motion to file under

2    seal, that for the benefit of the Court, we would file that

3    under seal so that to the extent that there is anything that

4    you need in reference to the declaration from Malcolm Cohen,

5    or otherwise, you would have it, but beyond that we didn't

6    intend to share it with any other parties in connection with

7    the case.

8              THE COURT:  So it's the declaration of Malcolm

9    Cohen, which is at Docket Number 9, will be public and it

10   would be the exhibit that's the affidavit of Peter Harold

11   Driver, and the exhibits to that which is sealed in the

12   court in Guernsey and that you're seeking a sealing order

13   today?

14             MR. HYMAN:  That's correct, Your Honor.  You will

15   notice that we did make certain references in the Malcolm

16   Cohen declaration.  Those were -- that's information that is

17   -- that's clearly public and we weren't concerned about it.

18   You will note, in connection with our motion, our sealing

19   motion, we had also attached an email correspondence,

20   because it was very late, an email correspondence from the

21   court clerk in Guernsey who acknowledged that it was fine

22   for us to file this under seal with your court -- with this

23   court.

24             THE COURT:  All right. So does it make sense to

25   take these one at a time and hear from all parties, or does

1    it make sense for you to just complete your presentation and

2    then hear from other parties after you go through

3    everything?

4           MR. HYMAN:   Whatever is your preference, Your

5    Honor.

6           MS. SCHWEITZER:   Your Honor, Lisa Schweitzer.

7    Sorry to rise in the middle, but it's worth just a sentence

8    to not bury the lede.   This is going to be a contested

9    matter. We are going to contest (indiscernible), we're going

10   to contest the sealing, we're going to contest the TRO.   And

11   it's all one big story, so we're happy to let him go and

12   then we can go.

13          THE COURT:   All right.   Thank you.   That's sort of

14   what I was trying to, inartfully, get at as we went forward.

15   All right.

16          MS. SCHWEITZER:   Diplomatically.

17          THE COURT:   All right.   So that's the request on

18   the TRO.   And my -- I'm sorry, on the sealing.   My question

19   for sealing is I couldn't quite tell the basis for sealing.

20   I understood that it's under seal in Guernsey, but I

21   couldn't quite tell what the basis for that was.

22          So I think we all know that there's certain

23   jurisdictions where if you're going to file something, it

24   actually is filed under seal and you need approval to get it

25   unsealed.   Certainly in the United States people can ask to

1    file something under seal, meaning, essentially that they've

2    asserted the equity.  Other times, again, it's sort of a

3    court saying we handle proceedings this way.  And I couldn't

4    quite figure out what the -- sort of the -- putting aside

5    that it's under seal in Guernsey for a second, what the law

6    was that was the basis for this sealing.

7                 MR. HYMAN:  Your Honor, I confess that I don't

8    know the answer to that.  We do have Sam Dingle on the

9    phone, through, who is counsel in Guernsey and may be able

10   to give you some better color on that.  From our

11   perspective, given the fact that it was under seal, we,

12   though abundance of caution, filed this with, along with the

13   sealing motion, certain of this information, certainly as

14   you can read in connection with the list of the descriptive

15   -- of the exhibits --

16                 THE COURT:  Right.  And there's a huge --

17                 MR. HYMAN:  -- is not --

18                 THE COURT:  -- I mean, there's a huge stack of

19   stuff.

20                 MR. HYMAN:  Yes.

21                 THE COURT:  So I can't confess to have done a

22   careful study of it.  But I think the second binder is that

23   declaration, and then the exhibits to that.  And I can't

24   begin to put a -- although I guess there are page numbers on

25   it on the bottom, and I think it's over a thousand pages.

1  So certainly -- but there was a motion of commercially

2  sensitive information and certain to the extent that that's

3  what's being invoked, that is very similar to the test here

4  in the United States, right, that we have in the rules.  If

5  somebody says it would be damaging to the Debtors if that

6  kind of commercial information, which is -- it would be

7  anti-competitive to have it released.  So I wasn't sure if

8  there was -- you had any more information you could provide

9  about that.

10         MR. HYMAN:  There certainly are different

11  disclosure obligations in connection with Guernsey and in

12  connection with (indiscernible) there are documents that

13  perhaps in the United States we wouldn't expect to be sealed

14  from other creditors, but in Guernsey it's commonplace,

15  including certain information regarding the financials of

16  the company.

17         So as you look through the declaration, I don't

18  want to take it page by page, but there is information on

19  financials that simply is information that wouldn't have

20  been disclosed in the Guernsey proceeding.  And, you know,

21  what we're trying to do here is effectively recognize that

22  Guernsey proceeding and try to continue to enforce and abide

23  by the rules of that proceeding, without expanding upon the

24  (indiscernible).

25         THE COURT:  So let me then go at this a slightly

1   different way, which is to say are the folks who are here

2   today to be heard, who was and who wasn't a party -- or is

3   or isn't a party in the Guernsey proceedings, such that they

4   might have access to the information, or at least have an

5   ability to seek the information in the Guernsey proceedings?

6           MR. HYMAN:  I would venture to say that nobody, to

7   my knowledge, has information in connection with that

8   declaration that had been sealed.  But again, that's to my

9   knowledge.  I don't think that this has been shared with any

10  -- for the most part, with any creditors, except to the

11  extent that it has subsequently become public.

12          THE COURT:  All right.  So then let me -- again,

13  we might as well just sort of deal with these things as we

14  go forward.  So what is it that you're going to want me to

15  take from the information that you provided to me about the

16  Guernsey proceedings, which by that I mean the proceedings

17  that are identified in the affidavit of Peter Harold Driver

18  in the Royal Court of Guernsey, Ordinary Division In the

19  Matter of BSG Resource Limited, and In the Matter of Part, I

20  guess it's Roman Numeral 21 of the company's Guernsey Law

21  2008 and the affidavit and then all the documents that are

22  attached?  And that's -- and so the numbers contained on

23  those are basically the numbers identified in this affidavit

24  court sheet, which is basically an index.

25          MR. HYMAN:  Yeah, I think I can make it relatively

1    easy, Your Honor.  We were submitting that largely so that

2    you had a reference point back to the declaration, when it

3    was citing the declaration, necessarily joint administrators

4    who have been appointed last March do not have all of that

5    information and don't have the background and history of

6    some of the activities of the Debtor, and were relying on

7    that affidavit in making some of the statements.  We are not

8    seeking to admitting into evidence the Driver affidavit or

9    any of the documentation attached to the Driver affidavit.

10   To the extent that we were going to do so, we would do that

11   separately with Your Honor and we could have another

12   conversation about it.

13            THE COURT:  All right.  All right.  So I guess

14   we'll see where that leads us to.  So that's one issue, one

15   of the three that you mentioned.

16            So then I guess we might as well segue to the

17   request for temporary relief, which is styled as a TRO and

18   address that, and then we can talk about -- see whatever you

19   need to and want to put on the record.

20            MR. HYMAN:  Thank you, Your Honor.  I hope that

21   you did have an opportunity to read the declaration, which

22   sets forth --

23            THE COURT:  Yeah, no, I think I --

24            MR. HYMAN:  -- a little bit of the history.

25            THE COURT:  -- it's safe to say I've read

 1    everything, but I can't claim to have gotten through the

 2    exhibits --

 3              MR. HYMAN:  Of course.

 4              THE COURT:  -- that number some 1,000 pages that

 5    are -- I think I got through the actual affidavit of Peter

 6    Harold Driver, I didn't get through the attachments to it.

 7              MR. HYMAN:  If you had gotten through the

 8    recitation and the arbitration award, I would have been very

 9    impressed, Your Honor.  We certainly understand.

10              THE COURT:  I flipped through it, but, again, not

11    in a comprehensive way.

12              MR. HYMAN:  Yeah.  This is, Your Honor, a

13    relatively simple case, from our perspective,

14    notwithstanding the very complex facts that sit behind it.

15    The Debtors -- or the Debtor, BSG Resources was placed into

16    administration in March, 2018.  For your benefit, Your

17    Honor, if you haven't read them already, copies of the

18    orders directing that administration, were attached as

19    Exhibit A to our verified petition.  The company is a

20    relatively simple company at this point.

21              We do have attached, as Exhibit -- I believe it's

22    Exhibit B to the verified petition, a relatively simple

23    structure chart which shows majority-owned entities to the

24    extent relevant in connection with the Debtor's capital

25    structure.  Would you like to take a second to flip to that

Page 18

1    and we can go through that briefly?

2                THE COURT:  I did take a look at that.  Where is

3    it -- where can I find it in the binder?

4                MR. HYMAN:  That's in Tab 5.  And I apologize that

5    we don't have separate tabs for the exhibits, but it's just

6    a few pages in.

7                THE COURT:  Tab 5 in the first binder.  All right.

8    Is it in the actual verified -- are you talking about --

9                MR. HYMAN:  Oh, yeah, Tab 5 which is the verified

10   petition.  And then we attached a simple structure chart at

11   Exhibit B, which looks like it's --

12               THE COURT:  So it's a little bit of a ways in?

13               MR. HYMAN:  Yeah, I apologize.

14               THE COURT:  No, it's all right.  Got it.

15               MR. HYMAN:  And we can just look at this in

16   groups, generally.  Let's -- we can start at BSG Resources

17   which is the Debtor in this case.  You'll see that Nysco

18   Management Corporation is its parent and above that sits

19   Balda Foundation.

20               It is BSG Resources Limited that commenced this

21   Chapter 15.  BSG Resources Limited, today, has very little

22   in the way of operating assets.  If you look to the left-

23   hand side of that chart, you'll see an entity called Octea

24   Limited.

25               THE COURT:  All right.

1          MR. HYMAN:  Octea Limited has a modest diamond

2   mining activity.  Their operations are located in the

3   Republic of Sierra Leone.  To this day, Octea Limited does

4   not have the resources to funnel any money up to BSG

5   Resources and while there is certainly a review, by the

6   joint administrators, on how best to monetize that asset, at

7   the moment it remains in its current state.  The operations

8   are being managed by its board of directors as well as a

9   representative -- not a representative, an observer that was

10   designated by the joint administrators.

11          THE COURT:  All right.

12          MR. HYMAN:  West African Power Limited was an

13   entity pursuant to which the Debtor was engaged in some

14   trading in energy-related matters in connection with the

15   Federal Public of Nigeria.  You'll note that that is a

16   minority interest, ultimately, in the operating company in

17   Nigeria.  There continues to be, at this time, a dispute

18   with its partner, the majority owner, regarding funding for

19   the operations.  And as we understand it, there is no

20   revenues that are being generated out of that subsidiary.

21          BSG Resources (Guinea) Limited is where the action

22   seems to be, Your Honor.  So we'll come back to that in just

23   one moment.

24          BSGR Holdings Cooperative, to the right, is an

25   entity that the joint administrators are still

1    investigating.  It may have some minority interests of

2    nominal value, but to the extent that there is no plan to

3    monetize those assets, to the extent that there is anything

4    of material value to the estate -- to the estate, so to

5    speak.

6              You'll notice, to the right, we have two dormant

7    entities that are really irrelevant at that time -- at this

8    time.

9              THE COURT:  All right. So I guess you'll go back

10   to BSG Resources (Guinea) Limited.

11             MR. HYMAN:  So let's come back to Guinea.  And to

12   the extent that you had an opportunity to go through the

13   declaration in any detail, you probably ferreted out a

14   little bit of the story, so I don't want to provide an

15   exhaustive history of where that stands today.

16             Let's start with the Debtor's cause of action in

17   connection -- or against Soros and related entities, Willkie

18   Farr's client in this case.  The Debtors believe -- the

19   Debtor believes, and the joint administrators believe that

20   this contingent cause of action is likely the most valuable

21   asset of the Debtor.  It was commenced against George Soros

22   and certain of those affiliates in the Southern District of

23   New York.  The complaint seeks damages in excess of $10

24   million -- $10 billion, the proceeds of which, to the extent

25   realized, could be used to satisfy all the obligations of

Page 21

1     the Debtor.

2            The complaint alleges causes of action in the

3     nature of tortious interference with contract, fraud,

4     misrepresentation, defamation, among other things.  Each is

5     generally in connection with the revocation of the Debtor's

6     and other mining rights in Guinea.  We have the courtroom

7     today Michael Lazaroff from Reed Smith, who represents the

8     Debtor in connection with that action against George Soros

9     and additional affiliates, to the extent that there are any

10    detailed questions that Your Honor might have with respect

11    to the underlying cause of action.

12            THE COURT:  All right.

13            MR. HYMAN:  It was a revocation of these valuable

14    mining rights that was described in Mr. Cohen's declaration

15    that really triggered all of this.  As a result of the

16    revocation by the Republic of Guinea, back in 2004, the

17    Debtors commenced an arbitration proceeding against the

18    Republic of Guinea, with the International Center For

19    Investment Disputes. In connection with that arbitration the

20    Debtor sought restitution of the mining rights, plus certain

21    damages in connection therewith.

22            The revocation stemmed from a change in power in

23    Guinea, after the Debtor, and certain of its affiliates, had

24    received the mining rights in connection with the valuable -

25    - a valuable lot.  Among the Debtor's affiliates at that

1    time was a joint venture that the Debtor had with Vale S.A.,

2    Cleary Gottlieb's clients here in the courtroom today.

3            The arbitration with Guinea continues, although it

4    has been held in abeyance in some respects, since I guess it

5    was late July of last year, as settlement discussions have

6    continued in some regard.  There has been a non-binding

7    agreement that had been entered into, effectively a term

8    sheet, that is not a binding agreement and it continues to

9    be subject to discussion in a manner in which, perhaps,

10   could monetize this asset or these rights in favor of the

11   Debtor where today they have very little.

12           In connection with that revocation, Vale commenced

13   an arbitration in the London Court of International

14   Arbitration, also, I believe, it was in 2014.  That

15   arbitration has recently included -- has recently concluded

16   with an award in favor of Vale in access -- in excess of

17   $1.2 billion plus additional pre-award and post-award

18   interests which could very easily bring the total amount of

19   the award in excess of $2 billion.

20           Since the issuance of the award on April 4th a

21   number of things have happened.  On April 23rd Vale filed a

22   petition for recognition and enforcement of the award in the

23   Southern District of New York.  That is really the reason

24   that we're here today, Your Honor.  They seek entry of a

25   judgment in the amount of the award, plus additional

Page 23

1    interests, and costs.  The entry of such a judgment would

2    perhaps allow Vale to exercise rights and remedies with

3    respect to its claim, or with respect to its judgment, in

4    the United States.  The Debtors believe, and joint

5    administrator believes, that the only true asset in the

6    United States is its contingent rights in the litigation

7    claims that it has against George Soros and his affiliates.

8            In England, on May 9th, Vale obtained an order to

9    enforce its award with the English High Court of Justice.

10   The next day, on May 10th, the Debtor filed a timely

11   challenge to the award, similarly, with the High Court in

12   Justice and thereafter, on May 23rd, the Debtor filed an

13   application to set aside the May 9th enforcement order.  We

14   have been advised, by counsel in England, that the effect of

15   that set aside motion is that Vale is now stayed from any

16   enforcement action in England, pending final determination

17   of the application.  It's uncertain as to when that will

18   come to pass.

19           This, however, would not stop Vale from exercising

20   rights and remedies, perhaps in entering and obtaining the

21   judgment in the United States, absent action in the U.S.

22   And that is the reason, ultimately, for the Chapter 15

23   filing, Your Honor.  The Chapter 15 filing was made

24   yesterday and we sought an expedited hearing on a TRO, Your

25   Honor, because today happens to also be the last day by

1  which the Debtor has to file a response in connection with

2  Vale's petition for recognition of the arbitration award in

3  the United States in order to, perhaps, continue the clock

4  and create additional proceedings and perhaps have an

5  opportunity for further review.

6          THE COURT:  And that response would be in the case

7  in the Southern District of New York?

8          MR. HYMAN:  That's correct, Your Honor.

9          THE COURT:  And what judge has that case?

10         MS. SCHWEITZER:  Your Honor, it's Judge Broderick.

11         THE COURT:  Thank you.

12         MR. HYMAN:  Thank you very much.

13         THE COURT:  It doesn't really matter, but actually

14  it's just --

15         MS. SCHWEITZER:  No, just to know.

16         THE COURT:  -- the kind of detail that helps me

17  remember some of these things, so --

18         MR. HYMAN:  Yeah, we appreciate that, Your Honor

19  and thank you very much.

20         So we come here today, Your Honor, to protect what

21  the joint administrators believe is perhaps the best

22  opportunity for these Debtors to reorganize -- or this

23  Debtor to --

24         THE COURT:  Well, let me just ask, why would the -

25  - this request stay your obligation to file a response in

```
 1    front of Judge Broderick?  I understand how it would -- is -
 2    - because you think that that case is sort of, at its core,
 3    an effort at collection?
 4          MR. HYMAN:  It is a difficult standard to
 5    overcome, I believe that we are intending to file, we're
 6    certainly preparing papers and the expectation today is that
 7    we will make a filing at the end of the day.  What we would
 8    like, in terms of a TRO, though, is to be able to submit
 9    something in connection with that action to at least delay
10    further proceedings going forward so that the Debtors could
11    save necessary resources, again, there is very little cash
12    flow here, and perhaps put that off for a period of time
13    while there is some determination that's ultimately made in
14    connection with the underlying arbitration contestation in
15    England.
16          THE COURT:  Right.  Well, I mean sometime what
17    courts do for something like that is, say, you can do
18    various things in that proceeding, I'm not going to weigh in
19    on that, short of executing on assets, right?  So -- but you
20    anticipate filing that response today, it sounds like?
21          MR. HYMAN:  It is, Your Honor.  We do.  It's
22    unclear what the reaction is going to be from the court.  We
23    believe that it was going to schedule a subsequent hearing
24    and the court will consider our motion for -- to revisit the
25    matter.
```

```
 1              THE COURT:  What do you mean "the reaction from
 2       court"?  It's probably pursuant to some scheduling order in
 3       that court, right?
 4              MR. HYMAN:  Yeah, is -- there may be -- I think
 5       that there is a scheduling order in that court.
 6              MR. BLACKMAN:  Your Honor, Jonathan Blackman.
 7       I've been involved in the arbitration and the subsequent
 8       litigation from the outset, so I think I have the pleasure,
 9       dubious though it may be, of having the greatest exposure to
10       this.
11              In the U.S. case Judge Broderick has the case.
12       Their answer is due today.  We would have a period of time,
13       I guess until June 18th, to file a reply.  At that point the
14       judge will decide how to proceed, whether to have a hearing,
15       whether to allow further briefing, et cetera.  The important
16       thing is, and I think counsel is conceded it, nothing
17       detrimental to the estate is going to happen today or indeed
18       when we file a reply.  And nothing is going to happen, of
19       consequence, until Judge Broderick actually rules on our
20       application, which is simply an application to have the
21       award recognized here.  It's not an execution attempt, it's
22       not an attachment attempt, it's not an attempt to seize
23       assets --
24              THE COURT:  Right.  It's another --
25              MR. BLACKMAN:  -- or anything like that.
```

```
 1              THE COURT:  -- it's a step forward, though, in
 2    terms of -- let me back up.  The recognition would be a step
 3    forward but the filing itself is part of a judicial process.
 4              MR. BLACKMAN:  That's correct.
 5              THE COURT:  All right.  Thank you.
 6              MR. HYMAN:  Your Honor --
 7              THE COURT:  The reason why I mention it is
 8    because, obviously, when there's another proceeding pending
 9    in federal court where there's a briefing deadline today,
10    there's always a concern that a judge like myself would have
11    about sticking my nose in the middle of that, without me
12    having gone to that court with some sort of explanation as
13    to why you're not -- I don't know how the deadlines were
14    set, I assume there's some sort of court order setting the
15    deadlines.
16              MR. HYMAN:  Your Honor, we didn't -- nobody from
17    the joint administrators or the Debtor have participated in
18    that matter to date.  So anything --
19              THE COURT:  Well, but if there's a court order and
20    you're -- so I don't know what that means.  I mean, by
21    filing here I don't think there's any ability to say that
22    there's no jurisdiction over in that just up the street,
23    right?  So that would mean that you're in a case that that
24    judge entered a scheduling order for whoever's request, so
25    it is what it is, what it is, right?  So --
```

1          MR. HYMAN:   Okay.   I think there was some concern

2     on our part that regardless of whether the motion was filed

3     or not, based on what the response ultimately turns out to

4     be, that there could be an entry of a judgment at --

5          THE COURT:   That -- I'm sorry, there could be

6     what?

7          MR. HYMAN:   That there could be an entry of a

8     judgment at any time without any further opportunity to

9     revisit.

10          THE COURT:   Was there any thought given to filing

11     a motion for a stay in that case?

12          MR. HYMAN:   It's something that we could consider,

13     but no, we have not done it to date.

14          THE COURT:   All right.

15          MR. HYMAN:   Certainly, Your Honor, you know, I had

16     mentioned before that there is no operating revenue that is

17     coming up to this Debtor.   This Debtor is being funded by

18     outside parties to the most part on tenuous terms.   The

19     action -- the Soros action is being funded by an entity

20     called Litigation Solutions Limited, which has agreed to

21     fund certain of the costs and expenses of that litigation.

22     Certainly they would entitled to secured interest, a debt of

23     secured interest in any proceedings arising out of the

24     ultimate judgment.   That funding obligation may be

25     terminated on 30 days' -- on 30 business days' notice.   Of

1    utmost concern to the Debtors, Your Honor, is that adverse

2    judgment in connection with the Southern District of New

3    York recognition proceeding would have, or could have a

4    detrimental impact on our ability to continue to get funds

5    through that litigation funding source.

6            In the event that there was a termination or a

7    determination by that funder to discontinue funding the

8    costs and expenses of that Soros litigation, that would have

9    a detrimental effect on the Debtor and, presumably, leave

10   the Debtor without an opportunity to continue to pursue what

11   is it's most -- what it believes to be its most valuable

12   asset in these cases.

13           MS. SCHWEITZER:  Your Honor, if I may?

14           THE COURT:  Briefly.

15           MS. SCHWEITZER:  I recognize -- I will allow him

16   to proceed with his entire presentation, and I will try to

17   reserve my comments. Everything he has just said about

18   litigation funding and the contingencies and the effect on

19   the TRO is nowhere in the motion papers or the record.  And

20   we do not have access to those litigation agreements.  So I

21   can address that in my -- when I speak in opposition, but I

22   would ask that we at least be, in our arguments, constrained

23   that the motion forward to the evidence is actually before

24   the Court.

25           MR. HYMAN:  Okay.  I did, Your Honor.  Certainly

1    the reference to Litigation Solutions funding is in the

2    declaration of Malcolm Cohen.

3              THE COURT:  So what does that mean, in terms of

4    you say that there -- this is an asset of the Debtor, but

5    its a pledged asset.  So who benefits from the lawsuit?

6              MR. HYMAN:  The Debtor would certainly benefit

7    from the lawsuit, above any costs and expenses that had been

8    funded by litigation funding.  Right?  It may be --

9              THE COURT:  What's their security interest?  Is

10   their limited to the amount they funded at --

11             MR. HYMAN:  It's the commercial --

12             THE COURT:  -- I mean, they obviously have a

13   profit model, so how do they make their money?  So I'm --

14             MR. HYMAN:  Presumably it's their commercial --

15   it's a commercial tort claim.  Right?  The proceeds,

16   ultimately, from any settlement or judgment.

17             THE COURT:  No, no, I understand that.  But I'm

18   trying to figure out the extent of their lien.  So

19   certainly, if they funded you a hundred dollars, they're not

20   simply asking to get back a hundred dollars, because you

21   don't make any money with that.  So certainly their rights

22   are more valuable than that.  So what are their rights as --

23   in terms of the secured interest in the proceeds?

24             MR. HYMAN:  Yeah, I would have to go back and take

25   a look at that, Your Honor.  I don't know that we have all

```
 1    of that --

 2              THE COURT:  Because, I mean --

 3              MR. HYMAN:  Yep.

 4              THE COURT:  -- they could say you get five percent

 5    and we get everything else.  I don't know what that is,

 6    because it does raise a question as to whose benefit --

 7    whose asset it really is if it's pledged.  So -- but it

 8    doesn't sound like we have a particular robust record on any

 9    of this, so let's not get bogged down in it.  But that --

10    the extent of the Debtor's interest in that, if you have a

11    litigation funder, certainly is something we'll eventually,

12    I assume, get to.

13              All right.  So what else would you like to tell

14    me?

15              MR. HYMAN:  Your Honor, I recognize that we do not

16    have the declarant in the court today.

17              THE COURT:  Yeah, again, I think I got a call

18    saying can we have the declarant participate by phone, and I

19    think I asked my chambers to say what I usually say, which

20    is sort of caveat emptor.  I don't really know what's going

21    to walk into court and what it means or doesn't mean to have

22    somebody here, you all do.  And so I can't take evidence by

23    phone.  And so I have what I have today.  I certainly have

24    no objection to somebody listening in, but I -- taking

25    evidence by phone is not something we do here, so I guess
```

1      that's -- we are where we are for purposes of today.

2                  MR. HYMAN:  Okay, Your Honor.  From our

3      perspective, I think that what we would hope to accomplish

4      today is get a short bridging order to sometime next week or

5      in the very near future to have a robust hearing on the TRO,

6      which would take us through a recognition hearing on or

7      about July 10th, as Your Honor suggested.

8                  THE COURT:  But what would you want the TRO to

9      say?

10                 MR. HYMAN:  Your Honor, I think that what we would

11     want the TRO to say is that parties are effectively subject

12     to what otherwise would be the automatic stay for purposes

13     of --

14                 THE COURT:  Well, but let's be --

15                 MR. HYMAN:  -- of that interim period.

16                 THE COURT:  -- more specific, though, because we

17     have the case in SDNY.  Are you asking me to say -- to tell

18     that court it can't proceed and therefore you don't have to

19     file a brief, that's otherwise due today?

20                 MR. HYMAN:  We do intend to file the brief today.

21     So --

22                 THE COURT:  All right.  So you're not asking for

23     that relief.  So what are you asking for in connection with

24     that proceeding?

25                 MR. HYMAN:  We would ask that the proceeding at

```
 1    that point then stall for some period of time, subject to

 2    our ability to come back to this Court and have a fulsome

 3    hearing, with evidence, on the TRO in an effort to provide

 4    this Court the justification that we can go forward and that

 5    there should be no judgment entered in connection with that

 6    proceeding.  And that Vale should be restricted from

 7    exercising any rights and remedies that it may have.  We

 8    think that is the comfort that we could provide to the

 9    funders, the litigation funders, that could perhaps allow

10    this to continue to --

11              THE COURT:  So where's the reference to the

12    litigation funders in the papers?  I remember seeing

13    something, but I don't remember it being particularly

14    detailed.

15              MR. HYMAN:  It's certainly not fulsome, Your

16    Honor, but it was contained in Paragraph 31.

17              THE COURT:  All right. I guess I was -- I'm a

18    little confused, because I was looking at Paragraph 30 that

19    says, "The (indiscernible) claim is docketed in the district

20    court as BSG Resources Limited vs. Soros.  The Soros claim,

21    including discoveries presently stayed pending the outcome

22    of the ICSID proceeding, and a status conference is

23    scheduled in the district court on July 18th serving the

24    next step in the litigation," which -- so I took from that

25    paragraph a strikingly different understanding of the
```

1    district court proceeding than what you just told me.  It

2    would seem to say that there's a briefing schedule and you

3    think, absent some relief, something could happen and your

4    rights could be affected tomorrow.

5              MR. HYMAN:  I think we're talking about the --

6    different litigations.  The Soros claim is the Debtor's

7    claim against George Soros and his affiliates.  The claim

8    that we were talking about in connection with the briefing

9    was not the claim, it was Vale's petition to have the

10   arbitration award --

11             THE COURT:  But what would be --

12             MR. HYMAN:  -- recognized here.

13             THE COURT:  -- what else is there to do with the

14   Soros claim, other than to get it enforced here in the U.S.?

15             MR. HYMAN:  We would -- yeah, the stay would have

16   nothing to do with the Soros claim, the stay -- the Soros

17   claim would continue to be pursued.  That's, again, when the

18   joint administrators see significant value in this estate.

19   It is that pursuit of the Soros claim that is funded by

20   Litigation Solutions.

21             The concern that we have had is that Litigation

22   Solutions, to the extent that there is some concern about

23   interference with the litigation --

24             THE COURT:  So what is it that's stayed?

25             MR. HYMAN:  Oh, I apologize, Your Honor.

Page 35

1           THE COURT:  Because it says, "The Soros claim,

2    including discoveries presently stayed."

3           MR. HYMAN:  Yes.

4           THE COURT:  So what is it that's stayed?

5           MR. HYMAN:  They are at the motion to dismiss

6    stage in connection with the Soros claim.  The district

7    court stayed the action pending resolution of the Guinean

8    arbitration.  The arbitration in the Republic of Guinea has

9    gotten to the stage where they are involved in settlement

10   discussions.  The settlement conference that's scheduled for

11   the end of July in the Soros claim will be an opportunity to

12   -- for the parties to address, in front of the judge,

13   restarting discovery, to the extent that that's something

14   that is of interest to everybody.

15           THE COURT:  So what -- where is the term "Soros

16   claim" -- so that's defined, I guess, in Paragraph 28?

17           MR. HYMAN:  Yes, that -- the Soros claim is what I

18   referred to earlier as the cause of action that was

19   commenced in the Southern District of New York seeking

20   damages in excess of $10 billion.

21           THE COURT:  All right.  So all there is about the

22   action that you really want the stay of is Paragraph 26

23   saying it's docketed and they're seeking recognition?

24           MR. HYMAN:  That's correct, Your Honor.

25           THE COURT:  All right.  So --

```
 1              MR. HYMAN:  The Soros claim is an asset of the

 2    estate, not a liability.

 3              THE COURT:  All right.  Right.  All right.  No,

 4    I'm looking at it from district court proceedings, trying to

 5    understand what's where, what relief you're asking for.  So

 6    when you're describing the briefing schedule that requires

 7    you to file a brief today, and your concern about that case

 8    moving forward, you're talking about the district court

 9    action in Paragraph 26.

10              MR. HYMAN:  Indeed, Your Honor.

11              THE COURT:  And so that really would be additional

12    texts, in a perfect would that would be in Paragraph 26,

13    because I don't think I had that information that you just

14    gave me until today, until just today's hearing.

15              MR. HYMAN:  I'm not sure I follow.

16              THE COURT:  Meaning, I don't think in the papers

17    it's identified that you have an obligation to file a brief

18    today in that district court proceeding discussed in

19    Paragraph 26, and that that's the proceeding that you want

20    the stay of because you think it could, conceivably, result

21    in the -- entering an order -- entering a judgment of the

22    arbitration?

23              MR. HYMAN:  Yes.  As you say that, Your Honor, it

24    certainly could have been clearer, but that's correct.

25              THE COURT:  All right.  What else do you want to
```

```
 1   tell me?

 2           MR. HYMAN:  I think that, you know, we believe

 3   that we meet the merits -- we meet the standards for entry

 4   of a temporary restraining order.  I recognize, of course,

 5   that we do need to get additional evidence in, or evidence

 6   in, and allow parties an opportunity to cross examine.

 7           THE COURT:  Well, that's why I asked, because I

 8   don't think the statements you made here I have any evidence

 9   for.  That's where I'm trying to sort of tether things to

10   various parts of the declaration, because I think I just

11   have the existence of the judgment.  But -- I'm sorry, the

12   existence of the -- of that particular 2019 district court

13   proceeding.  But for irreparable harm the notion would be --

14   explain what the status is of that proceeding such that

15   there's a need for some sort of stay, otherwise irreparable

16   harm would occur.  I think I just had the existence of the

17   proceeding as a matter of evidence, in Paragraph 26.

18           MR. HYMAN:  I appreciate that, Your Honor.  You

19   know, I think that counsel has acknowledged the time line on

20   -- for Cleary.  I think it's -- I do not have evidence in

21   the declaration of the timing of service and therefore the

22   triggering of the answer period.

23           THE COURT:  Well, I don't mean service, I mean

24   that there's a -- in your view that there's a pending

25   potential event that could occur in that case that would
```

Page 38

```
 1    result in irreparable harm.
 2              MR. HYMAN:  That was -- and the date was triggered
 3    off of the service of BSG in Guernsey, and that's the
 4    service that I was referring to.
 5              THE COURT:  All right.  Anything else that you
 6    would like to tell me about?
 7              MR. HYMAN:  I would just reserve an opportunity to
 8    respond.
 9              THE COURT:  All right.
10              MR. HYMAN:  Thank you.
11              THE COURT:  Thank you.
12              Please, counsel.
13              MS. SCHWEITZER:  Thank you, Your Honor.  For the
14    record, Lisa Schweitzer from Cleary Gottlieb, representing
15    Vale.
16              I think that the one thing, probably the only
17    thing that we agree on with Debtor's counsel, which has been
18    said today, which is that this seems simple, but it's very
19    complex in fact.
20              And the joint administrators have filed this
21    Chapter 15 case and they, unsurprisingly, seek to portray it
22    as a plain vanilla recognition proceeding to further valid
23    Guernsey administration proceeding, they've got a joint
24    administrator, they've got all this, and it's just simply
25    not the case this is straightforward.
```

1          And if you'll indulge me in walking through a

2   little of the history, I will try to stay to the facts that

3   are in front of Your Honor and facts that are not in dispute

4   and to take the issues in turn.  As I previewed for Your

5   Honor, Vale thinks that this Chapter 15 is flat out being

6   brought in bad faith and to further evade the prosecution of

7   the arbitral award, and to further the Debtor's history of

8   holding on to assets and secreting assets.  And, as we'll go

9   into along the way, that there's a lot of reference to the

10  corporations here, there's not a reference to the ultimate

11  owners of the corporation, which is a man named, and I

12  apologize if I get his name wrong, but I believe it's Benny

13  --

14          MR. BLACKMAN:  Steinmetz.

15          MS. SCHWEITZER:  -- Steinmetz.  And he is, and his

16  family are the ultimate beneficiaries of the trust that sits

17  on top of the org chart.  That's nowhere in the record, and

18  the corporate ownership disclosures, the 10 percent

19  ownership disclosures actually stop at the foundation level

20  so that is one of many things that this application raises

21  questions about.  To --

22          THE COURT:  So let me -- I'll certainly let you

23  sort of lay it out, but towards the end what I'd appreciate

24  is your road map for today and further proceedings.  In

25  particular, if they're going to file a brief today in the

1    district court proceeding, and there are other things to do

2    in the district court proceeding, whether there's some sort

3    of ability to have kind of an interim agreement where people

4    can do what they need to do, but they don't -- they allow me

5    a chance to sort through some things.  But again, I'll give

6    you a chance to sort of walk through the history.

7               MS. SCHWEITZER:  Of course, Your Honor.  Again, I

8    always promise to try to tell you where I'm going, so I'll

9    tell you where I'm going, and then I will tell you how I'll

10   get there.

11              We, first with respect to the recognition hearing

12   itself, as I indicated, we do intend to object to this as a

13   recognized foreign main proceeding. And in furtherance of

14   that we do intend to serve discovery and we don't have to do

15   it in the courtroom today, but we recognize that that

16   discovery will need to be expeditious and according to a

17   tight schedule, or an efficient schedule, such that we can

18   complete that by July 10th.  We would not be inclined to ask

19   for a later hearing because, again, we think these issues

20   should be brought forward, not later.

21              But with respect to that first issue of putting a

22   marker on the calendar, July 10th or there, you know, as a

23   start to that hearing would be fine.

24              With respect to the TRO, we share the concerns

25   that Your Honor shares, both in terms of -- and we -- I'll

Page 41

1    make the case, rather than rely on the questions you've

2    thrown out.  But we do share the concerns that the TRO order

3    simply now said -- I believe he had just misspoken.  I think

4    he's looking for a TRO pending a preliminary injunction

5    hearing and then a preliminary injunction under the

6    application is proposed to extend until the final hearing.

7    And the papers, the TRO papers just says the application is

8    granted.  But when you look under that, the relief being

9    sought is against the stay of -- against execution of assets

10   against the Debtors, you know, a heightened standard.  And

11   then also, a bring forward or a gap fill, people have

12   different names for it, of 362, that you just get,

13   basically, the automatic stay in its entirety today.  So

14   that was the application put before you.  And I believe that

15   that is -- we could go through the order again, but that is

16   what he is asking for.

17        We do not believe that that TRO should be, at all,

18   applicable to the Vale Southern District proceeding, both

19   because of a failure for them to even making the showings or

20   put in evidence that's relevant.  Second, they don't even

21   argue, in their motion, or application, that that filing

22   deadline today is the irreparable injury that they're

23   concerned about.  In fact, they don't mention today's filing

24   deadline anywhere in any paper that's been submitted before

25   Your Honor.  But more importantly, we don't think that

1    that's consistent with the law on why you get TROs prior to

2    the recognition of your case, so I'll go through that.

3              On the sealing motion --

4              THE COURT:  Well, one of the things I'm interested

5    in, again, we learn these cases as we go.

6              MS. SCHWEITZER:  Yeah.

7              THE COURT:  I've got -- there's a judge who has a

8    proceeding up the street and depending on what the schedule

9    is with that, it is often preferable to try to work out a

10   practical solution if, in fact, people think but haven't

11   memorialized the notion that nothing's going to happen in

12   that case between now and whenever we might get together

13   here to discuss things, that will actually result in any

14   irreparable harm to the Debtor in terms of the seizing of

15   assets.  There may be a way to avoid fighting about that

16   particular point today and so that I can get papers from you

17   all and anybody else who's interested and then consider this

18   on a more fulsome record.

19              So I'm just trying to think of practical

20   solutions.  I don't think filing a brief, which frankly

21   there's no explanation of what it is that wants to be stayed

22   in connection with that particular case, and certainly

23   filing a brief which clearly has already been drafted,

24   because folks are ready to file it today, it's already 3:15,

25   so I assume it is drafted, doesn't seem to present any --

```
1    doesn't seem to be a basis for me granting a TRO where no

2    one has filed any request to stay those proceedings.  And so

3    there seems to be an element of tactics to that that I don't

4    want to get in the middle of.

5             But my question is, whether as a practical matter,

6    whatever the next step are in that litigation, if there is a

7    way for people to agree and to inform this Court and that

8    court to say, we've worked out the schedule so that we're --

9    this is what we're teeing up, and this is where we're teeing

10   it up, and that there won't be any issues that are going to

11   implicate concerns about execution of assets in the

12   meantime, because frankly we weren't ready to get to that

13   part of the program, that may be a practical solution to at

14   least today's problem.  So --

15             MS. SCHWEITZER:  So, Your Honor, I completely

16   agree with what you said, and just to address that, in part

17   just to make sure the record is clear, is that the original

18   TRO motion is a broad motion for all sorts of stays.  We

19   hear the Debtor's articulate a concern, not in the record,

20   is a filing deadline today or that that proceeding goes

21   beyond today.  They said, I'm going to file today, it's the

22   concerns that go beyond today.

23             My understanding is a motion is not due today with

24   -- the deadline today is for them to answer the petition for

25   recognition.  I do not purport to be a recognition expert
```

Page 44

1      and I would not impose on you to be, either.

2                THE COURT:  But it's the equivalent of an answer.

3                MS. SCHWEITZER:  So it's an answer -- they say

4      they're filing a motion, I reserve all rights --

5                THE COURT:  As Judge Bryant said, an answer is the

6      most useless piece of paper in a litigation.  And while that

7      --

8                MS. SCHWEITZER:  It's --

9                THE COURT:  -- may vary somewhat from case to case

10     --

11               MS. SCHWEITZER:  Yes.

12               MR. BLACKMAN:  Your Honor, I am a "recognition

13     expert" and arbitration.  The way it works in arbitration,

14     under the Federal Arbitration Act is you start a proceeding

15     by what's called the petition.

16               THE COURT:  Petition.

17               MR. BLACKMAN:  The petition is like a complaint,

18     but it's also a brief.  You actually file something which

19     doesn't really recite facts, it gives you the legal

20     arguments.  What they're going to file this afternoon, I

21     assume, is the response to that, which will be a brief

22     setting forth their defenses, under the New York Convention,

23     as to why this award should not be recognized.  You even get

24     a reply, which I mentioned I think due on the 10th, which

25     will be a reply brief.  After that it's up to Judge

1    Broderick what he wants to do, but the clear thing is he's

2    not going to do anything before July 10.  He's not going to

3    enter into any judgments or do anything like that.  He will

4    have a fully briefed motion, he'll decide what to do with

5    it.  And if, by some miracle, he were to grant it, we'd be

6    back before you before the date of execution or anything

7    like that.  So the short answer is, we're just dealing with

8    briefing now.  That's the only thing that's happening in the

9    New York recognition proceeding.

10             THE COURT:  All right.

11             MS. SCHWEITZER:  And so on that -- and Debtor's

12   counsel had made references, and again I don't want to

13   litigate collateral issues, they're saying they might be

14   seeking stay, or adjournments, or have other relief being

15   sought there, that's not what we're aware of is the

16   deadline.  That is not something we're asking you to resolve

17   or opine on today.

18             THE COURT:  Well, I -- so just to cut to the

19   chase, I know we're having an ongoing discussion, but you're

20   trying to do this as official as possible.  I need a record.

21   Right?  So that's why I was spending time trying to anchor

22   various things to various parts of the declaration.  That's

23   the way it works.  And while a TRO -- while irreparable harm

24   is the biggest factor for courts to consider for a TRO, it's

25   not the only factor.  And certainly a preliminary

1    injunction, which is often combined with a hearing on the

2    merits, sort of goes through the whole thing and you need a

3    record to establish various things which may or may not be

4    relevant to things like bonds and other -- all sorts of

5    other issues.

6           So what I hear articulated -- the motion doesn't

7    articulate much.  Usually when people come in they tell me,

8    we have this asset, this is the -- so Alitalia came in and

9    said, we have planes, and they fly through JFK, and if we

10   don't have some interim relief there's a possibility

11   somebody may self-help, notwithstanding our Italian

12   proceedings and try to seize those planes.  That's sort of a

13   very straightforward thing, and I just mentioned sort of the

14   level set.

15          Here, I understand the asset is this

16   litigation right, this Soros claim.  The Soros claim

17   proceedings, which are, I guess, 2017 District Court action,

18   is essentially stayed, and there's some details about that.

19          The other thing relating to that -- well, not

20   relating to that -- separate from that is that you've got

21   this arbitration.  This is the $1.2 billion.  This, I guess,

22   is a concern that this will go forward and mature during the

23   course of the Chapter 15, absent some release.  That's what

24   I understand is really the request that's being made is to

25   say we don't want that to happen.

1           I don't have a lot on the record here other than

2     the existence of this 2019 District Court action.  But what

3     people seem to be telling me, and it doesn't seem to be

4     disputed, which sort of fills in the picture for both sides,

5     is what the briefing schedule is for that.  And that doesn't

6     seem to be anything where there's any peril to anyone

7     between now and July 10th.

8           I suppose the first peril could be July 11th at

9     12:01 AM, if Judge Broderick was sitting in his chambers and

10    thought that that would be the first thing he wanted to get

11    off his to do list on that particular day.  Procedurally,

12    that is something he could do.  But that does -- since today

13    is June 4th, that does give us some time to figure out which

14    end is up for pieces of the Chapter 15.  And if everybody

15    understands that that's how it's going to work and we sort

16    of address than on the record, that may be something that

17    allows us to conduct other briefing and figure out what, if

18    any, relief would be appropriate between now and any date of

19    recognition.

20           MR. HYMAN:  I was going to say, Your Honor, that

21    you've really cut to the chase.  And I think that you really

22    do understand what the concern of this Chapter 15 Debtor is.

23    It's really the adverse consequences from the entry of an

24    award acknowledging the arbitration award in the U.K.

25           THE COURT:  But I think everyone agrees that such

```
1    an award would not take place before -- until after the

2    replies filed.  And so, there's no intent, and I haven't

3    heard any, to do something out of regular order where Vale

4    would say, well, we're not going to file a reply, we'll file

5    a letter.  As soon you file your thing saying, Judge, we

6    don't need a reply, we unilaterally win.

7              So, essentially, I'll take the representations in

8    front of me to mean that there is no potential for any entry

9    of a judgment recognizing the arbitration award before the

10   briefing is completed on July 10th, and therefore, we can

11   all at least not worry about that issue for purposes of

12   today's proceeding.

13             MR. HYMAN:  I think, Your Honor, if we could get

14   that representation from Cleary Gottlieb, that would --

15             THE COURT:  I think I did, but --

16             MR. HYMAN:  -- that would go --

17             THE COURT:  -- but --

18             MR. HYMAN:  -- that would a long --

19             THE COURT:  -- but --

20             MR. HYMAN:  -- that would go a long way to allay

21   our concerns.

22             THE COURT:  I think I just did, but --

23             MR. BLACKMAN:  Yeah, just to make it clear -- and

24   I may have gotten my dates a little middle -- our reply

25   brief would be due on June 18th.
```

1              THE COURT:  June 18th.  All right, so that's a

2      different date.  Okay.

3              MR. BLACKMAN:  And the Soros case, just again so

4      the record is clear, has been stayed for a year.  The next

5      hearing on that is July 18.  So, in between that, you're

6      going to have our hearing --

7              THE COURT:  Right.

8              MR. BLACKMAN:  -- on July 10th.  And --

9              MS. SCHWEITZER:  No.

10             MR. BLACKMAN:  No --

11             MS. SCHWEITZER:  Well, the June 18th --

12             THE COURT:  No.  So, June 18th --

13             MR. BLACKMAN:  No.  In between June 18 and July --

14     there are two separate proceedings.

15             THE COURT:  So, that means that there's two weeks.

16             MS. SCHWEITZER:  So --

17             THE COURT:  That changes the calculus.  I'm trying

18     -- so here's what I'm trying to do.  And I may ask folks to

19     work backwards on this rather than think about...  I mean, I

20     have a fairly sketchy record.  So, but rather than correct

21     litigation mischief for people, regardless of whether you

22     win or lose, my thought would be to try to work out a

23     schedule here to deal with any requests for injunctive

24     relief after today, with an understanding that perhaps

25     you're going to -- you could memorialize with this Court and

Page 50

1    with the District Court that you're not asking for any entry

2    of a judgment,  recognize the arbitration award before X

3    date, so we could essentially deal with our briefing.

4           I'm not going to ask you for that date now.  I'll

5    give you a few minutes to chat and see what you can live

6    with; chat with clients, chat with each other.  I don't want

7    to do anything that's going to add another litigation issue

8    to address.  And June 18th is a little --

9           MS. SCHWEITZER:  I'm sorry.

10          THE COURT:  That's all right.  The reason why I

11   mentioned it's June 18th, which is two weeks from now, I'm

12   around next week.  I'm supposed to be camping on an island

13   in Lake George on the week of June 17th.

14          MR. HYMAN:  Oh, we're jealous.

15          THE COURT:  That has not meant in the past that

16   I'm unreachable for business.

17

18          MR. HYMAN:  No, that's all right --

19          THE COURT:  So, what I'd like to do is give you a

20   few moments in a little bit to talk about scheduling and

21   maybe you have a way to handle it.  There are times when

22   essentially folks can give away ice in the winter and say,

23   we're fine, we don't think anything's going to happen by

24   this date but we're happy to put it on the record and let

25   everybody sort of tee up the issues that need to be teed up.

```
 1              MS. SCHWEITZER:  I heard everything you said.  But

 2    because I'm a mom, I actually can like talk with -- you

 3    know, and listen and --

 4              THE COURT:  That means you probably could throw in

 5    a few more participants.

 6              MS. SCHWEITZER:  There you go.  I think someone

 7    was talking behind me that -- I have a proposal, if I may.

 8              THE COURT:  Sure.  All right.

 9              MS. SCHWEITZER:  So, as I understand it -- and I

10    just want the record to be clear because people are saying

11    different things -- is that today the deadline is this

12    response to the petition.

13              THE COURT:  Right.

14              MS. SCHWEITZER:  And  Debtors' counsel is

15    representing they are filing --

16              THE COURT:  Right.

17              MS. SCHWEITZER:  -- a response --

18              THE COURT:  Yes.

19              MS. SCHWEITZER:  -- to the petition; nothing

20    different.  Our reply is due --

21              MR. BLACKMAN:  June 18th.

22              MS. SCHWEITZER:  -- June 18th.  And we would

23    propose that if they will file their response today, we will

24    file our reply on June 18th.  And assuming we are proceeding

25    with that schedule and everyone's in agreement with that, we
```

```
 1    would be prepared to ask -- or to tell that court, ask that
 2    court -- however we phrase it -- that they don't issue a
 3    ruling judgment --
 4              THE COURT:  Right.
 5              MS. SCHWEITZER:  -- before July 10th or 11th.
 6              THE COURT:  All right.
 7              MS. SCHWEITZER:  Right?  So, if that would work.
 8    And then if it's not that and there needs to be preliminary
 9    relief, we are prepared to do so, but we would want
10    discovery on these different points that -- you know, these
11    arguments we're hearing about agreements and all these other
12    things.
13              MR. HYMAN:  We understand that, Your Honor.  I
14    think that we're just trying to confirm with our arbitration
15    expert, who's not in the courtroom today, that we're talking
16    about the right things and the paper is going to be filed
17    today.  I don't know that it's called an answer or a
18    response.
19              MR. BLACKMAN:  It's called -- it's an "answer"
20    but because, as I said, under the Arbitration Act, a
21    petition to confirm is treated like a motion, it's
22    essentially an opposition brief.
23              THE COURT:  Right.
24              MR. BLACKMAN:  It'll set forth -- there are legal
25    grounds and factual grounds opposing the recognition of the
```

1    award, and we will reply on the 18th with why their grounds

2    don't work, et cetera, and the judge will then decide.  And

3    the only wrinkle in that is that we just, I think, agreed

4    that we will tell the judge, don't do that --

5              THE COURT:  Please don't do that.  Yeah.

6              MR. BLACKMAN:  -- don't rule on that until you've

7    heard us on the 10th of July.

8              THE COURT:  Right.

9              MR. BLACKMAN:  And that's simple and

10   straightforward.

11             THE COURT:  Right.  And right, we're trying to be

12   solicitous of different court processes without adding that

13   to our list of litigation items to duke it out.  Right.

14             MR. HYMAN:  Your Honor, I think that would save a

15   lot of cost and expense for both parties.  Resources are

16   precious for us.  So, that seems to be a solution that would

17   work.

18             MS. SCHWEITZER:  Okay.  And just so we're clear,

19   because we like solutions, is that we understand then there

20   is no request for pre-recognition injunctive relief at all.

21   That motion is withdrawn.

22             MR. HYMAN:  I think this --

23             MS. SCHWEITZER:  Or that's resolved.  Yes.

24             MR. HYMAN:  This solution resolves that and --

25             MS. SCHWEITZER:  Okay.

Page 54

```
 1              MR. HYMAN:  -- again, I think it saves significant
 2    cost and expense.
 3              MS. SCHWEITZER:  Okay.
 4              MR. HYMAN:  -- and perhaps save a trip to the
 5    United States for one of our joint administrators.
 6              MS. SCHWEITZER:  Okay.  It's a lovely time to be
 7    in the U.S.  So, well done.  We can agree on things.
 8              THE COURT:  Well, thank you.  I appreciate that.
 9    Again, because regardless of how people fare if I
10    (indiscernible) as a matter of a litigation matter, it could
11    very easily result in collateral litigation, more time, more
12    expense, more briefing.  And I'm trying to avoid that.  If
13    in fact -- which is likely the case -- that Judge Broderick
14    probably has a very long list of things to do, and while
15    he'll turn to it quickly, that the odds of him dealing with
16    it between June 19th and July 10th are probably relatively
17    small.  So, all right.  And then that way, we can move on.
18              So, all right.  So, we can return in a few minutes
19    to talking about scheduling and discovery, but I know you
20    were sort of talking bigger picture.
21              MS. SCHWEITZER:  Right.
22              THE COURT:  And I don't think you had finished
23    that.  So, let --
24              MS. SCHWEITZER:  No, it's --
25              THE COURT:  Why don't you do that?
```

```
 1              MS. SCHWEITZER:  It's perfect and it's a perfect
 2    transition.  So, I will.  In my -- we want at the end -- we
 3    can cross off TROs and PI points, which is nice -- and then
 4    I would take -- I do want to give you our side of the color
 5    of the larger proceedings so you understand what's going to
 6    be contested.
 7              I will start by saying a couple of words and
 8    getting to the sealing question right away, because I think
 9    that is a gating issue.  So, as the Debtors have told you, I
10    don't know what is in Binder Number 2.  I guess they'd given
11    you this Driver affidavit.
12              THE COURT:  Yes.
13              MS. SCHWEITZER:  That's nice.  That's one.  And
14    so, that -- our understanding is when the administration
15    proceeding was opened in Guernsey, there was one affidavit
16    filed, and it is the Driver affidavit.  It is not one of 10
17    affidavits to support that application.  It's not, you know,
18    partially under seal.  It was filed under seal and it was
19    never unsealed in any way.  And I don't think it's a
20    question for today and I don't purport to be a Guernsey
21    counsel.  My understanding is it's not the practice with
22    every single case, everything 100 percent is filed under
23    seal, but that's probably a question for another day.  But
24    it goes to this isn't just like there is a European law that
25    requires everything to be under seal.  That's not the world
```

Page 56

1    we're living in.

2            So, regardless, the Guernsey proceeding was

3    commenced.  And I'll go through the rest of that proceeding,

4    with the lack of activity in that proceeding, a little bit

5    after this.  But the Driver affidavit was sealed.  Then they

6    filed in this court their motion to maintain it under seal

7    under Section 107.  And notwithstanding Debtors' counsel

8    saying, well, it's not really all confidential, probably

9    some of this can be unsealed, the order that they present

10   for the Court to consider is to have the entirety of the

11   document sealed for the entirety -- it shall remain under

12   seal until the conclusion of this case.

13           And there's a couple issues with that, is number

14   one, as Your Honor noted, they haven't made any showing with

15   regard to commercial sensitivity.  I believe that the

16   application itself --

17           THE COURT:  Well, I also know that I've been

18   pointed to the authority and basis upon which it was sealed

19   in Guernsey, right?  So, it's one thing to say -- and I've

20   had cases where folks have come in and somebody's made the

21   following representation, everyone said, yeah, that's right

22   -- under the rules of that court, these are sealed

23   proceedings and we cannot -- we all agree we cannot submit

24   these documents without seeking some sort of relief from

25   that court.

```
 1            Now, usually what those are are court filings and

 2    proceedings in that court.  So, if somebody wants a

 3    transcript, they aren't necessarily underlying documents.

 4    And so, that's where this also seems to be different.  I'm

 5    not -- even if you had a rule about these proceedings are

 6    under seal, I don't think -- this is not a transcript of

 7    those proceedings.  These are things relating to the Debtor,

 8    which again, if you -- I don't want a bootstrapping problem

 9    where somebody said, we're asking to seal it in Guernsey, we

10    have a fairly low threshold under the law in Guernsey, and

11    they say, okay, fine, we don't care one way or the other,

12    and then have to come to the United States and say, by the

13    way, they sealed it in Guernsey at our request.  It

14    therefore should be sealed here.  That doesn't seem right.

15            So, as you said, I think the rule -- there are

16    times when there are rules in Europe about what can be made

17    public in what can't be made public.  But I usually am given

18    a justification and an explanation that's sufficiently

19    detailed.  And oftentimes I can tell that it's not a problem

20    because everybody who's fighting will stand up and say, yes,

21    we agree that's a problem and we're taking steps to get that

22    released.

23            The other thing is, when I've had that happen it's

24    been proceedings that are relevant, but they aren't the

25    case.  And so, that's -- so if this is being asked to
```

1    recognize something and I don't really know -- and nobody

2    else can sort of see it; it's sort of hidden away in a box

3    and you're only showing me by opening it a little, the

4    thousand pages, and nobody else can see it, that's another

5    problem.   And in the case that I've had where there's been

6    matters that have been sealed, you've had parties who had

7    some idea of what was going on or what the result was.

8    Again, it was really court proceedings.

9            So, I haven't really had sufficient justification

10   to really do much of anything with this for purposes of

11   today.   I've gotten it sealed somewhere else, so it should

12   be sealed here.   It's commercially sensitive.   That's a

13   thousand pages.   It's a lot of things.

14           And so, in the U.S., obviously, there's a policy.

15   It's an important policy of having open court proceedings

16   where possible, and that's an important value.   Putting

17   aside that, we have to have proceedings where folks have a

18   meaningful opportunity to participate.   And if they don't

19   have something that prevents them from having that

20   opportunity, that's a whole other problem.   So, what I have

21   today is sort of kind of a Post-it note kind of attached to

22   this without much behind it.

23           MR. HYMAN:   Yeah.   No, I appreciate that, Your

24   Honor, and I appreciate all your comments.   Just as a

25   reminder, we do have Mr. Dingle on the phone to the extent

```
 1    that would be of any value.  But --

 2              THE COURT:  He's on the phone to listen.  He's not

 3    -- again, I don't hear argument on the phone, and people

 4    can't appear as a witness on the phone.  And so, that's

 5    nice, but it doesn't solve my problem.  He can take it all

 6    in and we can -- when we address this again, which I suspect

 7    we will -- people are going to need to be here and we're

 8    going to need a much more fulsome explanation --

 9              MR. HYMAN:  Yeah, I appreciate --

10              THE COURT:  -- for a variety of reasons that I've

11    just laid out.

12              MR. HYMAN:  I appreciate that, Your Honor.  And I

13    imagine that when we come back to court on July 10th,

14    there's going to be significant disclosure and --

15              THE COURT:  I --

16              MR. HYMAN:  -- significant discovery and --

17              THE COURT:  Well, how can we actually have a

18    proceeding?  I mean, if you want to have -- sort of jumping

19    the gun here, but there's talk about discovery.  I don't

20    know how we don't have to deal with this first.  And then

21    we're talking about a hearing on the merits.  I don't know

22    how we don't have to do with this first.  And by here, I'm

23    gesturing to the 1,000 pages that are the exhibits to the

24    affidavit filed in Guernsey, which is all under seal.

25              And also, I mean, I just think that is -- we're
```

Page 60

```
 1    going to have to deal with that soon.  So, I think we're
 2    going to have to have a conversation next week about what to
 3    do with this, and people can -- we'll get to the details of
 4    what that looks like.  But we have to figure out what to do
 5    with this and what's the appropriate way to handle it.
 6                 MR. HYMAN:  Got it.
 7                 THE COURT:  And there also may be ways in the
 8    meantime that -- I don't know if there are ways to get this
 9    addressed where folks can look at documents, even if they
10    aren't filed publicly.  So, I don't know the feasibility or
11    not of that in the context of this.
12                 And again, I don't even know if I have the --
13    remind me if I have the sealing order from the Guernsey
14    proceeding.
15                 MR. HYMAN:  It's actually in the administrative
16    order itself.
17                 THE COURT:  All right.  Where is that?
18                 MR. HYMAN:  So, that would be...
19                 MR. HITCHINGS:  (indiscernible)
20                 THE COURT:  Sorry, counsel.  I didn't mean to sort
21    of --
22                 MR. HYMAN:  Yeah, it was Exhibit --
23                 MS. SCHWEITZER:  (indiscernible)
24                 MR. HYMAN:  It was Exhibit A to the verified
25    petition, again, Your Honor.
```

1          THE COURT:  All right.  So, Tab 5?  Is that right?

2          MR. HYMAN:  That was Tab 5, correct?

3          THE COURT:  All right.  And what Exhibit?

4          MR. HYMAN:  Exhibit A.  I'm just trying to find

5     the page.

6          THE COURT:  All right.  So, it's the pages right

7     after the actual pleading itself?

8          MR. HYMAN:  Yes, again, and I apologize for not

9     having separate tabs on those pages.

10          THE COURT:  Right.  So, where -- what's the

11    language?

12          MR. HYMAN:  It's in the second order and it's the

13    first paragraph.  The hearing on this matter be in-camera

14    and the court file be sealed.

15          THE COURT:  All right.  Well, that's not much more

16    illuminating than --

17          MR. HYMAN:  And --

18          MS. SCHWEITZER:  And you'll notice the evidence

19    from above it appears to be the affidavit of Mr. Driver.

20    So, we don't have the basis for sealing.  And to further

21    that -- because I completely agree with everything you said,

22    so I'm not going to double argue it -- but if you look at

23    the exhibit attached to the motion to seal, there's

24    correspondence with Mr. Dingle --

25          THE COURT:  Right.

```
 1              MS. SCHWEITZER:  -- and the court where he says,
 2      oh, I know this is confidential, so I'm going to just file
 3      it under seal, or I'm going to seek to file it under seal,
 4      and it's like, okay.  But he doesn't make any effort to get
 5      permission to not file it under seal.
 6              THE COURT:  Yeah.  No, I do recall it's a bit of
 7      leading the witness.  So, yeah.  So, we're going to have to
 8      deal with this.  So, while we dealt with the TRO issue and
 9      so we don't need a quick hearing on this, I think we're
10      going to need a quick hearing on this particular issue.
11              And so, the 10th seems too soon and
12      (indiscernible) busy day here.  So, I'm looking at maybe the
13      13th, which is also the (indiscernible).
14          (Court confers with Clerk)
15              MS. SCHWEITZER:  So, Your Honor, the 13th is fine
16      for us.  I assume from the things I'm hearing you say is
17      that there would be a need for live evidence or an
18      evidentiary record for that.
19              THE COURT:  Yeah, well what I'd like to do is I'd
20      like to get a supplemental filing to justify the sealing.  I
21      really -- again, all I understand is that it was sealed in
22      Guernsey and the order doesn't really tell me much more than
23      that.  And I don't -- and then the only other thing I have,
24      it says confidential business information, but then it's not
25      tied to the thousand pages, or more than a thousand pages,
```

that I have. And obviously, here in the U.S., we are in the business of redacting things where they're appropriate to be redacted.

So, again, I can't tell if the request was made in Guernsey and the Court in Guernsey said, okay, we're happy to do that, and then you went back and said, well, we want to do the same thing in the U.S. and they probably said, we don't care, it's not really our problem. If this is a currency court-imitated sealing requirement, and if so, is there a way to address that and get these things unsealed? What is it that we're -- when we get down to the brass tacks, what is it that shouldn't be part of a public record?

MR. HYMAN: Your Honor, I appreciate your comments again. And I think what we'll do is we'll endeavor to spend some more time on this when we've got some more time and we haven't been trying to get these papers filed, to better understand the confidential nature to the extent -- and to the extent that we can disclose certain portions of this, we will reach out to Cleary and see if we can get this resolved in the interim, perhaps avoid a court hearing. But if not, you know, we're happy to come back with a more narrow list of --

THE COURT: So, how long --

MR. HYMAN: -- of requests.

THE COURT: -- do you want to have to file a

1  supplement to your -- I'm going to essentially adjourn the

2  motion to seal, right?  And so, when do you want to file a

3  supplemental pleading on that?  I'm thinking the 7th,

4  Friday.

5            MR. HYMAN:  Sure, Your Honor.

6            THE COURT:  All right.  So, let's do that.  And

7  then why don't you do that by noon.  And then how long do

8  you want to respond?

9            MS. SCHWEITZER:  Could we -- 5:00 on the 11th?

10 Does that give you enough time to look at the paper?

11           THE COURT:  Yeah.  No, that's fine.  I was going

12 to say noon on the 12th.

13           MS. SCHWEITZER:  We are happy to take that.  We

14 didn't want to impose on you.

15           THE COURT:  I'm in hearings for all the morning on

16 the 12th, so that's fine.

17           MS. SCHWEITZER:  We appreciate that, Your Honor.

18           THE COURT:  And so, then we'll have a discussion

19 on the 13th.  I think we just scheduled something for...

20      (Court confers with Clerk)

21           THE COURT:  I just scheduled something for that

22 afternoon, and I'll blame it on being a parent.  So, as you

23 mentioned --

24           MS. SCHWEITZER:    There you go.

25           THE COURT:  -- the (indiscernible) element and the

Page 65

1    other aspect, which is I can't remember what I just

2    scheduled, and I want to find out what it is.  But we'll

3    schedule it sometime that afternoon and we'll figure out

4    what time --

5              MS. SCHWEITZER:  Okay.

6              THE COURT:  -- in a minute, once I figure out what

7    that is.

8              MR. HYMAN:  Your Honor --

9              THE COURT:  So, that's how we'll deal with

10   sealing, rather than spinning our wheels today on an

11   incomplete record.

12             MR. HYMAN:  Your Honor, can I just make one

13   request in that we have until the end of the day on Friday

14   to file our response rather than noon?

15             THE COURT:  I need to read it.  I mean... So, I

16   think, actually, what I was thinking about is whether -- if

17   we need to deal with the TRO, which by their nature expire

18   after 10 days, whether we need another TRO hearing.  So, I

19   think I had preemptively blocked out the afternoon of the

20   13th.  So, you can --

21             MS. SCHWEITZER:  Oh, you did it for us.

22             THE COURT:  Yeah.  So, it was free to you all.

23   So, let's say 3:00 on the 13th.  Actually, let's make it

24   2:30, just in terms of we don't know how long it may go.

25   So, 2:30 on the 13th.

```
 1              Today is the 4th.  That gives you a couple of

 2    days.  I know it's not perfect, but again, they need a

 3    chance to reply, I need a chance to read everything and get

 4    ready, and I have a lot of stuff going on next week.  I have

 5    knockdown drag out fights on Monday, on Wednesday, on

 6    Thursday.  So, I need some time.  So --

 7              MR. HYMAN:  No problem, Your Honor.  We'll get it

 8    done by noon.

 9              THE COURT:  All right.  So, all right.  So, I

10    think -- is there anything else on sealing?

11              MS. SCHWEITZER:  There's one bootstrapping issue

12    on sealing, which is the declaration of Michael Cohen -- oh,

13    I'm sorry, Malcom Cohen.

14              THE COURT:  Right.

15              MS. SCHWEITZER:  I apologize.  In Paragraph 7, you

16    know, he gives the standard on the joint administrator in

17    Paragraph 6, so it's my personal knowledge and all these

18    other things.  And then he says, in particular, I have

19    relied upon the affidavit of Mr. Driver in support of -- you

20    know, what we'll just call the Driver affidavit, which was

21    submitted to the Court under seal in support of their

22    things.  And certain things are sensitive, but he refers, in

23    this declaration, to the Driver affidavit, and in some

24    places specifies it.  But I don't know what I don't know,

25    right?  I don't know what's his personal knowledge.
```

```
 1            And when he's saying, I relied on this Driver

 2   affidavit and it's sealed, I guess at a minimum I would ask

 3   that to the extent that they intend to offer this as

 4   evidence, that they indicate where things are not personal

 5   knowledge or they strike it, or I --

 6            THE COURT:  Well, they -- so, I think one of the

 7   things that -- the prism under which sealing has to be

 8   looked at is right.  There is a burden for purposes of

 9   recognition.  And folks have to be able to satisfy that

10   burden and presumably do so with information that's on the

11   public record and can be subject to cross-examination and

12   review.

13            So, I agree that that's relevant.  And so, I

14   haven't gone through -- although it did occur to me -- how

15   the information set forth in this declaration of Malcolm

16   Cohen can be public and various things -- the things that

17   here can't be.  And I don't know where the dividing line is.

18   And I know that the details in trying to figure that out can

19   often be really hard to figure out.  So, I think we really

20   have to think about what the principles are that is the

21   basis for sealing these things and then work it out.

22            So, the other thing I will say is to the extent

23   that folks think it would be helpful to have a conversation

24   later in the week to talk about this, I'd be happy to do

25   that.  We can get folks on the phone to work through some of
```

Page 68

```
 1    these issues.  Because what I don't -- what wouldn't be

 2    helpful is if people stand in ceremony, file their briefs,

 3    and then we find ourselves in another slightly more advanced

 4    version of the same conversation on the 13th, because it's

 5    just going to be a recurring problem.

 6            So, it may be that it would be helpful to have a

 7    discussion.  I'm at the Second Circuit Judicial Conference

 8    tomorrow through Friday.  But I certainly could make time if

 9    it would be helpful.  What I would ask is if you want to

10    have a conversation, just give me a couple of options and

11    I'll pick one to have a discussion.  It might be helpful,

12    rather than sort of saying, well, we're just going to

13    litigate it.  I mean, you may end up litigating aspects of

14    it, but I think everybody understands that for this case to

15    move forward, we've got to figure this out sooner rather

16    than later.

17            MR. HYMAN:  Your Honor, we agree with that.  And

18    again, we weren't really trying to hide the ball.  What we

19    were trying to do is get papers filed and prepared in an

20    expeditious manner, recognizing the fact that there was the

21    ceiling order in Guernsey.

22            THE COURT:  All right.

23            MR. HYMAN:  We will go through it very carefully

24    and we will examine to the extent that there is some real

25    sensitive information.  And we'll be back, and we'll be
```

Page 69

1    addressing that in our papers.

2         MS. SCHWEITZER:  Right.  And Your Honor doesn't

3    have to rule on this today, but I think it's going to be

4    this week or next week, or whenever this hits the hay.  But

5    if, in fact, the Debtors are pushing for sealing and it were

6    to be granted, then we would want to know how that ties into

7    Mr. Cohen's statements, right, I sealed this under the

8    representation that it's implicit in there.  So, I don't

9    think we have to make a final decision here --

10        THE COURT:  No, no --

11        MS. SCHWEITZER:  -- but I don't want to forget

12   that.

13        THE COURT:  -- there's a sword shield problem.

14   Yeah, I understand.  So, if we did have a chat about it, I

15   would think Friday might be too late.  So, I would think it

16   would probably have to happen Thursday, right?  We don't

17   want to -- if you -- once you file something on Friday, you

18   filed something on Friday.  So, I would think Thursday or

19   even Wednesday would be the time for having a discussion.

20        MR. HYMAN:  We will probably need until Thursday.

21   The folks in Guernsey in England are quite a few hours ahead

22   of us, and we've probably lost them for the day.  So, we'll

23   reengage with them --

24        THE COURT:  All right.

25        MR. HYMAN:  -- first thing tomorrow morning and

Page 70

```
 1    try to --
 2              THE COURT:  And if I have a particular --
 3              MR. HYMAN:  -- be as productive as possible on
 4    this issue.
 5              THE COURT:  -- window on Thursday, my chambers
 6    might reach out to let you know what that is, just to make
 7    life easier.  I know there's actually an International
 8    Insolvency Panel at the Second Circuit Judicial Conference.
 9    And I would like to attend that.  It would be ironic to miss
10    that panel for this case.  So --
11              MS. SCHWEITZER:  It's like phone a friend.
12              THE COURT:  Yes.  So, again, if I have a
13    particularly good window, I might -- I'll circulate that in
14    advance to make --
15              MS. SCHWEITZER:  Okay.  We --
16              THE COURT:  -- like a little bit easier for you
17    all.
18              MS. SCHWEITZER:  We will find someone on our team
19    to be available.  Obviously, we greatly appreciate Your
20    Honor's offer.  I think the ball is in the Debtors' court to
21    introduce something for us to talk about.
22              THE COURT:  Right.
23              MS. SCHWEITZER:  But we're always happy to find
24    prospective solutions.
25              THE COURT:  Yeah.  What I would imagine -- the
```

1    only way that call makes sense is for the Debtors to get a

2    bunch of information and to refine their position, and then

3    call you and say we haven't' filed our papers yet, but I can

4    tell you the following things to advance the ball, A, B, C,

5    D.  And then you have a conversation and say, in light of

6    that and in the interest of efficiency, it would be very

7    helpful to have a discussion to try to remove some issues

8    from the litigation plate.

9              So, if we have a discussion with the Court -- but

10   yeah, they would have to -- I'm not suggesting that people

11   leave here today, not talk to one another, and we just have

12   sort of a random call later this week, that's probably not

13   going to help things.

14             MR. HYMAN:  Yeah.

15             THE COURT:  So, again, I would suggest that

16   Debtors figure some things out and then reach out to

17   counsel, and with the idea of trying to advance the ball

18   forward so the case can actually be meaningfully litigated.

19   And then if there is some particular issue that you think

20   would be useful to talk about in advance, we can do that.

21   And there might not be.  There might be, hey, we figured out

22   a few things, we've narrowed some issues, but we still have

23   some other issues and we're just going to brief them, and

24   we'll talk about it on the 13th.

25             All right.

1          MS. SCHWEITZER:  Great.  So, I think -- I'm very

2     mindful of the time.  We have gone for a while and I know

3     you've accommodated us today.  I would like a couple minutes

4     just to give you --

5          THE COURT:  Sure.

6          MS. SCHWEITZER:  -- some of our overarching

7     concerns or color, I think I would say.  I think Mr.

8     Blackman would hook me if I didn't.  And I will start with

9     that.  But the -- just as a high level, I think you hear the

10    issues being -- percolating around.  Vale had entered into a

11    joint venture agreement with the Debtor company years ago.

12    It was to get mining rights in Guinea.  Vale had paid about

13    $1.2 billion, which was part, but not all, of what they were

14    ultimately supposed to invest in that project.

15         And you do have the arbitration award in front of

16    you.  And I will say it very quickly, and Mr. Blackman might

17    want to add a couple of color notes around it.  But what

18    basically happened was around 2014, there were -- they might

19    say allegations; we would say findings or facts --

20    discovered about Mr. Benny Steinmetz, the ultimate owner or

21    beneficiary of this chain of corporations, that there was

22    fraud by him.

23         And in connection with that investment, the

24    Debtors had said that there was a change in the

25    administration in Guinea, which caused loss of concession

1     rights.  There are allegations and, I believe, possible

2     proof regarding bribery.  But certainly, lots of questions

3     and untoward behavior linked to the loss of the concessions.

4            Vale sought to rescind the concession and get

5     their money back and commenced an arbitration in 2014

6     seeking rescission and damages, and you can imagine the

7     bucket of claims that went.  It was a long -- you see the

8     arbiters like to write long decisions, and they basically,

9     in the long and short of it, awarded rescission of the

10    contract, awarded damages, and in particular, notably, made

11    findings that Mr. --

12           MR. BLACKMAN:  Steinmetz.

13           MS. SCHWEITZER:  -- Steinmetz -- I apologize.  Mr.

14    Steinmetz had made misrepresentations in connection with the

15    due diligence into the entry into the joint venture that

16    were connected to representations he made about the absence

17    of bribery, that there was no bribery in connection with

18    obtaining of the mining rights.  So, that award was entered.

19    Vale then got that award recognized in London and the

20    Debtors -- and that was May this year.  The award came down

21    in April of this year.  Early May, Vale got a recognition

22    award.  And then there's been some litigation going back and

23    forth in London about the Debtors coming and trying to have

24    that unrecognized.

25           The Debtors have not sought recognition of the

Page 74

```
 1      Guernsey proceeding in London.  I believe they first took
 2      the position that there was an automatic stay of the
 3      arbitration or for their proceedings.  We opposed that.  And
 4      we said, you can apply for it, but we're going to see
 5      discovery on these different issues.  And they never went
 6      forward after that fact.  So, they are litigating the
 7      question of, you know, whether it's subject to review.  But
 8      there's no bankruptcy Chapter 15 equivalent going on in
 9      England.
10              THE COURT:  Do you have any sense or views as to
11      why this proceeding is the form in which things have been
12      pursued, as opposed to London?
13              MS. SCHWEITZER:  So, I think that -- well, I think
14      there was a dodge and weave practice all along, and so the
15      Debtors, in their papers, give you the reason that by filing
16      an objection or a rehearing or challenge to the London stay,
17      that they -- right now, we are stayed from enforcing until
18      that proceeding is resolved.
19              I think also, as we said, is that we did say to
20      them, you can go seek recognition, but if you seek
21      recognition, the Court can take discovery of the proceeding.
22      The Court can take discovery on all the underlying acts.
23      And so, I can't purport to be in the Debtors' mind of why
24      they didn't
25              THE COURT:  All right.
```

1          MS. SCHWEITZER:  -- follow up with them.  They

2    present today the plain-vanilla Chapter 15 high-five

3    recognition story, and that's -- you can probably see in

4    here where we're going with our issues and concerns.  I

5    think the issues and concerns here are kind of going to the

6    larger, what's going on that -- is there a robust Guernsey

7    proceeding and why does this Guernsey proceeding exist at

8    all, right?

9          And so, this Guernsey proceeding was started, two

10   joint administrators were appointed.  There's a Guernsey

11   joint administrator and a London joint administrator.  So,

12   you have -- we don't have to do it today, but COMI issues

13   regarding where is this thing taking place.

14         There have only been two reports issued to date

15   that we know of, both of which are in the application

16   materials, and both of them say we're going to pursue a

17   restructuring where we continue to pursue our litigation or

18   assets, the Soros litigation, and this exit arbitration for

19   the Debtors to get back these mining rights.  Not for us.

20   They're challenging -- they're going and challenging the

21   denial of the revocation of the mining rights.  So, maybe

22   they get their cake and needed too, or who knows what.  But

23   those were their assets they wanted to pursue: exit

24   arbitration and Soros.

25         In the papers today, the Debtors are describing

```
 1   the Soros litigation as the litigation where all the money's

 2   at.  But -- and I'm being whispered in my ears that maybe

 3   there's details and it's not quite accurately described at

 4   different places -- but there's been no action or pursuit of

 5   the Soros litigation all this time.  That it's -- I think

 6   the papers say that since 1017, there's been no progress in

 7   that case.

 8            So, it's a little odd to call it the reason that

 9   you need a Chapter 15 and you need a restructuring is to

10   realize the value of the Soros litigation, but nothing's

11   happening in the Soros litigation.  And then your only other

12   asset is to go after this Guinea ICSID arbitration.  Again,

13   allegations.  I don't of evidence.  I know what I'm being

14   told overnight and what I'm being shown, is that there was a

15   press release or a report, some public media report, that

16   Mr. Steinmetz, the main --

17            MR. BLACKMAN:  Steinmetz.

18            MS. SCHWEITZER:  Steinmetz -- I apologize --

19   Steinmetz --

20            THE COURT:  You can just call him the owner.

21            MS. SCHWEITZER:  Benny.  We're going to call him

22   Benny.  So, Benny had reached a finding settlement with

23   Guinea, Guinea government, whoever gets the concessions

24   regarding that arbitration.  Not that the joint

25   administrators had, but the owner had reached the settlement
```

```
 1    to the point where the joint administrators came out and put

 2    a press release out saying, oh, we didn't enter into any

 3    finding settlement.  And now, in these papers, there's a

 4    description of a non-binding settlement.

 5              And so, it appears we have serious questions

 6    regarding who is in charge, right, and who's running this

 7    case, and what is this restructuring being used for other

 8    than to fight off legitimate judgment creditors, and to

 9    continue those actions and kind of world-wide running

10    around.  Other --

11              THE COURT:  So, what would be the -- what would be

12    the normal exit for this kind of a proceeding in Guernsey,

13    right, so what is --

14              MS. SCHWEITZER:  In Guernsey?

15              THE COURT:  Yeah.

16              MS. SCHWEITZER:  So, my understanding is --

17              THE COURT:  Is it a scheme of arrangement?  What

18    is it?

19              MS. SCHWEITZER:  So, again, this is what I've

20    learned overnight, is that it's basically you can

21    reorganize, or you would go to a liquidation that you try to

22    figure out whether you're going to reorganize or not.  The

23    papers say, we're going to reorganize.

24              The concerns we have are who is "we", and the

25    reorganization, if there is one, think of it more
```

```
 1    (indiscernible), I guess.  The administrators are appointed
 2    to look after the estate and to reorganize the estate.  What
 3    they are doing is -- or someone is doing -- is pursuing this
 4    exit arbitration and trying to settle that, which benefits
 5    the owner personally.  They're trying to hold off paying
 6    creditors.
 7              What we also know, which is not within their
 8    reports, is even something on their radar screen or that
 9    they're concerned about, is that the evidence that's been
10    collected to date in connection with the arbitration is the
11    $1.2 billion.  It's not that we paid Vale.  It didn't go to
12    the mine.  It's not sitting at the Debtor.  It was
13    upstreamed to the parent.  The same parent who is now -- or
14    a parent affiliate within the corporate group, who is now
15    funding this Guernsey restructuring -- that they mentioned
16    this funding agreement, it's from an affiliate funding down.
17    The funding agreement has not been disclosed.  We don't know
18    the terms.  We don't know if there's any limitations on the
19    purpose for the funding agreement.
20              But what we do know is the joint administrators
21    are not talking at all about having any interest or concern
22    or desire to look into any of these allegations of potential
23    bribery, of potential loss of corporate assets.
24              THE COURT:  So, you had mentioned COMI before.
25    So, what I've heard thus far has a lot to do with some of
```

1    the procedural and creditor protections that would be part

2    of a recognition hearing.  I just wanted to ask you if you

3    had -- you had mentioned that you were going to challenge

4    COMI, if you had a view about COMI.

5           MS. SCHWEITZER:  So, I do have a view --

6           THE COURT:  You don't have to have a view today,

7    but I just -- since you mentioned it, just to fill out the

8    picture.

9           MS. SCHWEITZER:  No, actually, I do have a view

10   that the record at a minimum is incomplete as it is now.

11   Again, the same way that they comment and say everything's

12   under seal in Guernsey, it's under seal here.  The COMI

13   application is pretty much -- I'm being a little over-

14   simplistic -- I've got a Guernsey proceeding; it's a main

15   proceeding; recognize it here; I've got a liquidator; you

16   know, joint administrator; I recognize even one of those

17   joint administrators in London, and we talked to each other;

18   so maybe it's not wholly Guernsey, but you know, it's a

19   COMI.

20          Our concern is who are the employees?  There's no

21   disclosure of I've got 30 employees, this is where they are.

22   We know there are assets.  Are there interests in -- or

23   potential interests in a Guinea mine in the Sierra Leone

24   Diamond Company, and we know that there's -- we heard that

25   the Board of Director of the subsidiaries are still in

1    place.  The declaration makes mention of management still

2    actively participating.  And we don't know the role of the

3    parents in funding.

4           So, I don't know.  I'm just kind of like, yeah, I

5    know the question is if this isn't a COMI, where is the

6    COMI.  I'm not quite sure of the basic questions you have

7    asked, which is who is really running this case?  Where are

8    the assets?  What is going on?  Because nothing is happening

9    in the Guernsey proceeding itself.

10          THE COURT:  So, let me -- that segues into one

11   other question, and it's probably my last for the day, which

12   is I -- and maybe it's more of an observation -- given the

13   need to sort through this -- and again, I'm gesturing to the

14   declaration and exhibits in Guernsey that are under seal in

15   Guernsey -- and to work through that as well as to work

16   through some of the issues you just mentioned -- I have my

17   doubts whether we'll be there by the time July rolls around

18   in terms of the need for your -- any requests for discovery,

19   any of that.

20          And the reason why I mentioned it now is because

21   if we're -- if we sort of have two proceedings that we're

22   trying not to bump into each other, they may have an

23   interest in doing it quickly, you may have an interest in

24   doing it quickly, but procedurally, we may just not be

25   there.  It isn't a today issue, but it'll be something I

1    think people need to keep in the back of their minds as we

2    begin to work seriatim through problem number one -- again,

3    I reference the materials under seal in Guernsey -- then

4    discovery, then other issues, it may take time.

5           I am completely agnostic about what that means or

6    doesn't mean for purposes of any requests for injunctive

7    relief and the District Court proceeding in front of Judge

8    Broderick.  But I think it may mean that as we go past the

9    immediate problems and we start getting to later in the

10   months, that we may need to think about what to do and how

11   all these things play together.

12          But again, I don't think it's a today issue.  So,

13   we're going to just start to solve problems, see where we

14   end up, and then have it be part of the ongoing discussion.

15   But I just -- a lot of these cases come in, as you say, in a

16   very full-formed posture, and people know what it is that

17   happened.  They have a pretty good idea of the issues.  And

18   even challenges to -- and have also found generally the

19   challenges to recognition often take longer than the, you

20   know, hey, we're going to schedule a date so many dates out

21   and that'll be our recognition hearing.  None of that has

22   gone quite as planned when I've had sophisticated challenges

23   to recognition.

24          So, not a today issue, but something that I would

25   ask the parties to think about, talk to each other about,

1    and we'll talk about it later this month and maybe we'll

2    talk about it on the 13th as we begin to work our way

3    through some issues.

4            MR. BLACKMAN:  Right.  Your Honor, I just didn't

5    want to -- don't want to trespass on your patience, but you

6    did mention the word discovery, and I think that's really

7    the key because the joint administrators have not been

8    transparent.  They've been the opposite of transparent.

9            I can say personally we have asked them

10   repeatedly, tell us what's going on with this supposed

11   Guinea settlement.  They've said, no, we can't.  Show us the

12   term sheet.  They've said, no, we won't.  We don't know

13   what's happening there.

14           What we do know from the arbitration -- and I'll

15   just give you one example, and it's part of the things we

16   want to pursue in discovery -- is we learned in the

17   arbitration that the administrators have these documents.

18   And we urged them to read the record of the arbitration,

19   because they're supposed to be acting for the benefit of all

20   the creditors.  What we learned in the arbitration is that

21   $200 million of the $500 million original payment was

22   immediately funneled directly from BSG up to the Balda

23   Foundation.

24           THE COURT:  No, I got it.  Again, I understand.

25           MR. BLACKMAN:  They haven't even examined --

1           THE COURT:  But the thing is, we're going to first

2      have to go through, I think, this.  Again, I gesture for

3      probably the sixth time to the stack of more than a thousand

4      pages.  And then we're going to have to see what that means

5      for purposes of other discovery, right?  Because this is --

6      somebody chose to put this together.  It may or may not

7      address in a fulsome way other things that you all want to

8      know.  But at least it certainly is something that is at the

9      very least a starting point.

10          But again, that's why I -- right now, we can

11     successfully avoid any sort of timing problems between this

12     proceeding in the District Court proceeding.  But from what

13     I'm hearing, the amount of work that needs to happen between

14     now and a full-blown recognition hearing on the merits

15     doesn't look like...  It doesn't look like the calendar

16     schedule we're talking about, July 10th, it just doesn't --

17     that would surprise me greatly if we were able to get there.

18          So, eventually we'll have to talk about what does

19     this mean and what -- how do people want to handle the

20     existence of the other proceeding, whether the Debtors

21     should file a motion for a stay, whether that should be

22     addressed.  I don't know the answer to any of these

23     questions and I'm agnostic on all of them.  But I just know

24     it takes a certain amount of time to work your way through

25     various issues, and July 10th, the quote the movie "Apollo

Page 84

```
 1    13", the Earth's looking awfully large in the window.  I
 2    just -- I don't know that we're realistically getting there
 3    by that time.
 4            MS. SCHWEITZER:  Right.  Totally understand.  I
 5    think that it's very helpful guidance.  And I know that as
 6    advocates we're always more zealous and ambitious than --
 7            THE COURT:  Well, that's your job.
 8            MS. SCHWEITZER:  -- so we should be -- but --
 9            THE COURT:  That's the only thing, actually, that
10    I think both of you agree upon is you'd like to get it done
11    July 10th --
12            MS. SCHWEITZER:  Right.
13            THE COURT:  -- and on the bucket of cold water --
14            MS. SCHWEITZER:  Right.
15            THE COURT:  -- on that one, and I just --
16            MS. SCHWEITZER:  Yeah.
17            THE COURT:  You're all experienced and no doubt
18    have an ability to --
19            MS. SCHWEITZER:  Right.
20            THE COURT:  -- much more accurately --
21            MS. SCHWEITZER:  Right.
22            THE COURT:  -- assess this.  And so, we'll get
23    there.  But I think that that's worth -- as we start to talk
24    about sealing on the 13th, I think that --
25            MS. SCHWEITZER:  Right.
```

```
 1              THE COURT:  -- and what things look like going
 2    forward --
 3              MS. SCHWEITZER:  Right.
 4              THE COURT:  -- is a natural conversation.
 5              MS. SCHWEITZER:  And I appreciate that.  And maybe
 6    those documents are within their -- it's the same mantra --
 7    you can't make something privileged just by sticking it in a
 8    -- by passing it to your attorney, it doesn't become
 9    privileged in itself.  I don't know what's in that binder.
10    But I imagine, and I think it's worthwhile, we will endeavor
11    to also, without prejudicing rights to larger discovery,
12    think about certain fundamental threshold things that, you
13    know, whether it's the funding agreements or these --
14    there's only two or three sources of money, and they're all
15    litigation funding, and we believe they all roll up to the
16    parent.
17              There's a couple kind of -- you know, if you give
18    me a list of 30 things I could ask for, I could make that
19    list probably.  So, I think that we can certainly focus on
20    certain gating issues that should be noncontroversial.  And
21    if they're controversial, we should know that before a month
22    from now, and use this parallel opportunity.
23              THE COURT:  All right.  So, we're going to use the
24    13th as the date to get together and talk about the sealing.
25    And at that time, we will talk about the schedule going
```

1    forward.  So, that leads me to the following practical

2    question.

3                Normally, right, a Chapter 15 case gets filed,

4    order scheduling a recognition hearing gets entered.  So,

5    the question is what we want to do with that?  Do we want to

6    -- and I know that has certain various notice requirements

7    and that are expensive and time-consuming?  So, do you have

8    a proposal, counsel, as to what you want to do?  Do you want

9    to put a pin in that for the moment?

10               MR. HYMAN:  Your Honor, notice is not particularly

11   extensive under these circumstances.  It's really just a

12   number of creditors and potential parties in interest that

13   we propose to provide notice to.  I think that we should

14   stick with the July 10th date for the moment.  And to the

15   extent that on this coming Friday or Thursday, or next week

16   when we're back before Your Honor, if indeed we need to be

17   back before Your Honor, and we've had an opportunity to have

18   some further conversations about what a discovery schedule

19   might look like, perhaps we can suggest some alternatives.

20               THE COURT:  All right.  I just didn't want that to

21   get entered and scheduled under false pretenses, so anybody

22   thought, like wow, we really were counting on it.  And you

23   know, it's a bit of a social compact when do these things

24   and get these orders entered.  And again, I don't really see

25   that that's realistically going to come to pass.

1          But if the idea is let's get it scheduled, will

2     use it as something to strive towards, but we don't have any

3     misconceptions that we may not end up there.  That's fine.

4          MR. HYMAN:  I appreciate it.  And I think we will

5     certainly work cooperatively as it relates to the Driver

6     declaration.

7          THE COURT:  All right.

8          MR. HYMAN:  And we appreciate the opportunity to

9     come back before the Court --

10         THE COURT:  All right.  So, what I'd ask -- I

11    don't know if there's any objection to the form of order for

12    the order scheduling the recognition proceeding on the 11th

13    of July -- I'm sorry, the 10th of July -- in the afternoon?

14    So, chat with one another and then just send me the form

15    order electronically.

16         MS. SCHWEITZER:  Yeah, I don't believe there is an

17    objection.  We can take one, read through it, but it's a

18    notice.

19         THE COURT:  And so, we'll schedule it for 2:00 on

20    that date.  And again, subject -- and I'll throw out the

21    possibility and I'll defer to your better judgment whether

22    it is at all worth saying that -- I don't remember if it has

23    in it in its present form the notion -- since you're dealing

24    with overseas parties as well -- that the recognition

25    hearing may be adjourned, as appropriate, by notice and

1    order, and service will be given.  However you want to say

2    it to warn people that this may not be the final date.  But

3    I'll leave it to you if you want to craft some appropriate

4    language.

5           All right.  So, let me ask, I know there are other

6    parties here.  Let me us first if there was anything else

7    that -- counsel, that you had that you wanted to address

8    this afternoon?

9           MS. SCHWEITZER:  No, Your Honor.  Even though

10   we're not the movant, we do appreciate you taking the time

11   to hear us all and give us the time of day today. 2:48:02

12   time of day?  So, thank you.

13          THE COURT:  And before I hear from Debtors, is

14   there anybody else in the courtroom who wishes to be heard?

15          MR. MCCALLEN:  Yes, Your Honor.  Thank you, Your

16   Honor.  Again, Benjamin McCallen, Wilkie Farr & Gallagher,

17   on behalf of George Soros and Open Society Foundations.

18          You heard my clients referenced earlier today.  We

19   are the Defendants pending in front of Judge Keenan in the

20   Southern District of New York, which is referred to as the

21   Soros claim.  Your Honor, lawyers like to talk, and so I --

22   but I'm going to resist the temptation to come up here and

23   repeat a lot of things that have already been said or that

24   cover new ground.  I just didn't want to in the initial

25   instance have our silence taken as a lack of interest in

Page 89

1    what is going on here today.

2            The fact of the matter is that the litigation in

3    front of Judge Keenan has been stayed for the last year and

4    a half.  We think it's a meritless claim and a frivolous

5    claim, and we filed a motion to dismiss.  And ultimately, it

6    was stayed upon our motion to dismiss or stay in the

7    alternative, pending one of the arbitration proceedings

8    you've heard about here today, not the one involving Vale,

9    but the other one involving the Republic of Guinea.

10            I think, given the length that we've gone you this

11    afternoon, it's not a good use of anyone's time for me to go

12    into any details around that.  But our case has been stayed

13    for the last year and a half.

14            Last night at 6:00 I got notice of these

15    proceedings.  And so, I haven't had an opportunity to fully

16    consider what is going on and how that affects our

17    proceedings, or to adequately discuss it with my client.

18    But we may very well be deciding to take a position with

19    respect to the Chapter 15 proceedings here.  I just don't

20    know yet at this point whether that's the case.

21            And like I said, I know no one's waiving any

22    rights, but obviously the parties, VALE, and the Debtors are

23    up here working out schedules.  And to the extent that we

24    determine we think it's appropriate for us to be a part of

25    any of this, we'll of course let the parties know and we'll

Page 90

```
 1    sort that out.  And if we can't, we know where to find Your
 2    Honor.
 3              THE COURT:  All right.
 4              MR. MCCALLEN:  Thank you.
 5              THE COURT:  That's fine.
 6              MR. MCCALLEN:  That's all for today.  Thank you.
 7              THE COURT:  All right.  Anybody else wish to be
 8    heard?  All right.  So, anything else from the Debtors?
 9              MR. HYMAN:  No, Your Honor.  I think that we've
10    made a lot of progress today.  I just wanted to comment on
11    one or two things that Ms. Schweitzer said during her time
12    at the podium.
13              There was a reference to the action being brought
14    in bad faith, and there was some allegations as to the
15    actions of the joint administrators.  We obviously contest
16    that.  We believe the joint administrators are filling their
17    role under the terms of the administrative order in
18    Guernsey.
19              THE COURT:  I recognize there are contested issues
20    and I recognize people are giving me their views of the
21    case, and yours is sort of set forth in your papers, and I
22    understand that.  So, you don't need to defend your clients'
23    honor for purposes of today, just to make your job a little
24    easier.
25              MR. HYMAN:  I appreciate that, Your Honor.
```

1    Obviously, we're also going to have a very different -- we

2    may have a very different view on what discovery is

3    appropriate under the circumstances.

4              THE COURT:  I suspect you will.

5              MR. HYMAN:  We look forward to having all those

6    conversations.

7              THE COURT:  All right.  So, let me ask whether

8    folks want to memorialize in some sort of writing the

9    resolution of the TRO for purposes -- I mean, I consider it

10   on the record and I'll so order the record, but I'm guessing

11   that that's probably something you'd like to supplement was

12   something in writing.  But I'll leave it to you all as to

13   whether you want to go there.

14             MR. HYMAN:  Yeah, I think -- you know, we're

15   pleased that it's on the record, but we will also propose

16   some language --

17             THE COURT:  All right, so --

18             MR. HYMAN:  -- to make sure that we're on the same

19   page.

20             THE COURT:  -- put together a stipulation and

21   order.  And again, I think that something we'll have to

22   revisit once we chat on the 13th as to scheduling and other

23   things.

24             MR. HYMAN:  I think the last comment that I would

25   make is what I've been told by my partner in Philadelphia

```
 1    that's been repairing the response, is that it's framed as a

 2    cross-motion to defer enforcement.  I don't know if --

 3    whatever it might be.

 4              THE COURT:  It is whatever it is.

 5              MR. HYMAN:  It is what it is.

 6              MR. BLACKMAN:  No.  And I can tell the Court, one

 7    of the things that you can do under the New York convention,

 8    is to say, stay enforcement of what's called the secondary

 9    jurisdiction, which is New York, pending resolution of an

10    attempt to set aside the award of the primary jurisdiction,

11    which is England.  That's not surprising.  We'll respond to

12    it and tell the Judge, no, and he'll litigate it.  And our

13    stipulation will make sure that whatever he does doesn't

14    result in some order that will interfere with this

15    proceeding.

16              THE COURT:  All right.

17              MS. SCHWEITZER:  Right.

18              THE COURT:  So, up through the date that you've

19    worked out, and then everybody reserves all their rights

20    otherwise, right?

21              MS. SCHWEITZER:  Right.  I would say, we're not

22    there.  We are not -- we haven't agreed to anything beyond

23    July 10th right now, so...

24              THE COURT:  Right.

25              MS. SCHWEITZER:  That's good.
```

1          THE COURT:  No, I understand.  And that's why I

2     wanted to flag the notion of what I -- how long I suspect it

3     may take us to deal with things here, and what it looks like

4     after July 10th.  I don't know that.  Then we'll have to

5     chat about it.

6          All right, so the motion to seal is being

7     adjourned to the 13th to address the kinds of issues that

8     we've been talking about.  The motion for a TRO has been

9     resolved for the moment through July 10th, subject to

10    further discussions.  You'll submit something in writing, a

11    proposed stipulation and order, and party reserves all their

12    other rights.  And we'll continue to have that conversation.

13    And I will sign the proposed order scheduling the

14    recognition hearing for July 10th in the afternoon at 2:00.

15    But mindful that I have serious doubts that that is

16    ultimately going to work, and we'll -- but in this business,

17    we all know we take it as it comes, and we'll figure things

18    out as we go forward.

19          MR. HYMAN:  Your Honor, I think that the order

20    that you have now has a different time.  And I don't know

21    whether you'd like us to submit a revised order --

22          THE COURT:  Yeah, if you'd submit a revised order.

23          MR. HYMAN:  Right.

24          THE COURT:  I'd say make it 2:00.  And actually,

25    make it 2:30 just in an abundance of caution.  And I'll wait

Page 94

```
 1        to get that order.

 2              MR. HYMAN:  And we'll add some language regarding

 3        the (indiscernible).

 4              MS. SCHWEITZER:  Your Honor, there's just one

 5        thing I realized.  The copy of the order we have doesn't

 6        have a deadline to object.  So, I hear everything you're

 7        saying, but what is our placeholder deadline to object to

 8        this being put in there?  If it's the 11th, we could say the

 9        5th?  I mean, a week before --

10              THE COURT:  It's the 10th.

11              MS. SCHWEITZER:  Oh, I'm sorry, the 10th.

12              THE COURT:  So, I would say -- but then would need

13        to be time need to be time -- and we know this is contested,

14        right?

15              MS. SCHWEITZER:  Yes.

16              THE COURT:  So, there'd need to be time for a

17        reply as well.  So, if there wasn't a holiday -- there is --

18        I would've said Monday the 1st and then Friday the 5th so

19        I'd have everything in time.  But there is a holiday.  So,

20        any suggestions?

21              MS. SCHWEITZER:  So, the 10th -- I guess the reply

22        -- our replies would be due on the 5th if the hearing's on

23        the 10th?  It'd be --

24              THE COURT:  I think we're closed on the 5th.

25              MS. SCHWEITZER:  So, is it the 3rd or the 8th?
```

1          THE COURT:  But you can still file them.

2          MS. SCHWEITZER:  Right.  It's when you would need

3    -- well, I guess -- I mean, on the assumption we go forward,

4    when would you...  The reply on the 8th and the...

5          THE COURT:  So, well when I'd like to have it so I

6    can read something, and I believe that I have on the --

7    yeah, I'm at the federal Judicial Center (indiscernible)

8    here for bankruptcy judges (indiscernible) 9th and half of

9    the 10th.  So, my thought is I'd want to have all briefing

10   finished on the 5th so I could (indiscernible) time to get

11   this stuff done.

12          So, I don't know whether the 1st for an objection

13   and the 5th for a reply works.  But I recognize I don't have

14   to answer that.  Any significant others with whom you may

15   have made plans over July 4th.

16          MR. HYMAN:  My colleagues Mr. Hitchings

17   (indiscernible) happy.

18          THE COURT:  So, here's what I'd like to do.  I

19   would need things done by the 5th so I have time to read

20   them, because I may end up reading them the weekend before

21   the week starts.  I'll leave it to you to work out what that

22   means for purposes of you trying to figure out.  So, the

23   reply would have to be the 5th at 5:00.  And I'll -- I mean,

24   does it work to have Monday the 1st at noon be the deadline

25   for the opposition?

Page 96

```
 1              MS. SCHWEITZER:  That works for us.

 2              THE COURT:  Does that work for the Debtors?

 3              MR. HYMAN:  Yes.  Thank you, Your Honor.

 4              THE COURT:  All right.  So, let's go with those.

 5    Monday the 1st at noon, and the 5:00 on the 5th.  And we'll

 6    use those and I 'll see where we end up.

 7              All right.  Anything else for this afternoon?

 8              MS. SCHWEITZER:  Not from me, Your Honor.

 9              MR. HYMAN:  Not from me, Your Honor.  We really

10    appreciate the time you spent with us --

11              THE COURT:  No, no, that's fine.

12              MR. HYMAN:  -- and the expedited nature of the

13    hearing.

14              THE COURT:  We will -- I look forward to an

15    interesting case, hopefully not too interesting.  And I'll

16    be talking to you all next week.

17              MS. SCHWEITZER:  Thank you, Your Honor.

18              THE COURT:  Thank you very much.

19              MR. HYMAN:  Thank you very much, Your Honor.

20    (Whereupon these proceedings were concluded at 4:23 PM)

21

22

23

24

25
```

Page 97

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya

7    Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2019.06.07 16:43:01 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 7, 2019

| **&** | |
| --- | --- |
| **&** 3:17 4:1 6:3 88:16 | |

**1**

**1,000** 17:4 59:23
**1.2** 22:17 46:21 72:13 78:11
**10** 2:12 20:23,24 35:20 39:18 45:2 55:16 65:18
**100** 55:22
**10004** 1:15
**10006** 4:4
**10019** 3:20
**10036** 3:6
**1017** 76:6
**105** 2:4
**107** 56:7
**10th** 8:13 10:3 23:10 32:7 40:18 40:22 44:24 47:7 48:10 49:8 52:5 53:7 54:16 59:13 62:11 83:16,25 84:11 86:14 87:13 92:23 93:4,9,14 94:10,11,21,23 95:9
**11501** 97:23
**11th** 10:3 47:8 52:5 64:9 87:12 94:8
**12:01** 47:9
**12th** 64:12,16
**13** 84:1
**13th** 62:13,15 64:19 65:20,23,25 68:4 71:24 82:2 84:24 85:24 91:22 93:7
**15** 2:1 5:3 18:21 23:22,23 38:21 39:5 46:23 47:14

47:22 74:8 75:2 76:9 86:3 89:19
**1519** 2:4
**1540** 3:5
**1600** 3:12
**17th** 50:13
**18** 49:5,13
**18th** 26:13 33:23 48:25 49:1,11,12 50:8,11 51:21,22 51:24 53:1
**19-11845** 1:3
**19801** 3:13
**19th** 54:16
**1st** 94:18 95:12,24 96:5

**2**

**2** 22:19 55:10
**200** 82:21
**2004** 21:16
**2008** 15:21
**2014** 22:14 72:18 73:5
**2017** 46:17
**2018** 17:16
**2019** 1:17 37:12 47:2 97:25
**21** 15:20
**222** 3:12
**23rd** 22:21 23:12
**26** 35:22 36:9,12 36:19 37:17
**28** 35:16
**2:00** 87:19 93:14 93:24
**2:18** 1:18
**2:30** 8:14 65:24 65:25 93:25

**3**

**30** 28:25,25 33:18 79:21 85:18
**300** 97:22

**31** 33:16
**330** 97:21
**362** 41:12
**3:00** 65:23
**3:15** 42:24
**3rd** 94:25

**4**

**4** 1:17
**4:23** 96:20
**4th** 22:20 47:13 66:1 95:15

**5**

**5** 7:8 18:4,7,9 61:1 61:2
**500** 82:21
**5:00** 64:9 95:23 96:5
**5th** 94:9,18,22,24 95:10,13,19,23 96:5

**6**

**6** 66:17
**6:00** 89:14

**7**

**7** 2:3 66:15 97:25
**787** 3:19
**7th** 64:3

**8**

**8** 2:7
**8th** 94:25 95:4

**9**

**9** 11:9
**9th** 23:8,13 95:8

**a**

**abeyance** 22:4
**abide** 14:22
**ability** 15:5 27:21 29:4 33:2 40:3 84:18

**able** 13:9 25:8 67:9 83:17
**absence** 73:16
**absent** 23:21 34:3 46:23
**abundance** 13:12 93:25
**access** 15:4 22:16 29:20
**accommodated** 72:3
**accomplish** 6:10 32:3
**accurate** 97:4
**accurately** 76:3 84:20
**acknowledged** 11:21 37:19
**acknowledging** 47:24
**act** 44:14 52:20
**acting** 82:19
**action** 19:21 20:16,20 21:2,8 21:11 23:16,21 25:9 28:19,19 35:7,18,22 36:9 46:17 47:2 76:4 90:13
**actions** 77:9 90:15
**actively** 80:2
**activities** 16:6
**activity** 19:2 56:4
**acts** 74:22
**actual** 17:5 18:8 61:7
**add** 50:7 72:17 94:2
**adding** 53:12
**addition** 7:18 10:10
**additional** 10:24 21:9 22:17,25

24:4 36:11 37:5
**address**  16:18
  29:21 35:12 43:16
  47:16 50:8 59:6
  63:10 83:7 88:7
  93:7
**addressed**  60:9
  83:22
**addresses**  7:21,22
  7:23
**addressing**  69:1
**adequately**  89:17
**adjourn**  64:1
**adjourned**  87:25
  93:7
**adjournments**
  45:14
**administration**
  1:7 17:16,18
  38:23 55:14 72:25
**administrative**
  60:15 90:17
**administrator**
  9:15 10:17 23:5
  38:24 66:16 75:11
  75:11 79:16
**administrator's**
  9:3
**administrators**
  1:8 3:4,11 5:7
  8:23 16:3 19:6,10
  19:25 20:19 24:21
  27:17 34:18 38:20
  54:5 75:10 76:25
  77:1 78:1,20
  79:17 82:7,17
  90:15,16
**admitting**  16:8
**advance**  70:14
  71:4,17,20
**advanced**  68:3
**adverse**  29:1
  47:23

**advised**  23:14
**advocates**  84:6
**affidavit**  2:12 8:8
  10:12 11:10 15:17
  15:21,23 16:7,8,9
  17:5 55:11,15,16
  56:5 59:24 61:19
  66:19,20,23 67:2
**affidavits**  55:17
**affiliate**  78:14,16
**affiliates**  20:22
  21:9,23,25 23:7
  34:7
**african**  19:12
**afternoon**  5:5,13
  6:2 8:14 44:20
  64:22 65:3,19
  87:13 88:8 89:11
  93:14 96:7
**agnostic**  81:5
  83:23
**ago**  72:11
**agree**  38:17 43:7
  43:16 54:7 56:23
  57:21 61:21 67:13
  68:17 84:10
**agreed**  28:20 53:3
  92:22
**agreement**  22:7,8
  40:3 51:25 72:11
  78:16,17,19
**agreements**  29:20
  52:11 85:13
**agrees**  47:25
**ahead**  69:21
**alitalia**  46:8
**allay**  48:20
**allegations**  72:19
  73:1 76:13 78:22
  90:14
**alleges**  21:2
**allow**  23:2 26:15
  29:15 33:9 37:6

40:4
**allows**  47:17
**alternative**  89:7
**alternatively**  8:3
**alternatives**  86:19
**ambitious**  84:6
**amount**  22:18,25
  30:10 83:13,24
**anchor**  45:21
**answer**  13:8 26:12
  37:22 43:24 44:2
  44:3,5 45:7 52:17
  52:19 83:22 95:14
**anti**  14:7
**anticipate**  25:20
**anticipating**  8:15
**anybody**  9:7
  42:17 86:21 88:14
  90:7
**anyone's**  89:11
**anything's**  50:23
**apollo**  83:25
**apologize**  18:4,13
  34:25 39:12 61:8
  66:15 73:13 76:18
**appear**  59:4
**appearance**  5:19
  6:8
**appearances**  5:4
**appears**  61:19
  77:5
**applicable**  41:18
**application**  2:7
  8:1,4 23:13,17
  26:20,20 39:20
  41:6,7,14,21
  55:17 56:16 75:15
  79:13
**apply**  74:4
**appointed**  16:4
  75:10 78:1
**appreciate**  6:12
  6:19 24:18 37:18

39:23 54:8 58:23
  58:24 59:9,12
  63:13 64:17 70:19
  85:5 87:4,8 88:10
  90:25 96:10
**appropriate**  9:19
  47:18 60:5 63:2
  87:25 88:3 89:24
  91:3
**approval**  12:24
**approve**  2:7
**approving**  8:6
**april**  22:20,21
  73:21
**arbiters**  73:8
**arbitral**  39:7
**arbitration**  17:8
  21:17,19 22:3,13
  22:14,15 24:2
  25:14 26:7 34:10
  35:8,8 36:22
  44:13,13,14 46:21
  47:24 48:9 50:2
  52:14,20 72:15
  73:5 74:3 75:18
  75:24 76:12,24
  78:4,10 82:14,17
  82:18,20 89:7
**argue**  41:21 61:22
**argument**  59:3
**arguments**  29:22
  44:20 52:11
**arising**  28:23
**arrangement**
  77:17
**articulate**  43:19
  46:7
**articulated**  46:6
**aside**  13:4 23:13
  23:15 58:17 92:10
**asked**  31:19 37:7
  57:25 80:7 82:9

asking  30:20
  32:17,22,23 36:5
  41:16 45:16 50:1
  57:9
aspect  65:1
aspects  68:13
assembling  6:24
asserted  13:2
assess  84:22
asset  19:6 20:21
  22:10 23:5 29:12
  30:4,5 31:7 36:1
  46:8,15 76:12
assets  18:22 20:3
  25:19 26:23 39:8
  39:8 41:9 42:15
  43:11 75:18,23
  78:23 79:22 80:8
assortment  6:16
assume  27:14
  31:12 42:25 44:21
  62:16
assuming  51:24
assumption  95:3
attached  11:19
  15:22 16:9 17:18
  17:21 18:10 58:21
  61:23
attachment  26:22
attachments  17:6
attempt  26:21,22
  26:22 92:10
attend  70:9
attorney  85:8
attorneys  3:4,11
  3:18 4:2 7:18
authority  56:18
authorization
  10:23
automatic  32:12
  41:13 74:2
available  70:19

avenue  3:12,19
avoid  42:15 54:12
  63:20 83:11
award  17:8 22:16
  22:17,17,19,20,22
  22:25 23:9,11
  24:2 26:21 34:10
  39:7 44:23 47:24
  47:24 48:1,9 50:2
  53:1 72:15 73:18
  73:19,20,22 92:10
awarded  73:9,10
aware  45:15
awfully  84:1

**b**

b  1:21 17:22
  18:11 71:4
back  5:23 8:21
  10:1 16:2 19:22
  20:9,11 21:16
  27:2 30:20,24
  33:2 45:6 59:13
  63:6,21 68:25
  73:5,22 75:19
  81:1 86:16,17
  87:9
background  16:5
backwards  49:19
bad  39:6 90:14
balda  18:19 82:22
ball  68:18 70:20
  71:4,17
bankruptcy  1:1
  1:13,23 2:5 74:8
  95:8
based  28:3
basic  80:6
basically  15:23,24
  41:13 72:18 73:8
  77:20
basis  12:19,21
  13:6 43:1 56:18
  61:20 67:21

behalf  6:3 88:17
behavior  73:3
believe  5:9 17:21
  20:18,19 22:14
  23:4 24:21 25:5
  25:23 37:2 39:12
  41:3,14,17 56:15
  73:1 74:1 85:15
  87:16 90:16 95:6
believes  20:19
  23:5 29:11
beneficiaries
  39:16
beneficiary  72:21
benefit  7:13 11:2
  17:16 30:6 31:6
  82:19
benefits  30:5 78:4
benjamin  3:22 6:3
  88:16
benny  39:12
  72:20 76:21,22,22
best  19:6 24:21
better  13:10 63:16
  87:21
beyond  9:7 11:5
  43:21,22 92:22
big  6:20 12:11
bigger  54:20
biggest  45:24
billion  20:24
  22:17,19 35:20
  46:21 72:13 78:11
binder  6:24 13:22
  18:3,7 55:10 85:9
binders  6:19,23
binding  22:6,8
  77:4
bit  7:5 16:24
  18:12 20:14 50:20
  56:4 62:6 70:16
  86:23

blackman  4:7
  5:15,20,20,24
  26:6,6,25 27:4
  39:14 44:12,17
  48:23 49:3,8,10
  49:13 51:21 52:19
  52:24 53:6,9 72:8
  72:16 73:12 76:17
  82:4,25 92:6
blame  64:22
blocked  65:19
blown  83:14
board  10:16 19:8
  79:25
bogged  31:9
bonds  46:4
bootstrapping
  57:8 66:11
bore  9:24
bottom  13:25
bowling  1:14
box  58:2
brass  63:11
bribery  73:2,17
  73:17 78:23
bridging  8:2 32:4
brief  32:19,20
  36:7,17 39:25
  42:20,23 44:18,21
  44:25 48:25 52:22
  71:23
briefed  45:4
briefing  26:15
  27:9 34:2,8 36:6
  45:8 47:5,17
  48:10 50:3 54:12
  95:9
briefly  18:1 29:14
briefs  68:2
bring  22:18 41:11
broad  43:18
broadway  3:5

**broderick**  24:10
  25:1 26:11,19
  45:1 47:9 54:13
  81:8
**brought**  39:6
  40:20 90:13
**bryant**  44:5
**bsg**  1:7 3:4,11 5:2
  5:7 10:16 15:19
  17:15 18:16,20,21
  19:4,21 20:10
  33:20 38:3 82:22
**bsgr**  19:24
**bucket**  73:7 84:13
**bump**  80:22
**bunch**  71:2
**burden**  67:8,10
**bury**  12:8
**business**  28:25
  50:16 62:24 63:2
  93:16
**busy**  62:12

**c**

**c**  3:1 5:1 71:4 97:1
  97:1
**cake**  75:22
**calculus**  49:17
**calendar**  8:13
  9:21 40:22 83:15
**call**  31:17 66:20
  71:1,3,12 76:8,20
  76:21
**called**  18:23 28:20
  44:15 52:17,19
  92:8
**callewaert**  1:8
**camera**  10:20
  61:13
**camping**  50:12
**capital**  17:24
**care**  57:11 63:8
**careful**  13:22

**carefully**  68:23
**case**  1:3 5:3 8:18
  8:19,24 9:9 11:7
  17:13 18:17 20:18
  24:6,9 25:2 26:11
  26:11 27:23 28:11
  32:17 36:7 37:25
  38:21,25 41:1
  42:2,12,22 44:9,9
  49:3 54:13 55:22
  56:12 57:25 58:5
  68:14 70:10 71:18
  76:7 77:7 80:7
  86:3 89:12,20
  90:21 96:15
**cases**  29:12 42:5
  56:20 81:15
**cash**  25:11
**cause**  20:16,20
  21:11 35:18
**caused**  72:25
**causes**  21:2
**caution**  13:12
  93:25
**caveat**  31:20
**ceiling**  68:21
**center**  21:18 95:7
**ceremony**  68:2
**certain**  6:23 10:21
  11:15 12:22 13:13
  14:2,15 20:22
  21:20,23 28:21
  63:18 66:22 83:24
  85:12,20 86:6
**certainly**  8:19,19
  12:25 13:13 14:1
  14:10 17:9 19:5
  25:6 28:15,22
  29:25 30:6,19,21
  31:11,23 33:15
  36:24 39:22 42:22
  45:25 68:8 73:2
  83:8 85:19 87:5

**certificate**  7:14
**certified**  97:3
**cetera**  26:15 53:2
**chain**  72:21
**challenge**  23:11
  74:16 79:3
**challenges**  81:18
  81:19,22
**challenging**  75:20
  75:20
**chambers**  6:19
  31:19 47:9 70:5
**chance**  40:5,6
  66:3,3
**change**  21:22
  72:24
**changes**  49:17
**chapter**  2:1 5:3
  18:21 23:22,23
  38:21 39:5 46:23
  47:14,22 74:8
  75:2 76:9 86:3
  89:19
**character**  6:22
**charge**  77:6
**chart**  17:23 18:10
  18:23 39:17
**chartered**  7:20
**chase**  45:19 47:21
**chat**  50:5,6,6
  69:14 87:14 91:22
  93:5
**chose**  83:6
**circuit**  68:7 70:8
**circulate**  70:13
**circumstances**
  86:11 91:3
**cite**  10:12
**citing**  16:3
**claim**  17:1 23:3
  30:15 33:19,20
  34:6,7,7,9,14,16
  34:17,19 35:1,6

  35:11,16,17 36:1
  46:16,16 88:21
  89:4,5
**claims**  23:7 73:7
**clear**  9:21 43:17
  45:1 48:23 49:4
  51:10 53:18
**clearer**  36:24
**clearly**  11:17
  42:23
**cleary**  4:1 5:14,15
  5:21 7:16 22:2
  37:20 38:14 48:14
  63:19
**clerk**  11:21 62:14
  64:20
**client**  20:18 89:17
**clients**  22:2 50:6
  88:18 90:22
**clock**  24:3
**close**  7:6
**closed**  94:24
**code**  2:5
**cohen**  1:8 4:11
  8:23 9:11 10:9
  11:4,9,16 30:2
  66:12,13 67:16
**cohen's**  10:11
  21:14 69:7
**cold**  84:13
**collateral**  45:13
  54:11
**colleague**  5:8
**colleagues**  95:16
**collected**  78:10
**collection**  25:3
**color**  13:10 55:4
  72:7,17
**combined**  46:1
**come**  5:17 6:1
  9:12 19:22 20:11
  23:18 24:20 33:2
  46:7 56:20 57:12

59:13 63:21 81:15
86:25 87:9 88:22
**comes** 93:17
**comfort** 33:8
**comi** 75:12 78:24
79:4,4,12,19 80:5
80:6
**coming** 28:17
73:23 86:15
**commenced** 18:20
20:21 21:17 22:12
35:19 56:3 73:5
**comment** 9:11
79:11 90:10 91:24
**comments** 29:17
58:24 63:13
**commercial** 10:25
14:6 30:11,14,15
56:15
**commercially**
14:1 58:12
**commonplace**
14:14
**compact** 86:23
**company** 14:16
17:19,20 19:16
72:11 79:24
**company's** 15:20
**competitive** 14:7
**complaint** 20:23
21:2 44:17
**complete** 12:1
40:18
**completed** 48:10
**completely** 43:15
61:21 81:5
**complex** 17:14
38:19
**comprehensive**
17:11
**conceded** 26:16
**conceivably** 36:20

**concern** 27:10
28:1 29:1 34:21
34:22 36:7 43:19
46:22 47:22 78:21
79:20
**concerned** 11:17
41:23 78:9
**concerns** 40:24
41:2 43:11,22
48:21 72:7 75:4,5
77:24
**concession** 72:25
73:4
**concessions** 73:3
76:23
**concluded** 22:15
96:20
**conclusion** 56:12
**conduct** 47:17
**conference** 33:22
35:10 68:7 70:8
**confers** 62:14
64:20
**confess** 13:7,21
**confidential** 56:8
62:2,24 63:17
**confirm** 9:15 10:6
52:14,21
**confused** 33:18
**connected** 73:16
**connection** 9:1
10:17 11:6,18
13:14 14:11,12
15:7 17:24 19:14
20:17 21:5,8,19
21:21,24 22:12
24:1 25:9,14 29:2
32:23 33:5 34:8
35:6 42:22 72:23
73:14,17 78:10
**consequence**
26:19

**consequences**
47:23
**consider** 25:24
28:12 42:17 45:24
56:10 89:16 91:9
**consistent** 42:1
**constrained** 29:22
**consuming** 86:7
**contained** 10:21
15:22 33:16
**contest** 12:9,10,10
90:15
**contestation**
25:14
**contested** 12:8
55:6 90:19 94:13
**context** 60:11
**contingencies**
29:18
**contingent** 20:20
23:6
**continue** 14:22
24:3 29:4,10
33:10 34:17 75:17
77:9 93:12
**continued** 22:6
**continues** 19:17
22:3,8
**contract** 21:3
73:10
**controversial**
85:21
**convention** 44:22
92:7
**conversation**
16:12 60:2 67:23
68:4,10 71:5 85:4
93:12
**conversations**
86:18 91:6
**cooperative** 19:24
**cooperatively**
87:5

**copies** 7:15,17,19
17:17
**copy** 94:5
**core** 25:2
**corporate** 39:18
78:14,23
**corporation** 18:18
39:11
**corporations**
39:10 72:21
**correct** 11:14 24:8
27:4 35:24 36:24
49:20 61:2
**correspondence**
11:19,20 61:24
**cost** 53:15 54:2
**costs** 23:1 28:21
29:8 30:7
**counsel** 5:4 6:10
7:23 9:3 13:9
23:14 26:16 37:19
38:12,17 45:12
51:14 55:21 56:7
60:20 71:17 86:8
88:7
**counting** 86:22
**country** 97:21
**couple** 55:7 56:13
66:1 68:10 72:3
72:17 85:17
**course** 17:3 37:4
40:7 46:23 89:25
**court** 1:1,13 5:2
5:10,12,16 6:1,5,7
6:15,18 7:2,7,9,24
8:9,12,25 9:6,16
9:18 10:4,7,14,23
11:2,8,12,21,22
11:23,24 12:13,17
13:3,16,18,21
14:25 15:12,18,24
16:13,23,25 17:4
17:10 18:2,7,12

**[court - deposition]**

18:14,25 19:11
20:9 21:12 22:13
23:9,11 24:6,9,11
24:13,16,24 25:16
25:22,24 26:1,2,3
26:5,24 27:1,5,7,9
27:12,14,19,19
28:5,10,14 29:14
29:24 30:3,9,12
30:17 31:2,4,16
31:17,21 32:8,14
32:16,18,22 33:2
33:4,11,17,20,23
34:1,11,13,24
35:1,4,7,15,21,25
36:3,4,8,11,16,18
36:25 37:7,12,23
38:5,9,11 39:22
40:1,2 42:4,7 43:7
43:8 44:2,5,9,16
45:10,18 46:17
47:2,25 48:15,17
48:19,22 49:1,7
49:12,15,17,25
50:1,10,15,19
51:4,8,13,16,18
52:1,2,4,6,23 53:5
53:8,11,12 54:8
54:22,25 55:12
56:6,10,17,22,25
57:1,2 58:8,15
59:2,10,13,15,17
60:7,17,20 61:1,3
61:6,10,14,15,25
62:1,6,14,19 63:5
63:9,20,23,25
64:6,11,15,18,20
64:21,25 65:6,9
65:15,22 66:9,14
66:21 67:6 68:22
69:10,13,24 70:2
70:5,12,16,20,22
70:25 71:9,15

72:5 74:10,21,22
74:25 76:20 77:11
77:15,17 78:24
79:6 80:10 81:7
82:24 83:1,12
84:7,9,13,15,17
84:20,22 85:1,4
85:23 86:20 87:7
87:9,10,19 88:13
90:3,5,7,19 91:4,7
91:17,20 92:4,6
92:16,18,24 93:1
93:22,24 94:10,12
94:16,24 95:1,5
95:18 96:2,4,11
96:14,18
**courtroom** 21:6
22:2 40:15 52:15
88:14
**courts** 25:17
45:24
**cover** 88:24
**craft** 88:3
**create** 24:4
**creditor** 79:1
**creditors** 7:11,20
7:21,23 14:14
15:10 77:8 78:6
82:20 86:12
**cross** 37:6 55:3
67:11 92:2
**currency** 63:9
**current** 19:7
**currently** 9:23
**cut** 45:18 47:21

          **d**

**d** 3:8 5:1 71:5
**damages** 20:23
21:21 35:20 73:6
73:10
**damaging** 14:5
**date** 8:6,20 9:19
10:22 27:18 28:13

38:2 45:6 47:18
49:2 50:3,4,24
75:14 78:10 81:20
85:24 86:14 87:20
88:2 92:18 97:25
**dates** 9:18 48:24
81:20
**day** 2:1 6:17 7:15
9:2 10:10 19:3
23:10,25 25:7
47:11 55:23 62:12
65:13 69:22 80:11
88:11,12
**days** 28:25,25
65:18 66:2
**de** 3:13
**deadline** 2:9 27:9
41:22,24 43:20,24
45:16 51:11 94:6
94:7 95:24
**deadlines** 27:13
27:15
**deal** 15:13 49:23
50:3 59:20 60:1
62:8 65:9,17 93:3
**dealing** 45:7
54:15 87:23
**dealt** 62:8
**debt** 28:22
**debtor** 16:6 17:15
18:17 19:13 20:19
20:21 21:1,8,20
21:23 22:1,11
23:10,12 24:1,23
27:17 28:17,17
29:9,10 30:4,6
42:14 47:22 57:7
72:11 78:12
**debtor's** 7:20,21
17:24 20:16 21:5
21:25 31:10 34:6
38:17 39:7 43:19
45:11

**debtors** 1:10 14:5
17:15 20:18 21:17
23:4 24:22 25:10
29:1 41:10 51:14
55:9 56:7 69:5
70:20 71:1,16
72:24 73:20,23,25
74:15,23 75:19,25
83:20 88:13 89:22
90:8 96:2
**decide** 26:14 45:4
53:2
**deciding** 89:18
**decision** 69:9
**decisions** 73:8
**declarant** 9:1
31:16,18
**declaration** 8:8
10:9,12,20,22
11:4,8,16 13:23
14:17 15:8 16:2,3
16:21 20:13 21:14
30:2 37:10,21
45:22 66:12,23
67:15 80:1,14
87:6
**defamation** 21:4
**defend** 90:22
**defendants** 88:19
**defenses** 44:22
**defer** 87:21 92:2
**defined** 35:16
**delaware** 3:12
**delay** 25:9
**delayed** 7:11
**delivered** 7:15,17
7:19
**delivery** 7:16
**denial** 75:21
**depending** 9:13
42:8
**deposition** 9:13

**described**  21:14
  76:3
**describing**  36:6
  75:25
**description**  77:4
**descriptive**  13:14
**designated**  19:10
**desire**  78:22
**detail**  20:13 24:16
**detailed**  21:10
  33:14 57:19
**details**  9:24 46:18
  60:3 67:18 76:3
  89:12
**determination**
  23:16 25:13 29:7
**determine**  89:24
**detrimental**  26:17
  29:4,9
**diamond**  19:1
  79:24
**difference**  6:20
**different**  14:10
  15:1 33:25 34:6
  41:12 49:2 51:11
  51:20 52:10 53:12
  57:4 74:5 76:4
  91:1,2 93:20
**difficult**  25:4
**diligence**  73:15
**dingle**  4:12 9:2
  13:8 58:25 61:24
**diplomatically**
  12:16
**directing**  17:18
**directions**  6:1
**directly**  82:22
**director**  79:25
**directors**  10:16
  19:8
**disclose**  63:18
**disclosed**  14:20
  78:17

**disclosure**  14:11
  59:14 79:21
**disclosures**  39:18
  39:19
**discontinue**  29:7
**discovered**  72:20
**discoveries**  33:21
  35:2
**discovery**  35:13
  40:14,16 52:10
  54:19 59:16,19
  74:5,21,22 80:18
  81:4 82:6,16 83:5
  85:11 86:18 91:2
**discuss**  42:13
  89:17
**discussed**  36:18
**discussion**  22:9
  45:19 64:18 68:7
  68:11 69:19 71:7
  71:9 81:14
**discussions**  22:5
  35:10 93:10
**dismiss**  35:5 89:5
  89:6
**dispute**  19:17
  39:3
**disputed**  47:4
**disputes**  21:19
**district**  1:2 20:22
  22:23 24:7 29:2
  33:19,23 34:1
  35:6,19 36:4,8,18
  37:12 40:1,2
  41:18 46:17 47:2
  50:1 81:7 83:12
  88:20
**dividing**  67:17
**division**  15:18
**doc**  2:3,7,12
**docket**  11:9
**docketed**  33:19
  35:23

**document**  56:11
**documentation**
  16:9
**documents**  7:12
  14:12 15:21 56:24
  57:3 60:9 82:17
  85:6
**dodge**  74:14
**doing**  78:3,3
  80:23,24
**dollars**  30:19,20
**don't**  46:25 57:8
  69:11,16 84:2
**dormant**  20:6
**double**  61:22
**doubt**  84:17
**doubts**  80:17
  93:15
**drafted**  42:23,25
**drag**  66:5
**driver**  2:13 10:13
  11:11 15:17 16:8
  16:9 17:6 55:11
  55:16 56:5 61:19
  66:19,20,23 67:1
  87:5
**duane**  3:3,10
**duanemorris**  5:6
**dubious**  26:9
**due**  26:12 32:19
  43:23 44:24 48:25
  51:20 73:15 94:22
**duke**  53:13
**duration**  9:22

**e**

**e**  1:21,21 3:1,1 5:1
  5:1 97:1
**earlier**  9:24 35:18
  88:18
**early**  73:21
**ears**  76:2
**earth's**  84:1

**easier**  70:7,16
  90:24
**easily**  22:18 54:11
**easy**  16:1
**ecro**  1:25
**effect**  23:14 29:9
  29:18
**effectively**  8:5
  14:21 22:7 32:11
**efficiency**  71:6
**efficient**  40:17
**effort**  25:3 33:3
  62:4
**either**  8:2 44:1
**electronically**
  87:15
**element**  43:3
  64:25
**email**  7:16,17
  11:19,20
**employees**  79:20
  79:21
**emptor**  31:20
**endeavor**  63:14
  85:10
**ends**  6:22
**energy**  19:14
**enforce**  14:22
  23:9
**enforced**  34:14
**enforcement**
  22:22 23:13,16
  92:2,8
**enforcing**  74:17
**engaged**  19:13
**england**  23:8,14
  23:16 25:15 69:21
  74:9 92:11
**english**  23:9
**enter**  45:3 77:2
**entered**  5:9 22:7
  27:24 33:5 72:10
  73:18 86:4,21,24

**entering** 23:20
36:21,21
**entire** 29:16
**entirety** 41:13
56:10,11
**entities** 3:18 6:4
17:23 20:7,17
**entitled** 28:22
**entity** 18:23 19:13
19:25 28:19
**entry** 22:24 23:1
28:4,7 37:3 47:23
48:8 50:1 73:15
**equity** 13:2
**equivalent** 44:2
74:8
**essentially** 13:1
46:18 48:7 50:3
50:22 52:22 64:1
**establish** 46:3
**estate** 20:4,4
26:17 34:18 36:2
78:2,2
**et** 26:15 53:2
**europe** 57:16
**european** 55:24
**evade** 39:6
**event** 29:6 37:25
**eventually** 31:11
83:18
**everybody** 8:17
35:14 47:14 50:25
57:20 68:14 92:19
**everyone's** 51:25
**everything's**
79:11
**evidence** 16:8
29:23 31:22,25
33:3 37:5,5,8,17
37:20 41:20 61:18
62:17 67:4 76:13
78:9

**evidentiary** 8:16
62:18
**ex** 2:3 8:1
**examination**
67:11
**examine** 37:6
68:24
**examined** 82:25
**example** 82:15
**excess** 20:23
22:16,19 35:20
**executing** 25:19
**execution** 26:21
41:9 43:11 45:6
**exercise** 23:2
**exercising** 23:19
33:7
**exhaustive** 20:15
**exhibit** 11:10
17:19,21,22 18:11
60:22,24 61:3,4
61:23
**exhibits** 11:11
13:15,23 17:2
18:5 59:23 80:14
**exist** 75:7
**existence** 37:11,12
37:16 47:2 83:20
**exit** 75:18,23
77:12 78:4
**expanding** 14:23
**expect** 14:13
**expectation** 25:6
**expedited** 23:24
96:12
**expeditious** 40:16
68:20
**expense** 53:15
54:2,12
**expenses** 28:21
29:8 30:7
**expensive** 86:7

**experienced**
84:17
**expert** 43:25
44:13 52:15
**expire** 65:17
**explain** 37:14
**explanation** 27:12
42:21 57:18 59:8
**exposure** 26:9
**extend** 41:6
**extensive** 86:11
**extent** 9:4 11:3
14:2 15:11 16:10
17:24 20:2,3,12
20:24 21:9 30:18
31:10 34:22 35:13
58:25 63:17,18
67:3,22 68:24
86:15 89:23

**f**

**f** 1:21 97:1
**fact** 13:11 38:19
41:23 42:10 54:13
68:20 69:5 74:6
89:2
**factor** 45:24,25
**facts** 17:14 39:2,3
44:19 72:19
**factual** 52:25
**failing** 6:22
**failure** 41:19
**fairly** 49:20 57:10
**faith** 39:6 90:14
**false** 86:21
**family** 39:16
**far** 78:25
**fare** 54:9
**farr** 3:17 6:3 7:18
88:16
**farr's** 20:18
**favor** 22:10,16
**feasibility** 60:10

**federal** 19:15 27:9
44:14 95:7
**fedex** 7:16,17,21
**fedex'd** 7:19
**ferreted** 20:13
**fight** 77:8
**fighting** 42:15
57:20
**fights** 66:5
**figure** 13:4 30:18
47:13,17 60:4
65:3,6 67:18,19
68:15 71:16 77:22
93:17 95:22
**figured** 71:21
**file** 2:12 6:13 8:8
11:1,2,22 12:23
13:1 24:1,25 25:5
26:13,18 32:19,20
36:7,17 39:25
42:24 43:21 44:18
44:20 48:4,4,5
51:23,24 61:14
62:2,3,5 63:25
64:2 65:14 68:2
69:17 83:21 95:1
**filed** 5:3 7:14 8:7
12:24 13:12 22:21
23:10,12 28:2
38:20 43:2 48:2
52:16 55:16,18,22
56:6 59:24 60:10
63:16 68:19 69:18
71:3 86:3 89:5
**filing** 2:9 23:23,23
25:7,20 27:3,21
28:10 41:21,23
42:20,23 43:20
44:4 51:15 62:20
74:15
**filings** 57:1
**fill** 41:11 79:7

**filling** 90:16
**fills** 47:4
**final** 23:16 41:6
  69:9 88:2
**finalize** 9:10,14
**financials** 14:15
  14:19
**find** 18:3 61:4
  65:2 68:3 70:18
  70:23 90:1
**finding** 76:22 77:3
**findings** 72:19
  73:11
**fine** 7:7 9:16
  11:21 40:23 50:23
  57:11 62:15 64:11
  64:16 87:3 90:5
  96:11
**finished** 54:22
  95:10
**first** 2:1 6:16 7:15
  8:1 9:2 10:9 18:7
  40:11,21 47:8,10
  59:20,22 61:13
  69:25 74:1 83:1
  88:6
**fitzmaurice** 3:23
**five** 31:4 75:2
**flag** 93:2
**flat** 39:5
**flip** 17:25
**flipped** 17:10
**flow** 25:12
**fly** 46:9
**focus** 85:19
**folks** 8:17 15:1
  42:24 49:18 50:22
  56:20 58:17 60:9
  67:9,23,25 69:21
  91:8
**follow** 36:15 75:1
**following** 56:21
  71:4 86:1

**foregoing** 97:3
**foreign** 5:6 40:13
**forget** 69:11
**form** 2:9 8:7
  74:11 87:11,14,23
**formed** 81:16
**forth** 16:22 44:22
  52:24 67:15 73:23
  90:21
**forward** 12:14
  15:14 25:10 27:1
  27:3 29:23 33:4
  36:8 40:20 41:11
  46:22 68:15 71:18
  74:6 85:2 86:1
  91:5 93:18 95:3
  96:14
**found** 81:18
**foundation** 18:19
  39:19 82:23
**foundations** 88:17
**framed** 92:1
**frankly** 42:20
  43:12
**fraud** 21:3 72:22
**frederick** 3:8
**free** 65:22
**friday** 64:4 65:13
  68:8 69:15,17,18
  86:15 94:18
**friend** 70:11
**frivolous** 89:4
**front** 25:1 35:12
  39:3 48:8 72:15
  81:7 88:19 89:3
**full** 81:16 83:14
**fully** 45:4 89:15
**fulsome** 33:2,15
  42:18 59:8 83:7
**fund** 28:21
**fundamental**
  85:12

**funded** 28:17,19
  30:8,10,19 34:19
**funder** 29:7 31:11
**funders** 33:9,9,12
**funding** 19:18
  28:24 29:5,7,18
  30:1,8 78:15,16
  78:16,17,19 80:3
  85:13,15
**funds** 29:4
**funnel** 19:4
**funneled** 82:22
**further** 24:5
  25:10 26:15 28:8
  38:22 39:6,7,24
  61:20 86:18 93:10
**furtherance** 40:13
**future** 32:5

**g**

**g** 5:1
**gallagher** 3:17 6:3
  88:16
**gap** 41:11
**gating** 55:9 85:20
**generally** 18:16
  21:5 81:18
**generated** 19:20
**george** 3:18 6:4
  20:21 21:8 23:7
  34:7 50:13 88:17
**gesture** 83:2
**gesturing** 59:23
  80:13
**getting** 6:19 55:8
  81:9 84:2
**give** 13:10 40:5
  47:13 50:5,19,22
  55:4 64:10 68:10
  72:4 74:15 82:15
  85:17 88:11
**given** 13:11 28:10
  55:10 57:17 80:12
  88:1 89:10

**gives** 44:19 66:1
  66:16
**giving** 9:20 90:20
**go** 8:20 12:2,11,12
  14:25 15:14 18:1
  20:9,12 30:24
  33:4 39:8 41:15
  42:2,5 43:22
  46:22 48:16,20
  51:6 56:3 64:24
  65:24 68:23 74:20
  76:12 77:21 78:11
  81:8 83:2 89:11
  91:13 93:18 95:3
  96:4
**goes** 43:20 46:2
  55:24
**going** 12:8,9,9,10
  12:23 15:14 16:10
  25:10,18,22,23
  26:17,18 31:20
  39:25 40:8,9
  42:11 43:10,21
  44:20 45:2,2
  47:15,20 48:4
  49:6,25 50:4,7,23
  52:16 55:5 58:7
  59:7,8,14 60:1,2
  61:22 62:2,3,7,10
  64:1,11 66:4 68:5
  68:12 69:3 71:13
  71:23 73:22 74:4
  74:8 75:4,5,6,16
  75:20 76:21 77:22
  77:23 79:3 80:8
  81:13,20 82:10
  83:1,4 85:1,23,25
  86:25 88:22 89:1
  89:16 91:1 93:16
**good** 5:5,13 6:2,11
  70:13 81:17 89:11
  92:25

**gotten**   17:1,7 35:9
48:24 58:11
**gottlieb**   4:1 5:14
5:15,21 7:17
38:14 48:14
**gottlieb's**   22:2
**government**   76:23
**grant**   45:5
**granted**   41:8 69:6
**granting**   43:1
**great**   5:10 7:9
10:7 72:1
**greatest**   26:9
**greatly**   70:19
83:17
**green**   1:14
**ground**   88:24
**grounds**   52:25,25
53:1
**group**   78:14
**groups**   18:16
**guernsey**   9:4,5
10:18,19,23 11:12
11:21 12:20 13:5
13:9 14:11,14,20
14:22 15:3,5,16
15:18,20 38:3,23
55:15,20 56:2,19
57:9,10,13 59:24
60:13 62:22 63:5
63:5 68:21 69:21
74:1 75:6,7,9,10
77:12,14 78:15
79:12,14,18 80:9
80:14,15 81:3
90:18
**guess**   13:24 15:20
16:13,16 20:9
22:4 26:13 31:25
33:17 35:16 46:17
46:21 55:10 67:2
78:1 94:21 95:3

**guessing**   91:10
**guidance**   84:5
**guinea**   19:21
20:10,11 21:6,16
21:18,23 22:3
35:8 72:12,25
76:12,23,23 79:23
82:11 89:9
**guinean**   35:7
**gun**   59:19

**h**

**h**   1:22
**half**   89:4,13 95:8
**hamilton**   4:1
**hand**   6:9 18:23
**handle**   13:3 50:21
60:5 83:19
**happen**   26:17,18
34:3 42:11 46:25
50:23 57:23 69:16
83:13
**happened**   22:21
72:18 81:17
**happening**   45:8
76:11 80:8 82:13
**happens**   23:25
**happy**   12:11
50:24 63:5,21
64:13 67:24 70:23
95:17
**hard**   67:19
**harm**   37:13,16
38:1 42:14 45:23
**harold**   2:13 11:10
15:17 17:6
**hay**   69:4
**he'll**   45:4 54:15
92:12
**hear**   8:17 11:25
12:2 43:19 46:6
59:3 72:9 88:11
88:13 94:6

**heard**   15:2 48:3
51:1 53:7 78:25
79:24 88:14,18
89:8 90:8
**hearing**   2:1,1,3,7
2:8,12 8:2,3,5
23:24 25:23 26:14
32:5,6 33:3 36:14
40:11,19,23 41:5
41:6 46:1 49:5,6
52:11 59:21 61:13
62:9,10,16 63:20
65:18 79:2 81:21
83:13,14 86:4
87:25 93:14 96:13
**hearing's**   94:22
**hearings**   9:23
64:15
**heightened**   41:10
**held**   22:4
**help**   46:11 71:13
**helpful**   67:23 68:2
68:6,9,11 71:7
84:5
**helps**   24:16
**hey**   71:21 81:20
**hidden**   58:2
**hide**   68:18
**high**   23:9,11 72:9
75:2
**history**   16:5,24
20:15 39:2,7 40:6
**hitchings**   3:15 5:8
60:19 95:16
**hits**   69:4
**hoc**   5:9
**hold**   78:5
**holding**   39:8
**holdings**   19:24
**holiday**   94:17,19
**hon**   1:22
**honor**   5:5,13 6:2,6
6:11 7:13 8:22 9:4

11:1,14 12:5,6
13:7 16:1,11,20
17:9,12,17 19:22
21:10 22:24 23:23
23:25 24:8,10,18
24:20 25:21 26:6
27:6,16 28:15
29:1,13,25 30:25
31:15 32:2,7,10
33:16 34:25 35:24
36:10,23 37:18
38:13 39:3,5 40:7
40:25 41:25 43:15
44:12 47:20 48:13
52:13 53:14 56:14
58:24 59:12 60:25
62:15 63:13 64:5
64:17 65:8,12
66:7 68:17 69:2
82:4 86:10,16,17
88:9,15,16,21
90:2,9,23,25
93:19 94:4 96:3,8
96:9,17,19
**honor's**   8:11
70:20
**hook**   72:8
**hope**   8:4 16:20
32:3
**hopefully**   96:15
**hours**   69:21
**huge**   13:16,18
**hundred**   30:19,20
**hyde**   2:25 97:3,8
**hyman**   3:8 5:5,6
5:11 6:11,16 7:1,4
7:8,10,25 8:21 9:1
9:10,17 10:2,5,8
10:15 11:14 12:4
13:7,17,20 14:10
15:6,25 16:20,24
17:3,7,12 18:4,9
18:13,15 19:1,12

20:11 21:13 24:8
24:12,18 25:4,21
26:4 27:6,16 28:1
28:7,12,15 29:25
30:6,11,14,24
31:3,15 32:2,10
32:15,20,25 33:15
34:5,12,15,25
35:3,5,17,24 36:1
36:10,15,23 37:2
37:18 38:2,7,10
47:20 48:13,16,18
48:20 50:14,18
52:13 53:14,22,24
54:1,4 58:23 59:9
59:12,16 60:6,15
60:18,22,24 61:2
61:4,8,12,17
63:13,24 64:5
65:8,12 66:7
68:17,23 69:20,25
70:3 71:14 86:10
87:4,8 90:9,25
91:5,14,18,24
92:5 93:19,23
94:2 95:16 96:3,9
96:12,19

**i**

**ice** 50:22
**icsid** 33:22 76:12
**idea** 58:7 71:17
  81:17 87:1
**identified** 9:8
  15:17,23 36:17
**ii** 2:8
**iii** 2:9
**illuminating**
  61:16
**imagine** 10:3
  59:13 70:25 73:6
  85:10
**imitated** 63:9

**immediate** 81:9
**immediately**
  82:22
**impact** 29:4
**implicate** 43:11
**implicit** 69:8
**important** 26:15
  58:15,16
**importantly**
  41:25
**impose** 44:1 64:14
**impressed** 17:9
**inartfully** 12:14
**inclined** 40:18
**included** 22:15
**including** 14:15
  33:21 35:2
**incomplete** 65:11
  79:10
**index** 15:24
**indicate** 67:4
**indicated** 40:12
**indiscernible** 12:9
  14:12,24 33:19
  54:10 60:19,23
  62:12,13 64:25
  78:1 94:3 95:7,8
  95:10,17
**individuals** 9:8
**indulge** 39:1
**inform** 43:7
**information** 10:21
  10:24 11:16 13:13
  14:2,6,8,15,18,19
  15:4,5,7,15 16:5
  36:13 62:24 67:10
  67:15 68:25 71:2
**initial** 88:24
**injunction** 41:4,5
  46:1
**injunctive** 49:23
  53:20 81:6

**injury** 41:22
**insolvency** 70:8
**instance** 88:25
**intend** 11:6 32:20
  40:12,14 67:3
**intending** 25:5
**intent** 48:2
**interest** 19:16
  28:22,23 30:9,23
  31:10 35:14 71:6
  78:21 80:23,23
  86:12 88:25
**interested** 42:4,17
**interesting** 96:15
  96:15
**interests** 20:1
  22:18 23:1 79:22
  79:23
**interfere** 92:14
**interference** 21:3
  34:23
**interim** 32:15
  40:3 46:10 63:20
**international**
  21:18 22:13 70:7
**introduce** 70:21
**invest** 72:14
**investigating** 20:1
**investment** 21:19
  72:23
**invoked** 14:3
**involved** 26:7
  35:9
**involving** 89:8,9
**ironic** 70:9
**irrelevant** 20:7
**irreparable** 37:13
  37:15 38:1 41:22
  42:14 45:23
**island** 50:12
**issuance** 22:20
**issue** 16:14 40:21
  48:11 50:7 52:2

55:9 62:8,10
66:11 70:4 71:19
80:25 81:12,24
**issued** 75:14
**issues** 39:4 40:19
  43:10 45:13 46:5
  50:25 56:13 68:1
  71:7,22,23 72:10
  74:5 75:4,5,12
  80:16 81:4,17
  82:3 83:25 85:20
  90:19 93:7
**it'd** 94:23
**it'll** 52:24 80:25
**italian** 46:11
**items** 53:13

**j**

**james** 3:23
**jammed** 7:5
**jarret** 3:15 5:8
**jealous** 50:14
**jfk** 46:9
**job** 84:7 90:23
**john** 5:15
**joint** 1:8 3:4,11
  5:7 8:23 9:3,15
  16:3 19:6,10,25
  20:19 22:1 23:4
  24:21 27:17 34:18
  38:20,23 54:5
  66:16 72:11 73:15
  75:10,11,11 76:24
  77:1 78:20 79:16
  79:17 82:7 90:15
  90:16
**jonathan** 4:7 5:20
  26:6
**judge** 1:23 24:9
  24:10 25:1 26:11
  26:14,19 27:10,24
  35:12 42:7 44:5
  44:25 47:9 48:5
  53:2,4 54:13 81:7

88:19 89:3 92:12
**judges** 95:8
**judgment** 22:25
23:1,3,21 28:4,8
28:24 29:2 30:16
33:5 36:21 37:11
48:9 50:2 52:3
77:8 87:21
**judgments** 45:3
**judicial** 27:3 68:7
70:8 95:7
**july** 8:13 10:2,3
22:5 32:7 33:23
35:11 40:18,22
45:2 47:7,8 48:10
49:5,8,13 52:5
53:7 54:16 59:13
80:17 83:16,25
84:11 86:14 87:13
87:13 92:23 93:4
93:9,14 95:15
**jumping** 59:18
**june** 1:17 26:13
47:13 48:25 49:1
49:11,12,13 50:8
50:11,13 51:21,22
51:24 54:16 97:25
**jurisdiction** 27:22
92:9,10
**jurisdictions**
12:23
**justice** 23:9,12
**justification** 33:4
57:18 58:9
**justify** 62:20

**k**

**keenan** 88:19 89:3
**keep** 81:1
**key** 82:7
**kind** 14:6 24:16
40:3 58:21,21
75:5 77:9,12 80:4
85:17

**kinds** 93:7
**knockdown** 66:5
**know** 7:2 8:17,18
12:22 13:8 14:20
24:15 27:13,20
28:15 30:25 31:5
31:20 37:2,19
40:22 41:10 45:19
51:3 52:10,17
54:19 55:10,17
56:17 58:1 59:20
59:21 60:8,10,12
62:2 63:21 65:24
66:2,16,20,24,24
66:25 67:17,18
69:6 70:6,7 72:2
74:7 75:15 76:13
78:7,17,18,20
79:16,18,22,24
80:2,4,5 81:16,20
82:12,14 83:8,22
83:23 84:2,5 85:9
85:13,17,21 86:6
86:23 87:11 88:5
89:20,21,25 90:1
91:14 92:2 93:4
93:17,20 94:13
95:12
**knowledge** 15:7,9
66:17,25 67:5
**knows** 75:22

**l**

**lack** 56:4 88:25
**laid** 59:11
**lake** 50:13
**lane** 1:22
**language** 61:11
88:4 91:16 94:2
**large** 84:1
**largely** 16:1
**larger** 55:5 75:6
85:11

**lastly** 8:7
**late** 11:20 22:5
69:15
**law** 9:5 13:5 15:20
42:1 55:24 57:10
**lawsuit** 30:5,7
**lawyers** 88:21
**lay** 39:23
**lazaroff** 21:7
**leading** 62:7
**leads** 16:14 86:1
**learn** 42:5
**learned** 77:20
82:16,20
**leave** 29:9 71:11
88:3 91:12 95:21
**ledanski** 2:25 97:3
97:8
**lede** 12:8
**left** 18:22
**legal** 44:19 52:24
97:20
**legitimate** 77:8
**length** 89:10
**lengthy** 8:16
**leone** 19:3 79:23
**letter** 48:5
**level** 39:19 46:14
72:9
**liability** 36:2
**liberty** 4:3
**lien** 30:18
**life** 70:7
**light** 71:5
**limitations** 78:18
**limited** 1:7 5:2
15:19 18:20,21,24
19:1,3,12,21
20:10 28:20 30:10
33:20
**line** 37:19 67:17
**linked** 73:3

**liquidation** 77:21
**liquidator** 79:15
**lisa** 4:6 5:13 12:6
38:14
**list** 13:14 47:11
53:13 54:14 63:21
85:18,19
**listen** 51:3 59:2
**listening** 31:24
**litigate** 45:13
68:13 92:12
**litigated** 71:18
**litigating** 68:13
74:6
**litigation** 23:6
26:8 28:20,21
29:5,8,18,20 30:1
30:8 31:11 33:9
33:12,24 34:20,21
34:23 43:6 44:6
46:16 49:21 50:7
53:13 54:10,11
71:8 73:22 75:17
75:18 76:1,1,5,10
76:11 85:15 89:2
**litigations** 34:6
**little** 7:5 16:24
18:12,21 20:14
22:11 25:11 33:18
39:2 48:24 50:8
50:20 56:4 58:3
70:16 76:8 79:13
90:23
**live** 9:13 50:5
62:17
**living** 56:1
**llp** 3:3,10,17 4:1
**located** 19:2
**london** 22:13
73:19,23 74:1,12
74:16 75:11 79:17
**long** 48:18,20
54:14 63:23 64:7

65:24 73:7,8,9
93:2
**longer** 81:19
**look** 14:17 18:2
18:15,22 30:25
41:8 60:9 61:22
64:10 78:2,22
83:15,15 85:1
86:19 91:5 96:14
**looked** 8:13 67:8
**looking** 33:18
36:4 41:4 62:12
84:1
**looks** 18:11 60:4
93:3
**lose** 49:22
**loss** 72:25 73:3
78:23
**lost** 69:22
**lot** 6:21 7:3 21:25
39:9 47:1 53:15
58:13 66:4 78:25
81:15 88:23 90:10
**lots** 73:2
**lovely** 54:6
**low** 57:10
**lsl** 7:19

**m**

**m** 4:6
**main** 40:13 76:16
79:14
**maintain** 56:6
**majority** 17:23
19:18
**making** 6:7,12
16:7 41:19
**malcolm** 1:8 4:11
8:23 9:11 10:9
11:4,8,15 30:2
67:15
**malcom** 66:13
**man** 39:11

**managed** 19:8
**management**
18:18 80:1
**manner** 2:10 22:9
68:20
**mantra** 85:6
**map** 39:24
**march** 16:4 17:16
**marker** 40:22
**material** 20:4
**materials** 75:16
81:3
**matter** 1:5 8:1
12:9 15:19,19
24:13 25:25 27:18
37:17 43:5 54:10
54:10 61:13 89:2
**matters** 8:1,15
19:14 58:6
**matthew** 1:25
**mature** 46:22
**mccallen** 3:22 6:2
6:3,6 88:15,16
90:4,6
**mean** 13:18 15:16
25:16 26:1 27:20
27:23 30:3,12
31:2,21 37:23,23
48:8 49:19 59:18
59:25 60:20 65:15
68:13 81:6,8
83:19 91:9 94:9
95:3,23
**meaning** 13:1
36:16
**meaningful** 58:18
**meaningfully**
71:18
**means** 27:20
31:21 49:15 51:4
81:5 83:4 95:22
**meant** 50:15

**media** 76:15
**meet** 37:3,3
**members** 10:15
**memorialize**
49:25 91:8
**memorialized**
42:11
**mention** 8:22 27:7
41:23 80:1 82:6
**mentioned** 10:8
16:15 28:16 44:24
46:13 50:11 64:23
78:15,24 79:3,7
80:16,20
**meritless** 89:4
**merits** 37:3 46:2
59:21 83:14
**michael** 21:7
66:12
**microphone** 5:18
**middle** 12:7 27:11
43:4 48:24
**miles** 9:17
**million** 20:24
82:21,21
**mind** 74:23
**mindful** 72:2
93:15
**minds** 81:1
**mine** 78:12 79:23
**mineola** 97:23
**minimum** 67:2
79:10
**mining** 19:2 21:6
21:14,20,24 72:12
73:18 75:19,21
**minority** 19:16
20:1
**minute** 10:1 65:6
**minutes** 50:5
54:18 72:3
**miracle** 45:5

**mischief** 49:21
**misconceptions**
87:3
**misrepresentation**
21:4
**misrepresentati...**
73:14
**misspoken** 41:3
**model** 30:13
**modest** 19:1
**mom** 51:2
**moment** 8:22 10:1
19:7,23 86:9,14
93:9
**moments** 50:20
**monday** 66:5
94:18 95:24 96:5
**monetize** 19:6
20:3 22:10
**money** 19:4 30:13
30:21 73:5 85:14
**money's** 76:1
**month** 82:1 85:21
**months** 81:10
**morning** 6:11
7:14 64:15 69:25
**morris** 3:3,10
**motion** 2:3,7,12
8:8 11:1,18,19
13:13 14:1 23:15
25:24 28:2,11
29:19,23 35:5
41:21 42:3 43:18
43:18,23 44:4
45:4 46:6 52:21
53:21 56:6 61:23
64:2 83:21 89:5,6
92:2 93:6,8
**movant** 88:10
**move** 54:17 68:15
**movie** 83:25
**moving** 36:8

**n**

**n** 3:1 5:1 97:1
**name** 39:12
**named** 39:11
**names** 41:12
**narrow** 63:21
**narrowed** 71:22
**natural** 85:4
**nature** 21:3 63:17
  65:17 96:12
**near** 32:5
**necessarily** 16:3
  57:3
**necessary** 25:11
**need** 6:10 11:4
  12:24 16:19 37:5
  37:15 40:4,16
  45:20 46:2 48:6
  50:25 59:7,8 62:9
  62:10,17 65:15,17
  65:18 66:2,3,6
  69:20 76:9,9
  80:13,18 81:1,10
  86:16 90:22 94:12
  94:13,16 95:2,19
**needed** 75:22
**needing** 6:23
**needs** 52:8 83:13
**never** 55:19 74:5
**new** 1:2,15 3:6,20
  4:4 20:23 22:23
  24:7 29:2 35:19
  44:22 45:9 88:20
  88:24 92:7,9
**nice** 55:3,13 59:5
**nigeria** 19:15,17
**night** 5:9 89:14
**nominal** 20:2
**non** 22:6 77:4
**noncontroversial**
  85:20
**noon** 64:7,12
  65:14 66:8 95:24

96:5
**normal** 77:12
**normally** 86:3
**nose** 27:11
**notably** 73:10
**note** 10:11 11:18
  19:15 58:21
**noted** 5:19 56:14
**notes** 72:17
**nothing's** 42:11
  76:10
**notice** 2:10 6:12
  8:7,7 9:20 11:15
  20:6 28:25 61:18
  86:6,10,13 87:18
  87:25 89:14
**noticed** 6:13
**notion** 37:13
  42:11 87:23 93:2
**notwithstanding**
  17:14 46:11 56:7
**number** 11:9 17:4
  22:21 55:10 56:13
  81:2 86:12
**numbers** 13:24
  15:22,23
**numeral** 15:20
**ny** 1:15 3:6,20 4:4
  97:23
**nysco** 18:17

**o**

**o** 1:21 5:1 97:1
**object** 40:12 94:6
  94:7
**objection** 31:24
  74:16 87:11,17
  95:12
**objections** 2:9 8:6
**obligation** 24:25
  28:24 36:17
**obligations** 14:11
  20:25

**observation** 80:12
**observer** 19:9
**obtained** 23:8
**obtaining** 23:20
  73:18
**obviously** 8:17
  27:8 30:12 58:14
  63:1 70:19 89:22
  90:15 91:1
**occur** 37:16,25
  67:14
**octea** 18:23 19:1,3
**odd** 76:8
**odds** 54:15
**offer** 67:3 70:20
**official** 45:20
**oftentimes** 57:19
**ogier** 9:3
**oh** 5:24 18:9
  34:25 50:14 62:2
  65:21 66:12 77:2
  94:11
**okay** 8:21 9:10
  10:7 28:1 29:25
  32:2 49:2 53:18
  53:25 54:3,6
  57:11 62:4 63:5
  65:5 70:15
**old** 97:21
**once** 65:6 69:17
  91:22
**one's** 89:21
**ongoing** 45:19
  81:14
**open** 58:15 88:17
**opened** 55:15
**opening** 58:3
**operating** 18:22
  19:16 28:16
**operations** 19:2,7
  19:19
**opine** 45:17

**opportunity**
  10:11 16:21 20:12
  24:5,22 28:8
  29:10 35:11 37:6
  38:7 58:18,20
  85:22 86:17 87:8
  89:15
**opposed** 74:3,12
**opposing** 52:25
**opposite** 82:8
**opposition** 29:21
  52:22 95:25
**options** 68:10
**order** 2:4,8 5:9
  8:2,5,10 10:17,19
  11:12 23:8,13
  24:3 26:2,5 27:14
  27:19,24 32:4
  36:21 37:4 41:2
  41:15 48:3 56:9
  60:13,16 61:12
  62:22 68:21 86:4
  87:11,12,15 88:1
  90:17 91:10,21
  92:14 93:11,13,19
  93:21,22 94:1,5
**orders** 17:18
  86:24
**ordinary** 15:18
**org** 39:17
**original** 43:17
  82:21
**osf** 3:18 6:4
**outcome** 33:21
**outset** 26:8
**outside** 28:18
**overarching** 72:6
**overcome** 25:5
**overnight** 76:14
  77:20
**overseas** 7:22
  87:24

owned  17:23
owner  19:18
  72:20 76:20,25
  78:5
owners  39:11
ownership  39:18
  39:19

**p**

p  3:1,1,15,22 5:1
p.m.  7:8
page  13:24 14:18
  14:18 61:5 91:19
pages  13:25 17:4
  18:6 58:4,13
  59:23 61:6,9
  62:25,25 83:4
paid  72:12 78:11
panel  70:8,10
paper  6:21 10:17
  41:24 44:6 52:16
  64:10
papers  25:6 29:19
  33:12 36:16 41:7
  41:7 42:16 63:16
  68:19 69:1 71:3
  74:15 75:25 76:6
  77:3,23 90:21
paragraph  33:16
  33:18,25 35:16,22
  36:9,12,19 37:17
  61:13 66:15,17
parallel  85:22
parent  18:18
  64:22 78:13,13,14
  85:16
parents  80:3
part  15:10,19
  27:3 28:2,18
  43:13,16 63:12
  72:13 79:1 81:14
  82:15 89:24
parte  2:3 8:1

partially  55:18
participants  51:5
participate  31:18
  58:18
participated
  27:17
participating  80:2
particular  31:8
  37:12 39:25 42:16
  42:22 47:11 62:10
  66:18 70:2 71:19
  73:10
particularly
  33:13 70:13 86:10
parties  11:6,25
  12:2 28:18 32:11
  35:12 37:6 53:15
  58:6 81:25 86:12
  87:24 88:6 89:22
  89:25
partner  5:14
  19:18 91:25
parts  37:10 45:22
party  15:2,3
  93:11
pass  23:18 86:25
passing  85:8
patience  82:5
paying  78:5
payment  82:21
pending  23:16
  27:8 33:21 35:7
  37:24 41:4 88:19
  89:7 92:9
people  8:15 12:25
  40:3 41:11 42:10
  43:7 46:7 47:3
  49:21 51:10 54:9
  59:3,7 60:3 68:2
  71:10 81:1,16
  83:19 88:2 90:20
percent  31:4
  39:18 55:22

percolating  72:10
perfect  36:12 55:1
  55:1 66:2
perfectly  10:5
peril  47:6,8
period  7:12 25:12
  26:12 32:15 33:1
  37:22
permission  62:5
person  5:22 6:21
personal  66:17,25
  67:4
personally  78:5
  82:9
perspective  13:11
  17:13 32:3
peter  2:13 10:13
  11:10 15:17 17:5
petition  6:13
  17:19,22 18:10
  22:22 24:2 34:9
  43:24 44:15,16,17
  51:12,19 52:21
  60:25
philadelphia
  91:25
phone  8:22 13:9
  31:18,23,25 58:25
  59:2,3,4 67:25
  70:11
phrase  52:2
pi  55:3
pick  68:11
picture  47:4 54:20
  79:8
piece  44:6
pieces  47:14
pin  9:25 86:9
place  48:1 75:13
  80:1
placed  17:15
placeholder  94:7

places  66:24 76:4
plain  38:22 75:2
plan  20:2
planes  46:9,12
planned  81:22
plans  95:15
plate  71:8
play  9:14 81:11
plaza  4:3
pleading  61:7
  64:3
pleadings  6:17
  7:16 9:2 10:10
please  38:12 53:5
pleased  91:15
pleasure  26:8
pledged  30:5 31:7
plus  21:20 22:17
  22:25
pm  1:18 96:20
podium  90:12
point  6:23 8:16
  9:22 16:2 17:20
  26:13 33:1 42:16
  77:1 83:9 89:20
pointed  56:18
points  52:10 55:3
policy  58:14,15
portions  63:18
portray  38:21
position  71:2 74:2
  89:18
possibility  46:10
  87:21
possible  7:13
  45:20 58:16 70:3
  73:1
possibly  7:6
post  22:17 58:21
posture  81:16
potential  37:25
  48:8 78:22,23
  79:23 86:12

**power** 19:12
21:22
**practical** 42:10,19
43:5,13 86:1
**practice** 55:21
74:14
**pre** 22:17 53:20
**precious** 53:16
**preemptively**
65:19
**preferable** 6:25
42:9
**preference** 8:11
12:4
**prejudicing** 85:11
**preliminary** 41:4
41:5 45:25 52:8
**prepared** 52:1,9
68:19
**preparing** 25:6
**present** 4:9 42:25
56:9 75:2 87:23
**presentation** 12:1
29:16
**presently** 33:21
35:2
**press** 76:15 77:2
**presumably** 9:12
29:9 30:14 67:10
**pretenses** 86:21
**pretty** 79:13
81:17
**prevents** 58:19
**previewed** 39:4
**primary** 92:10
**principles** 67:20
**prints** 6:23
**prior** 42:1
**prism** 67:7
**privileged** 85:7,9
**pro** 5:9
**probably** 20:13
26:2 38:16 51:4

54:14,16 55:23
56:8 63:7 69:16
69:20,22 71:12
75:3 80:11 83:3
85:19 91:11
**problem** 43:14
57:8,19,21 58:5
58:20 59:5 63:8
66:7 68:5 69:13
81:2
**problems** 81:9,13
83:11
**procedural** 79:1
**procedurally**
47:11 80:24
**proceed** 26:14
29:16 32:18
**proceeding** 14:20
14:22,23 21:17
25:18 27:8 29:3
32:24,25 33:6,22
34:1 36:18,19
37:13,14,17 38:22
38:23 40:1,2,13
41:18 42:8 43:20
44:14 45:9 48:12
51:24 55:15 56:2
56:3,4 59:18
60:14 74:1,11,18
74:21 75:7,7,9
77:12 79:14,15
80:9 81:7 83:12
83:12,20 87:12
92:15
**proceedings** 13:3
15:3,5,16,16 24:4
25:10 28:23 36:4
39:24 43:2 46:12
46:17 49:14 55:5
56:23 57:2,5,7,24
58:8,15,17 74:3
80:21 89:7,15,17
89:19 96:20 97:4

**proceeds** 20:24
30:15,23
**process** 27:3
**processes** 53:12
**productive** 70:3
**profit** 30:13
**program** 43:13
**progress** 76:6
90:10
**project** 72:14
**promise** 40:8
**proof** 73:2
**proposal** 51:7
86:8
**propose** 51:23
86:13 91:15
**proposed** 41:6
93:11,13
**prosecution** 39:6
**prospective** 70:24
**protect** 24:20
**protections** 79:1
**provide** 14:8
20:14 33:3,8
86:13
**provided** 15:15
**public** 10:22 11:9
11:17 15:11 19:15
57:17,17 63:12
67:11,16 76:15
**publicly** 60:10
**purport** 43:25
55:20 74:23
**purpose** 78:19
**purposes** 9:12,19
32:1,12 48:11
58:10 67:8 81:6
83:5 90:23 91:9
95:22
**pursuant** 2:4
19:13 26:2
**pursue** 29:10
75:16,17,23 82:16

**pursued** 34:17
74:12
**pursuing** 78:3
**pursuit** 34:19
76:4
**pushing** 69:5
**put** 9:25 13:24
16:19 25:12 41:14
41:20 50:24 77:1
83:6 86:9 91:20
94:8
**putting** 13:4
40:21 58:16

**q**

**question** 12:18
31:6 43:5 55:8,20
55:23 74:7 80:5
80:11 86:2,5
**questions** 9:4
21:10 39:21 41:1
73:2 77:5 80:6
83:23
**quick** 62:9,10
**quickly** 54:15
72:16 80:23,24
**quite** 12:19,21
13:4 69:21 76:3
80:6 81:22
**quote** 83:25

**r**

**r** 1:21 3:1 5:1 97:1
**radar** 78:8
**raise** 31:6
**raises** 39:20
**random** 71:12
**reach** 63:19 70:6
71:16
**reached** 76:22,25
**reaction** 25:22
26:1
**read** 13:14 16:21
16:25 17:17 65:15
66:3 82:18 87:17

95:6,19
**reading** 95:20
**ready** 42:24 43:12
  66:4
**real** 68:24
**realistically** 84:2
  86:25
**realize** 76:10
**realized** 20:25
  94:5
**really** 8:8 20:7
  21:15 22:23 24:13
  31:7,20 35:22
  36:11 44:19 46:24
  47:21,21,23 56:8
  58:1,8,9,10 62:21
  62:22 63:8 67:19
  67:19 68:18 80:7
  82:6 86:11,22,24
  96:9
**reason** 22:23
  23:22 27:7 50:10
  74:15 76:8 80:20
**reasons** 59:10
**recall** 62:6
**received** 21:24
**recitation** 17:8
**recite** 44:19
**recognition** 2:8
  8:3,6 10:10 22:22
  24:2 27:2 29:3
  32:6 35:23 38:22
  40:11 42:2 43:25
  43:25 44:12 45:9
  47:19 52:25 53:20
  67:9 73:21,25
  74:20,21 75:3
  79:2 81:19,21,23
  83:14 86:4 87:12
  87:24 93:14
**recognize** 14:21
  29:15 31:15 37:4
  40:15 50:2 58:1

79:15,16 90:19,20
  95:13
**recognized** 26:21
  34:12 40:13 44:23
  73:19
**recognizing** 48:9
  68:20
**recommended**
  10:2
**record** 16:19
  29:19 31:8 38:14
  39:17 42:18 43:17
  43:19 45:20 46:3
  47:1,16 49:4,20
  50:24 51:10 62:18
  63:12 65:11 67:11
  79:10 82:18 91:10
  91:10,15 97:4
**recurring** 68:5
**redacted** 63:3
**redacting** 63:2
**reed** 21:7
**reengage** 69:23
**reference** 11:4
  16:2 30:1 33:11
  39:9,10 81:3
  90:13
**referenced** 88:18
**references** 11:15
  45:12
**referred** 35:18
  88:20
**referring** 38:4
**refers** 66:22
**refine** 71:2
**regard** 22:6 56:15
**regarding** 9:5
  14:15 19:18 73:2
  75:13 76:24 77:6
  94:2
**regardless** 28:2
  49:21 54:9 56:2

**regular** 48:3
**rehearing** 74:16
**related** 19:14
  20:17
**relates** 87:5
**relating** 46:19,20
  57:7
**relatively** 15:25
  17:13,20,22 54:16
**release** 10:23
  46:23 76:15 77:2
**released** 14:7
  57:22
**relevant** 17:24
  41:20 46:4 57:24
  67:13
**relied** 66:19 67:1
**relief** 2:4 16:17
  32:23 34:3 36:5
  41:8 45:14 46:10
  47:18 49:24 52:9
  53:20 56:24 81:7
**rely** 41:1
**relying** 16:6
**remain** 56:11
**remains** 10:20,24
  19:7
**remedies** 23:2,20
  33:7
**remember** 24:17
  33:12,13 65:1
  87:22
**remind** 60:13
**reminder** 58:25
**remove** 71:7
**reorganization**
  77:25
**reorganize** 24:22
  77:21,22,23 78:2
**repairing** 92:1
**repeat** 88:23
**repeatedly** 6:24
  82:10

**replies** 48:2 94:22
**reply** 26:13,18
  44:24,25 48:4,6
  48:24 51:20,24
  53:1 66:3 94:17
  94:21 95:4,13,23
**report** 76:15,15
**reports** 75:14
  78:8
**represent** 5:6
**representation**
  48:14 56:21 69:8
**representations**
  48:7 73:16
**representative**
  5:7 19:9,9
**representing**
  38:14 51:15
**represents** 21:7
**republic** 19:3
  21:16,18 35:8
  89:9
**request** 12:17
  16:17 24:25 27:24
  43:2 46:24 53:20
  57:13 63:4 65:13
**requests** 49:23
  63:24 80:18 81:6
**required** 9:12
**requirement** 63:9
**requirements**
  86:6
**requires** 36:6
  55:25
**rescind** 73:4
**rescission** 73:6,9
**reserve** 29:17
  38:7 44:4
**reserves** 92:19
  93:11
**resident** 9:3
**resist** 88:22

**resolution** 35:7
91:9 92:9
**resolve** 45:16
**resolved** 53:23
63:19 74:18 93:9
**resolves** 53:24
**resource** 15:19
**resources** 1:7 3:4
3:11 5:2,7 10:16
17:15 18:16,20,21
19:4,5,21 20:10
25:11 33:20 53:15
**respect** 21:10 23:3
23:3 40:11,21,24
89:19
**respects** 22:4
**respond** 38:8 64:8
92:11
**response** 24:1,6
24:25 25:20 28:3
44:21 51:12,17,23
52:18 65:14 92:1
**rest** 56:3
**restarting** 35:13
**restitution** 21:20
**restraining** 2:3
8:2 37:4
**restricted** 33:6
**restructuring**
75:17 76:9 77:7
78:15
**result** 21:15 36:20
38:1 42:13 54:11
58:7 92:14
**return** 10:1 54:18
**revenue** 28:16
**revenues** 19:20
**review** 10:11 19:5
24:5 67:12 74:7
**revised** 93:21,22
**revisit** 25:24 28:9
91:22

**revocation** 21:5
21:13,16,22 22:12
75:21
**rick** 5:5
**right** 5:12,16 6:5
6:9,15 7:24,25
8:12,25 9:6,9,16
10:4,14 11:24
12:13,15,17 13:16
14:4 15:12 16:13
16:13 18:7,14,25
19:11,24 20:6,9
21:12 25:16,19
26:3,24 27:5,23
27:25 28:14 30:8
30:15 31:13 32:22
33:17 35:21,25
36:3,3,3,25 38:5,9
45:10,21 46:16
49:1,7 50:10,18
51:8,13,16 52:4,6
52:7,16,23 53:8
53:11,11,13 54:17
54:18,21 55:8
56:19,21 57:14
60:17 61:1,1,3,6,6
61:10,15,25 64:2
64:6 66:9,9,14,25
67:8 68:22 69:2,7
69:16,24 70:22
71:25 74:17,25
75:8 77:6,13 82:4
83:5,10 84:4,12
84:14,19,21,25
85:3,23 86:3,20
87:7,10 88:5 90:3
90:7,8 91:7,17
92:16,17,20,21,23
92:24 93:6,23
94:14 95:2 96:4,7
**rights** 21:6,14,20
21:24 22:10 23:2
23:6,20 30:21,22

33:7 34:4 44:4
72:12 73:1,18
75:19,21 85:11
89:22 92:19 93:12
**rise** 12:7
**road** 39:24 97:21
**robust** 31:8 32:5
75:6
**role** 80:2 90:17
**roll** 85:15
**rolls** 80:17
**roman** 15:20
**royal** 15:18
**rule** 53:6 57:5,15
69:3
**rules** 14:4,23
26:19 56:22 57:16
**ruling** 52:3
**running** 77:6,9
80:7

**s**

**s** 3:1 5:1
**s.a.** 4:2 22:1
**safe** 16:25
**sam** 4:12 9:2 13:8
**satisfy** 20:25 67:9
**save** 25:11 53:14
54:4
**saves** 54:1
**saw** 6:18
**saying** 13:3 31:18
35:23 45:13 48:5
51:10 55:7 56:8
67:1 68:12 77:2
87:22 94:7
**says** 14:5 33:19
35:1 41:7 62:1,24
66:18
**schedule** 25:23
34:2 36:6 40:17
40:17 42:8 43:8
47:5 49:23 51:25
65:3 81:20 83:16

85:25 86:18 87:19
**scheduled** 33:23
35:10 64:19,21
65:2 86:21 87:1
**schedules** 89:23
**scheduling** 2:8 8:5
8:5,12 9:11,14
26:2,5 27:24
50:20 54:19 86:4
87:12 91:22 93:13
**scheme** 77:17
**schweitzer** 4:6
5:13,14,22 12:6,6
12:16 24:10,15
29:13,15 38:13,14
39:15 40:7 42:6
43:15 44:3,8,11
45:11 49:9,11,16
50:9 51:1,6,9,14
51:17,19,22 52:5
52:7 53:18,23,25
54:3,6,21,24 55:1
55:13 60:23 61:18
62:1,15 64:9,13
64:17,24 65:5,21
66:11,15 69:2,11
70:11,15,18,23
72:1,6 73:13
74:13 75:1 76:18
76:21 77:14,16,19
79:5,9 84:4,8,12
84:14,16,19,21,25
85:3,5 87:16 88:9
90:11 92:17,21,25
94:4,11,15,21,25
95:2 96:1,8,17
**screen** 78:8
**sdny** 32:17
**seal** 2:12 8:9
10:21 11:2,3,22
12:20,24 13:1,5
13:11 55:18,18,23
55:25 56:6,12

57:6,9 59:24
61:23 62:3,3,5
64:2 66:21 79:12
79:12 80:14 81:3
93:6
**sealed** 11:11
14:13 15:8 56:5
56:11,18,22 57:13
57:14 58:6,11,12
61:14 62:21 67:2
69:7
**sealing** 11:12,18
12:10,18,19,19
13:6,13 42:3 55:8
60:13 61:20 62:20
63:9 65:10 66:10
66:12 67:7,21
69:5 84:24 85:24
**sean** 1:22
**second** 8:4 13:5
13:22 17:25 41:20
61:12 68:7 70:8
**secondary** 92:8
**secreting** 39:8
**section** 56:7
**sections** 2:4
**secured** 28:22,23
30:23
**security** 30:9
**see** 8:20 16:14,18
18:17,23 34:18
50:5 58:2,4 63:19
73:7 74:4 75:3
81:13 83:4 86:24
96:6
**seeing** 33:12
**seek** 7:12 15:5
22:24 38:21 62:3
74:20,20
**seeking** 11:12
16:8 35:19,23
45:14 56:24 73:6

**seeks** 20:23
**segue** 16:16
**segues** 80:10
**seize** 26:22 46:12
**seizing** 42:14
**self** 46:11
**send** 87:14
**sense** 11:24 12:1
71:1 74:10
**sensitive** 14:2
58:12 66:22 68:25
**sensitivity** 10:25
56:15
**sentence** 12:7
**separate** 18:5
46:20 49:14 61:9
**separately** 16:11
**seriatim** 81:2
**serious** 77:5 93:15
**serve** 40:14
**service** 7:11,14
37:21,23 38:3,4
88:1
**serving** 33:23
**set** 8:4 23:13,15
27:14 46:14 52:24
67:15 90:21 92:10
**sets** 16:22
**setting** 27:14
44:22
**settle** 78:4
**settlement** 22:5
30:16 35:9,10
76:22,25 77:3,4
82:11
**seventh** 3:19
**share** 11:6 40:24
41:2
**shared** 15:9
**shares** 40:25
**sheet** 15:24 22:8
82:12

**shield** 69:13
**shl** 1:3
**short** 6:12 7:12
25:19 32:4 45:7
73:9
**show** 82:11
**showing** 56:14
58:3
**showings** 41:19
**shown** 76:14
**shows** 17:23
**side** 18:23 55:4
**sides** 47:4
**sierra** 19:3 79:23
**sign** 93:13
**significant** 34:18
54:1 59:14,16
95:14
**silence** 88:25
**similar** 14:3
**similarly** 23:11
**simple** 17:13,20
17:22 18:10 38:18
53:9
**simplistic** 79:14
**simply** 14:19
26:20 30:20 38:24
41:3
**single** 55:22
**sit** 17:14
**sits** 18:18 39:16
**sitting** 47:9 78:12
**sixth** 83:3
**sketchy** 49:20
**slightly** 14:25
68:3
**small** 54:17
**smith** 21:7
**social** 86:23
**society** 88:17
**solicitous** 53:12
**solution** 42:10
43:13 53:16,24

**solutions** 28:20
30:1 34:20,22
42:20 53:19 70:24
97:20
**solve** 59:5 81:13
**somebody** 14:5
31:22,24 46:11
57:2,9 83:6
**somebody's** 56:20
**somewhat** 44:9
**sonya** 2:25 97:3,8
**soon** 7:6,13 48:5
60:1 62:11
**sooner** 68:15
**sophisticated**
81:22
**soros** 3:18 6:4
20:17,21 21:8
23:7 28:19 29:8
33:20,20 34:6,7
34:14,16,16,19
35:1,6,11,15,17
36:1 46:16,16
49:3 75:18,24
76:1,5,10,11
88:17,21
**sorry** 10:12 12:7
12:18 28:5 37:11
50:9 60:20 66:13
87:13 94:11
**sort** 12:13 13:2,4
15:13 25:2 27:12
27:14 31:20 37:9
37:15 39:23 40:2
40:5,6 46:2,12,13
47:4,15 50:25
54:20 56:24 58:2
58:2,21 59:18
60:20 68:12 71:12
80:13,21 83:11
90:1,21 91:8
**sorts** 43:18 46:4

**sought** 21:20 23:24 41:9 45:15 73:4,25
**sound** 31:8
**sounds** 25:20
**source** 29:5
**sources** 85:14
**southern** 1:2 20:22 22:23 24:7 29:2 35:19 41:18 88:20
**speak** 20:5 29:21
**specific** 32:16
**specifies** 66:24
**specifying** 2:8,9 8:6
**speed** 6:19
**spend** 63:14
**spending** 45:21
**spent** 96:10
**spinning** 65:10
**stack** 13:18 83:3
**stage** 35:6,9
**stall** 33:1
**stand** 57:20 68:2
**standard** 7:20 25:4 41:10 66:16
**standards** 37:3
**stands** 20:15
**start** 8:19 18:16 20:16 40:23 44:14 55:7 72:8 81:9,13 84:23
**started** 75:9
**starting** 83:9
**starts** 95:21
**state** 19:7
**statements** 16:7 37:8 69:7
**states** 1:1,13 12:25 14:4,13 23:4,6,21 24:3 54:5 57:12

**status** 33:22 37:14
**stay** 24:25 28:11 32:12 34:15,16 35:22 36:20 37:15 39:2 41:9,13 43:2 45:14 74:2,16 83:21 89:6 92:8
**stayed** 23:15 33:21 34:24 35:2 35:4,7 42:21 46:18 49:4 74:17 89:3,6,12
**stays** 43:18
**steen** 4:1
**steer** 9:21
**steinmetz** 39:14 39:15 72:20 73:12 73:13,14 76:16,17 76:18,19
**stemmed** 21:22
**step** 8:21 27:1,2 33:24 43:6
**steps** 57:21
**stick** 86:14
**sticking** 27:11 85:7
**stipulation** 91:20 92:13 93:11
**stop** 23:19 39:19
**story** 12:11 20:14 75:3
**straightforward** 38:25 46:13 53:10
**street** 27:22 42:8
**strike** 67:5
**strikingly** 33:25
**strive** 87:2
**structure** 17:23 17:25 18:10
**study** 13:22
**stuff** 13:19 66:4 95:11

**styled** 16:17
**subject** 10:25 22:9 32:11 33:1 67:11 74:7 87:20 93:9
**submit** 25:8 56:23 93:10,21,22
**submitted** 5:8 10:8,16,20 41:24 66:21
**submitting** 16:1
**subsequent** 25:23 26:7
**subsequently** 15:11
**subsidiaries** 79:25
**subsidiary** 19:20
**successfully** 83:11
**sufficient** 58:9
**sufficiently** 57:18
**suggest** 71:15 86:19
**suggested** 11:1 32:7
**suggesting** 71:10
**suggestions** 94:20
**suite** 3:12 97:22
**supplement** 64:1 91:11
**supplemental** 62:20 64:3
**support** 10:9 55:17 66:19,21
**suppose** 47:8
**supposed** 50:12 72:14 82:10,19
**sure** 5:18,19,20 7:5 14:7 36:15 43:17 51:8 64:5 72:5 80:6 91:18 92:13
**surprise** 83:17
**surprising** 92:11

**suspect** 59:6 91:4 93:2
**sword** 69:13

**t**

**t** 97:1,1
**tab** 18:4,7,9 61:1 61:2
**tabs** 18:5 61:9
**tacks** 63:12
**tactics** 43:3
**take** 8:10 11:25 14:18 15:15 17:25 18:2 30:24 31:22 32:6 39:4 48:1,7 55:4 59:5 64:13 74:21,22 81:4,19 87:17 89:18 93:3 93:17
**taken** 88:25
**takes** 83:24
**talk** 16:18 50:20 51:2 59:19 67:24 70:21 71:11,20,24 81:25 82:1,2 83:18 84:23 85:24 85:25 88:21
**talked** 79:17
**talking** 5:22 18:8 34:5,8 36:8 51:7 52:15 54:19,20 59:21 78:21 83:16 93:8 96:16
**team** 70:18
**tee** 50:25
**teed** 50:25
**teeing** 43:9,9
**telephone** 9:9
**telephonically** 4:9
**tell** 12:19,21 31:13 32:17 37:1 38:6 40:8,9,9 46:7 52:1 53:4 57:19 62:22 63:4 71:4

82:10 92:6,12
**telling**  47:3
**temporary**  2:3 8:2
  16:17 37:4
**temptation**  88:22
**tend**  6:20
**tenuous**  28:18
**term**  22:7 35:15
  82:12
**terminated**  28:25
**termination**  29:6
**terms**  10:19 25:8
  27:2 28:18 30:3
  30:23 40:25 42:14
  65:24 78:18 80:18
  90:17
**test**  14:3
**testimony**  9:13
**tether**  37:9
**texts**  36:12
**thank**  5:11,12,16
  6:5,6,18,25 9:6
  12:13 16:20 24:11
  24:12,19 27:5
  38:10,11,13 54:8
  88:12,15 90:4,6
  96:3,17,18,19
**therewith**  21:21
**thing**  26:16 38:16
  38:17 45:1,8 46:2
  46:13,19 47:10
  48:5 56:19 57:23
  62:23 63:7 67:22
  69:25 75:13 83:1
  84:9 94:5
**things**  6:21 9:14
  9:21 15:13 21:4
  22:21 24:17 25:18
  37:9 39:20 40:1,5
  42:4,13 45:22
  46:3,4 51:11
  52:12,16 54:7,14
  57:7 58:13 62:16

63:2,10 66:18,22
  66:22 67:4,7,16
  67:16,21 71:4,13
  71:16,22 74:11
  81:11 82:15 83:7
  85:1,12,18 86:23
  88:23 90:11 91:23
  92:7 93:3,17
  95:19
**think**  8:18 10:2
  12:22 13:22,25
  15:9,25 16:23
  17:5 25:2 26:4,8
  26:16 27:21 28:1
  31:17,19 32:3,10
  33:8 34:3,5 36:13
  36:16,20 37:2,8
  37:10,16,19,20
  38:16 40:19 41:3
  41:25 42:10,19,20
  44:24 47:21,25
  48:13,15,22 49:19
  50:23 51:6 52:14
  53:3,14,22 54:1
  54:22 55:8,19
  57:6,15 59:25
  60:1 62:9 63:14
  64:19 65:16,19
  66:10 67:6,19,20
  67:23 68:14 69:3
  69:9,15,15,18
  70:20 71:19 72:1
  72:7,7,9 74:13,13
  74:19 75:5 76:5
  77:25 81:1,8,10
  81:12,25 82:6
  83:2 84:5,10,23
  84:24 85:10,12,19
  86:13 87:4 89:4
  89:10,24 90:9
  91:14,21,24 93:19
  94:24

**thinking**  64:3
  65:16
**thinks**  39:5
**thought**  8:13 9:19
  28:10 47:10 49:22
  86:22 95:9
**thousand**  13:25
  58:4,13 62:25,25
  83:3
**three**  7:25 16:15
  85:14
**threshold**  57:10
  85:12
**throw**  9:25 51:4
  87:20
**throwing**  9:18
**thrown**  41:2
**thursday**  66:6
  69:16,18,20 70:5
  86:15
**tied**  62:25
**ties**  69:6
**tight**  40:17
**time**  6:12 7:3,12
  9:20,20 11:25
  19:17 20:7,8 22:1
  25:12 26:12 28:8
  33:1 37:19 45:21
  47:13 54:6,11
  63:15,15 64:10
  65:4 66:6 68:8
  69:19 72:2 76:5
  80:17 81:4 83:3
  83:24 84:3 85:25
  86:7 88:10,11,12
  89:11 90:11 93:20
  94:13,13,16,19
  95:10,19 96:10
**timely**  23:10
**times**  13:2 50:21
  57:16
**timing**  7:9 37:21
  83:11

**today**  5:9 6:10
  7:25 8:15 11:13
  15:2 18:21 20:15
  21:7 22:2,11,24
  23:25 24:20 25:6
  25:20 26:12,17
  27:9 31:16,23
  32:1,4,19,20 36:7
  36:14,18 38:18
  39:24,25 40:15
  41:13,22 42:16,24
  43:20,21,21,22,23
  43:24 45:17 47:12
  49:24 51:11,23
  52:15,17 55:20
  58:11,21 65:10
  66:1 69:3 71:11
  72:3 75:2,12,25
  79:6 80:25 81:12
  81:24 88:11,18
  89:1,8 90:6,10,23
**today's**  36:14
  41:23 43:14 48:12
**told**  34:1 55:9
  76:14 91:25
**tomorrow**  34:4
  68:8 69:25
**top**  39:17
**tort**  30:15
**tortious**  21:3
**total**  22:18
**totally**  84:4
**trading**  19:14
**transcribed**  2:25
**transcript**  57:3,6
  97:4
**transition**  55:2
**transparent**  82:8
  82:8
**travel**  9:17
**treated**  52:21
**trespass**  82:5

**triggered** 21:15
38:2
**triggering** 37:22
**trip** 54:4
**tro** 8:3 12:10,18
16:17 23:24 25:8
29:19 32:5,8,11
33:3 40:24 41:2,4
41:7,17 43:1,18
45:23,24 62:8
65:17,18 91:9
93:8
**tros** 42:1 55:3
**true** 23:5 97:4
**trust** 39:16
**try** 14:22 29:16
39:2 40:8 42:9
46:12 49:22 70:1
71:7 77:21
**trying** 9:20 12:14
14:21 30:18 36:4
37:9 42:19 45:20
45:21 49:17,18
52:14 53:11 54:12
61:4 63:16 67:18
68:18,19 71:17
73:23 78:4,5
80:22 95:22
**turn** 39:4 54:15
**turns** 28:3
**two** 8:23 9:7 20:6
49:14,15 50:11
75:9,14 80:21
85:14 90:11

**u**

**u.k.** 47:24
**u.s.** 1:23 23:21
26:11 34:14 54:7
58:14 63:1,7
**ultimate** 10:10
28:24 39:10,16
72:20

**ultimately** 19:16
23:22 25:13 28:3
30:16 72:14 89:5
93:16
**uncertain** 9:22
23:17
**unclear** 25:22
**underlying** 21:11
25:14 57:3 74:22
**understand** 17:9
19:19 25:1 30:17
36:5 46:15,24
47:22 51:9 52:13
53:19 55:5 62:21
63:17 69:14 82:24
84:4 90:22 93:1
**understanding**
33:25 43:23 49:24
55:14,21 77:16
**understands**
47:15 68:14
**understood** 12:20
**unfortunately** 7:4
7:10
**unilaterally** 48:6
**united** 1:1,13
12:25 14:4,13
23:4,6,21 24:3
54:5 57:12
**unreachable**
50:16
**unrecognized**
73:24
**unsealed** 12:25
55:19 56:9 63:10
**unsurprisingly**
38:21
**untoward** 73:3
**upstreamed** 78:13
**urged** 82:18
**use** 5:18 85:22,23
87:2 89:11 96:6

**useful** 71:20
**useless** 44:6
**usually** 31:19 46:7
57:1,17
**utmost** 29:1

**v**

**vale** 4:2 5:14 7:19
22:1,12,16,21
23:2,8,15,19 33:6
38:15 39:5 41:18
48:3 72:10,12
73:4,19,21 78:11
89:8,22
**vale's** 24:2 34:9
**valid** 38:22
**valuable** 20:20
21:13,24,25 29:11
30:22
**value** 20:2,4 34:18
58:16 59:1 76:10
**vanilla** 38:22 75:2
**variety** 59:10
**various** 7:15 10:9
25:18 37:10 45:22
45:22 46:3 67:16
83:25 86:6
**vary** 44:9
**venture** 15:6 22:1
72:11 73:15
**verified** 17:19,22
18:8,9 60:24
**veritext** 97:20
**version** 68:4
**view** 37:24 79:4,5
79:6,9 91:2
**views** 74:10 90:20
**vs** 33:20

**w**

**wait** 93:25
**waiving** 89:21
**walk** 6:10 31:21
40:6

**walking** 39:1
**want** 10:5 14:18
15:14 16:19 20:14
32:8,11 35:22
36:19,25 43:4
45:12 46:25 50:6
51:10 52:9 55:2,4
57:8 59:18 63:6
63:25 64:2,8,14
65:2 68:9 69:6,11
69:17 72:17 82:5
82:5,16 83:7,19
86:5,5,8,8,20 88:1
88:3,24 91:8,13
95:9
**wanted** 47:10
75:23 79:2 88:7
90:10 93:2
**wants** 42:21 45:1
57:2
**warn** 88:2
**water** 84:13
**way** 13:3 15:1
17:11 18:22 39:9
42:15 43:7 44:13
45:23 48:20 50:21
54:17 55:19 57:11
57:13 60:5 63:10
71:1 79:11 82:2
83:7,24
**ways** 18:12 60:7,8
**we've** 43:8 63:15
68:15 69:22 71:22
86:17 89:10 90:9
93:8
**weave** 74:14
**wednesday** 66:5
69:19
**week** 32:4 50:12
50:13 60:2 66:4
67:24 69:4,4
71:12 86:15 94:9
95:21 96:16

**weekend**  95:20
**weeks**  49:15 50:11
**weigh**  25:18
**went**  12:14 63:6
   73:7 74:5
**west**  19:12
**we'll**  82:1
**wheels**  65:10
**whispered**  76:2
**whoever's**  27:24
**wholly**  79:18
**wide**  77:9
**wilkie**  88:16
**william**  1:7
**willkie**  3:17 6:3
   7:18 20:17
**wilmington**  3:13
**win**  48:6 49:22
**window**  70:5,13
   84:1
**winter**  50:22
**wish**  90:7
**wishes**  88:14
**withdrawn**  53:21
**witness**  59:4 62:7
**wondering**  5:24
**word**  82:6
**words**  55:7
**work**  8:14 42:9
   47:15 49:19,22
   52:7 53:2,17
   67:21,25 80:15,15
   81:2 82:2 83:13
   83:24 87:5 93:16
   95:21,24 96:2
**worked**  43:8
   92:19
**working**  89:23
**works**  10:3 44:13
   45:23 95:13 96:1
**world**  55:25 77:9
**worry**  48:11

**worth**  12:7 84:23
   87:22
**worthwhile**  85:10
**would've**  94:18
**wow**  86:22
**wrinkle**  53:3
**write**  73:8
**writing**  91:8,12
   93:10
**wrong**  39:12

**x**

**x**  1:4,11 50:2

**y**

**yeah**  6:1 7:4 10:2
   15:25 16:23 17:12
   18:9,13 24:18
   26:4 30:24 31:17
   34:15 42:6 48:23
   53:5 56:21 58:23
   59:9 60:22 62:6,7
   62:19 64:11 65:22
   69:14 70:25 71:10
   71:14 77:15 80:4
   84:16 87:16 91:14
   93:22 95:7
**year**  22:5 49:4
   73:20,21 89:3,13
**years**  72:11
**yep**  31:3
**yesterday**  6:14
   7:17,18 23:24
**york**  1:2,15 3:6,20
   4:4 20:23 22:23
   24:7 29:3 35:19
   44:22 45:9 88:20
   92:7,9

**z**

**zealous**  84:6