

| | | |
|---|---|---|
| NEW YORK | | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | FREDERICK D. (RICK) HYMAN | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 212 692 1063 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 212 208 4521 | LAS VEGAS |
| LOS ANGELES | *E-MAIL:* RHyman@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | *www.duanemorris.com* | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

October 18, 2019

*VIA ELECTRONIC MAIL AND CM/ECF*

The Honorable Vernon S. Broderick
United States District Court for the
Southern District of New York
40 Foley Square
New York, NY 10007
BroderickNYSDChambers@nysb.uscourts.gov

   *Re:*  *Vale S.A. v. BSG Resources Limited*, No. 19-cv-3619

Dear Judge Broderick:

  We represent William Callewaert and Malcolm Cohen (the "Joint Administrators") in their capacity as Joint Administrators and Foreign Representatives for BSG Resources Limited (in administration) ("BSGR") in the above-referenced proceeding and in connection with the Chapter 15 case currently pending before The Honorable Judge Lane in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and docketed as *In re BSG Resources Limited, No. 19-11845 (SHL)* (the "Chapter 15 Case"). We write to address a number of matters related to the instant proceeding and the Chapter 15 Case, including requesting this Court's guidance on the proper forum for a hearing on a request for injunctive relief should the need arise.

  In its letter to Your Honor dated September 23, 2019 ("September 23 Letter") [ECF No. 31], Cleary Gottlieb Steen & Hamilton LLP, counsel to Vale S.A. ("Vale"), stated that "BSGR's sole ground for opposing recognition and enforcement in the United States under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature*, June 10, 1958, 21 U.S.T. 2517, *reprinted in* 9 U.S.C. § 201 (historical and statutory notes) (the "New York Convention") is that the Award supposedly was "suspended" by the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) (the "English

DUANE MORRIS LLP

1540 BROADWAY  NEW YORK, NY 10036-4086    PHONE: +1 212 692 1000  FAX: +1 212 692 1020



The Honorable Vernon S. Broderick
October 18, 2019
Page 2

High Court"), pending the resolution of BSGR's application to set it aside in the United Kingdom, where the Award was rendered" (emphasis added). This is ignores the Joint Administrators' request for alternative relief.[1] The Joint Administrators requested that this Court defer any decision on recognition until BSGR completes its challenge of the Award in the English High Court. A determinative hearing on the challenge is scheduled for November 27 and 28, 2019 (the "November 27-28 Hearing").

On September 20, 2019, the English High Court denied BSGR's application to set aside the *ex parte* order granting permission to enforce the Award or alternatively stay the execution of the Award (the "Enforcement Order"). *See* Exhibit A, Order of the Honorable Mrs. Justice Moulder dated 20 September 2019 (the "September 20 Order").[2] Justice Moulder did not -- as suggested by Vale -- deny "BSGR's application to set aside the Award." *See* September 23 Letter at p. 2. In a footnote Vale acknowledges that "BSGR's challenge to the Award remains pending in the English High Court…." *See* Id. at footnote 1. Justice Moulder's decision did not affect BSGR's challenge to the Award which is still pending and will be heard during the November 27-28 Hearing. Should the challenge be successful, the Enforcement Order would be set aside.[3]

Deferral of a Ruling on Vale's Petition

The Joint Administrators assert that the facts at hand, when applied to the six factors outlined in *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998) support deferral of this Court's decision. *See* Memorandum at pp. 6-7. The *Europcar* factors to be balanced when evaluating a request to adjourn enforcement of an award are:

---

[1] *See* Memorandum of Law in Opposition to Petition for Recognition and Enforcement of a Foreign Arbitration Award and in Support of Cross-Motion to Dismiss or, in the Alternative, to Adjourn the Decision on the Enforcement of the Award (the "Memorandum") [ECF No. 20].

[2] The September 20 Hearing was entered following a hearing before the English High Court on September 4, 2019 (the "September 4 Hearing"). A transcript of the September 4 Hearing is attached hereto as Exhibit B (the "September 4 Transcript").

[3] Conveniently, Vale fails to point out in the September 23 Letter that the English High Court also denied Vale's application for security for the amount payable under the Award. This was the most crucial ruling contained in the September 20 Order, evidencing Justice Moulder's view that the challenge itself should not be derailed by the posting of a security for the Award. We understand from the Joint Administrators' English counsel, Mishcon de Reya LLP, that, in order to justify such security pending a challenge, there must be a showing that the challenge prejudices the ability of the claimant to enforce the award, or diminishes the defendant's ability to honor the award. To do so, one must establish a risk of dissipation or diminution of the defendant's assets prior to the application's final disposal. Justice Moulder found that Vale failed to establish the risk of dissipation or diminution of BSGR's assets, wherever located.



The Honorable Vernon S. Broderick
October 18, 2019
Page 3

>   (1) the general objectives of arbitration – the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>
>   (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
>
>   (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
>
>   (4) the characteristics of the foreign proceeding including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
>
>   (5) a balance of possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article VI of the Convention, an award should not be enforced if it is set aside or suspended in the originating country,…; and
>
>   (6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

156 F.3d at 317-318 (internal citation omitted).  As set forth in the Memorandum, balancing these factors weigh in favor of adjournment in the matter at hand.  The English High Court's entry of the Enforcement Order does not change that.

Vale rests its instant request on the English High Court's denial of BSGR's set-aside application of the Enforcement Order.  The denial of such application, however, is not consequential.  It is undisputed that BSGR has no material assets in the United Kingdom and Vale has commenced no action in the United Kingdom to enforce the Award.  Instead, one of BSGR's most valuable assets, and an asset deemed by the Joint Administrators to be critical to a successful administration, is located in the United States.  This asset is a cause of action commenced against George Soros and other defendants in the District Court for the Southern District of New York.[4]  The Soros Claim seeks damages in excess of $10 billion.  On or about

---

[4]  On April 14, 2017, BSGR, BSG Resources (Guinea) Limited, and BSGR Guinea filed a complaint against George Soros and certain affiliates (collectively, the "Soros Defendants") asserting, *inter alia*, claims for illegal interference with contract, fraud, defamation and other matters relating to the Soros Defendants' involvement in the expropriation of the Debtor's mining

Duane Morris

The Honorable Vernon S. Broderick
October 18, 2019
Page 4

November 29, 2017, Judge Keenan entered a stay of the Soros Claim proceedings, pending the outcome of the ICSID arbitration between Plaintiffs and the Republic of Guinea [ECF 136 at 14]. At the time of the entry of the stay, the parties were engaged in document discovery, and the defendants' motion to dismiss the June 30, 2017 amended complaint was *sub judice*. Most recently, on August 26, 2019, Judge Keenan continued the stay until the parties' next conference with the court, currently scheduled for December 10, 2019 [see ECF 156]. The ICSID arbitration remains pending.

Vale's petition seeking recognition of the Award evidences an intent to interfere with BSGR's prosecution of the Soros Claim and/or assert a lien on BSGR's share of the proceeds. BSGR has no other assets in the United States. Importantly, a decision by this Court to refrain from granting Vale's petition will have no prejudicial effect on Vale given the status of that litigation. Notwithstanding Vale's assurances to the English High Court that "they are not by [relief sought in such court] seeking to leapfrog other creditors," *see* September 4 Transcript at p. 52, its actions in this Court suggest otherwise.

Any action by Vale to interfere with BSGR's efforts could have the effect of undermining the fundamental purpose of the administration – that is, to return the company to solvency and pay its creditors. Recognition of the Chapter 15 Case would protect and preserve BSGR's interests in the Soros Claim so that it could be liquidated for the benefit of BSGR's creditors, including Vale, in accordance with the priorities under Part XXII of the Companies (Guernsey) Law 2008 (the "Guernsey Insolvency Law"). If the Bankruptcy Court ultimately grants recognition of the proceeding and determines that the Bailiwick of Guernsey is properly the "center of main interests" for BSGR, then BSGR will benefit from the automatic stay and Vale will, absent further order of the Bankruptcy Court, be prohibited from interfering with the prosecution of the Soros Claim.

Under these circumstances and for the reasons discussed in the Memorandum, the Joint Administrators respectfully submit that this Court should grant their request to defer a ruling on Vale's petition until a ruling from the English High Court on BSGR's challenge of the Award. Such a decision should come at or shortly after the November 27-28 Hearing.

Stay of Enforcement

As this Court is aware, Vale and the Joint Administrators, on behalf of BSGR, agreed on the terms of a stipulation pursuant to which Vale agreed that it shall not seek to enforce or execute on any judgment issued by this Court until the earlier of the conclusion of the recognition hearing on the Chapter 15 Petition on October 31, 2019. *See* Letter dated August 26, 2019 ("August 26 Letter") [ECF No. 30]. Vale has stated that it will not voluntarily extend the

---

interests (generally, the "Soros Claim"). The action is docketed as *BSG Resources Limited v. Soros*, Case No. 17-cv-02726-JFK-OTW (S.D.N.Y. Apr. 14, 2017).

DuaneMorris

The Honorable Vernon S. Broderick
October 18, 2019
Page 5

standstill.  The Joint Administrators remain hopeful that they will be in a position to schedule a recognition hearing in the Bankruptcy Court in the coming months.  In the meantime, the Joint Administrators and BSGR are expending considerable efforts to respond to Vale's document discovery requests and acknowledge that notwithstanding production that has already been made, significant production still remains to be delivered.

Recognizing that October 31 was rapidly approaching, Judge Lane raised "the elephant in the room" at a hearing before the Bankruptcy Court on October 3, 2019.  *See* Transcript of October 3, 2019 hearing attached as Exhibit C (the "October 3 Transcript") at p. 91.  Judge Lane recognized that, in the event that this Court grants Vale's petition prior to a Chapter 15 recognition hearing, the Joint Administrators would be expected to seek injunctive relief to prevent the exercise of remedies pending such hearing.  Judge Lane explained at the hearing that he would defer to this Court on the appropriate venue to hear a motion for injunctive relief should the need arise.  *See* October 3 Transcript at pp. 91-99.  Judge Lane stated that "it seems pretty clear based on things that have been said over the last couple of hearings, that if something happens after October 31st, there's going to be a bit of a fire drill on this particular issue and people want to know what forum, where they should go and how to handle that." *See* Id. at 98.  He explained that he was "not reluctant" and "if called upon to make a ruling, I would make a ruling."  *See* Id.

In accordance with Judge Lane's direction, the Joint Administrators seek this Court's guidance on the whether this Court or the Bankruptcy Court is the proper forum for a hearing on injunctive relief should the need arise.

DuaneMorris

The Honorable Vernon S. Broderick
October 18, 2019
Page 6

        Thank you for Your Honor's consideration.

                                                           Respectfully submitted,

                                                           */s/ Frederick Hyman*
                                                           Frederick Hyman, Esq.

cc:  Jonathan I. Blackman, Esq.
      Lisa Schweitzer, Esq.