5 September 2018

Please ask for
Christopher Sandall
0207 893 3792

**TO ALL KNOWN AND CONTINGENT CREDITORS**

Dear Sirs

**BSG Resources Limited (the "Company") - In Administration**

In accordance with the Order of the Royal Court of Guernsey ("the Administration Order") handed down on 6 March 2018, I am reporting the progress made in the Administration for the period from appointment to 5 September 2018, that being the first six months of the Administration.

**1    Statutory Information**

The Joint Administrators are William Callewaert and Malcolm Cohen of BDO Limited and BDO LLP, respectively, (the "Joint Administrators") who were appointed in respect of the Company on 6 March 2018.

The Joint Administrators were appointed by The Royal Court of Guernsey ("the Court") on an application made by the Company.

The Company's registered office address is West Wing, Frances House, Sir William Place, St Peter Port, Guernsey, GY1 1GX and the Company's registered number is 46565.

**2    Background to the Administration**

This is the first report to creditors and it is therefore appropriate that the background to the appointment of the Joint Administrators is given. There are a number of confidential matters in this Administration and as a result the Administration application was heard by the Court *in camera*. This report will not provide details of any confidential matters, principally in relation to ongoing litigation and arbitration matters.

Under the provisions of The Companies (Guernsey) Law, 2008, a company can make an application for the appointment of administrators where a company is insolvent or it can be shown that a company is likely to become insolvent, and where the court can be satisfied that one or more of the statutory purposes of an administration order may be achieved.

BDO LLP, a UK limited liability partnership registered in England and Wales under number OC305127, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms. A list of members' names is open to inspection at our registered office, 55 Baker Street, London W1U 7EU. BDO LLP is authorised and regulated by the Financial Conduct Authority to conduct investment business.

LITI-22440257-2



During February 2018, the directors of the Company formed the view that the Company was already insolvent or was likely to become so. Accordingly, the Company made an application to the Court for the appointment of the Joint Administrators and provided the Court with sufficient supporting evidence that the appointment of the Joint Administrators was the most appropriate course of action in light of the Company's financial position.

The statutory purpose of the Administration Order is the survival of the Company as a going concern.

It was the directors' view that the Company held two contingent assets, being a claim in an International Centre for Settlement of Investment Disputes ("ICSID") arbitration against the Republic of Guinea and a claim against George Soros and other related parties in the United States, which the Company would have found more difficult, or even impossible, to continue pursuing if it had become insolvent without the protection of the moratorium which comes into force upon the making of an Administration Order.

The decision to place the Company into Administration was taken with a view to realising the two contingent assets for the benefit of its creditors and returning the Company to a position of solvency.

3      **Approach to the Administration**

The Joint Administrators' role is to fulfil the purpose of the Administration Order, namely to restore the Company as a going concern (and thus to ensure that all creditors are paid in full). In order to achieve this, the Joint Administrators have been working closely with the Company's directors and advisors with the aim of fulfilling the purpose of the Administration Order.

The affairs of the Company, particularly the litigation matters, are varied, complex and largely interrelated. The Joint Administrators and their team have spent a considerable amount of time in the first six months, in consultation with the Company's management, advisors and the lawyers instructed on each matter, in acquiring the requisite knowledge to deal with all these matters and to progress them in a manner consistent with their duties to the Court.

Since their appointment, the Joint Administrators have retained the Company's premises in Guernsey and its existing employees, with a view to maintaining the historic knowledge and cooperation of these key individuals to ensure the best prospects of a successful outcome for the Administration.

## 4 Litigation Matters

An overview of each of the major litigation matters is set out below.

### 4.1 Claim against the Republic of Guinea

The Company is a claimant in an arbitration proceeding against the Republic of Guinea ("Guinea"), conducted through the ICSID. In summary, the claim relates to iron ore exploration and mining rights in the Simandou region, previously awarded to the Company by Guinea, which, it is alleged, were illegally expropriated by Guinea in 2014. The Company's claim seeks the restoration of those rights, together with damages.

At the time of the Joint Administrators' appointment, the arbitration proceedings were already at an advanced stage. Since then, the Joint Administrators have confirmed the appointment of the lawyers acting for the Company (Mishcon de Reya) and have been instructing them on the ongoing issues. These have principally involved a hearing before the arbitration panel in Paris to determine the authenticity and admissibility of certain documentary evidence adduced by Guinea, the submission of post hearing briefs and responses and the preparation of costs submissions (to be filed mid September 2018).

Unless the arbitral tribunal were to order otherwise, the Joint Administrators understand that the proceeding is now fully briefed and that the decision of the tribunal is awaited. A decision may be rendered in the latter part of 2019 or sometime thereafter.

### 4.2 Claim against George Soros

The Company filed a complaint, against George Soros and related parties in the United States District Court for the Southern District of New York in 2017. The complaint asserts various claims against George Soros and his Open Society Foundations and related entities arising out or related to their alleged actions to intentionally deprive the Company of its iron ore mining interests in the Simandou region of Guinea. The complaint seeks US$10 billion in damages.

In November 2017, the presiding judge granted the defendants' request for a stay of the litigation pending resolution of the ICSID arbitration noted above, without otherwise ruling on the merits of a motion to dismiss the complaint which had been submitted by the defendants. As a result, the action has been stayed since that time. A status conference is scheduled to be held before the judge in October 2018, at which point the future direction and timetable for the litigation may become more clear.

### 4.3 Claim by Vale S.A.

The Company is the respondent to an arbitration proceeding, conducted through the London Court of International Arbitration ("LCIA"), brought against it by Vale SA ("Vale"). The proceeding, held on a private basis, relates to a joint venture previously established between Vale and the Company relating to the Simandou iron ore mining project in Guinea.

Vale seeks to recover its investment in the shares of the joint venture company, which it purchased from the Company for US$500m, as well as the US$750m which it had invested in necessary infrastructure in connection with the project. Its claims are based on alleged fraudulent misrepresentations on the part of the Company which led to it making its investment.

The Company denied these allegations and prior to the Joint Administrators' appointment the Company had alleged procedural irregularities by the LCIA tribunal in its conduct of the case, which led to the replacement of the chairman of the tribunal for perceived bias.

The Joint Administrators have been advised by the lawyers representing the Company in this matter (Mishcon de Reya) that the arbitration process is now complete and that the arbitration award could be issued by the tribunal at any time. At the date of this report it has not yet been issued.

### 4.4    Cunico Litigation

The Company is a respondent to a Dutch proceeding brought by *inter alia* a Dutch registered company, Cunico Resources NV ("Cunico"). The claim is part of a wider dispute (and litigations in the Netherlands, Dubai and the Bahamas) between (amongst others) the shareholders (and their parent companies/beneficiaries) of Cunico and involves numerous parties, including but not limited to entities and persons directly or indirectly related to the Company. Shortly after our appointment the Company was served with a summons to appear before the Amsterdam District Court (Private Law Division) in order to progress the proceeding. This necessitated the Joint Administrators' retention of Dutch lawyers to advise on the Company's position with regard both to the summons and to the existing Dutch litigations generally.

Prior to the Joint Administrators' appointment the Company's management were at an advanced stage of settlement discussions with the other parties to the abovementioned litigations. Following our appointment (but unrelated to it), these discussions have been continuing periodically. The Joint Administrators are hopeful that these discussions may lead to the settlement of this dispute on mutually acceptable terms.

### 5    Assets

In addition to the potential litigation recoveries mentioned above, the other main assets of the Company are as follows:

### 5.1    Octea Limited

The Company holds a direct subsidiary company, Octea Limited ("Octea"), that acts as the holding company for a group of companies engaged in diamond mining, extraction and refinement based in Sierra Leone, as well as the marketing and sale of diamonds.

**BDO**

**5.2    West African Power Limited**

The Company holds a direct subsidiary company, West African Power Limited, that ultimately holds, through a group of subsidiary undertakings, a minority investment in a power station located in Geregu, Nigeria.

**5.3    Bank Account**

The Company holds a bank account with Banque J Safra Sarasin in Switzerland.  At the date of appointment there was US$17,947 in this account.  The Joint Administrators have taken control of this account and no payments can be made without their authorisation.

**5.4    Debtors**

The Joint Administrators are aware of a number of debtors and are undertaking a review of all of the relevant agreements and contracts; based on the initial review it does not appear that any of these debts are currently due.

**5.5    Investigation of Assets**

The Joint Administrators have a duty to identify any potential assets of the Company other than those identified above.  If you are aware of any asset or potential asset that is not included above, please provide relevant information to the Joint Administrators.

**6      Creditors**

**6.1    Secured Creditors**

**6.1.1   Standard Chartered Bank ("SCB")**

SCB is the historic lender to the Company and certain of its subsidiary undertakings.

The outstanding debt due to SCB prior to the appointment of the Joint Administrators was US$16m, allegedly rising to c. US$75m as a result of the Company entering Administration. The claimed escalation of the debt as a result of the Administration is currently a matter of dispute between the Joint Administrators and SCB.  The Joint Administrators anticipate taking steps to resolve this issue in the coming months.

SCB purports to have security over all proceeds flowing into the Company to the extent of its claim into the Company.  The Joint Administrators continue to take advice on this position.

**6.1.2   Star West Investments Limited ("Star West")**

Star West holds a charge over the shares of Octea as security for its loan of $151m to that company in respect of the Company's guarantees of Octea's obligations to Star West.

LITL22449257.2

These guarantees have not been called upon and at present there is no debt due to Star West by the Company.

## 6.2    Unsecured Creditors

The estimated unsecured creditors of the Company amount to US$7,491,893.  These comprise inter-company or associated company creditors, general trade and expense creditors, the Guernsey Social Security Office and the Guernsey Income Tax Office.

## 6.3    Contingent Creditors

In addition to the creditors set out above there are two contingent creditors; Star West (in respect of the guarantee noted above) and Vale S.A. (in respect of its arbitration claim against the Company, noted above).  The certainty, quantum and timing of these liabilities is currently unknown.

## 7    Receipts and Payments Account

Enclosed, for your information, is a summary of the receipts and payments account for the Administration to date (showing a nil balance in hand), reporting as follows:

### 7.1    Realisations

There have been no realisations in this Administration to date.

### 7.2    Funding

The Company has no liquid assets with which to fund the costs of the Administration.

Accordingly, it is expected that a formal funding agreement will shortly be entered into with Nysco Management Corp. (the Company's immediate parent company) through which they provide funding via a loan for certain aspects of the Administration.  A summary account of the sums loaned to the Company are at Appendix 1.

### 7.3    Trading

The Company acts as an adviser and administration function for a number of its subsidiaries and has continued to do so to a limited extent.

Operational costs have been incurred principally in respect of salaries and legal and professional fees.

A management fee is anticipated to be paid to the Company in the next 12 months from its direct subsidiary, Octea.  The payment of this management fee is presently subject to some uncertainty in terms of the quantum and timing of its receipt by the Company.

**BDO**

**8      Pre Appointment Costs**

The Administration application to the Court sought approval of pre-appointment fees of the Joint Administrators of £64,500.  These fees were approved by the Court in full and have been drawn under the funding agreement noted above.

**9      Joint Administrators' Remuneration**

The Joint Administrators requested that the Court approve their fees on a time costs basis and provided an estimated budget for the first year of the Administration.  As part of the Administration Order, the Court approved the basis and estimated fees of the Joint Administrators for the first twelve months totalling £577,741.

The Joint Administrators have made a further application to the Court to obtain an increased fee approval for the first 12 months of the Administration for a total amount of £901,239. The increase in estimated fees is a result of unanticipated costs incurred in relation to the litigation matters referred to above.

The table at appendix 2 summarises the Joint Administrators' time costs incurred from appointment to the date of this report.

**10     Disbursements**

Direct disbursements are recovered in respect of precise sums paid to third parties during the Administration.  A sum of £3,175 (summarised in the loan account as 'General Disbursements') has been drawn in respect of direct disbursements between the date of the Joint Administrators' appointment and the date of this report.  These are detailed in the table below.

| Disbursement | Amount £ |
|---|---|
| Travel (Air) | 2,122.84 |
| Travel (Rail) | 56.20 |
| Travel (Taxi/Tube) | 534.53 |
| Hotel | 443.73 |
| Meals & Subsistence | 18.00 |
| | 3,175.30 |

Indirect disbursements for costs such as printing, photocopying and telephone calls that cannot be specifically allocated to the Administration have not been drawn by the Joint Administrators.

11      **Future of the Administration**

As stated, the purpose of the Administration is the survival of the Company as a going concern.

The two contingent assets in this Administration are the ICSID arbitration against the Republic of Guinea and the US litigation against George Soros. The status of these two matters has been set out, to the fullest extent possible, above. The outcome of these matters will determine the future strategy of the Administration and whether or not it will be possible for the Joint Administrators to achieve the purpose of the Administration.

If you require any further information, please contact me or my colleague Christopher Sandall on 0207 893 3792 or email him on christopher.sandall@bdo.co.uk and BSGR@bdo.co.uk.

Yours faithfully
For and on behalf of
BSG Resources Limited

William Callewaert
Joint Administrator

Appendix 1

**BSG Resources Limited (In Administration)**

**Receipts and Payments Account**
As at 28 August 2018

| | | |
|---|---|---:|
| RECEIPTS | | |
| None | | nil |
| | | nil |
| PAYMENTS | | |
| None | | nil |
| | | nil |
| Balance held by Joint Administrators | | nil |

**Loan Account**
As at 28 August 2018

| | | |
|---|---|---:|
| Operating Costs | | |
| Staff costs including tax & social security contributions | 1 | ( 92,396) |
| Legal and Professional fees | 2 | ( 22,255) |
| General office costs | | ( 369) |
| | | ( 115,020) |
| Legal Fees & Associated Costs | | |
| Legal Fees | 3 | ( 927,721) |
| IT Services | 4 | ( 64,843) |
| | | ( 992,564) |
| Joint Administrator's Fees | | |
| Joint Administrators' pre-appointment fees | 5 | ( 64,500) |
| Joint Administrators' post-appointment fees | 5 | ( 296,780) |
| Joint Administrators' general disbursements | 6 | ( 3,175) |
| | | ( 364,455) |
| Total loaned to BSG Resources Ltd (In Administration) | | ( 1,472,038) |

NOTES

1. The Company retains two members of staff who provide administrative and operational functions.

2. Legal and professional fees incurred in respect of operational matters.

3. Legal fees and costs incurred in relation to matters arising in the Administration. This includes an amount of £104k in respect of ICSID arbitration court fees.

4. IT Services includes the provision of cloud-based storage and access for data and digital documents relating to the various legal proceedings.

5. The Joint Administrators' pre- and post-appointment fees were approved by the Royal Court of Guernsey.

6. Disbursements incurred are detailed in the body of the report.

Appendix 2

## BSG Resources Limited (In Administration)
## Summary of Joint Administrators Time Costs
## As At 25 August 2018

| Grade / Average Rate | Partner £703 per hour | | Principal/Director £433 per hour | | Senior Manager/Manager £388 per hour | | Executive £209 per hour | | Totals £464 per hour | |
|---|---|---|---|---|---|---|---|---|---|---|
| | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours |
| Appointment Matters | 14,943 | 21.50 | 22,839 | 49.10 | 4,030 | 10.85 | - | - | 41,811 | 81.45 |
| Day One Matters | 4,526 | 6.50 | 12,987 | 33.90 | 16,100 | 45.00 | 33 | 0.30 | 33,647 | 85.70 |
| Litigation Matters | 117,312 | 166.10 | 98,801 | 211.00 | 50,278 | 121.70 | 7,623 | 22.00 | 274,014 | 520.80 |
| Trading Matters | 5,563 | 7.80 | 51,076 | 144.50 | 25,021 | 80.80 | 232 | 3.25 | 81,891 | 236.35 |
| Tax | 3,371 | 4.85 | 3,872 | 6.20 | - | - | 133 | 0.80 | 7,376 | 11.85 |
| Statutory Complianace | - | - | 16,208 | 46.40 | 2,082 | 4.75 | - | - | 18,290 | 51.15 |
| General Administration | 25,768 | 36.65 | 24,922 | 53.60 | 44,641 | 109.75 | 48 | 0.50 | 95,380 | 200.50 |
| Other Matters | 44,860 | 64.20 | 52,209 | 108.40 | 50,677 | 123.70 | 5,044 | 36.00 | 152,790 | 332.30 |
| | 216,343 | 307.60 | 282,915 | 653.10 | 192,828 | 496.55 | 13,113 | 62.85 | 705,199 | 1,520.10 |



Tel: +44 1481 724561
Fax: +44 1481 711657
mail@bdo.gg
www.bdo.gg

PO Box 180
Place du Pré
Rue de Pré
St Peter Port
Guernsey
GY1 3LL

7 March 2019

**TO ALL KNOWN AND CONTINGENT CREDITORS**

Please ask for
Christopher Sandall
0207 893 3792

Dear Sirs

**BSG Resources Limited (the "Company") – In Administration**

In accordance with the Order of the Royal Court of Guernsey ("the Administration Order") handed down on 6 March 2018, I am reporting the progress made in the Administration for the period from 6 September 2018 to 5 March 2019, that being the second six months of the Administration.

1        **Statutory Information**

The Joint Administrators are William Callewaert and Malcolm Cohen of BDO Limited and BDO LLP, respectively, (the "Joint Administrators") who were appointed in respect of the Company on 6 March 2018.

The Joint Administrators were appointed by The Royal Court of Guernsey ("the Court") on an application made by the Company.

The Company's registered office address is West Wing, Frances House, Sir William Place, St Peter Port, Guernsey, GY1 1GX and the Company's registered number is 46565.

2        **Background to the Administration**

Full details of the background to the appointment of the Joint Administrators were provided in the first report dated 5 September 2018.

In summary, the directors took the decision to place the Company into Administration with a view to realising its two major contingent assets, the ICSID arbitration against the Republic of Guinea and the claim against George Soros and other related parties in the United States, for the purpose of the survival of the Company, and the whole or any part of its undertaking, as a going concern.

BDO Limited        Registered in Guernsey number 29684
Directors        J M Hallett FCA  S M Phillips FCA CPA  R M Searle FCA C.Dir  A M Trebert FCCA

BDO Limited is registered to carry out audit work in the UK by The Institute of Chartered Accountants in England and Wales.

BDO Limited, a limited liability company incorporated in Guernsey, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

**3        Approach to the Administration**

As we stated in our first report, the Joint Administrators' role is to fulfil the purpose of the Administration Order as detailed above.  In order to achieve this, the Joint Administrators have been working closely with the Company's directors and advisors with the aim of fulfilling the purpose of the Administration Order.

The affairs of the Company, particularly the litigation matters, are varied, complex and largely interrelated and the Joint Administrators and their team have spent a considerable amount of time in consultation with the Company's management, advisors and the lawyers instructed on each individual matter to progress those matters with the overall aim of fulfilling the purpose of the Administration Order.

As advised in our previous report, the Joint Administrators have retained the Company's premises in Guernsey and its existing employees in order to maintain the historic knowledge and cooperation of these key individuals and to ensure the best prospects of a successful outcome for the Administration.

**4        Litigation Matters**

An overview of each of the major litigation matters is set out below.

**4.1      Claim against the Republic of Guinea**

The Company is a claimant in an arbitration proceeding against the Republic of Guinea ("Guinea"), conducted through the International Centre for Settlement of Investment Disputes ("ICSID").  In summary, the claim relates to iron ore exploration and mining rights in the Simandou region, previously awarded to the Company by Guinea, which, it is alleged, were illegally expropriated by Guinea in 2014.  The Company's claim seeks the restoration of those rights, together with damages.

In our first report the Joint Administrators informed creditors that the proceeding was fully briefed and that the decision of the tribunal was awaited.

At the time of preparing this report discussions regarding non-binding settlement terms are progressing which, if successful, will suspend the arbitration proceeding (without prejudice to the Company's rights to recommence the proceeding) whilst a definitive settlement agreement is negotiated, in order to provide a better opportunity to bring in realisations to the estate.

**4.2      Claim against George Soros**

We previously reported that the Company had filed a complaint against George Soros and related parties in the United States District Court for the Southern District of New York in 2017.  The complaint asserts various claims against George Soros and his Open Society Foundations and related entities arising out of or related to their alleged actions to intentionally deprive the Company of its iron ore mining interests in the Simandou region of Guinea.  The complaint seeks US$10 billion in damages.

In November 2017, the presiding judge granted the defendants' request for a stay of the litigation pending resolution of the ICSID arbitration noted above, without otherwise ruling on the merits of a motion to dismiss the complaint, which had been submitted by the defendants.  As a result, the action has been stayed since that time.

The status conference which had been scheduled for October 2018 was postponed until November 2018 at the instance of the Court.  The Company had requested that the stay be  lifted, at least partially, to enable discovery to proceed.  In the event the Court decided that the stay should remain in place until July 2019 (or such time as ICSID renders its decision, if earlier) at which point it indicated that it was likely to order discovery to proceed either fully or only in respect of documents.  The Joint Administrators will be making appropriate representations to the Court at the time of the next status conference.

**4.3     Claim by Vale S.A.**

As advised in the previous report, the Company is the respondent to an arbitration proceeding, conducted through the London Court of International Arbitration ("LCIA"), brought against it by Vale S.A. ("Vale").  The proceeding relates to alleged fraudulent misrepresentation by the Company in respect of a joint venture between Vale and the Company relating to the Simandou iron ore mining project in Guinea.  Vale seeks to recover its investment in the shares of the joint venture company (US$500m) and infrastructure investment (US$750m).  Its claims are based on alleged fraudulent misrepresentations on the part of the Company which led to Vale making its investment. The Company denied these allegations.

As reported previously, the arbitration process is now complete and the Joint Administrators are awaiting the LCIA's decision, which could be issued by the tribunal at any time.

**4.4     Cunico Litigation**

As reported previously, the Company is a respondent to a Dutch proceeding brought by, amongst others, a Dutch registered company, Cunico Resources NV ("Cunico").  The claim is part of a wider dispute (and litigations in the Netherlands, Dubai and the Bahamas) between (amongst others) the shareholders (and their parent companies/beneficiaries) of Cunico and involves numerous parties, including but not limited to entities and persons directly or indirectly related to the Company.  The Company (and the co-defendants) contest the jurisdiction of the Court.  The Court is due to schedule a date for pleadings on that specific issue.  The Joint Administrators are engaging with the Dutch lawyers in this regard and, to the extent it is deemed necessary, will attend the hearing.

The Company is a co-claimant in appeal proceedings against Cunico (amongst others) and the Joint Administrators have undertaken research into the underlying assets in order to ascertain, as far as they are able, its underlying asset base to assess the likelihood of making recoveries even if it is successful in its appeal in respect of the Cunico litigation.

Any continuation of the appeal would be subject to obtaining litigation funding. Dutch attorneys have provided advice as to the likelihood of success of an appeal. The Joint Administrators are currently considering this advice in order to assess the likelihood of obtaining litigation funding, considering the prospects of success and any subsequent recovery.

In respect of the other litigation in which the Company is indirectly involved, these proceedings have been stayed, are subject to extensions, put on hold or discussions are taking place between the parties. Settlement discussions with the other parties continue with the objective of maximising the return, if any, to the Company.

The Joint Administrators will continue to monitor all aspects of the Cunico Litigation, whether the Company has a direct or indirect interest, in order to maximise the return (or minimise the loss), if any, to the Company.

**4.5    Le Canard Enchaine ("Le Canard")**

The Company, along with Mr Steinmetz and other entities connected to him, had made a claim in France prior to our appointment against Le Canard relating to an article which was alleged to be defamatory.

Judgement was given against Le Canard in September 2018 and damages and costs were awarded against it. The amount of this award is not substantial and is presently subject to appeal. Le Canard was also ordered to print retractions of the defamatory allegations in a number of French publications.

**5    Assets**

In addition to the potential litigation recoveries mentioned above, the other main assets of the Company are as follows:

**5.1    Octea Limited and Subsidiaries**

The Company holds a direct subsidiary company, Octea Limited ("Octea"), that acts as the holding company for a group of companies engaged in diamond mining, extraction and refinement based in Sierra Leone, as well as the marketing and sale of diamonds.

The Joint Administrators have carried out a detailed review of Octea's mining and sales operations, including a site visit to the mine by a BDO industry specialist. They continue to monitor Octea's performance on a monthly basis with its management and have observer status on its board.

On 2 January 2019, Octea's country of incorporation, and that of certain of its subsidiaries, were migrated from the British Virgin Islands to Guernsey.

The Company had previously advanced funds to Octea under the provisions of a loan combination agreement dated 31 July 2012. As at the date of this report, the balance owed by Octea to the Company is US$142,460,679.

Between January 2013 and September 2013, the Company paid expenses on behalf of Octea to the value of US$105,347.87 that remain outstanding.

Between January 2014 and February 2018, the Company paid expenses on behalf of Octea Diamonds Limited, a wholly owned subsidiary of Octea, to the value of US$1,436,081.89 that remain outstanding.

The repayment of the balances will be dependent on the financial success of the underlying diamond operations described above.

### 5.2    West African Power Limited

The Company holds a direct subsidiary company, West African Power Limited ("WAPL"), which ultimately holds, through a group of subsidiary undertakings, a minority investment in a power station located in Geregu, Nigeria.  WAPL has been in dispute for several years on a number of issues with its investee company and with the majority shareholder in the power station, which exercises *de facto* control over it and who, it is alleged, has denied WAPL its rights to participate in its management.

The Joint Administrators met with representatives of the majority shareholder and of the Company's management in November 2018 with a view to facilitating a resolution of the dispute.  It was agreed at that meeting that the shareholders would provide the Joint Administrators with the documentation to enable them to obtain a detailed understanding of the issues so that they could assist in resolving the dispute.  Some information was provided, but by no means all the required information, and the Joint Administrators remain in correspondence with the majority shareholder on this matter.

Between January 2017 and February 2018, the Company paid expenses on behalf of WAPL to the value of US$116,064.50. It is not clear to the Joint Administrators whether this balance will be recovered in full.

### 5.3    Roslindale PTE Ltd ("Roslindale")

The Company holds 64,826,482 redeemable preference shares in Roslindale.  The shares were issued at US$1 per share and carry the right to a preferential dividend which is payable as and when determined by Roslindale's board of directors.

The Company's management recognised an impairment to the value of these shares during 2016 to US$1,000 in aggregate, as a result of significant uncertainty over future cash flows attributable to this asset.

The Joint Administrators understand that the underlying asset of Roslindale is an undeveloped oil and gas field located in the Middle East.  The Joint Administrators further understand that no dividend has been received from this investment to date.

The Joint Administrators will continue to investigate whether this asset has any value to the Company and its creditors.

**5.4**    **Bank Account**

The Company holds a bank account with Banque J Safra Sarasin in Switzerland.  At the date of appointment there was US$17,947 equivalent in this account, which is presently US$14,489 equivalent.  The movement in this balance is attributable to bank charges and exchange differences (the underlying deposit is held in Swiss Francs).

**5.5**    **Debtors**

**BSG Capital Markets Limited ("Capital Markets"')**

Capital Markets is indebted to the Company for US$1.8m, which sum fell due for payment on 31 December 2018.  The Joint Administrators demanded payment of this amount, but settlement has not been forthcoming due to inadequate liquidity in Capital Markets.  The Joint Administrators are currently in discussions with the debtor regarding repayment and are expecting to receive formal repayment proposals.

**BSG Real Estate Limited ("Real Estates")**

The sum of US$32,823 is due to the Company in respect of rent receivable from Real Estates, which occupies part of the Company's offices in Guernsey.  The Joint Administrators have demanded payment of this debt and are in discussions with Real Estates in relation to the settlement of the debt and the ongoing tenancy arrangements.

**Former Employee**

A former employee of two of the Company's subsidiaries was arrested in Israel in 2016.  The Company loaned him US$290,000 equivalent, which was lodged as a bail bond.  The bond was subsequently released, but was not paid to the Company.  The Joint Administrators are investigating this matter in order to identify to whom the funds were released and to ascertain the prospects of recovery of this amount.

**5.6**    **Investigation of Assets**

The Joint Administrators have a duty to identify any potential assets of the Company other than those identified above.  If you are aware of any asset or potential asset that is not included above, please provide relevant information to the Joint Administrators.

**6**    **Creditors**

**6.1**    **Secured Creditors**

**Standard Chartered Bank ("SCB")**

SCB is the historic lender to the Company and certain of its subsidiary undertakings and claims to have security over all proceeds flowing into the Company to the extent of the full amount of the debt owing to it.

The outstanding debt due to SCB prior to the appointment of the Joint Administrators was US$16m, allegedly rising to some US$75m (now in excess of US$81m including interest) as a result of the Company entering Administration.  The Joint Administrators (on behalf of the Company) and SCB respectively have currently reserved all their rights in respect of the SCB position while they consider the legal position more fully.

**Star West Investments Limited ("Star West")**

Star West holds a charge over the shares of Octea as security for its loan of $151m to that company in respect of the Company's guarantees of Octea's obligations to Star West.  These guarantees have not been called upon and at present there is no debt due to Star West by the Company.

**6.2     Unsecured Creditors**

The estimated unsecured creditors of the Company amount to US$7,491,893.  These comprise inter-company or associated company creditors, general trade and expense creditors, the Guernsey Social Security Office and the Guernsey Income Tax Office.

**6.3     Contingent Creditors**

In addition to the creditors set out above there are two contingent creditors; Star West (in respect of the guarantee noted above) and Vale (in respect of its arbitration claim against the Company, noted above).  The certainty, quantum and timing of these liabilities is currently unknown.

**7        Receipts and Payments Account**

Enclosed, for your information, is a summary of the receipts and payments account for the Administration to date (showing a nil balance in hand). I comment as follows:

**7.1     Realisations**

There have been no realisations in the Administration to date.

**7.2     Funding**

The Company has no liquid assets with which to fund the costs of the Administration.

A formal funding agreement between Nysco Management Corp. (the Company's immediate parent company) ("Nysco") and the Company was entered into on 18 December 2018 (the 'Funding Agreement').  The Funding Agreement sets out the terms on which Nysco has agreed to provide funding by way of loan facilities for certain aspects of the Administration.  A summary account of the sums loaned to the Company is set out as Appendix 1.

7.3    **Trading**

The Company acted as an adviser and administration function for a number of its subsidiaries and has continued to do so to a limited extent.

Operational costs have been incurred, principally in respect of salaries and legal and professional fees.

Under the terms of a management agreement, a management fee may be payable to the Company from its direct subsidiary, Octea.  The payment of this management fee is presently subject to uncertainty in terms of the quantum and timing of its receipt by the Company.

8    **Joint Administrators' Remuneration**

Following an application in September 2018 the Court approved the Joint Administrators' fee estimate for the first 12 months of the Administration in the amount of £901,239. This was an increase on the previously approved amount of £577,741.  The increase in estimated fees was a result of unanticipated costs incurred in relation to the litigation matters referred to above.  At the time of the increase to the fee budget, it was agreed that a discount of £75,856 would be applied to the time costs incurred to that date.

The tables at Appendix 2 summarise the Joint Administrators' time costs incurred from appointment and for the period of this report up to the date of preparation.

On 21 February 2019 the Joint Administrators made a request in accordance with the terms of the Funding Agreement for an amount of £194,034 to be paid to the Company in respect of fees and cost incurred.  The amount requested includes £150,361 for payment of the Joint Administrators' fees.  The balance of the request was to settle legal fees and disbursements and a sum of £25,000 to be an accrual and in anticipation of legal fees arising in relation to the current settlement negotiations with Guinea.  Under the terms of the Funding Agreement the amount requested will be paid on or before 11 March 2019.

At the time of preparing this report, the Joint Administrators' fees have exceeded the budgeted amount by £181,322 of which £138,399 has been incurred since the beginning of February 2019 in respect of dealing with the Guinea/ICSID matter detailed above.  A further Court approval will shortly be sought.

9    **Disbursements**

Direct disbursements are recovered in respect of precise sums paid to third parties during the Administration.  In the period covered by this report, disbursements of £2,579 (summarised in the loan account as "General Disbursements") have been incurred in respect of direct disbursements.  These are detailed in the table below.

| Disbursement | Amount £ |
|---|---|
| Travel (Air) | 2,201 |
| Travel (Taxi/Tube) & Subsistence | 54 |
| Administrators' Insolvency Bond | 324 |
| | 2,579 |

Indirect disbursements for costs such as printing, photocopying and telephone calls that cannot be specifically allocated to the Administration have not been incurred or drawn by the Joint Administrators.

**10    Future of the Administration**

As mentioned above, the purpose of the Administration is the survival of the Company as a going concern.

The two contingent assets in this Administration are the ICSID arbitration against the Republic of Guinea and the US litigation against George Soros.  The status of these two matters has been set out above to the fullest extent possible.  The outcome of these matters will determine the future strategy of the Administration and whether or not it will be possible for the Joint Administrators to achieve the purpose of the Administration.

If you require any further information, please contact me or my colleague Christopher Sandall on 0207 893 3792 or email him on *christopher.sandall@bdo.co.uk* and *BSGR@bdo.co.uk*.

Yours faithfully
For and on behalf of
BSG Resources Limited

William Callewaert
Joint Administrator

**Appendix 1**
**Joint Administrators' Summary Receipts and Payments Account**

|  | Notes | 6 September 2018 to 2 March 2019 | From appointment to 2 March 2019 |
|---|---|---|---|
| **ADMINISTRATION ACCOUNT** | | | |
| | | | |
| **Receipts** | | | |
| None | | nil | nil |
| | | nil | nil |
| | | | |
| **Payments** | | | |
| None | | nil | |
| | | nil | nil |
| | | | |
| **Balance held by Joint Administrators** | | **nil** | **nil** |
| | | | |
| **NYSCO POST-APPOINTMENT LOAN ACCOUNT** | | | |
| **As at 2 March 2019** | | | |
| | | | |
| **Operating Costs** | | | |
| Staff costs including tax & social security contributions | 1 | ( 124,046) | ( 216,442) |
| Legal and professional fees and costs | 2 | ( 103,843) | ( 126,098) |
| General office costs | 3 | ( 15,160) | ( 15,529) |
| Insurance: D&O cover | 4 | ( 98,760) | ( 98,760) |
| | | ( 341,809) | ( 456,829) |
| **Legal Fees and Associated Costs** | | | |
| Legal fees and disbursements | 5 | ( 972,391) | ( 1,900,112) |
| IT services | 6 | ( 9,692) | ( 74,535) |
| | | ( 982,083) | ( 1,974,647) |
| **Joint Administrators' Fees & Disbursements** | | | |
| Joint Administrators' pre-appointment fees | 7 | nil | ( 64,500) |
| Joint Administrators' post-appointment fees | 7 | ( 451,228) | ( 748,008) |
| Joint Administrators' general disbursements | 8 | ( 479) | ( 3,654) |
| | | ( 451,707) | ( 816,162) |
| **Total loaned to BSG Resources Limited (In Administration)** | | **( 1,775,598)** | **( 3,247,637)** |

**NOTES**

1. The Company retains two members of staff who provide administrative and operational functions.

2. Legal and professional fees incurred in respect of operational matters.

3. Office costs included utility costs, office supplies, insurance (excluding D&O cover)

4. Director and Officer insurance indemnity cover has been obtained in respect of the retained employees.

5. Legal fees and costs incurred in relation to matters arising in the Administration. This includes £258,363 in respect of the ICSID arbitration tribunal fees.

6. IT services includes the provision of cloud-based storage for data and digital documents relating to various legal proceedings.

7. The Joint Administrators' pre- and post-appointment fees have been approved by the Royal Court of Guernsey. A request for fees of £150,361 has been made to Nysco but is unpaid.

8. Disbursements incurred are detailed in the body of the report.

Appendix 2
BSG Resources Limited (In Administration)
Summary of Joint Administrators' Time Costs

**For the Period 6 March 2018 to 2 March 2019**

| Grade | Partner | | Principal/Director | | Senior Manager/Manager | | Executive | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|
| Average Rate | £699 per hour | | £448 per hour | | £367 per hour | | £203 per hour | | £439 per hour | |
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Appointment Matters | 21.50 | 14,942.50 | 49.10 | 22,839.12 | 10.85 | 4,029.80 | - | - | 81.45 | 41,811 |
| Day One Matters | 6.50 | 4,526.41 | 33.90 | 12,987.00 | 45.50 | 16,212.23 | 0.30 | 33.48 | 86.20 | 33,759 |
| Litigation Matters | 295.20 | 209,108.19 | 353.25 | 167,817.51 | 165.95 | 64,860.75 | 22.00 | 7,623.00 | 836.40 | 449,409 |
| Trading Matters | 57.55 | 36,477.37 | 238.90 | 91,112.58 | 176.25 | 53,884.80 | 4.80 | 370.31 | 477.50 | 181,845 |
| Tax | 6.35 | 4,439.98 | 18.91 | 11,462.18 | 1.00 | 302.40 | 3.65 | 646.20 | 29.91 | 16,851 |
| Statutory Compliance | 1.75 | 1,277.33 | 70.20 | 26,787.60 | 36.75 | 12,064.50 | - | - | 108.70 | 40,129 |
| General Administration | 47.65 | 33,575.77 | 113.00 | 52,210.53 | 158.20 | 62,587.98 | 1.20 | 101.30 | 320.05 | 148,476 |
| Other Matters | 99.35 | 70,021.07 | 207.90 | 100,718.82 | 180.40 | 70,352.91 | 36.00 | 5,043.60 | 523.65 | 246,136 |
| Agreed Discount | | | | | | | | | | (75,856) |
| | 535.85 | 374,369 | 1,085.16 | 485,935 | 774.90 | 284,295 | 67.95 | 13,818 | 2,463.86 | 1,082,561 |

**For the Period 6 September 2018 to 2 March 2019**

| Grade | Partner | | Principal/Director | | Senior Manager/Manager | | Executive | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|
| Average Rate | £692 per hour | | £471 per hour | | £329 per hour | | £138 per hour | | £399 per hour | |
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Appointment Matters | | | | | | | | | | |
| Day One Matters | | | | | | | | | | |
| Litigation Matters | 127.60 | 90,701.72 | 141.65 | 69,016.05 | 44.75 | 14,694.98 | - | - | 314.00 | 174,412.74 |
| Trading Matters | 49.75 | 30,914.47 | 94.40 | 40,036.50 | 95.45 | 28,864.08 | 1.55 | 138.56 | 241.15 | 99,953.60 |
| Tax | 1.50 | 1,069.23 | 12.71 | 7,590.47 | 1.00 | 302.40 | 2.85 | 513.00 | 18.06 | 9,475.10 |
| Statutory Compliance | 1.75 | 1,277.33 | 23.80 | 10,579.14 | 32.00 | 9,982.58 | - | - | 57.55 | 21,839.04 |
| General Administration | 9.50 | 6,712.73 | 59.40 | 27,288.27 | 48.45 | 17,946.86 | 0.70 | 53.01 | 118.05 | 52,000.87 |
| Other Matters | 35.15 | 25,160.68 | 99.50 | 48,510.00 | 56.70 | 19,676.16 | - | - | 191.35 | 93,346.84 |
| Agreed Discount | | | | | | | | | | (75,856) |
| | 225.25 | 155,836 | 431.46 | 203,020 | 278.35 | 91,467 | 5.10 | 705 | 940.16 | 375,172 |



Tel: +44 1481 724561
Fax: +44 1481 711657
mail@bdo.gg
www.bdo.gg

PO Box 180
Place du Pré
Rue de Pré
St Peter Port
Guernsey
GY1 3LL

5 September 2019

TO ALL KNOWN AND CONTINGENT CREDITORS

Dear Sirs

**BSG Resources Limited (the 'Company') - In Administration**

In accordance with the Order of the Royal Court of Guernsey ('the Administration Order') handed down on 6 March 2018, I am reporting the progress made in the administration of the Company (the 'Administration') for the period from 6 March 2019 to 5 September 2019, that being the third six month period of the Administration.

1    **Statutory Information**

William Callewaert and Malcolm Cohen of BDO Limited and BDO LLP, respectively, were appointed Joint Administrators (the 'Joint Administrators') of the Company by the Royal Court of Guernsey ('the Royal Court') on an application made by the Company. The appointment was made by way of an order of the Royal Court dated 6 March 2018 (the 'Administration Order')

The Company's registered office address is West Wing, Frances House, Sir William Place, St Peter Port, Guernsey, GY1 1GX and the Company's registered number is 46565.

2    **Background to the Administration**

Full details of the background to the appointment of the Joint Administrators were provided in their first report dated 5 September 2018.

In summary, the directors took the decision to place the Company into Administration with a view to realising its two major contingent assets, the ICSID arbitration against the Government of the Republic of Guinea and the claim against George Soros and other related parties in the United States, for the purpose of the survival of the Company, and the whole or any part of its undertaking, as a going concern.

BDO Limited      Registered in Guernsey number 29684
Directors         J M Hallett FCA  S M Phillips FCA CPA  R M Searle FCA C.Dir  A M Trebert FCCA

BDO Limited is registered to carry out audit work in the UK by The Institute of Chartered Accountants in England and Wales.

BDO Limited, a limited liability company incorporated in Guernsey, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

**3     Approach to the Administration**

As we stated in our first report, the Joint Administrators' role is to fulfil the purpose of the Administration Order as detailed above.  In order to achieve this, the Joint Administrators have been working with and gathering information from the Company's directors and working with many of its historic advisors who possess information which is relevant to the conduct of the Administration with the aim of fulfilling the purpose of the Administration Order.

The affairs of the Company, particularly the litigation matters, are varied, complex and largely interrelated and the Joint Administrators and their team have spent a considerable amount of time liaising with the Company's management, advisors and the lawyers instructed on each individual matter to progress those matters with the overall aim of fulfilling the purpose of the Administration Order.

As advised in our previous reports, the Joint Administrators have retained the Company's premises in Guernsey and its existing employees in order to maintain the historic knowledge and cooperation of these key individuals and to ensure the best prospects of a successful outcome for the Administration.

**4     Litigation Matters**

An overview of each of the major litigation matters are set out below.

**4.1   Claim against the Republic of Guinea**

The Company is a claimant in an arbitration proceeding against the Government of the Republic of Guinea ('Government of Guinea'), conducted through the International Centre for Settlement of Investment Disputes ('ICSID').  In summary, the claim relates to iron ore exploration and mining rights in the Simandou and Zogota regions, previously awarded to the Company by Guinea, which, it is alleged, were illegally expropriated by the Government of Guinea in 2014.  The Company's claim sought the restoration of those rights, together with damages.

In March 2019, a non-binding settlement term sheet was signed by the Joint Administrators (on behalf of the Company), as well as by representatives of two of the Company's subsidiaries (each of which is a co-claimant to the ICSID arbitration) and the Government of Guinea.  The settlement term sheet sets out a provisional structure for the potential consensual settlement of the ICSID arbitration, but does not impose binding obligations on any of the parties to it.  Following the signing of the settlement term sheet, the parties to the ICSID arbitration asked the tribunal to suspend work on producing its ruling, pending the finalisation of a binding settlement.  This suspension of the arbitration remains in force but can be brought to an end by any party if negotiations regarding a binding settlement break down at any time.

The non-binding settlement envisages that if binding arrangements for a settlement are agreed all of the Company's claims to the Simandou and Zogota exploration and mining licenses shall be released in return for the Government of Guinea granting a new mining

license over the Zogota deposits, to be exploited by a third party, Niron Metals plc ('Niron'), with the Company being entitled to participate in the revenues from this license.

Before they will be in a position to commit to any binding settlement, the Joint Administrators intend to carry out extensive due diligence into the adequacy of the consideration being offered under the settlement, compared to the amount that could be realised from pursuing the ICSID arbitration to successful judgement. This process is now well underway and has involved a site visit by an appropriate member of the Joint Administrators' team, as well as a review of Niron's plans, projections and feasibility studies. The Joint Administrators expect that they could need several more months before this work is completed and they are in a position to conclude on the acceptability of this deal or an alternative deal with similar or better economic effect for the Company.

The Joint Administrators are aware that inaccurate reports have appeared in the press to the effect that the proposed settlement has been finalised and is binding on the parties to it. The Joint Administrators wish to make it clear that these reports are incorrect and inaccurate. The Joint Administrators continue to monitor reports made in the press about the settlement term sheet and the Company generally and will consider whether any steps should be taken in respect of any such reports.

There is still a significant amount of work to be done before the Joint Administrators will be in a position to determine whether a binding settlement is in the best interests of the Company. If the Joint Administrators do agree to a binding settlement deal, the Joint Administrators intend to seek the sanction of the Royal Court prior to entering in to it.

### 4.2  Claim by Vale S.A.

As advised in our previous reports, the Company was the respondent to an arbitration proceeding, conducted through the London Court of International Arbitration ('LCIA'), and brought against it by Vale S.A. ('Vale'). The proceeding related to alleged fraudulent misrepresentation by the Company in respect of a joint venture between Vale and the Company relating to the obtaining of mining licences by the Company in Guinea. Vale was seeking to recover its investment in the shares of the joint venture company (US$500m) and infrastructure investment (US$750m). Its claims were based on alleged fraudulent misrepresentations on the part of the Company which led to Vale making its investment. The Company denied these allegations.

On 4 April 2019, the LCIA tribunal made an award (the 'LCIA Award') in favour of Vale and against the Company for US$1,246,580,846 plus pre- and post-award interest, bringing the total to approximately US$2 billion.

On 9 May 2019, Vale obtained an order from the High Court of Justice in England (the 'High Court') to enforce the LCIA Award in England and Wales. That enforcement order is currently stayed pending determination of the Company's application to set aside the enforcement order should the challenge of the LCIA award (as described below) succeed.

On 10 May 2019, following consultation with and advice received from legal counsel the Joint Administrators, on behalf of the Company, filed a challenge in the High Court under sections 68 and 24 of the Arbitration Act 1996. The application challenges the LCIA's decision and award, principally on the basis of apparent bias on the part of the LCIA tribunal



and the Tribunal's breach of its general duty under section 33 of the Arbitration Act 1996. The hearing of certain preliminary issues on the challenge application has been set for 4 September 2019; the hearing of the substantive challenge has been set for 27 and 28 November 2019.

In addition to seeking to enforce the LCIA Award in the UK, Vale is seeking to enforce the LCIA Award in the US District Court for the Southern District of New York ('the District Court'). If successful, Vale could secure control of the Company's claim against George Soros and his Open Society Foundation (the 'Soros Proceedings') and any subsequent award arising from those proceedings. The Company is contesting the enforcement proceedings in the District Court.

### 4.3 Filing for mutual recognition under Chapter 15 of the Bankruptcy Code

As well as resisting the enforcement action by Vale in the District Court, the Joint Administrators have made an application to the US Bankruptcy Court for the Southern District of New York (the 'Bankruptcy Court') for recognition of the Administration under Chapter 15 of Title 11 of the United States Bankruptcy Code ('Chapter 15'). Chapter 15 recognition, if granted upon the terms requested by the Joint Administrators, will enable the Joint Administrators to obtain a stay of any action to execute against or attach to the Company's assets in the US. Such relief will allow the Joint Administrators to retain control of the Soros Proceedings and any subsequent award arising therefrom and with a view to an eventual distribution of any realisations received by the Company in respect of the Soros Proceedings to the Company's creditors in accordance with the order of priorities provided for under Guernsey law.

The Chapter 15 application is being vigorously contested by Vale and the Joint Administrators are currently in the process of responding to a wide-ranging discovery request from Vale. No date has yet been set for the Chapter 15 Recognition Hearing, but the Joint Administrators wish to proceed as expeditiously as possible.

### 4.4 Claim against George Soros

We previously reported that in 2017, prior to the Joint Administrators' appointment, the Company had filed a complaint against George Soros and related parties in the District Court. The complaint asserts various claims against George Soros, his Open Society Foundations and related entities arising out of or related to their alleged actions to intentionally deprive the Company of its iron ore mining interests in the Simandou region of Guinea. The complaint seeks US$10 billion in damages.

The defendants filed a motion to dismiss and in November 2017, the District Court granted the defendants' request for a stay of the litigation pending resolution of the ICSID Arbitration described above, without otherwise ruling on the merits of a motion to dismiss. The litigation remains stayed until the next hearing, which has been scheduled for 10 December 2019.

### 4.5 Cunico Litigation

The Company is directly involved as a party to four separate litigation proceedings.

As reported previously, the Company is a respondent to proceeding brought in the District Court of Amsterdam, Netherlands by, amongst others, a Dutch registered company, Cunico Resources NV ('Cunico').  The claim is part of a wider dispute  between (amongst others) the shareholders of Cunico and their parent companies/beneficiaries and involves numerous parties, including but not limited to entities and persons directly or indirectly related to the Company.  The Company (and the co-defendants) are contesting the jurisdiction of the District Court of Amsterdam.  A hearing has been scheduled for pleadings on that specific issue is scheduled for 14 November 2019.  The Joint Administrators are engaging with Dutch lawyers in preparing for the hearing including consideration of additional evidence to be adduced and preparing pleadings.  To the extent it is deemed necessary, the Joint Administartors will attend the hearing.

Also, the Company is a co-claimant in appeal proceedings against Cunico (amongst others) in the Court of Appeal in Amsterdam.  These proceedings are on the long-term docket list.  The Joint Administrators have undertaken research, using their own specialist investigator, into the underlying assets in order to ascertain, as far as they are able, Cunico's underlying asset base to assess the likelihood of making recoveries if the Company is successful in its appeal in respect of the Cunico litigation.  Any continuation of the appeal would be subject to obtaining litigation funding.  Dutch attorneys have provided advice as to the likelihood of success of an appeal.  The Joint Administrators are currently considering this advice, together with the likelihood of any assets of value being available, in order to assess the likelihood of obtaining litigation funding, the prospects of success and the prospects of any subsequent recovery.

The Company provided advisory services to Cunico Marketing FZE ('CMFZE') under an advisory services agreement.  It was mutually terminated and, at the date of termination, CMFZE owed the Company US$8,073,386.  The Dubai Courts made judgement in favour of BSGR for the outstanding balance in June 2017 which was appealed.  In May 2019 the court rejected the appeal and Dubai lawyers have subsequently registered an online request to file an execution case.

The Company is also a co-defendant in an action being brought in the Supreme Court of the Bahamas.  At the present time the claimant has only files an endorsed Writ of Summons.  In order to pursue the claim the claimant is required to file a Statement of Claim.  This has not been done and the Joint Administrators continue to monitor the situation.

In respect of the other litigation in which the Company is indirectly involved, these proceedings have been stayed, are subject to extensions, put on hold or discussions are taking place between the parties.  Settlement discussions with the other parties are being undertaken as appropriate with the objective of maximising the return, if any, to the Company.

The Joint Administrators will continue to monitor all aspects of the Cunico Litigation, whether the Company has a direct or indirect interest, in order to maximise the return (or minimise the loss), if any, to the Company.

**5    Assets**

In addition to the potential litigation recoveries mentioned above, the other main assets of the Company are as follows:

**5.1  Octea Limited and Subsidiaries**

As previously advised, the Company holds a direct subsidiary company, Octea Limited ('Octea'), that acts as the holding company for a group of companies engaged in diamond mining, extraction and refinement based in Sierra Leone, as well as the marketing and sale of diamonds.

The Joint Administrators have carried out a detailed review of Octea's mining and sales operations, including a site visit to the mine by a BDO industry specialist.  They continue to monitor Octea's performance on a monthly basis with its management and have observer status on its board.  Whilst operations at the mine have been proceeding satisfactorily, there has been a significant requirement for investment in capital expenditure which, coupled with a recent fall in the price of rough diamonds, has meant that Octea is not yet significantly cash positive.

The Company had previously advanced funds to Octea under the provisions of a loan combination agreement dated 31 July 2012.  As at the date of this report, the balance owed by Octea to the Company is US$142.5 million plus other amounts advanced to Octea totalling US$1.5 million.

The Joint Administrators are currently considering proposals for the possible monetisation of other mining rights in Sierra Leone, owned by a subsidiary of Octea, which have not yet been exploited.

The repayment of the balances will be dependent on the financial success of the underlying diamond operations described above.

**5.2  West African Power Limited**

As previously reported, the Company holds a direct subsidiary company, West African Power Limited ('WAPL'), which ultimately holds, through a group of subsidiary undertakings, a minority investment in a power station located in Geregu, Nigeria.  WAPL has been in dispute for several years on a number of issues with its investee company and with the majority shareholder in the power station, which exercises *de facto* control over it and who, it is alleged, has denied WAPL its rights to participate in its management.

Following a meeting with representatives of the majority shareholder and of the Company's management in November 2018, it was hoped that a consensual resolution of the dispute could be achieved.  Unfortunately this has proved not to be the case.

The Joint Administrators continue to keep this investment under review, but WAPL has not so far considered it appropriate to bring legal proceedings to enforce its rights.

**5.3  Roslindale PTE Ltd**

The Company holds 64,826,482 redeemable preference shares in Roslindale PTE Ltd ('Roslindale') .  The shares were issued at US$1 per share and carry the right to a preferential dividend which is payable as and when determined by Roslindale's board of directors.

The Company's management recognised an impairment to the value of these shares during 2016 to US$1,000 in aggregate, as a result of significant uncertainty over future cash flows attributable to this asset.

The Joint Administrators understand that the underlying asset of Roslindale is an undeveloped oil and gas field located in the Middle East.  The Joint Administrators further understand that no dividend has been received from this investment to date.

The Joint Administrators continue to monitor the investment in Roslindale, but are not yet in a position to determine whether this asset has any realisable value to the Company.

**5.4  Bank Account**

The Company holds a bank account with Banque J Safra Sarasin in Switzerland.  At the date of appointment there was US$17,947 equivalent in this account, which is presently US$12,926 equivalent.  The movement in this balance is attributable to bank charges and exchange differences (the underlying deposit is held in Swiss Francs).

**5.5  Debtors**

**BSG Capital Markets Limited ('Capital Markets')**
As previously reported, Capital Markets is indebted to the Company for US$1.8m, which sum fell due for payment on 31 December 2018.  The Joint Administrators demanded payment of this amount, but settlement has not been forthcoming due to inadequate liquidity in Capital Markets.  The Joint Administrators are currently in discussions with the debtor regarding repayment and have recently received a formal proposal to repay the amount outstanding. The proposal is currently being reviewed and considered.

**BSG Real Estate Limited ('Real Estate')**
The sum of US$32,823 is due to the Company in respect of rent receivable from Real Estate, which occupied part of the Company's offices in Guernsey.  The Joint Administrators have demanded payment of this debt and are in discussions with Real Estate in relation to the settlement of the debt and the ongoing tenancy arrangements.

**Former Employee**
A former employee of two of the Company's subsidiaries was arrested in Israel in 2016.  The Company privided US$290,000 equivalent, to be lodged as a bail bond.  The bond was subsequently released, but was remitted to the employee rather than being repaid to the Company.

The former employee has refused to repay the monies to the Company and the Joint Administrators  are in the process of engaging an Israeli law firm to recover the amount due.

**BDO**

### 5.6 Investigation of Assets

The Joint Administrators have a duty to identify any potential assets of the Company other than those mentioned above and continue to review the Company's records and investigate any potential claims that the Company may have against third parties. The Joint Administrators are also mindful of, and continue to monitor developments concerning, potential additional claims which may be made for the benefit of the Company and its creditors. To the extent that the Joint Administrators take steps to pursue any such claims we will report to and update creditors accordingly.

If you are aware of any asset or potential asset that is not included above, please provide relevant information to the Joint Administrators.

## 6    Creditors

### 6.1 Secured Creditors

**Standard Chartered PLC ('SCB')**
SCB is the historic lender to the Company and certain of its subsidiary undertakings and claims to have security over all proceeds flowing into the Company to the extent of the full amount of the debt owing to it.

The outstanding debt due to SCB prior to the appointment of the Joint Administrators was US$16m, allegedly rising to some US$75m (now in excess of US$81m including interest) as a result of the Company entering administration. The Joint Administrators (on behalf of the Company) and SCB respectively have currently reserved all their rights in respect of the SCB position while they consider the legal position more fully.

The Joint Administrators have maintained a constructive dialogue with SCB concerning the realisation of assets and the Chapter 15 process. They remain hopeful that a consensual resolution of the quantum of its claim may be possible.

**Star West Investments Limited ('Star West')**
Star West holds a charge over the shares of Octea as security for its loan of $151m to that company in respect of the Company's guarantees of Octea's obligations to Star West. These guarantees have not been called upon and at present there is no debt due to Star West by the Company.

**Unsecured Creditors**
At the date of our last report to creditors, estimated unsecured creditors of the Company amounted to US$7,491,893. These were comprised of inter-company or associated company creditors, general trade and expense creditors, the Guernsey Social Security Office and the Guernsey Income Tax Office.

Since that report the value of the Company's creditors has increased by some US$2 billion as a result of the award handed down by the LCIA tribunal on 4 April 2019 in favour of Vale and against the Company, although as reported above, the LCIA award is currently the subject of a challenge in the High Court.



**7    Receipts and Payments Account**

Enclosed, for your information, is a summary of the receipts and payments account for the Administration to date.  I comment as follows:

**7.1    Realisations**

There have been no realisations in the Administration to date.

**7.2    Funding**

The Company has no liquid assets with which to fund the costs of the Administration.

As previously reported, a formal funding agreement between Nysco Management Corp. (the Company's immediate parent company) ('Nysco') and the Company was entered into on 18 December 2018 (the 'Funding Agreement').  The Funding Agreement sets out the terms on which Nysco has agreed to provide funding by way of loan facilities for certain aspects of the Administration.

In the period covered by this report £1,385,885.16 has been received from Nysco in respect of the Joint Administrators' fees, disbursements and legal costs incurred.

The funds received have been used to settle the fees and costs incurred.

A sum of £100,000 is held by the Joint Administrators as a buffer amount which may be utilised to settle any unexpected costs that arise.

A summary of the total amount loaned to the Company as at 31 August 2019 is set out as Appendix 1.

**7.3    Trading**

The Company acted as an adviser and administration function for a number of its subsidiaries and has continued to do so to a limited extent.

Operational costs have been incurred, principally in respect of salaries and legal and professional fees.

Under the terms of a management agreement, a management fee may be payable to the Company from its direct subsidiary, Octea.  The payment of this management fee is presently subject to uncertainty in terms of the quantum and timing of its receipt by the Company.

**8    Joint Administrators' Remuneration**

Following the first anniversary of the Joint Administrators' appointment, in accordance with the Funding Agreement, the Joint Administrators prepared a budget setting out their expected fees that would be incurred in the year to 5 March 2020.  The fee budget was agreed at £1,129,857 which represents an estimated 2,195 hours of work.  This budget has been approved by the Royal Court.



The tables at Appendix 2 summarise the Joint Administrators' time costs incurred in the period of this report and from appointment up to the date of preparation.

As at 31 August 2019 time costs totalling £882,694 have been incurred by the Joint Administrators since 6 March 2019.  This amount is ahead of the budgeted forecast due to a considerable amount of additional time spent in dealing with the US proceedings and the Guinea negotiations.  It may be necessary for the Joint Administrators to agree an increase in the budget to account for the additional costs incurred.

In the period of this report Nysco advanced £531,281 to the Administration account in respect of the Joint Administrators' fees.  The balance of fees advanced by Nysco (£502,408) were paid directly into BDO LLP's fees account.  A request for an advance for fees totalling £172,132 for the month of August 2019 will be made to Nysco.

9    **Disbursements**

Direct disbursements are recovered in respect of precise sums paid to third parties during the Administration.  In the period covered by this report, disbursements of £15,545 (summarised in the loan account as 'Joint Administrators' Disbursements') have been incurred in respect of direct disbursements.  These are detailed in the table below.

| Disbursement | Amount £ |
|---|---|
| Travel (Air) | 3,215.98 |
| Travel (Taxi/Tube) & Subsistence | 863.33 |
| Bank Fees | 94.00 |
| Public Relations Advice | 11,050.00 |
| Sundry Expenditure | 29.30 |
| IT Equipment | 292.50 |
| | 15,545.11 |

Indirect disbursements for costs such as printing, photocopying and telephone calls that cannot be specifically allocated to the Administration have not been incurred or drawn by the Joint Administrators.

The Joint Administrators received £14,175 into the Administration account in settlement of the disbursements.  The balance of £1,370 was paid by Nysco directly to BDO LLP.

10    **Future of the Administration**

As mentioned above, the purpose of the Administration is the survival of the Company and the whole or any part of its undertaking as a going concern.

The two major contingent assets in this Administration are the ICSID arbitration against the Republic of Guinea and the US litigation against George Soros.  The status of these two matters has been set out above and the outcomes will determine the future strategy of the Administration and whether or not it will be possible for the Joint Administrators to achieve the purpose of the Administration.  The Joint Administrators have taken legal advice as to the applicable legal requirements in this regard and will continue to do so.

If you require any further information, please contact the Joint Administrators at
William.Callewaert@bdo.gg.

Yours faithfully
For and on behalf of
BSG Resources Limited

William Callewaert
Joint Administrator



**Appendix 1**
**Joint Administrators' Summary Receipts and Payments Account**

| | | 6 March 2019 to 31 August 2019 £ | 6 March 2018 to 31 August 2019 £ |
|---|---|---|---|
| **ADMINISTRATION ACCOUNT** | | | |
| **Receipts** | | | |
| Funds from Nysco Management Corp | 1 | 787,733 | 787,733 |
| Buffer Amount | | 100,000 | 100,000 |
| Interest received | | 153 | 153 |
| | | 887,886 | 887,886 |
| **Payments** | | | |
| Joint Administrators' fees | 2 | ( 531,281) | ( 531,281) |
| Joint Administrators' disbursements | 3 | ( 14,175) | ( 14,175) |
| Legal fees and disdisbursements | 4 | ( 242,277) | ( 242,277) |
| Bank charges | | ( 114) | ( 114) |
| | | ( 787,847) | ( 787,847) |
| **Balance Held By Joint Administrators** | | 100,039 | 100,039 |
| | | | |
| **NYSCO LOAN ACCOUNT** | | | |
| **Operating Costs** | | | |
| Staff costs including tax & social security contributions | 5 | ( 91,826) | ( 308,268) |
| Legal and professional fees | 6 | ( 12,154) | ( 145,313) |
| General office costs | 7 | ( 24,801) | ( 51,321) |
| Insurance (D&O cover) | 8 | | ( 98,760) |
| | | ( 128,781) | ( 603,663) |
| **Legal Fees and Associated Costs** | | | |
| Legal Fees and costs | 4 | ( 746,423) | ( 2,478,475) |
| IT Services | 9 | ( 20,214) | ( 98,118) |
| | | ( 766,637) | ( 2,576,593) |
| **Joint Administrators' Fees and Disbursements** | | | |
| Joint Administrators' pre-appointment fees | 2 | nil | ( 64,500) |
| Joint Administrators' post-appointment fees | 2 | ( 1,033,689) | ( 1,781,697) |
| Joint Administrators' disbursments | 3 | ( 15,545) | ( 19,198) |
| | | ( 1,049,234) | ( 1,865,395) |
| **Total Loaned To BSG Resources Limited (In Administration)** | | ( 1,944,652) | ( 5,045,650) |

## Notes

1. The Company's direct parent company, Nysco Management Corp, has agreed to fund the Joint Administrators' fees, disbursements and legal costs.
2. The Joint Administrators' fees have been approved by the Royal Court of Guernsey. Fees for August 2019 totalling £172,131.61 have not yet been received and are not included in the above account. Fee amounts reported may be subject to minor differences due to accruals and cut-off.
3. The disbursements incurred are detailed in the body of the report.
4. Legal fees and costs incurred in relation to matters arising in the Administration.
5. The Company retains two members of staff who provide administrative and operational functions.
6. Legal and professional fees incurred in respect of operational matters.
7. Office costs includes utilities, office supplies, insurance (excluding D&O cover).
8. Director and Officer insurance indemnity cover has been obtained in respect of the retained employees.
9. IT services includes the provision of cloud-based storage for data and digital documents relating to various legal proceedings.



**Appendix 2**
**BSG Resources Limited (In Administration)**
**Summary of Joint Administrators' Time Costs**

**For the period from 6 March 2019 to 31 August 2019**

| Grade | Partner | | Principal/Director | | Senior Manager/Manager | | Other | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|
| Average rate | £693 per hour | | £452 per hour | | £348 per hour | | £138 per hour | | £467 per hour | |
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Appointment Matters | - | - | - | - | - | - | - | - | - | - |
| Day One Matters | - | - | - | - | - | - | - | - | - | - |
| Litigation Matters | 327.05 | 227,274 | 456.50 | 210,438 | 211.80 | 76,979 | 17.25 | 2,440 | 1,012.60 | 517,131 |
| Trading Matters | 26.65 | 15,612 | 98.40 | 40,196 | 66.00 | 21,264 | 3.00 | 1,067 | 194.05 | 78,139 |
| Tax | - | - | 6.30 | 5,310 | - | - | - | - | 6.30 | 5,310 |
| Statutory Compliance | 1.70 | 1,206 | 30.40 | 11,222 | 33.95 | 8,540 | 41.55 | 5,858 | 107.60 | 26,827 |
| General Administration | 62.30 | 44,637 | 111.70 | 49,387 | 182.90 | 63,894 | 19.80 | 1,857 | 376.70 | 159,775 |
| Other Matters | 48.35 | 34,295 | 82.40 | 38,773 | 59.90 | 22,407 | 0.25 | 37 | 190.90 | 95,511 |
| Agreed Discount | - | - | | | | | | | | |
| | 466.05 | 323,024 | 785.70 | 355,327 | 554.55 | 193,085 | 81.85 | 11,258 | 1,888.15 | 882,692 |

**For the period from appointment to 31 August 2019**

| Grade | Partner | | Principal/Director | | Senior Manager/Manager | | Other | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|
| Average rate | £696 per hour | | £450 per hour | | £359 per hour | | £167 per hour | | £452 per hour | |
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Appointment Matters | 21.50 | 14,943 | 49.10 | 22,839 | 10.85 | 4,030 | - | - | 81.45 | 41,811 |
| Day One Matters | 6.50 | 4,526 | 33.90 | 12,987 | 45.50 | 16,212 | 0.30 | 33 | 86.20 | 33,756 |
| Litigation Matters | 622.25 | 436,382 | 809.75 | 378,256 | 377.75 | 141,840 | 39.25 | 10,063 | 1,849.00 | 966,541 |
| Trading Matters | 84.20 | 52,089 | 337.30 | 131,309 | 242.25 | 75,149 | 7.80 | 1,437 | 671.55 | 259,984 |
| Tax | 6.35 | 4,440 | 25.21 | 16,772 | 1.00 | 302 | 3.65 | 646 | 36.21 | 22,160 |
| Statutory Compliance | 3.45 | 2,483 | 100.60 | 38,010 | 70.70 | 20,605 | 41.55 | 5,858 | 216.30 | 66,956 |
| General Administration | 109.95 | 78,213 | 224.70 | 101,598 | 341.10 | 126,482 | 21.00 | 1,958 | 696.75 | 308,251 |
| Other Matters | 147.70 | 104,316 | 290.30 | 139,492 | 240.30 | 92,760 | 36.25 | 5,081 | 714.55 | 341,649 |
| Agreed Discount | - | - | | | | | | | | (75,858) |
| | 1,001.90 | 697,392 | 1,870.86 | 841,262 | 1,329.45 | 477,380 | 149.80 | 25,076 | 4,352.01 | 1,965,255 |

Tel: +44 1481 724561
Fax: +44 1481 711657
mail@bdo.gg
www.bdo.gg

Place du Pré
Rue de Pré
St Peter Port
Guernsey
GY1 3LL

5 March 2020

TO ALL KNOWN AND CONTINGENT CREDITORS

Dear Sirs

**BSG Resources Limited (the 'Company') – In Administration**

In accordance with the Order of the Royal Court of Guernsey ('the Administration Order') handed down on 6 March 2018, I am reporting the progress made in the administration of the Company (the 'Administration') for the period from 6 September 2019 to 5 March 2020 ('the Period'), that being the fourth six month period of the Administration.

1   **Statutory Information**

William Callewaert and Malcolm Cohen of BDO Limited and BDO LLP, respectively, were appointed Joint Administrators (the 'Joint Administrators') of the Company by the Royal Court of Guernsey ('the Royal Court') on an application made by the Company.  The appointment was made by way of an order of the Royal Court dated 6 March 2018 (the 'Administration Order')

The Company's registered office address is West Wing, Frances House, Sir William Place, St Peter Port, Guernsey, GY1 1GX and the Company's registered number is 46565.

2   **Background to the Administration**

Full details of the background to the appointment of the Joint Administrators were provided in their first report dated 5 September 2018.

In summary, the directors took the decision to apply to the Royal Court of Guernsey to place the Company into Administration with a view to realising its two major contingent assets, the ICSID arbitration against the Government of the Republic of Guinea and the claim against George Soros and other related parties in the United States, for the court-ordered purpose of the survival of the Company, and the whole or any part of its undertaking, as a going concern.

3   **Approach to the Administration**

As we stated in our first report, the Joint Administrators' role is to fulfil the purpose of the Administration Order as detailed above.  In order to achieve this, the Joint Administrators have been working with and gathering information from the Company's directors and

BDO Limited     Registered in Guernsey number 29684
Directors            J M Hallett FCA  S M Phillips FCA CPA  R M Searle FCA C.Dir  A M Trebert FCCA

BDO Limited is registered to carry out audit work in the UK by The Institute of Chartered Accountants in England and Wales.

BDO Limited, a limited liability company incorporated in Guernsey, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

**BDO**

working with many of its historic advisors who possess information which is relevant to the conduct of the Administration with the aim of fulfilling the purpose of the Administration Order.

The affairs of the Company, particularly the litigation matters, are varied, complex and largely interrelated and the Joint Administrators and their team have spent a considerable amount of time liaising with the Company's management, advisors and the lawyers instructed on each individual matter to progress those matters with the overall aim of fulfilling the purpose of the Administration Order.

As advised in our previous reports, the Joint Administrators have retained the Company's premises in Guernsey and its existing employees in order to maintain the historic knowledge and cooperation of these key individuals and to ensure the best prospects of a successful outcome for the Administration.

## 4    Litigation Matters

An overview of each of the major litigation matters are set out below.

### 4.1  Claim Against the Republic of Guinea

As previously reported, in March 2019, a non-binding settlement term sheet was signed by the Joint Administrators (on behalf of the Company), as well as by representatives of two of the Company's subsidiaries (each of which is a co-claimant to the ICSID arbitration) and the Government of Guinea.  The settlement term sheet sets out a provisional structure for the potential consensual settlement of the ICSID arbitration, but does not impose binding obligations on any of the parties to it.  Following the signing of the settlement term sheet, the parties to the ICSID arbitration asked the tribunal to suspend work on producing its ruling, pending the finalisation of a binding settlement.  This suspension of the arbitration remains in force but can be brought to an end by any party if negotiations regarding a binding settlement break down at any time.

The non-binding settlement envisages that, if binding arrangements for a settlement are agreed, all of the Company's claims to the Simandou and Zogota exploration and mining licenses shall be released in return for the Government of Guinea granting a new mining license over the Zogota deposits, to be exploited by a third party, Niron Metals plc ('Niron'), with the Company being entitled to participate in the revenues from this license.

The Joint Administrators will not enter into any binding settlement until they are satisfied that it is in the best interests of the Company and its creditors and other stakeholders. A review of Niron's preliminary plans, projections and feasibility studies has been undertaken and, at the time of our previous report, a member of the Joint Administrators' team with specialist mining expertise had visited the Zogota site with a representative of Niron.

Since our last report to creditors Niron has continued to have its own external consultants on site to prepare a detailed feasibility study and plan.  This includes looking in detail at mining, transport and logistics.  We understand that they have also been in discussions with relevant governments, contractors and other third parties which will be needed to export

2



the iron ore deposits. The Joint Administrators have maintained communications with Niron and anticipate being provided with Niron's detailed feasibility study in the coming weeks.

Due to the complexities involved, it is the Joint Administrators' intention to engage their own external specialist mining consultants to assess Niron's final feasibility study. In this regard, the Joint Administrators approached three well-regarded international firms of mining consultants to obtain proposals. The Joint Administrators have chosen the firm that they believe will offer the necessary expertise and have agreed a budgeted cost for the work to assess the feasibility study. This will include further site visits. However, as Nysco has not yet provided funding for this activity (see section 7.1 below on Nysco's relationship to the Company and its funding of the Administration), and absent other sources of financing, the Joint Administrators have not been able to instruct the firm to commence their work and are at present unable to progress their detailed evaluation of the settlement.

The Joint Administrators currently anticipate that it will be several more months before this work is completed and they are in a position to conclude on the acceptability of this deal or an alternative deal with similar or better economic effect for the Company.

The Joint Administrators have previously mentioned the matter of inaccurate reports that had appeared in the press to the effect that the proposed settlement has been finalised and is binding on the parties to it. Although the Joint Administrators made it clear (and maintain their position) that these reports were incorrect and inaccurate it is apparent that they are being represented as fact by certain parties. The Joint Administrators continue to monitor reports made in the press about the settlement term sheet and the Company generally and will consider whether any steps should be taken in respect of any such reports.

The Joint Administrators became aware from press reports in late July/early August 2019 that the Republic of Guinea was seeking developers for the Simandou iron ore deposit (being one of the deposits that are the subject of the ICSID claim). The Joint Administrators immediately wrote to the Republic of Guinea (both directly and via its legal representatives) in order to reserve the Company's rights to take such action as considered necessary to protect the Company's interests against the Republic of Guinea (which include its interests in the Simandou Deposits). It was subsequently reported in an article in the Financial Times on 13 November 2019 that a Chinese backed joint venture had been awarded the right to exploit Simandou. The Joint Administrators wrote to the Republic of Guinea's intermediary and its lawyers expressing their concerns regarding this arrangement again. A telephone discussion was held between the Joint Administrators and their lawyers and with lawyers representing the Republic of Guinea in this regard and it has been agreed that a meeting between the Joint Administrators and the Republic of Guinea be held to consider this matter further. Due to the recent elections that have been held in Guinea this meeting has not yet taken place.

As noted above, there is still a significant amount of work to be done before the Joint Administrators will be in a position to determine whether a binding settlement of the claim against the Republic of Guinea is in the best interests of the Company. If the Joint Administrators do agree to a binding settlement deal, the Joint Administrators will seek the sanction of the Royal Court prior to entering into it.

**BDO**

### 4.2 Filing for Mutual Recognition Under Chapter 15 of the Bankruptcy Code

As previously reported, the Joint Administrators have made an application to the US Bankruptcy Court for the Southern District of New York (the 'Bankruptcy Court') for recognition of the Administration under Chapter 15 of Title 11 of the United States Bankruptcy Code ('Chapter 15').

Chapter 15 recognition, if granted upon the terms requested by the Joint Administrators, will enable the Joint Administrators to obtain a stay of any action to execute against or attach the Company's assets located in the US.  Such relief will allow the Joint Administrators to retain control of the Soros Proceedings (as detailed in section 4.4 below) and any subsequent award arising therefrom, with a view to an eventual distribution of any realisations received by the Company in respect of the Soros Proceedings to the Company's creditors in accordance with the order of priorities provided for under Guernsey law.

The Chapter 15 application is being vigorously contested by Vale S.A ('Vale'), the largest unsecured creditor of the Administration, on the basis that Vale alleges the Joint Administrators' application does not meet the tests required to be granted Chapter 15 recognition as a foreign main proceeding and in particular that the Company's centre of main interest ('COMI') is not located in Guernsey. As well as satisfying other legal requirements, COMI must be found to be in Guernsey in order for the application to be successful, on the basis that the relief is being sought by insolvency office holders appointed in main plenary proceedings which are being conducted under the laws of Guernsey (and which are therefore capable of being recognised in other jurisdictions).

The Joint Administrators are continuing to respond to a significant and wide-ranging document discovery request from Vale that comprises some 68 individual document requests (the 'Document Requests') that Vale considers to be relevant to the determination of the COMI of the Company.

The discovery process has proven to be particularly complex due to the very large size of BSGR's full document population, the multi-jurisdictional nature of the Administration, the new (and largely untested) restrictions on cross-border data transfer imposed by the European General Data Protection Regulations ('GDPR') and the need to ensure that the documents released are not subject to qualifying privilege ('Privilege').

As production has continued and, in the Joint Administrators' view, been substantially completed, Vale have disputed the appropriateness of a number of the searches prepared by the Joint Administrators to identify documents responsive to the Document Requests.

In order to assist in reaching resolution of these disputes, the Bankruptcy Court appointed a Discovery Neutral (a retired Bankruptcy Judge) whose role is to understand the issues in dispute, assist the parties in coming to an agreement or, in the absence of an agreement, to issue recommendations to the presiding Judge in the Bankruptcy Court as to the appropriate steps to be taken to resolve the issues.

Following several meetings with the Discovery Neutral, and related correspondence between the parties, the process is continuing.  However, a number of the disputes have now been settled and the Joint Administrators' team is continuing to work to complete the production.

**BDO**

To date the Joint Administrators' team has reviewed over 92,000 documents as part of the discovery process that has included reviewing documents for responsiveness, GDPR and Privilege as well as conducting a quality control process. It is anticipated that at least a further 13,000 documents will be reviewed as part of this process.

When document discovery is complete, the Joint Administrators anticipate that the Bankruptcy Court will schedule a hearing for the Chapter 15 Recognition. In advance of such hearing, Vale will have an opportunity to take the depositions of certain witnesses.

### 4.3 Claim by Vale S.A.

#### English proceedings against BSGR

As mentioned in our last report, on 4 April 2019 the London Court of International Arbitration ('LCIA') made an award in favour of Vale in respect of proceedings brought by Vale against the Company relating to alleged fraudulent misrepresentation. The award was for US$1,246,580,846 plus pre- and post-award interest. The total claimed by Vale is in excess of US$2 billion. On 9 May 2019 Vale obtained an enforcement order from the High Court of Justice in England ('the High Court'). That order was stayed pending the outcome of a challenge of the LCIA's decision by the Joint Administrators on behalf of the Company.

A trial of certain preliminary issues was held on 4 September 2019. In its judgment issued on 20 September 2019 the Court made the following orders:

a. Vale's application for the Company to pay security for the award was denied;

b. The Company was ordered to pay security for Vale's costs of the challenge in the amount of $510,000;

c. The Court declined to set aside an order enabling Vale to enforce the award or to stay enforcement of the award;

d. The Court permitted the Company to amend its Challenge Application; and

e. The Court refused Vale's application to impose a condition on the Company pursuing the Challenge Application that the Company pay the outstanding costs order of Mr Justice Popplewell (made prior to the appointment of the Joint Administrators).

The Challenge Application itself was heard on 28 and 29 November 2019. The Court dismissed the challenge in a judgment given at the end of the trial. Costs were awarded to Vale on the indemnity basis. These costs were covered by the payment of security for costs made pursuant to the 20 September 2019 order.

#### US enforcement proceedings

In addition to seeking to enforce the LCIA award in the UK, Vale has been seeking recognition of the LCIA award in the US District Court for the Southern District of New York ('the District Court') and to enforce that award in the USA (the 'Enforcement Proceedings'). If successful, Vale could seek to interrupt or control the Company's claim against George Soros and his Open Society Foundation (the 'Soros Proceedings') and any subsequent award arising from the Soros Proceedings. The Company contested the Enforcement Proceedings

**BDO**

in the District Court pending the outcome of the Challenge Application and the granting of relief under Chapter 15 of the Bankruptcy Code, which would stay the Enforcement Proceedings and any other proceedings commenced in respect of assets located in the US.

Following the dismissal of the Challenge Application, the Joint Administrators' objections to the entering of an award in favour of Vale reflecting the decision of the LCIA were moot. Accordingly, the Joint Administrators and Vale negotiated a stipulation that was presented to the District Court on 21 February 2020 consenting to the entering of a judgment in favour of Vale and that is expected to be ordered by the District Court shortly.

The stipulation also dealt with the issue of Vale's right to enforce its judgment in the USA. Over the preceding weeks, the Joint Administrators have been working intensively with their lawyers to prevent enforcement taking place prior to a decision by the Bankruptcy Court on recognition of the Chapter 15 petition, which could in effect render Chapter 15 relief pointless if the Company had already lost control of its US located asset. The Joint Administrators' US lawyers had been working on the preparation of an application for a temporary injunction to prevent Vale from enforcing prior to the recognition hearing. At the same time, the District Court had asked both parties to file a statement setting out their views on the possible effects of enforcement by Vale on the ongoing insolvency proceedings and as to which court in the USA should hear the application for a temporary injunction.

Whilst these documents were being prepared, intensive discussions were taking place between the parties' respective lawyers with a view to a consensual temporary resolution of these issues.  Subject to approval by the District Court, the Joint Administrators and Vale have agreed that (amongst other things) Vale will refrain from taking certain enforcement action in the US for a period of 150 days, during which time the Joint Administrators expect that the Chapter 15 application will have been decided by the Bankruptcy Court, and that for a period of 90 days Vale would refrain from seeking discovery from the Company in furtherance of the enforcement of its judgement against the Company.

*Claims against third parties*

In addition to seeking to make recoveries from the Company, Vale also commenced action in the High Court in November 2019 seeking recovery from the Company's parent companies, as well as from individuals currently or formerly connected with the Company (including Mr Beny Steinmetz). Vale also applied for and were granted a worldwide freezing order ('WFO') over the assets of the defendants up to the amount of its claim. The Joint Administrators understand that the defendants intend to defend the claim and to apply to have the WFO set aside or amended.

Following the making of the WFO, the Joint Administrators have been working with their lawyers to assess its effect on the Administration and have become involved in extensive correspondence and discussions both with Vale and with certain defendants concerning requests for information which the defendants are required to produce to Vale.

Although not directly covering the Company itself, the WFO has nonetheless had an effect upon the operation of the Administration. Indeed, the WFO restricts the activities of one of BSGR's two directors and the Company's funding source, Nysco. As well as requiring the attention and involvement of those BSGR personnel who are continuing to assist the Joint

**BDO**

Administrators in carrying out their functions, the detailed terms of the WFO have caused a hiatus in funding the Administration due in particular to the restrictions imposed upon Nysco when dealing with its assets and cash.  Although the situation has been alleviated to some extent in recent weeks, there remains a large backlog of payments to the Joint Administrators and their lawyers, whose continued forbearance and commitment to the interests of the creditors as a whole is acknowledged and appreciated by the Joint Administrators.  It is imperative for the successful continued operation of the Administration and the fulfilment of the Court ordered objective of the Administration that these funding difficulties can be resolved in the near future.

### 4.4 Claim against George Soros

We previously reported that in 2017, prior to the Joint Administrators' appointment, the Company had filed a complaint against George Soros and related parties in the District Court.  The complaint asserts various claims against George Soros, his Open Society Foundations and related entities arising out of or related to their alleged actions intentionally to deprive the Company of its iron ore mining interests in the Simandou region of Guinea.  The complaint seeks not less than US$10 billion in damages.

The defendants filed a motion to dismiss and in November 2017 the District Court granted the defendants' request for a stay of the litigation pending resolution of the ICSID Arbitration described above, without otherwise ruling on the merits of a motion to dismiss.

When we last reported, the litigation had been stayed until the next hearing, which was scheduled for 10 December 2019.  In the event and in light of the other significant matters which were ongoing in the Administration, including the Chapter 15 application and the proceedings commenced by Vale, the Joint Administrators agreed to a further extension of the stay pending a hearing which has now been scheduled to take place on 24 March 2020.

The Soros litigation is potentially one of the two largest assets of the Company and therefore the resolution of the litigation is expected to play an important role in the Joint Administrators' efforts to preserve the Company or any part of its undertaking as a going concern. The Joint Administrators are currently considering their approach to the 24 March hearing.

### 4.5 Cunico Litigation

As previously reported, the Company is directly involved as a party to four separate litigation proceedings:

- It is a respondent to proceedings brought in the District Court of Amsterdam, Netherlands by, amongst others, a Dutch registered company, Cunico Resources NV ('Cunico'). The Company (and the co-defendants) are contesting the jurisdiction of the District Court of Amsterdam.  A hearing was scheduled for pleadings on that specific issue on 14 November 2019.  However, Cunico requested that the court delay the hearing because there were cross-party settlement discussions going on. All other parties bar one agreed to the delay.  The Court requested an update by 25 February 2020 as to whether the parties wished to continue the proceedings prior to this date, the Company's Dutch lawyers received a request from Cunico and other

7

**BDO**

parties to the dispute for a further stay in order to continue settlement discussions. Based upon advice from the Company's lawyers, the Joint Administrators have agreed to a further stay. Subsequently, the Court granted a further stay until 17 June 2020.

- The Company is a co-claimant in appeal proceedings against Cunico (amongst others) in the Court of Appeal in Amsterdam. These proceedings were struck off the docket but can be recommenced at any given time by any of the parties. As previously reported, the Joint Administrators used their own specialist investigator to look into the underlying assets to assess the likelihood of making recoveries if the Company is successful in its appeal in respect of the Cunico litigation. However, the information that the Joint Administrators have identified is not up to date and it is difficult for the Joint Administrators to determine whether further action is in the best interests of the Company. The Joint Administrators have held discussions with Cunico's lawyers in order to explore alternative approaches to ascertain the current asset base of Cunico. Any continuation of the appeal would be subject to obtaining litigation funding. Dutch attorneys have provided advice as to the likelihood of success of an appeal. The Joint Administrators are awaiting further communications with Cunico's lawyer to assist them in assessing the likelihood of any assets of value being available in order to evaluate the likelihood of obtaining litigation funding, the prospects of success and the prospects of any subsequent recovery.

- As previously advised, the Dubai Courts made judgement in favour of the Company against Cunico Marketing FZE ('CMFZE') and rejected an appeal. Dubai lawyers have commenced execution.

- In respect of the matter where the Company is a co-defendant in an action filed in the Supreme Court of the Bahamas, no Statement of Claim has been filed. The Joint Administrators continue to monitor the situation and will take appropriate action should it become necessary.

In respect of the other litigation in which the Company is indirectly involved, these proceedings continue to be stayed, are subject to extensions, put on hold or discussions are taking place between the parties. Settlement discussions with the other parties are being undertaken as appropriate with the objective of maximising the return, if any, to the Company.

The Joint Administrators will continue to monitor all aspects of the Cunico Litigation, whether the Company has a direct or indirect interest, in order to maximise the return (or minimise the loss), if any, to the Company.

**BDO**

5    Assets

In addition to the potential litigation recoveries mentioned above, the other main assets of the Company are as follows:

**5.1  Octea Limited and Subsidiaries**

As previously reported, the Company owns a direct subsidiary company, Octea Limited ('Octea'), that acts as the holding company for a group of companies engaged in diamond mining, extraction and refinement based in Sierra Leone, as well as the marketing and sale of diamonds.

The Joint Administrators monitor Octea's performance in consultation with its management and have observer status on its board.  Whilst operations at the mine have been proceeding satisfactorily, there has been a continued requirement for investment in capital expenditure which, coupled with a persisting depressed rough diamond market, has resulted in difficult trading conditions.

Prior to the appointment of the Joint Administrators, the Company advanced funds to Octea under the provisions of a loan combination agreement dated 31 July 2012.  As at 29 February 2020, the balance owed by Octea to the Company is US$166million.

The repayment of the balances will be dependent on the financial success of the underlying diamond operations described above. The Joint Administrators note that Octea will only be in a position to repay the balances due to the Company when prior ranking debts due to Star West Investments Limited (detailed below) have been satisfied. The Company is further exposed to the financial position of Octea pursuant to a guarantee in favour of Star West Investments Limited.

**5.2  West African Power Limited**

As previously reported, the Company owns a direct subsidiary company, West African Power Limited ('WAPL'), which ultimately holds, through a group of subsidiary undertakings, a minority investment in a Nigerian company, Amperion Power Distribution Company Limited ('Amperion'). Amperion is the owner of a power station located in Geregu, Nigeria.

For several years WAPL has been in dispute on a number of issues with its investee company and with the majority shareholder in Amperion, Forte Oil PLC ('Forte'), which has historically exercised de facto control over Amperion and who, it is alleged, has denied WAPL its rights to participate in its management.

During 2019 Forte disposed of its interest in Amperion to Calvados Global Services Limited ('Calvados'), a company understood to be owned by Femi Otedola, the previous majority shareholder of Forte.

On 17 June 2019 and 19 June 2019 Calvados filed applications with the Federal High Court in Lagos, Nigeria to prevent WAPL from transferring or otherwise dealing with its shares in Amperion. In addition, an order was sought permitting Calvados to dilute WAPL's shareholding in Amperion as a consequence of its alleged failure to offset its capital contribution to the acquisition of the Geregu power station.

The Joint Administrators understand that following an initial judgment made in favour of Calvados an appeal was filed by WAPL which has resulted in the initial judgment being stayed pending determination by the Nigerian Court of Appeal. The Joint Administrators further understand that the matter has not yet been formally listed for a substantive hearing and that liaison with the Court of Appeal registry is ongoing.

### 5.3 Roslindale PTE Ltd

The Company holds 64,826,482 redeemable preference shares in Roslindale PTE Ltd ('Roslindale'). The shares were issued at US$1 per share and carry the right to a preferential dividend which is payable as and when determined by Roslindale's board of directors.

As previously reported, the Company's management recognised an impairment to the value of these shares during 2016 to US$1,000 in aggregate, as a result of significant uncertainty over future cash flows attributable to this asset.

The Joint Administrators understand that the underlying asset of Roslindale is an undeveloped oil and gas field located in the Middle East that is the subject of territorial disputes between Israel and Cyprus. The Joint Administrators further understand that no dividend has been received from this investment to date.

The Joint Administrators are not presently in a position to determine whether this asset has any realisable value to the Company.

### 5.4 Bank Account

The Company holds a bank account with Banque J Safra Sarasin in Switzerland. At the date of appointment there was US$17,947 in this account. As at 20 February 2020, the balance of funds total US$13,454. The movement in this balance is attributable to bank charges levied.

### 5.5 Debtors

**BSG Capital Markets Limited ('Capital Markets')**

As previously reported, Capital Markets is indebted to the Company for US$1.8m, which sum fell due for payment on 31 December 2018. The Joint Administrators demanded payment of this amount but settlement has not been forthcoming, reportedly due to continued inadequate liquidity in Capital Markets.

The discussions with the debtor regarding a formal proposal to repay the amount outstanding were paused following the making of the WFO, but are expected to be recommenced shortly.

**BSG Real Estate Limited ('Real Estate')**

The sum of US$32,823 is due to the Company in respect of rent receivable from Real Estate, which occupied part of the Company's offices in Guernsey.

The Joint Administrators have demanded payment of this balance, which remains unpaid.

**BDO**

**Former Employee**

A former employee of the Company and of two of the Company's subsidiaries, Asher Avidan, was arrested in Israel in 2016. The Company provided US$290,000 equivalent, to be lodged as a bail bond. The bond was subsequently released, but was remitted to Mr Avidan rather than being repaid to the Company.

Mr Avidan has refused to repay the monies to the Company. The Joint Administrators have received funding to retain an Israeli law firm to recover the amount due, however during December 2019 Mr Avidan was made a respondent to the WFO issued by the High Court. Accordingly, the Joint Administrators concluded that there was no benefit in taking further steps to recover this debt at present, but will continue to monitor the position with respect to the WFO and its effect on Mr Avidan.

### 5.6 Investigation of Assets

The Joint Administrators have a duty to identify any potential assets of the Company other than those mentioned above and continue to review the Company's records and investigate any potential claims that the Company may have against third parties. The Joint Administrators are also mindful of, and continue to monitor developments concerning, potential additional claims which may be made for the benefit of the Company and its creditors. To the extent that the Joint Administrators take steps to pursue any such claims we will report to and update creditors accordingly.

If you are aware of any asset or potential asset that is not included above, please provide relevant information to the Joint Administrators.

## 6    Creditors

### 6.1 Secured Creditors

**Standard Chartered Bank PLC ('SCB')**

SCB is the historic lender to the Company and certain of its subsidiary undertakings and has asserted a claim to have security over all proceeds flowing into the Company to the extent of the full amount of the debt owing to it. Prior to the appointment of the Joint Administrators, the debt due to SCB was US$16m, which SCB allege increased to some US$75m plus accruing interest as a result of the Company entering administration. The Joint Administrators (on behalf of the Company) and SCB respectively have currently reserved all their rights in respect of the SCB position until it becomes necessary to resolve the question of the quantum of SCB's claim.

The Joint Administrators have continued to be in communication with SCB on a regular basis.

**Star West Investments Limited ('Star West')**

During 2016 and 2017, Star West acquired, on broadly the existing commercial terms, loan facilities between SCB and Octea and Laurelton Diamonds Inc. ('Laurelton') where the Company acted as the guarantor of those facilities.

As a result of the acquisition of the debt from SCB and Laurelton, Star West became the beneficiary of a security granted over the shares of Octea as security for the Company's guarantees of Octea's facility obligations to SCB and Laurelton.

To date, the guarantees provided by the Company under the terms of the facility have not been called upon by Star West and at present there is no debt due to Star West by the Company (although the Joint Administrators understand that there may be a technical default under the facility documents with respect to the Company entering Administration).

As at 29 February 2020, Octea is believed to be indebted to Star West in the amount of US$161million.

### 6.2 Unsecured Creditors

Following the unsuccessful challenge of the LCIA award, Vale S.A. is the principal unsecured creditor with a claim in excess ofUS$2 billion plus accruing interest. As previously reported, the total of the other known unsecured claims is currently believed to be some US$7 million.

### 7 Receipts and Payments Account

Attached is a summary of the receipts and payments account for the Administration to date. We comment as follows:

### 7.1 Funding

The Company has no liquid assets with which to fund the costs of the Administration.

As previously reported, a formal funding agreement between Nysco Management Corp. (the Company's immediate parent company) ('Nysco') and the Company was entered into on 18 December 2018 (the 'Funding Agreement'). The Funding Agreement sets out the terms on which Nysco has agreed to provide funding by way of loan facilities for certain aspects of the Administration.

Since our previous report £1,521,079 has been received from Nysco in respect of the Joint Administrators' fees, disbursements and legal costs incurred. However, over recent months and in particular since the making of the WFO, there has been a significant backlog of payments due under the Funding Agreement. The Joint Administrators have made it clear to representatives of Nysco that the lack of funding is now making it problematical for both the Joint Administrators themselves and for many of their advisors to progress the Administration as they would wish.

**BDO**

Included in the above amount is an accrual for the sum of £10,000 requested and received from Nysco in order to settle the initial legal costs expected to be incurred by the Israeli law firm in pursuing the debt due from the Company's former employee, Mr Avidan. These legal costs have not yet been incurred.

A sum of £100,000 is held by the Joint Administrators as a buffer amount which may be utilised under various circumstances including to settle certain unexpected costs that may arise.

A summary of the total amount loaned to the Company as at 25 February 2020 is set out as Appendix 1.

### 7.2 Asset Realisations

There have been no asset realisations in the Period.

### 7.3 Payments

Payments made in the period comprise the Joint Administrators' fees and disbursements and legal costs incurred by them. The Joint Administrators' fees and disbursements are discussed in detail at paragraph 8 below.

In the Period of this report legal costs incurred total £374,646 for which funding of £288,527 has been requested and of which £118,255 has been received.

In addition to the above, the Joint Administrators have engaged Duane Morris LLP to act for them in regard to certain of the US proceedings.  Nysco has been paying Duane Morris's costs direct and to date has paid $500,000.

A total of nearly £1million is currently owed to a number of law firms whose fees are paid directly by Nysco.

### 7.4 Trading

Prior to the Joint Administrators' appointment, the Company acted as an adviser and administration function for a number of its subsidiaries and has continued to do so. Operational costs have been incurred, principally in respect of salaries and legal and professional fees.

Under the terms of a management agreement, fees will become payable to the Company from its direct subsidiary, Octea, upon the occurrence of certain milestones.  The quantum and timing of this management fee is presently uncertain.

### 8    Joint Administrators' Remuneration

Following the first anniversary of the Joint Administrators' appointment, in accordance with the Funding Agreement, the Joint Administrators prepared a budget setting out their expected fees that would be incurred in the year to 5 March 2020.  The fee budget was

**BDO**

agreed at £1,129,857 which represented an estimated 2,195 hours of work.  This budget was approved by the Royal Court.

During the period covered by this report, the legal proceedings involving the Company, most significantly the Chapter 15 application and related document discovery, has resulted in the need for significant costs to be incurred in excess of the amount budgeted  In the period 6 March 2019 to 25 February 2020 the time spent amounted to 6,265.45 hours at a cost of £2,884,752.

The tables at Appendix 2 summarise the Joint Administrators' time costs incurred in the Period of this report and from appointment up to the date of preparation.

As at 25 February 2020 time costs totalling £1,995,557 have been incurred by the Joint Administrators since 6 September 2019.

In the period of this report Nysco advanced £1,521,079 to the Administration account in respect of the Joint Administrators' fees, disbursements and legal costs payable by the Company.

At the time of preparing this report £1,358,862 of requested funding remains outstanding. The Joint Administrators' fees for the month of February 2020 are expected to be in the region of £250,000 but have not yet been requested.

Since November 2019 Joint Administrators' fees amounting to £156,791 have been deferred for payment and will be payable should funds become available.

## 9    Disbursements

Direct disbursements are recovered in respect of precise sums paid or payable to third parties during the Administration.  In the Period covered by this report, expenses totalling £280,644 have been incurred, as detailed in the table below.

| Disbursement | Amount £ |
|---|---|
| Data processing & hosting | 170,723.59 |
| Air travel | 20,759.44 |
| Ground travel | 1,408.19 |
| Hotels & subsistence | 1,918.02 |
| Office holder insolvency bonds | 362.88 |
| Public relations advice | 10,262.00 |
| Other | 10.00 |
| Legal costs | 75,200.00 |
| | 280,644.12 |

Data processing & hosting costs have been incurred principally in respect of the discovery process in the Chapter 15 case in the US.  The expenses relate to the costs of engaging paralegal staff to review the Company's documents for responsiveness to the discovery requests, the licencing of the document review software platform and the cost of hosting the data on remote storage to allow access by the Joint Administrators' US lawyers.

**BDO**

Air travel predominately relates to travel to the US by the Joint Administrators and their team to attend US court hearings in respect of the Chapter 15 application.

The arbitration proceedings and other matters relating to the Company or entities associated with the Company resulted in a significant amount of media interest. The costs reported relate to the Joint Administrators' public relations advisors who manage media relations at their direction.

Legal costs disbursements relate to £75,200 incurred in respect of advice relating to the interaction of the GDPR and the US discovery process.

## 10    Future of the Administration

As mentioned above, the court-ordered purpose of the Administration is the survival of the Company and the whole or any part of its undertaking as a going concern.

The two major contingent assets in this Administration are the ICSID arbitration against the Republic of Guinea and the US litigation against George Soros.  The status of these two matters has been set out above and the outcomes will determine the future strategy of the Administration and whether or not it will be possible for the Joint Administrators to achieve the purpose of the Administration.  The Joint Administrators have taken legal advice as to the applicable legal requirements in this regard (in respect of which privilege is not waived) and will continue to do so.

If you require any further information, please contact the Joint Administrators at William.Callewaert@bdo.gg.

Yours faithfully
For and on behalf of
BSG Resources Limited

William Callewaert
Joint Administrator

**BDO**

## Appendix 1
## Joint Administrators' Summary Receipts and Payments Account

| | Notes | From 1 Sep 2019 To 25 Feb 2020 £ | From 6 Mar 2018 To 25 Feb 2020 £ |
|---|---|---|---|
| **RECEIPTS** | | | |
| Funds loaned by Nysco Management Corporation | 1 | 1,521,079 | 2,308,812 |
| Buffer amount loaned by Nysco Management | 2 | - | 100,000 |
| Interest received | | 151 | 304 |
| | | 1,521,231 | 2,409,117 |
| **PAYMENTS** | | | |
| Joint Administrators' Fees | 3 | 1,191,797 | 1,723,078 |
| Joint Administrators' Disbursements | 3 | 80,391 | 94,566 |
| Legal Fees and Disbursements | 4 | 234,479 | 476,756 |
| Bank Charges | | 520 | 634 |
| | | ( 1,507,188) | ( 2,295,035) |
| **Total/Balance Held By The Joint Administrators** | | 14,043 | 114,082 |
| **MADE UP AS FOLLOWS** | | | |
| UK Administration Account | | | 43 |
| UK Buffer Account | 2 | | 100,262 |
| Guernsey Administration Account | | | 13,778 |
| | | | 114,082 |
| **NYSCO LOAN ACCOUNT** | | | |
| **Operating Costs** | | | |
| Salaries and associated costs (tax & soc.sec.) | 5 | ( 124,495) | ( 432,763) |
| Legal & professional fees | | ( 24,004) | ( 169,317) |
| Insurance: D&O cover | 6 | ( 102,333) | ( 201,093) |
| Office costs | | ( 7,509) | ( 58,830) |
| | | ( 258,341) | ( 862,003) |
| **Legal Fees & Associated Costs** | | | |
| Legal fees & disbursements | | ( 400,846) | ( 2,879,321) |
| IT services (online document archival) | 7 | ( 16,845) | ( 114,963) |
| US Legal Fees | 8 | ( 384,527) | ( 384,527) |
| | | ( 802,218) | ( 3,378,811) |
| **Joint Administrators' Fees & Disbursements** | | | |
| Pre-appointment fees & disbursements | | | ( 64,500) |
| Post-appointment fees | | ( 1,191,797) | ( 2,973,494) |
| Post-appointment disbursements | | ( 80,391) | ( 99,590) |
| | | ( 1,272,188) | ( 3,137,584) |
| **Total Loaned To BSG Resources Ltd (In Administration)** | | ( 2,332,747) | ( 7,378,398) |

### Notes

1.  The Company's direct parent company, Nysco Management Corporation, has agreed to fund the Joint Administrators' fees, disbursements and legal costs.
2.  Nysco Management Corporation has provided the sum of £100,000 to be held in respect of costs that require immediate funding.



3. The Joint Administrators' fees are approved by the Royal Court of Guernsey. Funding for fees and disbursements totalling £1,359k has been requested from Nysco Management Corp and has not yet been received. Fees for February 2020 have not been requested but are expected to be in the region of £250k.

4. During the period funding has been requested for legal fees and disbursements totalling £286k, of which £118k has been received. The balance of the £234k relates to funding received in this period for costs incurred in the previous period.

5. The Company retains two members of staff who provide administrative and operational functions.

6. Director and Officer insurance indemnity cover has been obtained in respect of the retained employees.

7. IT services includes the provision of cloud-based storage for data and digital documents relating to various legal proceedings.



Appendix 2

**BSG Resources Limited (In Administration)**
**Summary of Joint Administrators' Time Costs**
**For the Period of this report (6 September 2019 to 25 February 2020)**

For the Period 6 September 2019 to 25 February 2020

| | Partner £712 per hour | | Principal/Director £457 per hour | | Senior Manager/Manager £402 per hour | | Other £230 per hour | | Total £420 per hour | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Appointment Matters | - | - | - | - | - | - | - | - | - | - |
| Day One Matters | - | - | - | - | - | - | - | - | - | - |
| Litigation Matters | 496.30 | 362,936.45 | 891.20 | 407,286.23 | 1,952.85 | 799,033.94 | 95.65 | 30,455.69 | 3,436.00 | 1,599,712 |
| Trading Matters | 53.05 | 28,121.91 | 118.80 | 54,062.37 | 58.85 | 21,306.29 | 10.25 | 940.95 | 240.95 | 104,432 |
| Tax | - | - | - | - | - | - | - | - | - | - |
| Statutory Compliance | 1.90 | 1,382.65 | 15.10 | 6,280.56 | 22.60 | 7,734.78 | 0.75 | 168.75 | 40.35 | 15,567 |
| General Administration | 58.20 | 41,734.05 | 129.05 | 57,113.28 | 260.15 | 94,260.69 | 84.40 | 12,394.71 | 531.80 | 205,503 |
| Other Matters | 39.75 | 28,332.50 | 58.85 | 29,757.29 | 29.60 | 12,254.40 | - | - | 128.20 | 70,344 |
| Agreed Discount | - | - | - | - | - | - | - | - | - | - |
| Agreed Deferral | - | - | - | - | - | - | - | - | - | 156,791 |
| | 649 | 462,508 | 1,213 | 554,500 | 2,324 | 934,590 | 191 | 43,960 | 4,377 | 1,838,766 |

For the Period of the Administration

| | Partner £703 per hour | | Principal/Director £455 per hour | | Senior Manager/Manager £386 per hour | | Other £203 per hour | | Total £437 per hour | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Appointment Matters | 21.50 | 14,943.00 | 49.10 | 22,839.00 | 10.85 | 4,030.00 | - | - | 81.45 | 41,812 |
| Day One Matters | 6.50 | 4,526.00 | 33.90 | 12,987.00 | 45.00 | 16,100.00 | 0.30 | 33.00 | 85.70 | 33,646 |
| Litigation Matters | 1,120.05 | 800,413.68 | 1,700.95 | 788,134.10 | 2,331.10 | 940,986.29 | 134.90 | 40,518.59 | 5,287.00 | 2,570,053 |
| Trading Matters | 137.25 | 80,211.23 | 456.10 | 188,817.58 | 301.10 | 96,455.40 | 18.05 | 2,378.01 | 912.50 | 367,862 |
| Tax | 6.35 | 4,440.23 | 25.21 | 16,772.29 | 1.00 | 302.40 | 3.65 | 646.00 | 36.21 | 22,161 |
| Statutory Compliance | 5.35 | 3,865.91 | 115.70 | 44,290.16 | 93.30 | 28,339.73 | 42.30 | 6,026.63 | 256.65 | 82,522 |
| General Administration | 166.65 | 118,851.70 | 355.50 | 159,751.90 | 599.50 | 219,952.23 | 105.40 | 14,352.78 | 1,227.05 | 512,909 |
| Other Matters | 187.45 | 132,648.09 | 349.15 | 169,460.96 | 269.90 | 105,014.50 | 36.25 | 5,081.13 | 842.75 | 412,205 |
| Agreed Discount | - | - | - | - | - | - | - | - | - | 75,856.00 |
| Agreed Deferral | - | - | - | - | - | - | - | - | - | 156,791.00 |
| | 1,651 | 1,159,900 | 3,086 | 1,403,053 | 3,652 | 1,411,181 | 341 | 69,036 | 8,729 | 3,810,522 |