UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VALE S.A.,

                        Petitioner,

       -against-

BSG RESOURCES LIMITED,

                        Respondent.

Case No. 19-cv-3619 (VSB)

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH THE DISCOVERY REQUESTS TO <u>BENJAMIN (BENY) STEINMETZ AS ALTER EGO OF BSGR</u>

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York  10006
Telephone: 212-225-2000

*Attorneys for Petitioner Vale S.A.*

<u>**TABLE OF CONTENTS**</u>

<u>**PAGE**</u>

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND .............................................................................................................3

   I.   Beny Steinmetz, BSGR and the Steinmetz Corporate Empire ...........................................3

   II.  The Discovery Requests to Steinmetz ....................................................................5

ARGUMENT ...............................................................................................................6

   I.   Vale Is Entitled To Party Discovery From Steinmetz, BSGR's
       Alter Ego ........................................................................................................6

        1.   Steinmetz, the "Big Boss," Exercises Control Over BSGR ...........................8

        2.   Steinmetz Siphoned BSGR's Corporate Funds for His
              Personal Benefit ....................................................................................13

        3.   Steinmetz and Entities Within the Steinmetz Corporate
              Empire Routinely Engage in Non-Arm's Length Transactions...............15

        4.   Steinmetz's Trusted Associates Serve as Officers and
              Directors of Numerous Entities Throughout the BSG
              Corporate Empire ..................................................................................18

        5.   BSGR is Insolvent and Undercapitalized .................................................21

   II.  This Court Has Personal Jurisdiction Over Steinmetz ...........................................22

        1.   Steinmetz is an Alter Ego of BSGR and This Court Therefore
              Has Personal Jurisdiction Over Him .......................................................22

        2.   This Court Has Personal Jurisdiction Over Steinmetz Under
              New York's Long-Arm Statute.................................................................23

CONCLUSION.............................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**<u>Rules and Statutes</u>**

Fed. R. Civ. P. 4(k)(2)...................................................................................... 25

Fed. R. Civ. P. 69(a)(2)...................................................................................... 1

Federal Rule of Civil Procedure 69(a) ................................................................ 7

N.Y. C.P.L.R. § 302(a)(1)................................................................................ 23-24

**<u>Cases</u>**

<u>Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.</u>,
39 F. Supp. 3d 516 (S.D.N.Y. 2014)................................................................... 16

<u>Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC</u>,
No. 07 CV 6665 (HB), 2009 WL 1803458 (S.D.N.Y. June 23, 2009)................ 10

<u>Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC</u>,
402 F. App'x 623 (2d Cir. 2010) ......................................................................... 10, 21

<u>Budisukma Permai SDN BHD v. N.M.K. Prods. & Agencies Lanka Private Ltd.</u>,
606 F. Supp. 2d 391 (S.D.N.Y. 2009).................................................................. 8

<u>Cardell Fin. Corp. v. Suchodolski Assocs., Inc.</u>,
No. 09 Civ. 6148 (VM), 2012 WL 12932049 (S.D.N.Y. July 17, 2012) ........... 21

<u>EM Ltd. v. Republic of Argentina</u>,
695 F.3d 201 (2d Cir. 2012)................................................................................ 7

<u>Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.</u>,
724 F. Supp. 2d 308 (E.D.N.Y. 2010) ................................................................ 13

<u>Freeman v. Complex Computing Co.</u>,
119 F.3d 1044 (2d Cir. 1997)............................................................................. 8

<u>GEM Advisors, Inc. v. Corporacion Sidenor, S.A.</u>,
667 F. Supp. 2d 308 (S.D.N.Y. 2009)................................................................. 22-23

<u>GMA Accessories, Inc. v. Elec. Wonderland, Inc.</u>,
No. 07 CIV. 3219 PKC DF, 2012 WL 1933558 (S.D.N.Y. May 22, 2012)........ 7

House of Diamonds v. Borgioni, LLC,
737 F. Supp. 2d 162 (S.D.N.Y. 2010)..................................................................... 23, 25

Ingenito v. Riri USA, Inc.,
89 F. Supp. 3d 462 (E.D.N.Y. 2015) ..................................................................... 24-25

Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC,
No. 20-CV-2427 (RA), 2021 WL 1226873 (S.D.N.Y. Mar. 31, 2021)............................ 22

Republic of Argentina v. NML Capital, Ltd.,
573 U.S. 134 (2014)............................................................................................... 7

SEC v. Montle,
65 F. App'x 749 (2d Cir. 2003) .............................................................................. 22

Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.,
401 F. Supp. 3d 433 (S.D.N.Y. 2018)................................................................. 8, 13, 21

Trustees of New York Dist. Council of Carpenters Pension Fund et al. v. Port Parties, Ltd.,
No. 16 CIV. 4719 (KPF), 2018 WL 6061205 (S.D.N.Y. Nov. 20, 2018) ........................ 7

Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,
933 F.2d 131 (2d Cir. 1991)............................................................................... passim

In accordance with this Court's order, ECF No. 69, Vale S.A. ("Vale") respectfully submits this memorandum of law[1] in support of its request, ECF No. 66, that the Court order Benjamin (Beny) Steinmetz ("Steinmetz") to respond to the discovery requests served on March 31, 2020 (the "Discovery Requests").

## PRELIMINARY STATEMENT

As this Court is aware, Vale has a judgment in excess of $2 billion (the "Judgment"), ECF No. 51, against BSG Resources Limited ("BSGR") arising from this Court's enforcement of an LCIA arbitration award (the "Award") that found that BSGR – which is short for Beny Steinmetz Group Resources – had fraudulently induced Vale to enter into a joint venture to develop mining rights in the Simandou region of Guinea (the "VBG Joint Venture") by, *inter alia*, concealing that it had procured those rights through bribery and corruption.  Promptly following entry of the Judgment, Vale properly served Steinmetz with the Discovery Requests, which are highly relevant to the execution of Vale's Judgment.  More than a year has now elapsed since Steinmetz was served, and he has neither formally responded nor produced a single document or otherwise complied with his discovery obligations.  Vale therefore requests that the Court compel compliance from Steinmetz as the alter ego of BSGR.

Vale's entitlement to broad post-judgment discovery under Fed. R. Civ. P. 69(a)(2) to assist in collection of its Judgment, including discovery from the judgment debtor and its alter ego, is indisputable.  While the standard to obtain discovery from an alter ego is that there be "at least some demonstration" that Steinmetz is the alter ego of BSGR, Vale's considerable evidence

---

[1]     Along with its Memorandum of Law, Vale submits exhibits as part of the Declaration of Jeffrey A. Rosenthal in Support of Vale's Motion to Compel Compliance with the Discovery Requests to Benjamin (Beny) Steinmetz As Alter Ego of BSGR ("Rosenthal Decl.") and the Declaration of Lisa Vicens in Support of Vale's Motion to Compel Compliance with the Discovery Requests to Benjamin (Beny) Steinmetz As Alter Ego of BSGR ("Vicens Decl."), filed separately under seal.  Numbered exhibits in this Memorandum of Law make reference to the Rosenthal Decl; lettered exhibits make reference to the Vicens Decl.

far surpasses that requirement.  Indeed, other courts have already concluded that Steinmetz controlled BSGR and its corrupt activities, including a Swiss criminal court (the "Swiss Court") which earlier this year convicted Steinmetz of bribery related to BSGR's acquisition of the mining concession and sentenced him to imprisonment for five years.  That court found that "Benjamin STEINMETZ, as the actual head of BSGR, was the main beneficiary of the operation.  All major decisions were made with his approval and he personally intervened in several stages of the corruption operation."[2]

Vale easily satisfies the multi-factor test applied by courts in this district to establish whether there is sufficient *prima facie* evidence that Steinmetz is BSGR's alter ego in order to subject him to party discovery obligations.  As set forth below, Steinmetz exercised substantial control over and dominated BSGR, using it and an elaborate web of corporate entities with overlapping officers and directors as a conduit to benefit himself.  The evidence amassed by Vale thus far shows that Steinmetz is – as his business associates refer to him – the "big boss" and BSGR's "number 1."[3]  Indeed, even BSGR's entry into administration in Guernsey in 2018 (whereupon joint administrators were appointed by the local court) did not stop Steinmetz from running BSGR.  As those joint administrators recently admitted to Judge Sean Lane of the United States Bankruptcy Court for the Southern District of New York, Steinmetz, without the consent or even the advance knowledge of the joint administrators of BSGR, purported to negotiate a settlement of BSGR's investor-state arbitration against the Republic of Guinea that the administrators have described in pleadings before that court as one of BSGR's two principal

---

[2]      Ex. 1, Press Release of the Swiss Criminal Tribunal, Criminal proceedings P/12914/13 against Benjamin STEINMETZ and two other defendants (Jan. 22, 2021), at 2 ("Swiss Court Press Release").

[3]      Ex. 2, Transcript of FBI Recordings, at CGS&H pp. 134, 140 (2013).

assets.[4]  In fact, Steinmetz acted so authoritatively in his dealings with Guinea that the

government subsequently ignored the joint administrators' attempts to engage in direct

communications.[5]

What follows below is just some of the evidence Vale has amassed thus far

demonstrating that Steinmetz has interchangeably used BSGR and other related entities in the

Steinmetz empire to siphon funds for his personal benefit, all while flouting corporate

formalities.  BSGR has been left as a hollowed-out entity depleted of most of its valuable assets

due to Steinmetz's conduct.  Vale submits that this evidence more than satisfies the requirement

of a *prima facie* showing of Steinmetz's alter ego relationship with BSGR.  Vale thus seeks an

order compelling Steinmetz, as the alter ego of BSGR, to comply with the Discovery Requests.

## BACKGROUND

### I.    Beny Steinmetz, BSGR and the Steinmetz Corporate Empire

BSGR stands for "Beny Steinmetz Group Resources."  Beny Steinmetz is an Israeli

businessman with diamond mining and other mineral resource interests that are held through an

opaque and complex web of corporate structures.  In the Award underlying this Court's

Judgment, the LCIA tribunal found that, unbeknownst to Vale, BSGR obtained the Simandou

mining rights through bribery of Guinean government officials and deliberately hid its corrupt

activities from Vale to fraudulently induce Vale to enter into the VBG Joint Venture.[6]  In

---

[4]      See Ex. 3, Declaration of William Callewaert, In re BSG Resources Limited, No. 19-11845 (SHL), ¶ 18
(Sept. 18, 2019), ECF No. 54-1 (noting that "Steinmetz negotiated with the Republic of Guinea" and that the joint
administrators learned of "Steinmetz' negotiation and purported attempt to enter a settlement on the Debtor's
behalf" after the fact); Ex. 4, Declaration of Malcolm Cohen, In re BSG Resources Limited, No. 19-11845 (SHL)
¶ 36 (June 3, 2019), ECF No. 9 (identifying the Soros Claim and the Guinea ICSID Proceeding as BSGR's
"valuable assets").

[5]      See Ex. 5, Deposition Transcript of William Callewaert, In re BSG Resources Limited, No. 19-11845
(SHL) (Bankr. S.D.N.Y.) Tr. 124:23-125:20, June 16, 2020 ("Callewaert Dep.").

[6]      Vale S.A. v. BSG Resources Ltd., LCIA Arb. No. 142683, Award ¶¶ 1004-05, ECF No. 4-A ("LCIA
Award").

connection with the VBG Joint Venture, Vale made an up-front payment of $500 million to BSGR and invested approximately $750 million more in development.[7]   As part of his effort to cover up his bribery scheme, Steinmetz sent a "fixer" named Frederic Cilins to the United States to bribe a material witness to destroy incriminating documents.[8]   Cilins was caught on an FBI wiretap revealing that Steinmetz had sent him, pleaded guilty to obstruction of justice before the United States District Court for the Southern District of New York, and ultimately served a prison sentence for his crimes.[9]

On January 22, 2021, the Swiss Court found Steinmetz guilty of, among other crimes, paying bribes to the former President of Guinea and his fourth wife in exchange for these mining rights.   Steinmetz was sentenced to five years in prison and fined 50 million Swiss francs.[10]

BSGR is a Guernsey company wholly owned by Nysco Management Corp. ("Nysco"), a holding company incorporated in the British Virgin Islands ("BVI"), which is in turn wholly owned by the Balda Foundation ("Balda").[11]   Steinmetz and his family are the sole beneficiaries of Balda, an irrevocable trust established in the Principality of Liechtenstein whose board is chaired by Steinmetz's personal lawyer (and his defense counsel in the Swiss criminal proceedings), Marc Bonnant.[12]   Steinmetz holds himself out as a mere "advisor" to BSGR, but in

---

[7]   Id. ¶ 10.

[8]   See id. ¶ 290 (explaining that the "purpose" of Cilins' visits to the United States "was allegedly to convince Mme. Touré to destroy certain incriminating documents").

[9]   See id. ¶ 292 ("Cilins was arrested and charged with obstruction of justice in April 2013.  He pleaded guilty and was sentenced to 24 months imprisonment with three years' supervised release.")  Cilins was later convicted along with Steinmetz by the Swiss Court for his corrupt activities, infra n.13.

[10]   Ex. 1, Swiss Court Press Release, at 1.

[11]   Ex. 6, BSGR Organizational Chart, In re BSG Resources Limited, No. 19-11845 (SHL) (Bankr. S.D.N.Y.), ECF No. 5.

[12]    See LCIA Award ¶ 175.  It is no accident that Steinmetz set up the Balda Foundation as a *stiftung* foundation in Liechtenstein; this type of foundation is expressly designed to allow the founder to retain the benefit of and the effective control over his assets, while purporting to shield the assets from creditors.  See Ex. 7, Marxer & Partner, The Liechtenstein Foundation, at 5 (2010).

reality controls and operates BSGR's business for his personal benefit.  As the Swiss Court concluded, "[Steinmetz] is the effective director of CGR____ [BSGR], and the corruption activities would not have taken place without his agreement.  Once the mining rights were obtained, he sold them and made a huge profit."[13]

In anticipation of the Award, on March 6, 2018, BSGR was secretly placed in administration in Guernsey.[14]  Even though it once had more than 8,000 employees and had received a half billion dollars from Vale, BSGR claimed to have virtually no assets other than litigation claims and merely one employee in 2020,[15] its wealth of assets having been thoroughly drained by Steinmetz.[16]

## II.   The Discovery Requests to Steinmetz

On March 5, 2020, this Court granted Vale's petition for recognition and enforcement of the Award and entered judgment in favor of Vale against BSGR in the amount of $2,172,833,761.15.  ECF No. 51.  Vale has not yet been able to recover any amount from BSGR.

---

[13]     Ex. 8, P/12914/13, Judgment of the Swiss Criminal Court in Geneva (Jan. 22, 2021), at 192 ("Swiss Judgment").  While the public judgment of the Swiss Criminal Court anonymizes the individuals involved in this proceeding, it is indisputable that "Mr. C" is Steinmetz.  "Mr. A" is Frederic Cilins.  "Ms. B" is Sandra Merloni-Horemans, another Steinmetz associate.  "CGR_" is BSGR, and "Foundation V" is Balda.  The Swiss Court Press Release, which describes the case and identifies Steinmetz and Merloni-Horemans by name, refers to the same case number as the Swiss Judgment.  "CGR_" is identified as receiving a mining concession in Simandou (Id. at 15), and "Mr. C" is described as the primary beneficiary of the Lichtenstein trust "V."

[14]     Ex. 9, Am. Cohen Decl. In re BSG Resources Limited, No. 19-11845 (SHL) ¶ 4 (June 21, 2019), ECF No. 24.  ("Am. Cohen Decl.").  BSGR subsequently sought recognition of that administration as a foreign main proceeding under Chapter 15 of the U.S. Bankruptcy Code before Judge Sean H. Lane in the Bankruptcy Court of the Southern District of New York.  Recognition has not been granted.

[15]     Compare Ex. 10, BSGR, Beny Steinmetz v. FTI Consulting LLP, Lord Mark Malloch-Brown, Particulars of Claim [2013] EWHC (QB), at 3 ("[BSGR] employs over eight thousand people and has African stakeholders in South Africa, Zambia, Botswana, Tanzania, Nigeria, Sierra Leone, the Democratic Republic of Congo, and Guinea."), with Ex. 11, Deposition Transcript of Peter Harold Driver, In re BSG Resources Limited, No. 19-11845 (SHL) (Bankr. S.D.N.Y.) Tr. 116:23-117:4, June 18, 2020 ("Driver Dep.") (stating that Driver is the sole employee).

[16]     See Ex. 12, E-mail from Yossie Tchelet (Feb. 25, 2014) attaching chart authored by BSGR relating to Vale's $500 million payment (JA0139879-80).  BSGR reported receiving its payment from Vale on April 30, 2010, and on that very same day repaid a $348 million "loan" to Nysco.  See also Ex. 8, Swiss Judgment, at 197 (presenting evidence that Vale's $500 million payment to BSGR was up-streamed to Nysco).

Shortly after the issuance of the Judgment, on March 31, 2020, Vale served the Discovery

Requests on Steinmetz in aid of execution of the Judgment against BSGR.  The Discovery

Requests to Steinmetz are directly relevant to Vale's execution of its Judgment as they seek

information regarding BSGR's and Steinmetz's assets.  Steinmetz received the Discovery

Requests at his home in Arsuf, Israel by hand delivery, as well as by FedEx and email.[17]

After waiting several months for Steinmetz to respond to the Discovery Requests, on

October 9, 2020, in an effort to resolve the dispute, Vale sent a letter to Steinmetz's New York-

based counsel at Kobre & Kim LLP ("Kobre"), requesting to meet and confer on the Discovery

Requests.  Kobre responded stating that it did not represent Steinmetz in connection with the

Discovery Requests.

On October 14, 2020, Steinmetz emailed counsel for Vale stating that he was aware of

the Discovery Requests and the letter sent to Kobre.  Steinmetz asserted that he was not subject

to this Court's jurisdiction and therefore was not required to respond to the Discovery Requests.

On December 8, 2020, Vale submitted a letter to this Court requesting that it order Steinmetz to

respond to the Discovery Requests because Steinmetz is the alter ego of BSGR or, in the

alternative, that it grant Vale leave to submit supplemental briefing on this issue.  ECF No. 66.

On April 29, 2021, this Court granted Vale leave to submit supplemental briefing in support of

its request to order Steinmetz to respond to the Discovery Requests.  ECF No. 69.

## **ARGUMENT**

### I.    **Vale Is Entitled To Party Discovery From Steinmetz, BSGR's Alter Ego**

Vale indisputably has the right to obtain discovery from BSGR as its judgment debtor.  In

---

[17] ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████

federal and New York state courts, "broad post-judgment discovery in aid of execution is the norm." EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012), aff'd sub nom. Republic of Argentina v. NML Capital, Ltd., 573 U.S. 134 (2014).

The law is equally clear that Vale is entitled to post-judgment discovery in aid of execution from an alter ego of the judgment debtor. Federal Rule of Civil Procedure 69(a) provides that a judgment creditor "may obtain discovery from *any person*" in aid of execution of a judgment. Furthermore, a judgment creditor is entitled to obtain discovery from a putative alter ego of the judgment debtor where there is "*at least some demonstration* of concealed or fraudulent transfers or alter ego relationship with the judgment debtor" sufficient to warrant discovery. GMA Accessories, Inc. v. Elec. Wonderland, Inc., No. 07 CIV. 3219 PKC DF, 2012 WL 1933558, at *5 (S.D.N.Y. May 22, 2012) (citation omitted) (emphasis added). In order to obtain the requested discovery from Steinmetz, Vale need only make a *prima facie* showing of Steinmetz's alter ego relationship with the judgment debtor, BSGR, by identifying "sufficient questions as to the existence of an alter ego relationship." Trustees of New York Dist. Council of Carpenters Pension Fund et al. v. Port Parties, Ltd., No. 16 CIV. 4719 (KPF), 2018 WL 6061205, at *4 (S.D.N.Y. Nov. 20, 2018).

Courts within the Second Circuit performing an alter ego analysis under either New York state law or federal common law generally consider a non-exhaustive list of ten factors. Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991). In evaluating whether an *individual* is the alter ego of a corporation, courts have looked to the following seven of these factors: (1) the amount of business discretion displayed by the dominant individual, (2) commingling of assets or personal use of corporate funds, (3) non-arm's length transactions, (4) overlap of ownership, officers, directors, and personnel, (5) insolvency/

inadequate capitalization, (6) the absence of corporate formalities, and (7) the payment or guarantee of debts.  See Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd., 401 F. Supp. 3d 433, 440 (S.D.N.Y. 2018).  Courts examine the totality of the circumstances in assessing these factors.  In doing so, the Second Circuit has explained that "[n]o one factor is decisive," Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997), and there is no "minimum number of factors that must be satisfied" to make an alter ego finding.  Budisukma Permai SDN BHD v. N.M.K. Prods. & Agencies Lanka Private Ltd., 606 F. Supp. 2d 391, 399 (S.D.N.Y. 2009).

Here, Vale has already unearthed robust evidence of at least five factors that support an alter ego finding, well above the *prima facie* requirement to subject Steinmetz to "party" discovery at this stage: (1) Steinmetz is BSGR's "big boss", exercising unbridled discretion over every aspect of BSGR's business at all relevant times; (2) Steinmetz has drained dozens of multi-million dollar payments from BSGR for use by himself, his family, and his other businesses; (3) entities within the Steinmetz corporate empire (also referred to as the "BSG Group" companies) habitually engage in non-arm's lengths transactions, including sham deals devoid of any consideration; (4) BSGR and a number of other Steinmetz-affiliated entities have overlapping ownership, officers, directors and other personnel; and (5) BSGR was inadequately capitalized at all relevant times leading up to its voluntarily filing for administration in 2018.

  1.  Steinmetz, the "Big Boss," Exercises Control Over BSGR

For purposes of establishing an alter ego relationship, control or discretion can be demonstrated by showing that the allegedly dominating individual exercised decision-making and negotiation power on behalf of the dominated entity.  Shantou Real Lingerie, 401 F. Supp. 3d at 442-43 (piercing veil where alleged alter ego "had unfettered discretion with respect to the

corporation and its business decisions" and "exercised sole decision-making authority for the corporation").  Steinmetz has long exercised control over BSGR.

Steinmetz has managed every aspect of BSGR's business operations.  As Steinmetz's business associates have repeatedly admitted – including on secret FBI wiretaps – Steinmetz is the "big boss" and BSGR's "number 1."[18]  Steinmetz is "very involved in the financial aspects" of the company.[19]  As the former CFO of BSGR stated, Steinmetz "was the decision-maker in [BSGR]" and "he approved each of the major payments."[20]  Likewise, correspondence from 2011 reflects that Asher Avidan, then-President of BSG Resources (Guinea) Limited SARL and former President of BSGR, reported directly to Steinmetz and deferred to Steinmetz for decision-making at the executive level, including receiving direction about how to strategically communicate with Vale's CEO.[21]  Steinmetz has personally dictated the terms of BSGR's deals ranging from real estate investments to corporate acquisitions; "toward the outside world, [Steinmetz] is presented as the owner of the [BSG] group."[22]  As one example, Steinmetz dictated the terms of a potential deal with Rene Benko, an Austrian real estate developer, stating to his associate Gregg Blackstock, "I just spoke with Rene, who confirmed that on friburg each party will put 50%.  I insisted and suggested that BSGR will fund all if he prefer and he insisted that it is 50% each."[23]

---

[18]      Ex. 2, Transcript of FBI Recordings, at CGS&H pp. 134, 140 (2013); see also Ex. 8, Swiss Judgment, at 174 (citing the statement of AAU_, a former BSGR employee, indicating that Steinmetz "was the real 'boss' and that he presented himself as a consultant for 'tax schemes'").  See id. at 76.

[19]      Ex. 8, Swiss Judgment, at 53.

[20]      Id. at 174.  "AX_" is identified as the CFO of [BSGR].  Id. at 173.

[21]      Ex. 13, E-mail from Beny Steinmetz to Asher Avidan (May 9, 2011) (BSGR-LCIA-0002338).

[22]      Ex. 8, Swiss Judgment, at 172-73.

[23]      Ex. 14, Steinmetz BlackBerry Extraction Report, Message from Beny Steinmetz to Gregg Blackstock (May 8, 2013) (BSGR_LCIA_0023693).

Indeed, Steinmetz has served as the lead negotiator and decision-maker on many of BSGR's most significant deals, clear indicia of his alter ego relationship with BSGR.  See Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC, No. 07 CV 6665 (HB), 2009 WL 1803458, at *17 (S.D.N.Y. June 23, 2009), aff'd, 402 F. App'x 623 (2d Cir. 2010) (control of the dominated business was "undeniably clear" where alleged dominating company's owner negotiated with the relevant parties and attempted to "dictate the terms" of an agreement).  In his witness statement from the LCIA arbitration proceedings, Steinmetz admits that "[n]egotiating and getting deals done is one of the [areas where I am able to provide real value for the BSG group and I accordingly played a role in these negotiations with Vale."[24]  Steinmetz himself admitted that he had ultimate approval over entering into the VBG Joint Venture with Vale.[25]

Among the strongest evidence that Steinmetz is BSGR's alter ego is that it was Steinmetz who engaged the Republic of Guinea in early 2019 in negotiations to settle BSGR's arbitration claim against that sovereign before the International Centre of Settlement Investment Disputes (the "ICSID Settlement").  Steinmetz negotiated the settlement directly with the President of Guinea, Alpha Condé,[26] "holding himself out as BSG," and negotiating the deal with, as Judge Lane concluded, clear "apparent authority to anybody who's talking to him, including the – an independent sovereign country."[27]  Despite having the exclusive authority over BSGR's

---

[24]     Ex. 15, Steinmetz Witness Statement, LCIA Arb. No. 142683 ¶ 71, June 29, 2015.

[25]     Ex. 15, Id. ¶¶ 69-78.

[26]     Ex. 16, E-mail from M. Cohen to G. McGregor (Feb. 9, 2019), at 1 (JA0145745) ("Barnett advised that there was a possibility of a settlement of the ICSID claim as an approach had been made to Steinmetz from Guinea through Sarkozy who had met Steinmetz recently in Madagascar. [ Sarkozy knows Conde the Guinea president and Steinmetz]"); see also Ex. 17, Quand Nicolas Sarkozy joue les intermédiaires d'affaires, Le Monde, Aug. 23, 2019, at 2 (quoting the President of Guinea, Alpha Condé, as explaining that the negotiations began following '"several months"' of '"insiste[nce]"' by Steinmetz, and that President Condé personally met with Steinmetz in Conakry to negotiate the deal following '"several confidential meetings").

[27]     In re BSG Resources Limited, No. 19-11845 (SHL), Oct. 3, 2019 Hr'g Tr. at 27:11-19.  Judge Lane noted that even if the settlement agreements couldn't ultimately be "approved without Court approval in Guernsey and that's the foreign administrators' job, . . . [t]hat doesn't change the fact that he's [Steinmetz] involved up to his

administration, the joint administrators had no knowledge of Steinmetz's negotiations until they were summoned to Paris and presented with a fully negotiated, pre-packaged term sheet for approval.[28]  Rather, on February 5, 2019, former joint administrator Malcolm Cohen was advised by Steinmetz's personal attorney, David Barnett, of a possible settlement of BSGR's ICSID claim, which had already been negotiated by Steinmetz.[29]  Cohen was ultimately presented with a fully developed settlement structure, involving a new entity named Niron PLC ("Niron") and "BS Co." (doubtless standing for Beny Steinmetz Company) that would obtain BSGR's interest in the disputed mining rights.[30]  Steinmetz's unilateral negotiations led the government of Guinea to largely ignore the joint administrators' subsequent efforts to discuss any agreement because the Guinean government understood itself to have made a deal *with Steinmetz*.[31]

There can thus be no question of Steinmetz's control over BSGR.  Indeed, Steinmetz has admitted as much under oath, and in statements to the press:

- In Steinmetz's testimony to Swiss prosecutors in the course of Swiss criminal proceedings, Steinmetz described himself as "control[ling] at least partially" the

---

eyeballs in the business of BSG."  Id. at 16:10-15.  Acknowledging this, Steinmetz himself gave an interview following the announcement of the settlement, in which he referred to the company's actions in the first person – "'*We* were enemies.  Now *we* are friends and partners with the Guinean government'" – and addressed BSGR's future plans for developing the concession.  Ex. 18, Franz Wild and Thomas Biesheuvel, Mining Billionaire Ends Bitter Guinea Dispute After Months of Secret Negotiations, Bloomberg, Feb. 25, 2019, at 2 (emphasis added).

[28]     See Ex. 19, Vale S.A. v. BSG Resources Limited (in Administration), Part 71 Examination of Dag Cramer, Tr. 22:4-8, Nov. 17, 2020 ("Cramer Tr.") (stating that the joint administrators had not been made aware of or approved of Steinmetz's role in the negotiation); Ex. 20, Callewaert Dep. 234:4-235:9, June 17, 2020 (stating that he was "not . . . aware of" Steinmetz receiving any authorization from the joint administrators to negotiate with the government of Guinea, nor was he aware of Steinmetz telling the joint administrators that he was planning to negotiate with the government of Guinea).

[29]     Ex. 16, E-mail from M. Cohen to G. McGregor (Feb. 9, 2019) (JA0145745).

[30]     The proposed structure was attached to Cohen's email.  Id. (JA0145745-48).

[31]     As another example, Steinmetz also appears to have negotiated directly with Forte Oil for the sale of Amperion shares (a subsidiary of BSGR) during the Guernsey administration.  In an email from Akinleye Olagbende, General Counsel and Company Secretariat of Forte Oil to Peter Driver, a director of BSGR, Olagende writes, "Mr. Otedola [the principal behind Forte Oil] and Mr. Steinmetz will be speaking on this matter and we will await the outcome of their discussion to know the next steps."  See Ex. 21, E-mail from Akinleye Olagbende to Peter Driver (July 16, 2018) (JA0127663-65).

"*Beny Steinmetz Group* (BSG) and *Onyx Financial Advisors SA*."[32]

- In one of Steinmetz's few interviews with the media, he described BSGR's entry into Guinea as his own decision, and the Guinean mining concessions as belonging to him.  In discussing Guinea's investigation of BSGR, Steinmetz equated his interests with BSGR's, declaring, "'We are businessmen. We are fighters, we are at war and we will win. We will not give these concessions back.'"[33]

- BSGR's own documents report that Mr. Steinmetz is the "owner" of BSGR.[34]

These facts have led multiple courts and tribunals considering the relationship between Steinmetz and BSGR to all reach the same conclusion: Beny Steinmetz dominates BSGR. Foremost among them is the Swiss Court, which less than four months ago determined that Steinmetz, "as the actual head of BSGR" was not just the "main beneficiary of the operation," but the mastermind of BSGR's bribery scheme, such that "[a]ll major decisions were made with his approval." [35]  He "describes himself as the ambassador of the group that bears his name and indicates that he introduces himself under this name, thus implying to his interlocutors that he is the head thereof."[36]  Judge Lane, who presides over BSGR's Chapter 15 Proceedings in this district, concluded that Steinmetz is "the guy" for BSGR, which Judge Lane noted "is, after all, named for [Steinmetz]."[37]

---

[32]   Ex. 22, Procès-verbal of B. Steinmetz, at CGS&H p. 1 (Oct. 18, 2013).

[33]   Ex. 23, Tsach Shpitsen, Beny Steinmetz Reveals All Cards, YNET News, June 30, 2013, at 6.

[34]   See Ex. 24, BSGR Rapport du Premier Trimestre (Report for the First Quarter), Apr. 2, 2008, at 41 ("In the context of the increasing activity of the BSGR company, the *owner* Beny STEINMETZ made a work visit to Guinea on February 24 and 25, 2008.") (emphasis added).

[35]   See Ex. 1, Swiss Court Press Release, at 2; see also Ex. 8, Swiss Judgment, at 171-74.

[36]   See Ex. 8, Swiss Judgment at 172.  See also id. at 33 ("[Merloni-Horemans] first proposed the company AAR_, before AX_ instructed her to use AAS_INVESTMENTS LTD BVI COMPANY (e-mail of January 16, 2006) and then to change the name to [BSG GUINEA] so that the *brand name* of [BS] appears ("*it is critical that the name* [BSG] *appears*")).

[37]   In re BSG Resources Limited, No. 19-11845 (SHL), Oct. 3, 2019 Hr'g Tr. at 14:3-11.  See also Order Granting Ex Parte Application, In re Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. for an Order Pursuant to 28 U.S.C. § 1782, No. 1:20-mc-00199-JGK-OTW, ECF No. 45, at 2 (describing Steinmetz as the "founder and principal" of BSG); LCIA Award ¶¶ 700, 712 (concluding Steinmetz was a "senior member[] of BSGR's management.").

-12-

2.   Steinmetz Siphoned BSGR's Corporate Funds for His Personal Benefit

In assessing the alter ego relationship, courts also consider whether there is intermingling of personal and corporate funds, and evaluate whether defendants are "shuttling their own funds in and out without regard to the corporation's form."  Wm. Passalacqua Builders, Inc., 933 F.2d at 138.  This occurs where defendants commingle or transfer corporate funds for their own personal use or to benefit members of their family.  See, e.g., Shantou Real Lingerie, 401 F. Supp. 3d at 433, 441 ("Bank records indicate that these transfers included payments for personal expenses, including, but not limited to … payments to individuals with the same last name as [defendant alter ego] Mr. Nissim"); Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp., 724 F. Supp. 2d 308, 319 (E.D.N.Y. 2010) (finding an alter ego relationship where "[d]efendant took funds out of the corporation for personal use on a regular basis," using "the corporation to support a remarkable number of relatives who did little or no work for the corporation and to provide extraordinarily high 'interest payments' to himself and his friends and family").

Vale has already adduced substantial evidence that Steinmetz has used BSGR and its parent and affiliate entities as conduits to siphon off corporate funds for his own personal benefit. For example, the vast majority of the $500 million payment that BSGR fraudulently obtained from Vale was up-streamed immediately to Nysco, a corporation owned by Steinmetz's Liechtenstein foundation, Balda.[38]  A substantial portion of the funds were paid to Balda, which Steinmetz in turn used as his personal ATM, regularly taking out dozens of multi-million dollar payments for use by himself, his family, and his businesses.[39]  This included payments for

---

[38]     Ex. 12, E-mail from Yossie Tchelet (Feb. 25, 2014) attaching chart authored by BSGR relating to Vale's $500 million payment (JA0139879-80).  BSGR reported receiving its payment from Vale on April 30, 2010, and on that very same day repaid a $348 million "loan" to Nysco.

[39]     See Ex. 8, Swiss Judgment, at 19-20 (listing distribution from Balda to Steinmetz for housing costs and living expenses); id. at 171-72 (describing the distributions).

Steinmetz's and his family's housing and living expenses and to fund Steinmetz's real estate company, Scorpio Real Estate Ltd ("Scorpio"); some of the remainder was used to reward Steinmetz's close associates and related companies with bonuses.[40]  This "high degree of intermingling among the various corporate entities" in the Steinmetz empire is persuasive evidence of an alter ego relationship.  See Wm. Passalacqua Builders, 933 F.2d at 140 (finding evidence of siphoning where alleged alter ego "shuffled funds. . . with the source of the funds chosen based on which of their corporations had sufficient funds at the time, rather than on any demonstrated business purpose of the corporation that was the source of the funds").

Entirely consistent with this, evidence presented by prosecutors in the Swiss criminal proceeding confirms that after Vale's $500 million payment to BSGR was up-streamed to Nysco, Balda directed distributions of $94 million in 2010, $41 million in 2011, and $15 million in 2012 directly to Scorpio, of which Steinmetz is the sole shareholder.[41]  On this basis, the Swiss Court concluded:  "Therefore, [Steinmetz] has enriched himself directly through a legal transaction obtained through corruption in the amount of at least USD 150 million."[42]

Steinmetz furthermore used BSGR corporate funds, and specifically the proceeds of Vale's $500 million payment, to invest in his real estate projects in Manhattan.  Indeed, on May

---

[40]    See Ex. 25, Excerpts of Balda Foundation Documents, at CGS&H p. 6 (Oct. 15, 2010) (requesting a distribution from Balda "to support me with my housing cost and living expenses in general"); id. at CGS&H p. 8 (granting Steinmetz a $1 million distribution pursuant to his October 15, 2010 request); Ex. 26, Excerpt of Balda Foundation Resolutions, at CGS&H p. 52 (Mar. 22, 2011) (Steinmetz requesting a $20 million distribution from Balda to "support me to assist Scorpio Real Estate (an Israeli company under my private ownership) with its commitments"); id. at CGS&H p. 51 (granting Steinmetz a $20 million distribution pursuant to his March 22, 2011 request).  See also Ex. 12, E-mail from Yossie Tchelet (Feb. 25, 2014) attaching chart authored by BSGR relating to Vale's $500 million payment (JA0139879-80).

[41]    See Ex. 8, Swiss Judgment, at 197 ("Of this amount, distributions of USD 94 million in 2010, USD 41 million in 2011, and USD 15 million in 2012 were made directly by the V_____ foundation to AB_____ REAL ESTATE, of which Mr. C_____ is the sole shareholder.  It is specified that these distributions are distinct from those made, in the amount of a few million per year in total, for Mr. C_____'s current expenses.").  AB__ REAL ESTATE" refers to Scorpio.

[42]    Id.

5, 2010, mere days after the VBG Joint Venture closed, Steinmetz's nephew, Shimon

Menachem, copying Steinmetz, wrote to Michael Fuchs, the principal of the prominent

Manhattan-based real estate investment firm RFR Realty, that "Benny closed on Friday a mega

deal with Vale and has now a big appetite for new investments."[43]  Record evidence shows that

Steinmetz subsequently did, in fact, make investments in New York real estate.[44]

Moreover, the ultimate beneficiaries of BSG Real Estate ("BSG RE") investments, the

real estate arm of the Steinmetz empire, are Steinmetz and his family members.  Steinmetz's

investment vehicles are structured such that members of Steinmetz's family are the ultimate

beneficiaries, thereby shuttling BSGR's funds into the pockets of Steinmetz and his relatives.[45]

████████████████████████████████████████████████████████

████████████████████████████████████  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

3.  Steinmetz and Entities Within the Steinmetz Corporate Empire Routinely Engage
    in Non-Arm's Length Transactions

Whether an entity and its alleged alter ego observe corporate formalities and engage in

---

[43]     Ex. 27, E-mail from Shimon Menachem to Michael Fuchs (May 5, 2010) (RFR0004309).  Menachem
attaches the press release announcing the VBG Joint Venture.

[44]     ████████████████████████████████████████████████████████████
████████████  Media reports have also described Steinmetz as a "known backer" of HFZ investments in New
York real estate.  See, e.g., Ex. 28, Beny Steinmetz, Said to Be a Backer of HFZ, Is Under House Arrest Due to
Bribery Probe, Real Deal (Dec. 20, 2016), https://therealdeal.com/2016/12/20/beny-steinmetz-said-to-be-a-backer-
of-hfz-capital-is-under-house-arrest-due-to-bribery-probe/.

[45]     See Ex. 29, E-mail from Johan Van Den Braber to Hans Meijer (May 11, 2016) attaching BSG Real Estate
– BSG Resources Chart 1 (May 1, 2015) (JA0013035-36).

[46]     Ex. 30, Balda Meeting Minutes, Sept. 21, 2009 (BSGR_LCIA_2_0037307); Ex. 31, 2008 Tarpley Belnord
Org Chart (BSGR_LCIA_2_0040240).

[47]     ████████████████████████████████████████████████

arm's length transactions is relevant to the Court's alter ego analysis.  See Wm. Passalacqua

Builders, 933 F.2d at 139; Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc., 39 F. Supp. 3d

516, 524 (S.D.N.Y. 2014).  Steinmetz and his entities routinely engage in non-arm's length

transactions, as demonstrated below by two examples of such transactions that occurred under

the noses of BSGR's former joint administrators at BDO.

First, the attempted ICSID Settlement between BSGR and the Republic of Guinea

illustrates a recent non-arm's length deal negotiated by Steinmetz on behalf of BSGR, but

ultimately for Steinmetz's benefit.  According to BSGR's director and close Steinmetz

confidante Dag Cramer,[48] BSGR's ICSID claim challenging the Republic of Guinea's revocation

of BSGR's mining rights is one of BSGR's "most valuable assets" in the administration.[49]  Yet

the proposed settlement that Steinmetz secretly negotiated provided Niron, an entirely new

entity, with an 80-90% interest in the "New Guinean Company" and "BS Co," with a 10-20%

interest, while simultaneously leaving BSGR with a minimal 1% revenue share from iron ore

sales.[50]  Even Cramer, Steinmetz's right hand man, stated that he did not believe the ICSID

Settlement "was a deal or is a deal that anybody would accept" for BSGR,[51] that the proposed

1% revenue share to BSGR was aggressively low, and that he would have been "gunning for"

anything between 10-20% revenue share.[52]  Not only did Steinmetz thus negotiate a deal to

divert most of the value to him and his associates at Niron, but he included numerous personal

benefits in the settlement agreement he negotiated, such as Guinea's commitment to cease

---

[48]     Cramer has also served as an officer or director for more than 15 BSGR and Steinmetz-related entities.  See
infra n.62.

[49]     Ex. 19, Cramer Tr. 18:5-8.

[50]     Ex. 16, E-mail from M. Cohen to G. McGregor (Feb. 9, 2019) attaching proposed structure (JA0145745).

[51]     Ex. 19, Cramer Tr. 25:1-26:5.

[52]     Id. Tr. 29:4-19; 33:13-23.

cooperation with the Swiss criminal proceedings against him.[53]

The second example also shows how other assets have been siphoned from BSGR to Steinmetz's family members through transactions apparently devoid of any consideration. BSGR owns preference shares in a Singaporean company called Roslindale Pte Ltd ("Roslindale"), whose subsidiary, Nammax, holds valuable exploration rights for offshore oil located between Israel and Cyprus.[54]  An entity named "Wandering Star," owned by Steinmetz's children, owned 20 million ordinary shares.[55]  In August 2018, five months into BSGR's Guernsey administration, Roslindale suddenly relinquished a majority stake in its primary asset, Nammax,[56] in favor of Steinmetz's daughter, Merav Steinmetz.[57]  As a result, Merav Steinmetz replaced BSGR (through Roslindale) as the majority owner of Nammax.[58]  There is no indication that any adequate consideration was provided by Steinmetz's daughter in exchange for the issuance of shares, nor does it appear that it found its way to BSGR.[59]  These circumstances led even Cramer to remark that "the strong relationship with the management and shareholders of

---

[53]    Ex. 32, Transaction Agreement between the Republic of Guinea and BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL (together "BSGR") ¶ 3.2, Mar. 20, 2019 (JA0106655) ("The Republic of Guinea waives its status as complaining party as part of the criminal proceedings pending in Switzerland concerning the activities of BSGR, and waives pursuing any other actions with the object of pursuing civil claims as part of the criminal or civil proceedings concerning the activities of BSGR in the Republic of Guinea, wherever in the world such proceeding may have been initiated.").

[54]     Ex. 33, Summary of meeting/call with Doron Levy, May 30, 2019 (JA0128588) (noting that Nammax "holds the exploration rights . . . located in the Mediterranean Sea.").

[55]    Ex. 34, Roslindale PTE. Ltd. Directors' Resolutions in Writing Pursuant to Article 104(A) of the Company's Articles of Association (JA0056071 at JA0056076); Ex. 33, Summary of meeting/call with Doron Levy, May 30, 2019) (JA0128588) (stating that "Roslindale's ordinary shares are held by the children of Benny Steinmetz ("BS") via [Doron Levy] as trustee").

[56]    Ex. 19, Cramer Tr. 159:19-160:4.

[57]    Ex. 35, Nammax Israeli Corporate Records.

[58]    Ex. 35, Nammax Israeli Corporate Records; Ex. 33, Summary of meeting/call with Doron Levy, May 30, 2019) (JA0128588) (noting that Nammax "is part owned by Beny Steinmetz's daughter").

[59]    As of March 5, 2020, BSGR had not received any dividend from Roslindale, and the Joint Administrators could not determine whether Roslindale had "any realisable value" to BSGR.  Ex. 36, BSG Resources Limited (in administration) Fourth Progress Report to Creditors, March 5, 2020, at 10 ("Fourth Progress Report").

Roslindale/Nammax" is "[c]learly, the hand of Mr Steinmetz."[60]

> 4. Steinmetz's Trusted Associates Serve as Officers and Directors of Numerous Entities Throughout the BSG Corporate Empire

Steinmetz's influence across BSG entities, including BSGR, has been facilitated by a group of trusted officers and directors occupying various positions within his web of companies. In assessing whether an entity is the alter ego of an individual or entity, courts consider the shared ownership, officers, directors and other personnel, including office staff, of the dominant and dominating entities. See Wm. Passalacqua Builders, Inc., 933 F.2d at 140. Currently, BSGR has only two directors: Dag Cramer and Peter Driver.[61] Since joining Steinmetz in 2003, Cramer has served as an officer and/or director for more than 15 of his entities.[62] Peter Driver likewise has been an officer and/or director of more than 20 Steinmetz entities.[63] Gregg Blackstock, while not occupying a position with BSGR, has served as an officer and/or director of at least a dozen Steinmetz entities, including several subsidiaries of BSGR as well as Steinmetz real estate ventures believed to be funded by Steinmetz's ill-gotten gains from defrauding Vale.[64]

---

[60]   Ex. 19, Cramer Tr. at 156:20-157:5.

[61]   See Ex. 11, Driver Dep. 38:23-39:5.

[62]   Cramer's current and former officer positions and directorships of Steinmetz entities include Actium Management Services (UK) Limited, Amperion Power Distribution Company Limited, Bateman Engineering (Luxembourg) BV, Benv NV, Boroma Ltd, BSG Capital Markets PCC Limited, BSG Energy Ltd, BSG Real Estate Ltd, Gabriel Resources Ltd, Geregu Power Plc, Koidu Limited, Lubel Coal Company (UK) Ltd, Norn Verdandi Limited, Onyx Financial Advisors (UK) Limited, and West African Power Limited.

[63]   Driver's current and former officer positions and directorships of Steinmetz entities include BF Capital Limited, BF Global Limited, Boroma Ltd, BSG Capital Markets PCC Limited, BSG Energy Limited, BSG Engineering Limited, BSG Real Estate Ltd, BSG Resources (Guinea) Limited, Conatus Limited, Five Mounts Properties Limited, FMP (Setai) Limited, Kensdale India Global Services Private Limited, Koidu Limited, Lauder International Corp., Octea Diamonds Ltd, Octea Limited, Octea Mining Limited, Perla Limited, Thalassa Holdings Limited, TMI Limited, and West African Power Limited.

[64]   Blackstock's current and former officer positions and directorships of Steinmetz entities include 500 NMA Acquisition Co LLC, Alternex Limited, Amperion Power Distribution Company Ltd, Axara Global Ltd, Barkston Advisors GmbH, Bedrock Private Equity Limited, Bedrock Real Estate GP Sarl, Benv NV, BRPE TLG Holdings Sarl, BSG Real Estate Ltd, Celenor Ltd, Cologne Holdings Anstalt, Extro AG, FBN Bank DRC SA, GBASL Limited,

-18-

Merloni-Horemans,[65] Steinmetz's convicted co-defendant in the Swiss proceedings,

occupied a position at the center of the structure of the group, having served Steinmetz's family

since the age of 19, including as corporate secretary to the Balda Foundation.[66]  The Swiss Court

concluded that Merloni-Horemans "is responsible for the entire corporate and administrative

structure of the group."[67]  Notably, Merloni-Horemans enabled routine non-arm's length

intercompany transactions within the Steinmetz structure, where she often served as signatory on

both sides of a transaction.[68]

The list of overlapping officers and directors acting for Steinmetz within the BSG

superstructure is extensive, and examples provided to this Court are exemplary, not exhaustive.[69]

Evidence that Vale has adduced suggests that many of these individuals were compensated

directly from the $500 million procured by BSGR in 2010 as a result of Steinmetz's and BSGR's

fraud against Vale, including at least $3 million for Cramer.[70]

---

Highstreet German Real Estate BV, Highstreet Real Estate (Netherlands) BV, International Sports Holding GmbH, Invel Real Estate Lennon 2, Kaufhaus Immobilien Holding A Sarl, Kaufhaus Immobilien Holding B Sarl, KHF Kaiser-Joseph Strasse 165 Beteiligung Sarl, Marinella Resort Italy Srl, Onyx Financial Advisors (UK) Limited, Perfectus 500 NMA Corp, Perfectus Real Estate Corp., Spark Power Generation Limited, the KaDeWe Group Holding GmbH, and West African Power Limited.

[65]     Merloni-Horemans's former positions included director or officer of BSGR, Octea Limited, Koidu Limited, BSG Capital Markets PCC Limited, Onyx Resources Limited, and Invicta Advisory S.A., among others.  Merloni-Horemans was convicted of bribery and corruption alongside Steinmetz, and sentenced to two years in prison and a fine of 50,000 Swiss francs by the Swiss.

[66]     Ex. 8, Swiss Judgment, at 163-64. The Swiss Court also highlighted Merloni-Horemans's role in several corporate restructurings for BSGR entities.  Id. at 166.

[67]     Id. at 164.

[68]     See, e.g., Ex. 37, Amendment No. 1 to the Loan Agreement between BSG Capital Markets Limited as Lender and BSG Resources Limited as Borrower, dated effective Jan. 27, 2015 (JA0005087).  All twenty two amendments to the loan agreement were signed by Merloni-Horemans or Peter Driver, on behalf of both entities.  Id.

[69]     As further examples, Gustaf Bodin and Karl Paul Samuel Edoh have each served as directors for no fewer than fourteen Steinmetz entities.  See Ex. 38, BSG Resources Limited Schedule of Directors (JA0062118).

[70]     See Ex. 12, E-mail from Yossie Tchelet (Feb. 25, 2014) attaching chart authored by BSGR relating to Vale's $500 million payment (noting payment to "Employee Remuneration") (JA0139879-80).

-19-

Steinmetz's intricate structure designed to siphon any remaining value from BSGR can further be seen through the ever-present appearances of other individuals like Marcos Camhis and his close associate Sabby Mionis in seemingly disparate corners of the Steinmetz corporate empire.  Camhis is a board director and shareholder of Niron, the "third-party" entity positioned to receive the benefits of the Steinmetz-driven ICSID Settlement of BSGR's claims.[71]  Camhis is also director of Global Special Opportunities Limited ("GSOL"),[72] a Bahamas-based fund, which owns Star West Investments Limited, an alleged secured creditor of BSGR's wholly-owned Sierra Leonean diamond mining subsidiary, Octea Limited.[73]  Mionis is funding BSGR's lawsuit (and negotiated to receive 50% of any recovery and control certain actions) against George Soros and the Open Society Foundation pending in the Southern District of New York before Judge Keenan:[74] the funder, Litigation Solutions Limited ("LSL"),[75] is not known to have ever funded any other litigation or arbitration, and its principal and director is Mionis,[76] who with Camhis was a director of Capital Management Advisors (Geneva) SA.[77]  LSL also "coincidentally" shares two directors with Camhis's GSOL subsidiary Star West, Nicholas Hoskins and Maxwell Quin.[78]

---

[71]     See Ex. 39, Niron Metals, Marcos Camhis Member of the Board of Niron Metals Plc, available at http://www.nironmetals.com/team/marcos-camhis/, last visited May 14, 2021.

[72]     Ex. 40, Register of Directors and Officers of Global Special Opportunities Ltd. (GSOL), June 22, 2017.

[73]     Ex. 36, Fourth Progress Report at 12.

[74]     BSG Resources Limited v. Soros, Case No. 17-cv-02726-JFK-OTW.

[75]     Ex. 9, Am. Cohen Decl., ¶¶ 33-34, ECF No. 24.

[76]     Ex. 41, Register of Companies Government of Bermuda, Litigation Solutions Limited.

[77]     Ex. 42, Capital Management Advisors Global Hedge PCC Limited Quarterly Investor Call slide deck (Feb. 18, 2009) (Mionis and Camhis both had "signing capability").

[78]     Compare Ex. 41, Register of Companies Government of Bermuda, Litigation Solutions Limited, https://www.gov.bm/51960/litigation-solutions-limited-nicholas-john-hoskins-51960, with Ex. 43, Register of Companies Government of Bermuda, Star West Investments Limited, https://www.gov.bm/51720/star-westinvestments-limited-maxwell-lh-quin-51720.

5.   <u>BSGR is Insolvent and Undercapitalized</u>

Although it is not considered sufficient grounds to demonstrate a disregard for the corporate form in itself, courts will consider a company's undercapitalization as part of their alter ego analysis.  A corporation will generally be found to be undercapitalized "when its liabilities exceed its assets."  <u>Cardell Fin. Corp. v. Suchodolski Assocs., Inc.</u>, No. 09 Civ. 6148 (VM) (MHD), 2012 WL 12932049, at *22 (S.D.N.Y. July 17, 2012).  "Insolvency may also be weighed as evidence that a corporation was inadequately capitalized."  <u>Shantou Real Lingerie</u>, 401 F. Supp. 3d at 44; <u>Atateks Foreign Trade Ltd.</u>, 402 F. App'x at 626 (noting that a factfinder may "consider insolvency in determining whether to pierce the corporate veil").

Shortly after BSGR transacted with Vale in 2010 and procured its $500 million payment, BSGR described itself in a court filing as "an international diversified mining company with operations in fourteen countries" and over 8,000 employees.[79]  Since then, and notwithstanding the substantial influx of capital from Vale, Steinmetz's siphoning of funds from and dismantling of BSGR's business left it nearly asset-less and with only one solitary employee.[80]  Once Steinmetz's draining of BSGR was nearly complete, and anticipating Vale's Award, BSGR entered into voluntary administration on March 6, 2018.[81]  Cramer was blunt about BSGR's reasons: "This is drawing up the drawbridge, filling up the moat, putting some sharks in the moat, to make sure we can stay the distance on both the arbitration and litigation that we have, even if there are adverse awards or developments that would normally prevent us from doing

---

[79]      Ex. 10, <u>See</u> <u>BSGR, Beny Steinmetz v. FTI Consulting LLP, Lord Mark Malloch-Brown</u>, Particulars of Claim [2013] EWHC (QB) at 3.

[80]      Ex. 11, Driver Dep. 116:23-117:5.

[81]      <u>See</u> Ex. 44, Court Order, In Camera, In the Matter of BSGR Resources Limited and Part XXI of the Companies (Guernsey) Law, 2008, Mar. 6, 2018 (JA0101224); Ex. 45, Transcript of Proceedings in the Royal Court of Guernsey (In Camera) (JA0135204).  <u>See also</u> Ex. 46, Affidavit of Peter Harold Driver, Feb. 27, 2018, ¶ 45 (JA0047764) ("The inclusion of the contingent liability, in respect of the Vale claim would leave BSGR with a deficiency of assets of at least $368 million and it is thus clearly insolvent on a balance sheet basis.").

this."[82]

## II.    This Court Has Personal Jurisdiction Over Steinmetz

Steinmetz has asserted via email to Vale's counsel that he is not subject to this Court's jurisdiction.  However, given both his status as BSGR's alter ego and his various ties to this district, this Court has personal jurisdiction over Steinmetz.

### 1.    Steinmetz is an Alter Ego of BSGR and This Court Therefore Has Personal Jurisdiction Over Him

This Court unquestionably has personal jurisdiction over the judgment debtor, BSGR, which did not contest this Court's jurisdiction in this action leading to entry of the underlying Judgment.  For the reasons set forth above, Vale has made a *prima facie* showing of an alter ego relationship between Steinmetz and BSGR.  Accordingly, this Court has jurisdiction over Steinmetz since a court may exercise jurisdiction over the alter ego of a judgment debtor provided that jurisdiction over the judgment debtor exists.  See Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC, No. 20-CV-2427 (RA), 2021 WL 1226873, at *5 (S.D.N.Y. Mar. 31, 2021) (finding that "allegations that [defendant] consented to litigating in this Court . . . establish a prima facie showing of jurisdiction over its alter ego . . ."); SEC v. Montle, 65 F. App'x 749, 652 (2d Cir. 2003) ("If personal jurisdiction exists over an individual, personal jurisdiction exists also over his or her corporate alter ego.").

The standard for determining an alter ego relationship for *jurisdictional* purposes is essentially the same as previously described to obtain discovery from a putative alter ego – the party asserting jurisdiction must simply make a *prima facie* showing of an alter ego relationship. See GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d 308, 319 (S.D.N.Y.

---

[82]        Ex. 47, Thomas Biesheuvel, Beny Steinmetz Puts Mining Company BSGR Into Administration, Bloomberg (Mar. 7, 2018).

2009) ("Establishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability.") (citation omitted).  That is, for jurisdictional purposes, "the question is only whether the allegedly controlled entity was a shell for the allegedly controlling party."  Id.

>   2.   This Court Has Personal Jurisdiction Over Steinmetz Under New York's Long-
>        Arm Statute

Additional bases for jurisdiction also exist under New York's long arm statute, N.Y. C.P.L.R. § 302(a)(1), because (1) Steinmetz is a "non-domiciliary" who has purposefully availed himself of the "privilege[] of conducting activities within New York" through, *inter alia*, his ongoing business relationships with various New York real estate development and investment companies, (2) this enforcement action "arises from" these business activities and (3) the exercise of personal jurisdiction over him comports with due process.  House of Diamonds v. Borgioni, LLC, 737 F. Supp. 2d 162, 166 (S.D.N.Y. 2010) ("It is not necessary that the defendant be physically present in New York for jurisdiction to be proper . . .").

*First*, New York courts have found that actions "such as telephone, fax, and email communications suffice for jurisdictional purposes" under New York's long-arm statute § 302 (a)(1).  Id. (citing Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71 (2006).  Courts in this district have also found that a defendant "who purposefully created and maintained a continuous relationship with a New York corporation, even in the absence of any further business contacts with the state, was 'transacting business' within the meaning of C.P.L.R. § 302(a)(1) . . . A relationship as brief as nine months may be sufficiently continuous for jurisdictional purposes."  Id. at 166.

Steinmetz has repeatedly and purposefully conducted business in New York and availed himself of its forum.  For example, since 2003, Steinmetz has maintained continuous

communications with New York real estate corporation HFZ Capital Group LLC ("HFZ") related to investments in real estate in New York.[83]  In 2010, Steinmetz entered into a formal business relationship with HFZ through his ownership of BSG Real Estate and the creation of a BSG-HFZ joint venture ("BSG-HFZ JV").  Since then, the joint venture has purchased at least ███ ███ marquee properties in Manhattan[84] and Steinmetz has had frequent correspondence via text and email with HFZ's principals about managing BSG-HFZ JV assets and real estate investment opportunities in New York.[85]  By purposefully creating a continuous relationship with and purchasing properties in this district, Steinmetz has "availed himself of the benefits and privileges of transacting business in New York and is therefore subject to jurisdiction under N.Y. C.P.L.R. § 302(a)(1)." Id. at 167.

*Second*, Steinmetz's activities in New York are substantially related to Vale's enforcement of the Award on Steinmetz's assets, including his interest in New York real estate. "The 'arising from' prong of section 302(a)(1) does not require a causal link, rather it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." Ingenito v. Riri USA, Inc., 89 F. Supp. 3d 462, 477 (E.D.N.Y. 2015).  Steinmetz's business activity in this district, specifically with New York real estate corporations, is precisely the nexus which permits Vale to enforce the Award on Steinmetz's

---

[83]     See, e.g., Ex. 48, Balda Resolution, Sept. 25, 2003 (BSGR_LCIA_2_0039225) (proposed acquisition on Park Avenue in New York, NY); Ex. 49, Balda Meeting Minutes at 1, Oct. 8, 2003 (BSGR_LCIA_2_0039217) ("The transaction is scheduled to close within 48 hours and Mr B. Steinmetz the investment advisor of Balda Foundation is extremely anxious that this investment opportunity should not be missed.").

[84]     ████████████████████████████████████████████████████████████████████████████

[85]     See Ex. 50, E-mail from Chris Papachristophorou to Beny Steinmetz, at CGS&H p. 4 (Jan. 25, 2013) (BSGR_LCIA_0023515) ("we need to add the new venture and [its] strategy and talk a bit more about the HFZ JV and future strategy"); Ex. 51, Email from Luv Shah to B. Steinmetz at CGS&H p. 5, Apr. 11, 2013 (BSGR_LCIA_0023556) (the "BSG-HFZ JV Job Posting") (referring to "BSG Real Estate in its newly formed joint venture with HFZ Capital, a prominent Manhattan-focused residential / mixed-use developer.").

assets in this district.  Id. ("[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted supports a finding of jurisdiction. . .") (internal citations omitted).  The exercise of personal jurisdiction over Steinmetz is reasonable under the particular circumstances of this case. "Where the court finds that there are sufficient minimum contacts to subject a defendant to personal jurisdiction, it is the defendant's burden to demonstrate that jurisdiction would be unreasonable under the particular facts of the case."  House of Diamonds, 737 F. Supp. 2d at 168.  Steinmetz has found this district sufficiently convenient to maintain business relationships and to initiate several proceedings, including some for which Vale is a respondent.[86]

Alternatively, this Court has jurisdiction over Steinmetz under Fed. R. Civ. P. 4(k)(2) because this enforcement action and the Discovery Requests arise under federal law and – if Steinmetz is not subject to jurisdiction in any state's courts of general jurisdiction – exercising jurisdiction would be consistent with the United States Constitution and laws, given the many relevant connections Steinmetz has had with the United States.[87]  This Court can consider Fed. R. Civ. P. 4(k)(2) for establishing jurisdiction over Steinmetz.  As demonstrated above, exercising jurisdiction also comports with due process.

## CONCLUSION

For the foregoing reasons, Vale respectfully requests that the Court issue an order to compel a discovery response to the Discovery Requests served on Steinmetz on March 31, 2020 and set a prompt deadline for Steinmetz's full compliance and production of documents.

---

[86]   See, e.g., In Re Application of Benjamin Steinmetz For An Order to Take Discovery From Vale S.A., Vale Americas, Inc., Rio Tinto Plc., and Rio Tinto Limited Pursuant to 28 U.S.C. § 1782, No. 1:20-mc-00212 (AJN).

[87]   See Fed. R. Civ. P. 4(k)(2) Advisory Committee's Note (noting that Rule 4(k)(2) "corrects a gap in the enforcement of federal law . . .").  This Court can consider Fed. R. Civ. P. 4(k)(2) for establishing jurisdiction over Steinmetz.  As demonstrated above, exercising jurisdiction also comports with due process.

Dated: May 14, 2021
        New York, New York

                                      Respectfully submitted,


                                      /s/ Jeffrey A. Rosenthal
                                      Jeffrey A. Rosenthal
                                      Lisa M. Schweitzer
                                      Lisa Vicens
                                      Members of the Firm
                                      CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                      One Liberty Plaza
                                      New York, New York  10006
                                      Telephone: 212-225-2000

                                      *Attorneys for Petitioner Vale S.A.*