# Exhibit 7

# The Liechtenstein Foundation

**MARXER & PARTNER**

RECHTSANWÄLTE

## Contents

| | |
|---|---|
| 1. The Liechtenstein Foundation and Its Advantages | 5 |
| 2. Sources of Liechtenstein Foundation Law | 9 |
| 3. Definition and Types of Foundations | 11 |
| 4. Setting up a Foundation | 12 |
| 5. Organization of the Foundation | 15 |
| 5.1. The Founder | 15 |
| 5.2. The Foundation Council | 18 |
| 5.3. The Audit Authority | 20 |
| 5.4. The Control Body and Other Executive Bodies | 22 |
| 5.5. The Representative | 24 |
| 6. The Beneficiaries | 24 |
| 7. Foundation Governance | 29 |
| 8. Foundations and Estate Law | 31 |
| 9. Foundations and Asset Protection | 33 |
| 10. Accounting | 35 |
| 11. Termination of the Foundation | 36 |
| 12. Transitional provisions | 38 |
| 13. Taxes and Fees | 39 |
| 14. What Can Marxer & Partner Do for You? | 41 |

Marxer & Partner Attorneys-at-Law
Heiligkreuz 6
9490 Vaduz
Liechtenstein
Phone  +423-235.81.81
Fax      +423-235.82.82
info@marxerpartner.com
www.marxerpartner.com/en

**Summary of:**
MARXER & PARTNER
Liechtensteinisches Wirtschaftsrecht
1st edition 2009, Liechtenstein-Verlag, Schaan
ISBN 978-3-905762-04-4

Current version: 23rd March 2010

# 1. The Liechtenstein Foundation and Its Advantages

A foundation is used to make assets legally independent from the founder by transferring them to a legal entity in its own right, i.e. the foundation. Unlike a corporation, a foundation has no members but does have beneficiaries who are entitled to enjoy the foundation assets and/or income according to the will of the founder.

The new Liechtenstein foundation law came into force on 1st April 2009. It offers both common-benefit (charitable) and private-benefit foundations an attractive legal basis and therefore provides Liechtenstein with a good starting position in the «competition for foundation law regimes». In international legal literature, the new foundation law has rightly been described as systematically and substantively first-rate, indeed as pioneering.

The Liechtenstein foundation is an excellent tool for estate planning and asset protection. Some of its advantages are:

■ **Flexible System of Beneficial Interests:**

The founder has complete freedom regarding whom he wants to appoint as the beneficiary of the foundation. He also has an entirely free choice regarding how to shape the respective beneficial interests. Thus it is possible, inter alia, to determine the amount and timing of each and all distributions and to set terms and conditions. A distribution can comprise the entire income of the foundation's assets in any given year or pertain to an annual fixed amount. It is also possible to make distributions payable only once the beneficiaries reach a certain age. Similarly, it is permitted to define only a class of potential beneficiaries (such as the founder's family) and to leave it to the discretion of the foundation council to whom it will make distributions and in what amount. The arrangements governing beneficial interests can also be modified provided the founder has made provision for this to happen. Besides, the founder can provide for a combination of private-benefit and common-

benefit purposes by dedicating some of the foundation's assets to common-benefit purposes and the rest to supporting his family or others. Similarly, it is also possible to convert a family foundation into a charitable foundation after a certain time.

### Estate Planning for Many Generations to Come:

In testamentary dispositions it is usually impossible to make arrangements lasting several generations. Furthermore, the monitoring of testamentary stipulations can only be carried out with great difficulty, especially if the heirs live in different countries. In addition, provided they are unanimous, in most cases the heirs can deviate from instructions contained in the will. With a Liechtenstein foundation, however, the founder can exactly specify the beneficiaries across many generations. There is no «rule against perpetuities» in Liechtenstein law. The foundation council carries out these instructions and checks their observance. Provided the founder has made provision for it to happen, the arrangements governing beneficial interests can be modified.

### No Lengthy Probate is Necessary:

The assets of the foundation are not within the estate of the founder since he or she is not the owner of the foundation's assets; instead, the foundation itself, being a legal entity, owns them. For this reason there will be no probate proceedings in relation to the foundation's assets upon the founder's death. This is a big advantage, especially if the foundation assets (bank accounts, real estate, etc.) are situated in different countries or the founder has lived in different locations. In such cases, probate can be both very time-consuming and costly. In the event of a beneficiary's death, his or her beneficial interests do not form part of their estate. Instead, the successor beneficiaries as determined by the founder become the foundation's new beneficiaries. They hence need not wait for the outcome of any probate proceedings but gain access to their foundation benefits immediately provided the founder has not arranged otherwise.

### Continued Commitment of the Founder is Possible:

Liechtenstein law allows the founder to retain broad powers over the foundation he has established. Thus, the founder may become a member of the foundation council or may appoint himself as the foundation's beneficiary. He can also reserve the right to revoke the foundation, amend the Foundation Articles or dismiss and appoint members of the foundation council. By contrast, the foundation may also be designed by the founder in such a way that he has no power over it whatsoever.

Besides, the founder may set up other executive bodies in addition to the foundation council. On the one hand, these may be controlling bodies which ensure the implementation of the founder's will in the long term (so-called protectors). On the other hand, the executive bodies may be entrusted with powers such as investment decisions or even decisions regarding distributions. The founder may designate successors for all members of the executive bodies. Finally, the founder may, if he so desires, name the foundation after himself so that his name – especially with common-benefit foundations – is «perpetuated» in a positive sense.

### Asset Protection:

By establishing a Liechtenstein foundation, personal assets can be protected from unjustified interference by third parties («asset protection»). Since Liechtenstein has only concluded enforcement treaties with Switzerland and Austria, foreign judgments from other countries are not enforced in Liechtenstein. Therefore, legal action against a Liechtenstein foundation must in most cases be brought before Liechtenstein courts. Furthermore, a Liechtenstein foundation is an effective way to protect the founder and the beneficiaries against political turmoil in their home countries.

### Preservation of Family Assets:

By transferring his assets to a Liechtenstein foundation, the founder can ensure that family assets are kept together across generations. The same applies, for instance, if he transfers shares of his

closely held company to a foundation. Under Liechtenstein law a foundation can hold a company's shares in accordance with the founder's wishes for decades. The flexibility necessary for any conceivable economic activity can be achieved by way of an appropriate design of the foundation documents. If no foundation is set up, the assets of the deceased including the shares in his family business are, in most cases, divided up between his heirs. If the heirs die, then their own heirs come into play and so forth. It will therefore not be possible to preserve the family assets or the family business under the same management for a long time.

■ **Decades of Tradition of Liechtenstein Foundation Law:**

In recent years, many countries have discovered the foundation and have adopted new foundation legislation, often following the Liechtenstein model. Liechtenstein has a more than 80-year-old tradition in this field. Legal practitioners, the courts and administrative authorities are intimately familiar with foundation law and practice. This is particularly true for our law firm, which was founded in 1925. The high number of court decisions in the area of foundation law contributes to legal certainty. In addition, the Foundation Articles may provide that disputes between the foundation and its beneficiaries must be decided by arbitration rather than the public courts.

■ **Liechtenstein as a Modern Financial Center at the Heart of Europe:**

Liechtenstein borders Austria and Switzerland and is easily accessible. Since 1923 there has been a customs and monetary union with Switzerland. Since 1995 Liechtenstein has been a member of the European Economic Area (EEA) and thus participates fully in the free movement of goods, services and capital within the European single market. In addition, Liechtenstein is a member of the WTO, EFTA, the UN, the Council of Europe, the OSCE and many other international organizations.

Liechtenstein has a progressive and stable legal, economic and social regime. The authorities are pro-business and customer-orientated. Unlike in other countries, even during the economic crises of recent years no government aid to banks or other financial intermediaries has proven necessary. Standard & Poor's and Moody's have given the country a triple A rating.

In the fight against financial crime, Liechtenstein has continually adapted its regulations to the latest developments. The country has implemented the third EU Money Laundering Directive and the FATF recommendations and thus adheres to the highest international standards in combating money laundering and organized crime. Liechtenstein has also concluded agreements with several countries permitting the exchange of tax information on reasonable request. There is, however, no automatic exchange of information and non-individualized inquiries («fishing expeditions») are prohibited. Liechtenstein thus meets the globally accepted standards in the field of tax, which is why the country appears on the OECD's White List. Even with all this, Liechtenstein has preserved its traditional advantages: taxes are low and predictable and there are strict laws in place designed to safeguard the proper conduct of business.

■ **Marxer & Partner Attorneys-at-Law: Your Contact for Foundation-Related Matters**

Marxer & Partner, founded in 1925, is the oldest and largest law firm in Liechtenstein and has decades of experience and expertise in foundation law. In Section 14, you will learn how Marxer & Partner can advise and assist you with all foundation matters.

## 2. Sources of Liechtenstein Foundation Law

The Liechtenstein foundation law was codified in 1926 and, up until very recently, had been amended only selectively. Its provisions have been used as a model for a number of foreign legislation, such as the

Austrian Private Foundation Act of 1993, the Panamanian Law on the «fundación de interés privado» of 1995 or Jersey's new Foundation Act of 2009.

In order to adjust to the latest scientific findings on «Foundation Governance» extensive preparations for a re-enactment of the Liechtenstein foundation law were carried out from 2001 to 2008. Liechtenstein financial service providers including Marxer & Partner as well as experts in international foundation law were closely involved in the government's reform work. On 26th June 2008, the new foundation law was passed by Parliament and published in the Liechtenstein law gazette (LGBl.) 2008 no. 220. While maintaining the traditional liberalism of Liechtenstein foundation law, new and innovative solutions meeting the highest standards of modern foundation law were devised on many issues.

The new foundation law is enacted in art 552 §§ 1-41 of the Persons and Companies Act (PGR) and came into force on 1st April 2009. Henceforth, these provisions will be referred to only as §§ 1-41. The legislative text is available for download in German and English on www.marxerpartner.com/en. In addition, the general section on legal entities laid out in art 106-245 PGR applies to foundations, too. The current version of the PGR can be viewed on www.gesetze.li (in German only).

Since 1995 Liechtenstein, while fully maintaining the Customs Treaty with Switzerland, has participated in the European Economic Area (EEA), to which all EU countries as well as the EFTA countries Iceland, Norway and Liechtenstein belong. Further information can be found on www.liechtenstein.li/en. Thanks to the EEA Agreement, the four fundamental freedoms of the EU, namely the free movement of goods, persons, services and capital, also apply to Liechtenstein. As a consequence, entities created under Liechtenstein law must not be discriminated against in any EU or EEA country.

# 3. Definition and Types of Foundations

## The Foundation as a Special-Purpose Fund

The foundation is defined in § 1 of the new foundation law. The founder transfers assets to a legal entity, i.e. the foundation, for the long-term achievement of a specific purpose designated by him. The foundation assets are legally separated from the founder's private assets. A foundation has no owners or members but does have beneficiaries, i.e. individuals in whose favor the foundation purpose is achieved and which may include the founder himself. The founder if he so desires can retain certain rights subsequently to the creation of the foundation. In order to achieve the founder's intentions, the foundation makes use of its executive bodies, particularly the foundation council.

Every foundation must have a foundation purpose. Although the founder has a free choice with regard to this, the foundation can only carry on a commercial business to a very limited extent, e.g. if the business directly serves the purpose of a common-benefit foundation. A public-benefit foundation is therefore allowed to run a hospital. Within these limits, the foundation has full legal capacity and the power to conclude any type of legal transaction.

The main distinction is made between common-benefit and private-benefit foundations:

## Common-Benefit Foundations

Under § 2 para 2, a common-benefit foundation is a foundation whose activities are entirely or predominantly intended to serve common-benefit purposes. It supports the public in whatever area may be required: charity, religion, science, culture, sport or ecology. A common-benefit foundation can also address a limited group of people only, e.g. by providing financial support for needy employees of a particular company including their dependents. However, a family foundation is, by operation of law, never a common-benefit foundation even if it is aimed at supporting only those family members who are in need.

**Private-Benefit Foundations**

Pursuant to § 2 para 3, a private-benefit foundation has entirely or predominantly private or personal purposes. If it is unclear whether the common-benefit purpose or the private-benefit purpose predominates, which is a rare case, the foundation is characterized as being common-benefit. In the Foundation Articles it is also possible for the founder to specify certain «time phases» whereby the foundation is, for example, a family foundation during his lifetime but converts into a common-benefit foundation after his death.

§ 2 para 4 provides a definition of the family foundation. «Pure family foundations» are foundations whose assets «exclusively serve the defrayal of costs of upbringing or education, provision for or support of members of one or more families or similar family interests» whereas «mixed family foundations» are foundations «which predominantly pursue the purpose of a pure family foundation but which supplementally also serve common-benefit or other private-benefit purposes».

It is also possible to set up a «maintenance foundation» for the purpose of providing for certain individuals or a family without there having to exist a situation of need. Furthermore, a private-benefit foundation can be used to hold shares in a company which, in turn, operates a business («holding foundation»). The purpose of this type of foundation is to exert a dominant influence on company policy. By contrast, a private-benefit foundation is not entitled to directly run a business itself.

**4. Setting up a Foundation**

A foundation is set up either inter vivos by the socalled «declaration of establishment» or mortis causa by means of a testament or inheritance contract. The declaration of establishment (§ 14) is a declaration of intent by the founder to set up a foundation. An inter vivos foundation may have one or more founders. These may be either natural per-

sons or legal entities domiciled anywhere in the world. The declaration of establishment must be in written form and requires authentication of the signatures of the founder(s).

A foundation can also be set up by a Liechtenstein trustee as the founder's agent. In this case the identity of the founder is not disclosed to the authorities. However, it is still the principal and not the agent who is entitled to exercise the founder's rights (see Section 5.1).

The minimum capital of a foundation is 30,000 Swiss francs, euros or US dollars. Following the acquisition of legal personality, the founder can always make subsequent endowments. Third parties can also donate funds to the foundation. The term «foundation assets» refers to the entire assets of the foundation including subsequent endowments and donations. Liechtenstein foundation law recognizes no duty to preserve assets and no prohibition of subsequent contributions. However, the foundation council is prohibited from making distributions to beneficiaries if this would diminish the amount owed to the foundation's creditors.

**Foundation Documents**

The declaration of establishment is embodied in the foundation documents. The Foundation Articles, or Foundation Charter (referred to in the legislation as the «Foundation Deeds»), contain the key elements of the foundation and must be signed by either the founder or the founder's agent with the signatures authenticated. § 16 para 1 lists the mandatory content of the Foundation Articles, e.g. the name of the foundation, the foundation purpose, the appointment and functioning of the foundation council, and the identity of the founder or his agent should the founder decide to remain anonymous. Hence, if a foundation is set up by an agent, the founder need not sign any foundation documents and is not identified in the Foundation Articles.

§ 16 para 2 contains optional elements of a foundation which have to be included in the Foundation Articles in case the foundation at hand is to feature such elements. This includes provisions regarding the reser-

vation of founder's rights or else the empowerment of the foundation council to amend the Foundation Articles and By-Laws. If By-Laws or Regulations are, or may be, issued, there must be a reference to this fact in the Articles.

Under § 17, in addition to the Foundation Articles, the founder can also set up By-Laws (referred to in the legislation as a «Supplementary Foundation Deed»). The By-Laws must originate either from the founder or his agent and can deal with areas that need not necessarily be included in the Foundation Articles such as provisions regarding the beneficiaries. By-Laws can be issued only if the Foundation Articles specifically say that they can. In addition, they are not permitted to contradict the Foundation Articles. Besides Foundation Articles and By-Laws, it is also possible to adopt Regulations (§ 18). These can be issued by the founder and his agent as well as by the foundation council and contain internal arrangements or instructions such as asset management targets. Here too, Regulations can be created only if the Foundation Articles specifically say so. By contrast, the «letter of wishes», which is a letter of intent written by the founder and addressed to the foundation council, is no foundation document and therefore has no binding effect. However, it can be taken into account when interpreting the founder's intentions.

**Entry in the Public Register / Notification of Formation**

Subsequent to the declaration of establishment, common-benefit foundations must be entered in the Public Register. It is only by being registered that they become legal entities. Under § 19 para 3 in conjunction with art 90 of the Public Register Ordinance, the entry must contain facts such as the foundation's name, the foundation purpose as well as the identity of the members of the foundation council and of the auditors provided auditors have been appointed (see Section 5.3). Other details like the name of the founder or his agent or the identity of the beneficiaries are not registered. As regards registered facts, anyone can obtain a register extract from the Land and Public Register Office (GBOERA; www.gboera.llv.li) on request.

Private-benefit foundations, e.g. family foundations, need not be entered in the Public Register. They acquire legal personality immediately once the declaration of establishment has been made. Nevertheless, under § 20 a so-called «notification of formation» must be deposited with the Land and Public Register Office within 30 days. This notification must contain the foundation's name and purpose as well as the identity of its Representative (see Section 5.5) and the members of the foundation council. It must also certify that the founder has validly designated the beneficiaries or the class of beneficiaries. The accuracy of the notification of formation must be certified by an attorney admitted in Liechtenstein, by a professional trustee or by a holder of an entitlement in accordance with art 180a PGR. On each amendment of a fact contained in the notification of formation, a notification of amendment must be deposited. The Land and Public Register Office is entitled to verify the accuracy of the deposited notifications. Upon application of the foundation, the Land and Public Register Office issues an official confirmation of the deposition of these notifications. The Land and Public Register Office is not permitted to provide any information to third parties except to confirm that the unregistered foundation is in existence. This excludes information granted to certain Liechtenstein government agencies.

## 5. Organization of the Foundation

### 5.1. The Founder

The founder is the central person in foundation law: The purpose of a foundation is to carry out his or her intentions. The founder can be either an individual or a legal entity domiciled in Liechtenstein or abroad. A foundation may, except where it has been set up by testamentary disposition, have one or more founders. The founder has all the rights contained in § 3, particularly the right to apply for supervisory measures with the Princely Court of Justice. Besides, the founder can apply to the Court in order to have an incorrectly adopted dissolution canceled or, conversely, move for the adoption of a dissolution wrongfully

denied. The founder can also be a member (or chairman) of the foundation council or of another executive body. He can also be a beneficiary of the foundation and, in fact, even its sole beneficiary.

Even where a foundation is established on a fiduciary basis by a trustee acting as an agent, the principal, i.e. the person funding the foundation, will always be the actual founder in the eyes of the law. This enables the founder to remain anonymous to the outside world if he so desires. Naturally, his identity must be revealed to the members of the foundation council as this is the only way for them to help carry out his intentions.

**Right of Revocation**

As long as the foundation has not come into being, the founder is able to revoke the declaration of establishment at any time. Hence foundations that need to be registered can be freely revoked until their entry in the Public Register. All other foundations can be revoked until the signature on the Foundation Articles is authenticated. In case of foundations mortis causa, it suffices to amend the testamentary disposition accordingly.

Once the foundation has come into being, it will generally be irrevocable. The founder no longer owns the assets he has contributed to the foundation. The foundation is a separate legal entity with the purpose to pursue the founder's will as laid down in the foundation documents. However, under § 30 the founder is permitted to declare in the Foundation Articles that he retains the right to revoke the foundation and/or to amend the foundation documents. If the founder has done so, he can exercise these rights by a simple declaration to the foundation council without the need to observe any particular form.

These rights of the founder cannot be assigned or bequeathed nor may they be delegated to the foundation council. If the founder is a legal entity, no reservation is permitted. In case of multiple founders, these rights can only be exercised by all the founders jointly provided the Foundation Articles do not direct otherwise. If one of the founders

ceases to exist, the rights lapse unless the foundation documents provide otherwise. Where a foundation is established on a fiduciary basis by an agent, it is not the agent but the principal, i.e. the person having funded the foundation, to enjoy the rights of § 30. However, these rights can be exercised by an agent on behalf of the principal.

If the founder exercises his right of revocation, the foundation council must adopt a resolution to dissolve and liquidate the foundation. Any assets remaining must be distributed to the ultimate beneficiary. The founder having exercised the right to revoke the foundation is deemed to be the ultimate beneficiary himself unless the foundation documents provide otherwise.

**Right of Amendment**

When exercising the right of amendment (§ 30), the founder can freely amend the declaration of establishment as well as the foundation documents without, however, revoking the foundation. Hence the founder may, for instance, appoint new beneficiaries including himself. As always, the foundation council can only carry out distributions if to do so will not diminish the amounts owed to the foundation's creditors.

**Consequences of Granting Certain Rights to the Founder**

The existence of rights as laid down in § 30 (right to revoke the foundation or to amend the declaration of establishment) can have a variety of consequences. For instance, it can be argued that the founder has not irrevocably transferred his assets to the foundation and that therefore the Statute of Limitations for forced heirship claims against the foundation only begins to run on the founder's death. Furthermore, it could be asserted that these founder's rights are subject to enforcement and thus capable of being attached by any of the founder's creditors. Should this viewpoint be upheld by the courts, the creditor having attached the founder's rights could declare a revocation himself or could appoint the founder as the sole beneficiary using his powers of amendment. To date, there is no Liechtenstein case law on this subject.

Moreover, in case of a right of revocation the beneficiaries have no right of information and disclosure under § 9 provided the founder himself is the ultimate beneficiary. Under § 11 the founder can appoint either himself, an audit company or a trusted person as a control body. Such a control body must carry out an annual review of the proper use of foundation assets. If a control body is set up, the beneficiaries are only permitted to request information about the purpose and organization of the foundation or about their own rights in relation to the foundation.

Finally, the reservation of founder rights has possible consequences for the tax situation abroad. Due to the economic approach in tax law, «controlled foundations» are often treated as fiscally transparent and foundation assets continue to be attributed to the founder himself. On the other hand, there will normally be no gift or inheritance tax liability with controlled foundations since there has been no effective financial divestment.

## Contracts of Mandate

The founder can, if he so desires, conclude a Contract of Mandate with the members of the foundation council. The founder is granted a power of instruction, e.g. with regard to the exercise of the foundation council's discretion in case of discretionary foundations. The obligations of the council members arising from the Contract of Mandate are purely in personam: their duties as members of the executive body always prevail. However, within these limits members of the foundation council are perfectly free to conclude Contracts of Mandate.

## 5.2. The Foundation Council

## Composition and Functions

In order to achieve the founder's intentions, the foundation makes use of its executive bodies. The only compulsory executive body of any foundation is the foundation council (§§ 24 et seq.). It manages the business of the foundation (administration, bookkeeping etc.) and rep-

resents it. Its main task is the furtherance of the founder's intentions. The foundation council must consist of at least two members who can be either individuals or legal entities domiciled in Liechtenstein or abroad. According to art 180a PGR, one foundation council member must be either a Liechtenstein trustee or a person with similar status (a «180a Person»). Both the founder and the beneficiaries can be members of the foundation council.

The Foundation Articles must contain provisions on the appointment, dismissal, term of office, adoption of resolutions and power of representation (authority to sign) of the foundation council. With registered foundations, the name, date of birth, nationality and place of residence, or else the corporate name, domicile and registered office, of the members of the foundation council as well as the authority to sign (collective or single) must be entered into the Registry. In case of non-registered foundations, these details must be recorded in the notification of formation. Foundation council members can be either paid or unpaid. The foundation council must be appointed for the first time by either the founder or the founder's agent upon the foundation's establishment. Unless provided otherwise, the appointments are valid for a three-year term with multiple reappointment being permitted. Frequently, foundation council members are granted the right to co-opt new members (co-optation). In addition, it is often provided in the Foundation Articles that members can appoint a successor in the event of death, incapacity or departure from office.

## Amendment Rights of the Foundation Council

Subject to the conditions contained in §§ 31 et seq., the foundation council has the right to amend the Foundation Articles and By-Laws. An amendment of the foundation purpose by the foundation council or another executive body is only allowed «if the purpose has become unachievable, impermissible or irrational or if circumstances have changed to the extent that the purpose has acquired a quite different significance or effect, so that the foundation is estranged from the intention of the founder». The presumed intention of the founder is crucial. In addition, the right of amendment must be expressly provid-

ed for in the Foundation Articles. If no power of amendment has been included in the Foundation Articles, the foundation purpose can only be altered by judicial decree.

According to § 32 either the foundation council or another executive body can be given the authority to amend other contents of the Foundation Articles (apart from the foundation purpose) or of the By-Laws. This can include, for example, the foundation's organization or beneficial interest arrangements provided, however, that the foundation purpose is not affected. In addition, the foundation council must have a substantively justified reason to do so. The right pursuant to § 32 must be included in the Foundation Articles. In the absence of such a provision, any amendment of either the Foundation Articles or the By-Laws can only be ordered by a judge.

**Liability of the Foundation Council**

The foundation council is responsible to fulfill the foundation purpose in strict compliance with the provisions in the foundation documents. The members of the foundation council are personally liable under art 218 et seq. PGR for any negligently or intentionally caused loss. In the declaration of establishment, the liability of unpaid council members for slight negligence can be excluded. Entitlement to compensation is primarily enjoyed by the prejudiced foundation. On a subsidiary basis, creditors themselves may make a claim. Art 182 para 2 PGR codifies the «Business Judgment Rule», whereby a member of the administration is deemed to act diligently «if in his commercial decision-making he is not governed by irrelevant interests and it must reasonably be assumed that he is acting for the good of the legal entity on the basis of appropriate information».

**5.3. The Audit Authority**

According to § 27, every foundation subject to the supervisory oversight of the Foundation Supervisory Authority (see Section 7) must appoint an audit authority. Thus, in the case of common-benefit foun-

dations but also private-benefit foundations whose Foundation Articles make them subject to voluntary oversight by the Foundation Supervisory Authority, the auditors constitute a mandatory body of the foundation. The auditors are under an obligation to verify once a year whether the foundation assets are being managed and used in accordance with the foundation purpose. An audit report must be submitted to both the foundation council and the Foundation Supervisory Authority. Auditors, auditing firms, professional trustees or trust companies can be appointed as the auditors.

The auditors must be independent of the foundation. In particular, the following are prohibited from acting as auditors: anyone who belongs to an existing foundation body such as the foundation council; anyone who is an employee of the foundation; anyone with close family ties to members of executive bodies of the foundation; or anyone who is a beneficiary of the foundation. The auditors are appointed by judicial decree, the foundation and the Foundation Supervisory Authority both being a party to the proceedings. Either the founder or the foundation council can make two proposals stating their preference.

With common benefit foundations, the Foundation Supervisory Authority can waive the requirement to appoint auditors at the foundation's request in two cases. Firstly, this is possible if the foundation's assets amount to less than 750,000 Swiss francs and the foundation does not publicly call for donations or run a business along commercial lines. Secondly, an exemption can be accorded if it appears reasonable to do so for other motives. This will be the case if, for example, the foundation pursues an investment and distribution policy in such a way as to enable direct oversight by the Foundation Supervisory Authority. Direct oversight is possible, inter alia, where the assets and their performance are easily verifiable.

Outside the aforementioned cases of mandatory appointment of auditors, it is possible to provide for a voluntary appointment of auditors in the Foundation Articles. Voluntary auditing does not entail any duty of oversight by the Foundation Supervisory Authority. Finally, the foun-

dation council is always at liberty to instruct external auditors to check individual transactions in any particular case without granting them the status of an executive body.

## 5.4. The Control Body and Other Executive Bodies

### Control Body

The founder may specify in the Foundation Articles that a control body pursuant to § 11 is or can be established. The control body is under an obligation to verify once a year whether the foundation assets are being managed and distributed in accordance with the foundation purpose. A report must be submitted to the foundation council. In the event of the foundation council's non-compliance with the foundation purpose, the control body must inform the beneficiaries and the court. If a control body is established, the beneficiaries are not permitted to assert the full rights of information and disclosure as stated under § 9 (see Section 6). Instead, they can only inspect the foundation documents and request information about the purpose and organization of the foundation and about their own rights in relation to the foundation. In addition, the beneficiaries can require the submission of the control body's reports.

The founder himself, a judicially appointed auditor or a trusted advisor of the founder may be appointed as the control body. The «trusted advisor» (confidant) is one or more natural persons specified by the founder who have sufficient specialist knowledge in the sphere of law and business to be able to perform their duties. This includes, for example, an attorney who is also a friend of the founder. The confidant is not appointed by the court but must be independent of the foundation council.

### Additional Executive Bodies

Besides this, the Foundation Articles may specify that additional executive bodies are or can be established pursuant to § 28. The founder is largely free in this respect as well as in the choice of the members and

the extent of any relevant powers. § 28 mentions executive bodies to be used «to specify a beneficiary from the category of beneficiaries, to specify the time, level and condition of a distribution, to manage the assets, to advise and assist the foundation council, to monitor the administration of the foundation in order to safeguard the purpose of the foundation, to reserve consents or issue instructions, as well as to safeguard the interests of the foundation participants». These executive bodies can be given rights to advise, consent, instruct or veto. They do, however, not have any representation authority. Nevertheless, it is possible for the foundation council to grant them – or any third party – legally valid powers of attorney.

In practice, protectors, collators and asset managers are appointed quite often. These executive bodies are not defined legally, so their powers must be described in the foundation documents. Even so, a certain semantic content has established itself over time in this regard. Thus, a protector is used as an optional monitoring body for the foundation and will mediate between the foundation council and the beneficiaries. Generally, protectors come from the founder's family or circle of friends or else are family advisers. The protector may also be granted approval rights in relation to amendments of the Foundation Articles and By-Laws or the dissolution of the foundation, as well as the right to appoint and dismiss members of the foundation council (appointor) or a right of approval to this effect.

With discretionary foundations, a collator is sometimes granted the right to choose a beneficiary from the class of beneficiaries or the right to identify the date, amount and conditons of a distribution. These powers are often granted to the protector instead, especially if no collator is appointed. Finally, sometimes an asset manager is set up as a voluntary body responsible for the management of the foundation's bankable assets. The asset manager can be given administrative authority with regard to the bank.

## 5.5. The Representative

According to art 239 et seq. PGR, foundations must appoint a Representative to carry out representation in relation to the Liechtenstein authorities. The Representative is a process agent of the foundation and, by operation of law, can be served, on behalf of the foundation, with any statement and communication whatsoever from all domestic courts and administrative authorities. The Land and Public Register Office (GBOERA) can waive the duty to appoint a Representative if the foundation's representation is secured otherwise or if a domestic delivery address has been designated. If the foundation has no Representative and if none of these exceptions apply, the foundation will be dissolved and liquidated after a request of GBOERA to remedy this situation will have been ignored. The Representative must be appointed at the time of the declaration of establishment and, with registered foundations, must be entered in the Public Register. In this case, his name will appear in the relevant register extracts. With non-registered foundations, the Notification of Formation must contain the Representative's details. The Notification of Formation's content will, however, not be disclosed to third parties. This does not affect the right of disclosure to domestic criminal prosecution authorities, the Liechtenstein Financial Intelligence Unit (FIU; www.fiu.llv.li) and the Liechtenstein Financial Market Authority (FMA; www.fma-li.li).

## 6. The Beneficiaries

When setting up a foundation, particular attention must be paid to the foundation purpose. The Foundation Articles must state the foundation purpose including the designation of named beneficiaries or of beneficiaries identifiable on the basis of objective criteria. Alternatively, a class of beneficiaries can be designated. Only common-benefit foundations need not specify beneficiaries or a class of beneficiaries. In practice, the beneficiary or beneficiaries are often not identified in the Foundation Articles themselves: instead, the Articles contain a refer-

ence to the By-Laws where they are specified. The inclusion of an explicit reference in the Foundation Articles that the beneficiaries are designated in the By-Laws is mandatory.

§ 5 defines the beneficiary as «the natural person or legal entity that with or without valuable consideration in fact, unconditionally or subject to certain prerequisites or conditions, for a limited or unlimited period, with or without restrictions, revocably or irrevocably, at any time during the legal existence of the foundation or on its termination derives or may derive an economic benefit from the foundation (beneficial interest)». The identity of the beneficiaries will not be made public and will not be registered in the Public Register or included in the Notification of Formation.

The law provides for four categories of beneficiaries. Entitled beneficiaries (§ 6 para 1) are beneficiaries who, on the basis of the foundation documents (the Foundation Articles, By-Laws or Regulations), have a legal claim to benefit, to a specified or specifiable extent, from the foundation assets or foundation income. Therefore, in relation to the foundation, entitled beneficiaries have a legally enforceable right to their benefit. Any discretion of the foundation council to this effect is excluded.

Prospective beneficiaries (§ 6 para 2) are individuals who have a legal entitlement laid down in the foundation documents to be appointed at a later date as a successor to an entitled beneficiary. This may be the case after the occurrence of a condition precedent or the reaching of a specific date (such as the demise of a prior beneficiary). Potential beneficiaries who have no right to become an entitled beneficiary but instead simply have an uncertain prospect of maybe obtaining a distribution in the future are not prospective beneficiaries in the sense of § 6 para 2. Whether there is a legal entitlement or not can only be determined by interpreting the foundation documents.

The third category of beneficiaries are the discretionary beneficiaries (§ 7). They belong to the class of beneficiaries specified by the

founder, their beneficial interest being placed in the discretion of the foundation council or another body appointed for this purpose (such as a protector or collator). Foundations with discretionary beneficiaries are called discretionary foundations. Discretionary beneficiaries have no legally enforceable claim to receive any particular benefit from the foundation: they only have a legal right to obtain a distribution once the foundation council has adopted a Resolution in this respect. Once the distribution has been made, all the discretionary beneficiary's rights are extinguished. However, discretionary beneficiaries do have inspection rights under § 9 but only insofar as their own rights are concerned.

An ultimate beneficiary (§ 8) is a beneficiary who, in accordance with the foundation documents, is intended to receive the remaining assets following the liquidation of the foundation. If no beneficiary exists at all, the foundation's assets go to the Principality of Liechtenstein, which must make use of the assets, to the extent possible, in accordance with the foundation purpose.

Since the designation of beneficiaries is regarded as an essential part of the foundation establishment process, the Foundation Articles must include the designation of named beneficiaries or of beneficiaries identifiable on the basis of objective criteria. Alternatively, a class of beneficiaries can be designated. There are three exceptions to this rule. Firstly, this provision does not apply in the case of common-benefit foundations since, by definition, they serve the general public (§ 107 para 4a PGR). Thus common-benefit foundations can, but need not, specify particular beneficiaries. Secondly, it is permissible for the Foundation Articles to contain an express reference to the By-Laws and to leave the identification of the beneficiary or beneficiaries to the By-Laws. In practice, this happens very often. Thirdly, in exceptional cases it may be that the beneficiaries are evident in light of the foundation purpose.

A beneficial interest can relate to the foundation income only or also to the foundation assets (principal). Although Liechtenstein foundation law recognizes no duty to preserve the foundation assets, the foundation council is prohibited from making distributions to beneficiaries if this would diminish the amount owed to the foundation's creditors. The founder may also designate himself as either the sole beneficiary or as one of several beneficiaries. Furthermore, under § 30 the founder can reserve the right to amend the declaration of establishment (see Section 5.1), making it possible for him to amend the rules governing the beneficiaries at any time. Within the framework of §§ 31 et seq, the foundation council can be granted a right to amend the rules governing beneficiaries contained in the Foundation Articles or in the By-Laws (see Section 5.2).

Usually, the foundation documents create a cascade of beneficiaries by appointing secondary beneficiaries who gain their beneficial interest upon the death of the primary beneficiary. It is often also specified who will be the third, fourth and fifth rank beneficiaries etc. In the event of a beneficiary's death, his or her beneficial interest does not form part of the estate because the entitlement is extinguished on the beneficiary's death. It is then the beneficiaries next in line who come into play. Legal status as a beneficiary is strictly personal and not transferable or inheritable unless the founder issues express instructions to the contrary. Finally, the Foundation Articles or By-Laws must also contain a provision for the distribution of assets in the event of the foundation's dissolution.

### Rights of the beneficiaries

The foundation is not a corporation over which shareholders can exert influence based on their stake in the company. In order to address the risk that the members of the Foundation Council might be behaving like the owner of the foundation assets, § 9 grants the beneficiaries information and disclosure rights. These rights are enjoyed not just by the entitled beneficiaries and the prospective beneficiaries but also by the current discretionary beneficiaries. However, persons who have only a prospect to a future discretionary benefit do not enjoy them. Beneficiary rights include the right to view documents and the right to receive general, reporting and accounting information. The beneficiary

has the right to inspect business records and documents and to make copies thereof and also to examine and investigate all business conduct personally or through an agent.

However, the law contains certain restrictions on beneficiary rights. First, these rights are only enjoyed by the beneficiary «insofar as his rights are concerned». The beneficiary has to be directly and personally affected. Thus, events in the past occurring prior to the acquisition of the beneficial interest can only be investigated if they directly affect the beneficiary's current rights. Second, there is a very comprehensive general misuse clause under which this right must not be exercised with dishonest intent, in an abusive manner or in a manner that conflicts with the interests of the foundation or other beneficiaries. Third, beneficiary rights may exceptionally be denied «for important reasons to protect the beneficiary» such as to prevent a young person's idleness after he has learnt of his beneficial interest.

Beneficiary rights have to be asserted in civil proceedings. The Articles can, however, also provide for mandatory arbitration in Liechtenstein or abroad. The existence of beneficiary rights is presumed, the permissibility of restrictions has to be proved by the foundation council. Often the foundation documents state the possible reasons for which a request for information may be refused. Although these reasons bind neither the court nor the foundation council, the corresponding provisions must be taken into account when assessing the balance of interests.

§§ 10-12 provide important exceptions, which partially suspend the beneficiary rights under §9, in situations where the foundation council is supervised by other participants. If the founder has reserved a right of revocation under § 30 (see Section 5.1) and he is himself the ultimate beneficiary, then the beneficiaries will not have any information rights because in this case the founder himself already has a considerable ability to exercise control and monitoring. If a Control Body is set up under § 11 (see Section 5.4), the beneficiaries are only permitted to request information about the purpose and organization of the foun-

dation or about their own rights in relation to the foundation. Besides, the beneficiaries will not have any information rights if the foundation is subject to supervision by the Foundation Supervisory Authority (see Section 7). In each case, however, beneficiaries have the irrevocable right to ask the judge to redress any grievances.

## 7. Foundation Governance

Foundation governance is taken to mean all the rules that contribute to make the foundation bodies act in accordance with their duties and in the interest of the founder. Regulations designed to protect the foundation against any misconduct by its executive bodies are extremely important due to the absence of any owners who could play a supervisory role (shareholders, for example). They are also vital due to the potential for possible conflicts of interest, e.g. of members of the foundation council. A distinction can be drawn between external governance in the sense of supervision by state authorities and internal governance in the form of mutual monitoring rights of foundation participants. When the new Liechtenstein foundation law was created, special emphasis was placed on instituting a modern system of foundation governance. One innovation is that the Foundation Supervisory Authority itself is not entitled to order coercive measures. Instead, just like foundation participants, the Authority has to apply to a court for them to be instituted. This combination of ongoing supervision and judicial decision-making authority (application-based court supervision) is indeed a role model.

### Common-Benefit Foundations

Under § 29, common-benefit foundations are subject to the supervision of the Foundation Supervisory Authority (STIFA). STIFA is a department of the Land and Public Register Office and must ensure ex officio that foundation assets are managed and disbursed in accordance with the foundation purpose. To this end, it is entitled to demand any information from the foundation's executive bodies and can also inspect the foundation's books. Furthermore, STIFA is required to check the

annual report produced by the foundation's auditors. Coercive measures such as the removal of foundation bodies, the conduct of special audits or the annulment of resolutions of the Foundation Council must be applied for by STIFA in the Princely Court of Justice.

For the purposes of internal governance, under § 27 every common-benefit foundation must be audited by independent auditors. In addition, any participant, i.e. the founder, the beneficiaries and all foundation executive bodies and their members have the right to petition the court to initiate supervisory measures. STIFA is a party in these proceedings.

## Private-Benefit Foundations

Private-benefit foundations whose Foundation Articles make them subject to supervision by STIFA must also undergo, as far as supervisory matters are concerned, the same regime as common-benefit foundations. If the Foundation Articles do not make them subject to voluntary foundation supervision, private-benefit foundations are not subject to any ongoing state supervision. For this reason, internal governance is well developed. Firstly, beneficiaries have comprehensive access and information rights under § 9: they have the right to inspect the business records and documents and to make copies thereof, and also to examine and investigate all business conduct personally or through an agent, provided this right has not been restricted (see previous section).

In addition, with private-benefit foundations too, all participants (founders, beneficiaries and executive bodies as well as their members) have the right, under § 29 para 4, to apply directly to the Princely Court of Justice for supervisory measures such as the removal of foundation bodies, the conduct of a special audit or the cancelation of resolutions taken by the foundation council. Finally, the court may, either on request by the parties or ex officio and possibly in response to a communication from STIFA or the public prosecutor, order an amendment of the foundation documents provided the preconditions contained in §§ 33 et seq. are met. In these proceedings the Foundation Supervisory Authority has the status of a party.

## 8. Foundations and Estate Law

As a general rule, a beneficial interest is awarded ad personam so that after the death of a beneficiary it is the beneficiaries next in line and not the heirs of the deceased beneficiary who will obtain a beneficial interest. If it is intended for a beneficial interest to be inherited, this must be explicitly provided for in the foundation documents. Therefore, if the deceased was a beneficiary during his lifetime only, his or her foundation benefits do not form part of the estate. This was confirmed by the Liechtenstein Constitutional Court (www.stgh.li).

This has nothing to do with the question of whether and how a contribution of assets by the deceased to a foundation can be challenged by his heirs for breach of their compulsory portion («forced heirship»). According to § 38 para 1, every contribution of assets to the foundation, including an additional or subsequent endowment (see Section 4), can be challenged by the contributor's heirs in the same way as a donation. In practice, therefore, heirs whose compulsory portion is prejudiced by the establishment of, or subsequent endowment to, a foundation by the deceased sometimes bring «compulsory portion supplementary claims» against Liechtenstein foundations. The competent forum for such claims is the Princely Court of Justice. The action is not directed against the very existence of the foundation but rather seeks the delivery, by the foundation to the claimant (i.e., the forced heir), of that amount of assets required to give the claimant that which he or she is entitled to by the applicable forced heirship legislation. Thus, in case of a successful claim the foundation is ordered to pay to the claimant a specified monetary amount rather than being dissolved.

If conflict of laws rules make Liechtenstein law applicable, § 785 of the General Civil Code is applied, whereby on application by any child or spouse entitled to a compulsory portion, gifts (and thus contributions of assets to a foundation) must be taken into account when calculating the estate (compulsory gift portion). Contributions to common-benefit foundations are, however, not taken into account. The same applies to contributions made to a foundation earlier than two years before the

death of the contributor. If the founder has reserved founder's rights under § 30 (see Section 5.1), this two-year period, according to prevailing doctrine, does not start to run until either the death of the founder or his irrevocable renunciation to exercise powers over the assets concerned.

If there is a case with an international connection (in other words, if the deceased was not a Liechtenstein citizen residing in Liechtenstein), compulsory portion supplementary claims are governed by the law stipulated in art 29 of the Liechtenstein Private International Law Act. This provision declares applicable the law of the state whose citizen the deceased was at the time of his death. However, the deceased is entitled to opt, in his Will, for the law of the state of his last habitual residence to be applicable. In addition to the law governing the succession, a compulsory portion claim must also (i.e., cumulatively) be in accordance with the law governing the acquisition process itself. If, therefore, a French testator made an inter vivos donation to a Liechtenstein foundation and provided for Liechtenstein law to be applicable to this endowment, a claim, brought against the foundation by his heirs, to supplement the compulsory portion will only be successful if all the preconditions contained in both French and Liechtenstein statutes of limitation. If the claim to supplement the compulsory portion turns out to be prescribed under Liechtenstein law, the claim cannot be successfully made.

If the applicable estate law is that of a Common Law country, claims to supplement the compulsory portion are, in most cases, irrelevant since Common Law countries normally do not know forced heirship rules. If, therefore, English or New York law is the law governing the succession, the children of the deceased person do not have a compulsory portion and, therefore, cannot make any claim against a Liechtenstein foundation. Questions about how to treat, for Liechtenstein conflict of laws purposes, the English family provision rules or the elective share statutes known in some US States have not arisen before Liechtenstein courts so far.

# 9. Foundations and Asset Protection

Asset Protection generally means the protection of private assets from civil money judgments. Liechtenstein law has managed to strike an appropriate balance between the legitimate interests of the founder in the protection of assets, on the one hand, and the interests of the creditors in the collectibility of their debts against the foundation, the founder or the beneficiaries, on the other.

## Creditors of the Foundation

Under § 37 para 1, a creditor of the foundation can only pursue his claims against the foundation assets themselves. There is no personal liability on the part of the founder or other persons, e.g. the beneficiaries or the foundation council members. Only if the founder has not fully paid in the dedicated assets can the foundation council be required to provide the creditors with all necessary information regarding the enforceability of their claims, including the identity of the founder. The founder can, however, always avert this by simply making the pledged contribution to the foundation. Finally, under § 37 para 2 the Foundation Council is prohibited from making distributions to beneficiaries if this would diminish the amount owed to the foundation's creditors. If the foundation's executive bodies act against this provision, they will be liable for damages (see Section 5.2).

## Creditors of the Founder

Under § 38 para 1, creditors of the founder who cannot recover damages against him because he has transferred assets to a foundation may dispute this endowment according to the Liechtenstein Legal Remedies Code. In addition, creditors of the founder may, in very exceptional cases, gain access to the foundation's assets by way of «reverse piercing» if the founder effectively misuses the foundation. This would be the case, for example, if the founder still took all decisions regarding the foundation without ever even involving the foundation council. As the Constitutional Court has made clear, the mere reservation of founders' rights or the existence of a contract of mandate between the founder and the members of the foundation council does not lead

to a «lifting of the foundation veil» and will thus not give rise to reverse piercing.

Finally, the law does not exclude an enforcement of the founders' rights under § 30 (see Section 5.1). Thus, it could well be that the courts would affirm the enforceability of founders' rights in favor of creditors, at least if the founder has reserved the right of revocation and is, at least in part, the ultimate beneficiary; or else, if the founder has reserved the right to comprehensive amendments. The courts could thus allow the founder's creditors to exercise his rights in his place. To date, there is no Liechtenstein case law on the subject.

### Creditors of the Beneficiaries

Creditors of beneficiaries can be indemnified out of distributions which have already been made to the beneficiaries since those distributions represent an integral part of the beneficiaries' own assets. Under § 36 para 1, the founder of a family foundation (see Section 3) may provide in the Foundation Articles «that the creditors of beneficiaries shall not be permitted to deprive these beneficiaries of their entitlement to a beneficial interest or prospective beneficial interest acquired without valuable consideration, or individual claims arising from such an interest, by way of safeguarding proceedings, compulsory enforcement or bankruptcy». The founder can thus specify that the entitlement of Entitled Beneficiaries or Prospective Beneficiaries (see Section 6) against the family foundation is not enforceable in favor of the beneficiaries' creditors. Again, this does not hold true for amounts already distributed.

In case of a mixed family foundation, this enforcement privilege applies only to those entitlements which serve the defrayal of costs of upbringing or education, provision for or support of family members or similar family interests. The enforcement privilege must be included in the Foundation Articles. Similar provisions exist in other jurisdictions, such as in many U.S. states (spendthrift trusts or protective trusts).

Nevertheless, the enforcement of a said privilege is problematic where enforcement proceedings have a foreign element. Since case law is

lacking in this respect, it is unclear how foreign courts would decide such matters. There is, therefore, the risk that foundation assets situated abroad, such as bankable assets deposited at a foreign bank, would be seized by the competent court at the bank's domicile disregarding the enforcement privilege awarded by Liechtenstein law.

### Private International Law

The applicable law for creditor disputes is set out in art 75 of the Legal Remedies Code. Simply put, a cumulative connection is necessary in order to successfully raise an enforcement claim: only if the claim is permitted under both the law of the residence or domicile of the debtor and the law governing the acquisition process itself, can it be enforced.

### 10. Accounting

Foundations which operate a business along commercial lines, which is only permissible under very limited circumstances (see Section 3), will be subject to the general accounting standards contained in art 1045 et seq. PGR. These foundations must produce a balance sheet as well as annual audited financial statements (balance sheet, income statement and appendix, if applicable). For all other common-benefit or private-benefit foundations, the foundation council must, pursuant to § 26, keep records of the use of foundation assets. These records must conform to the principles of proper accounting. The comprehensiveness of the records depends on the financial circumstances of the foundation. However, there is no general duty to carry out detailed bookkeeping at all. In addition, a Schedule of Assets must be maintained, showing the asset position and the asset investments. All books and records and business correspondence must be kept for ten years.

With registered foundations whose Foundation Articles forbid them to run a business along commercial lines, the Foundation Council must go through a yearly Declaration Procedure pursuant to art 182b PGR. Every year, a declaration signed by the foundation council must be

submitted to the Land and Public Register Office (GBOERA) confirming that for the previous fiscal year there is a statement of assets and that no business was run along commercial lines. Failing this, the Land and Public Register Office must alert the foundation and, after at least another twelve months, initiate dissolution and liquidation proceedings (art 971 PGR). In addition, a penalty may be imposed. The correctness of the declaration may be reviewed by GBOERA within two years if the declaration is not confirmed by an auditor or an auditing company. – With non-registered foundations, i.e. with the vast majority of private-benefit foundations, no declaration procedure needs to be performed.

## 11. Termination of the Foundation

### Dissolution

The termination of a foundation, governed by art 130 et seq. and art 552 §§ 39 et seq. PGR, requires (a) a reason for the dissolution, (b) the initiation of liquidation proceedings, and (c) a confirmation of deletion of the Public Register entry. The dissolution itself changes the foundation's purpose: thenceforth, the foundation must align all its activities towards the termination of its existence. Possible reasons for dissolution include the institution of bankruptcy proceedings in relation to the foundation assets, a court order or a decision in favor of dissolution by the foundation council.

In most cases, it is the foundation council which decides to dissolve the foundation. Such a resolution is compulsory if the council has received a lawful revocation by the founder, if the foundation's purpose has been achieved or can no longer be achieved, if the foundation's statutory lifetime has expired, or if other grounds for the foundation's dissolution as derived from the articles apply. If, for example, the entire assets of the foundation have been distributed to the beneficiaries, the foundation council must decide in favor of dissolution. In the absence of any provision to the contrary in the Foundation Articles, a decision in favor of dissolution must be adopted unanimously. If a ground for

dissolution exists but no resolution in favor of dissolution has been adopted by the foundation council, the beneficiaries or the Foundation Supervisory Authority (STIFA) can apply for a court order dissolving the foundation. Conversely, the court must, again on application by either the foundation beneficiaries or STIFA, set aside an improperly taken decision to dissolve the foundation.

### Liquidation

Dissolution of the foundation results in the initiation of liquidation proceedings. The foundation's liabilities must be settled, the assets must be sold and the liquidation proceeds must be distributed among the ultimate beneficiaries. If no beneficiaries can be ascertained at all, which is extremely rare, the proceeds of liquidation go to the Principality of Liechtenstein, which must apply the assets in a manner as compatible as possible with the existing foundation purpose. With registered foundations the distribution can usually only take place six months after the dissolution has been published (half-year block) and after three public invitations to register claims (debt calls, creditor calls) have been issued. With foundations that are not registered in the Public Register, i.e. with almost all private-benefit foundations, no creditor call and no half-year block take place.

### Cancelation

On completion of liquidation proceedings, the Office of Land and Public Registration (GBOERA) issues a certificate of cancelation. For this purpose, a cancelation permit from the Tax Authority stating that all taxes have been paid is required. In case of foundations supervised by STIFA, STIFA must be informed of the cancelation. If, after cancelation of the foundation, undistributed foundation assets come to light, GBOERA must, at the request of interested parties (such as former beneficiaries and foundation council members or creditors) or sua sponte, open «Subsequent Liquidation Proceedings» (Nachtragsliquidation) regarding the canceled foundation. During these proceedings, the detected assets are distributed by official liquidators. Foundations supervised by STIFA must inform STIFA of subsequent liquidation proceedings. In order to bring claims against a canceled foundation, the

Princely Court of Justice must, on application by a participant, appoint a curator for the cancelled foundation.

## Conversion and Change of Domicile

Under § 41 private-benefit foundations can, without dissolution and liquidation, be converted by the foundation council into an Anstalt («Establishment») or a Treuunternehmen («Trust Enterprise») provided the foundation purpose and the founder's will are respected. Anstalts and Trust Enterprises are Liechtenstein legal entities. The conversion must be authorized by the Foundation Articles. The conversion leads to an automatic transfer of assets to the new entity. However, all rights of third parties, e.g. of the foundation's creditors, are upheld. Liechtenstein law does not provide for a merger between foundations.

Pursuant to art 234 PGR, it is possible to transfer the domicile of a Liechtenstein foundation abroad, and thus change the law applicable to the foundation, without the foundation being liquidated in Liechtenstein and then being reestablished abroad. For this purpose, a permit from the Land and Public Register Office is required, which will only be granted if, inter alia, the laws of the foreign country allow a Liechtenstein legal entity to become domestic without liquidation and subsequent reestablishment.

## 12. Transitional provisions

### Principle and Restrictions

Liechtenstein's current foundation law as described above took effect on 1st April 2009. The question of which provisions of the new law should apply to foundations set up before this date («legacy foundations») is governed by the detailed transitional provisions. These can be found in art II of the Act of 26th June 2008, law gazette 2008 no. 220, as amended by law gazette 2009 no. 247. In principle, the new foundation law applies only to foundations set up on or after 1st April 2009. An overview of the old law on foundations, valid up to 31st March

2009, can be found in MARXER & PARTNER, Companies and Taxes in Liechtenstein, 8th edition, Liechtenstein Verlag, Vaduz 2003, p. 85–104.

The principle of «old law for legacy foundations» is, however, significantly restricted in two ways. Firstly, and in very simplifying terms, any dealings with the Land and Public Register Office (GBOERA), e.g. upon the replacement of a foundation council member, are governed by the new law. All legacy foundations have to file a Transitional Notice («Überführungsanzeige») containing the same information as a notification of formation (see Section 4). Secondly, art 1 para 4 of the transitional provisions contains a list of those provisions of the new law that also apply to foundations established before 1st April 2009. These are mainly rules relating to foundation governance, e.g. rules on the beneficiaries' rights to information and disclosure, on supervision by STIFA or on the right of the foundation council to amend the foundation documents.

Thus, the provisions on access to information by beneficiaries (§§ 5–12; see Section 6) also apply to all existing foundations. All existing common-benefit foundations had to be entered in the Public Register by 1st April 2010 and subjected to supervision by STIFA. Finally, the transitional provisions contain ways to restructure private-benefit foundations which would be void under the new law due to the absence, in the Foundation Articles or By-Laws, of even rudimentary criteria on the beneficiaries or the class of beneficiaries (see § 16 para 1 (4) of the new law and Section 6).

## 13. Taxes and Fees

Currently, foundations generally pay a reduced annual capital tax of 1‰ of the foundation assets, the minimum being 1,000 Swiss francs per annum (art 83 Tax Code). The minimum amount must be paid to the tax authority (www.stv.llv.li) for one year in advance. More information on the current Liechtenstein tax law can be found in MARXER & PARTNER, Companies and Taxes in Liechtenstein, 8th edition, Liechten-

stein Verlag, Vaduz 2003, p. 155-187. However, in May 2010 a bill to enact a new Tax Code was introduced in Parliament. The bill is set to enter into force on 1st January 2011. According to the new law, foundations will be taxed at a slightly higher rate. The definite tax rate is still subject to parliamentary discussion.

The fees of the Land and Public Register Office are dealt with in Schedule 2 to the GBOERA Fees Ordinance. For example, the registration fee is 700 francs and the fee for filing a notification of formation 300 francs. Costs for a certified official confirmation or a certified register extract amount to 15 francs. The fees of the supervisory authority (STIFA) for the evaluation of audit reports (200-1,000 francs), for deciding about an exemption from the duty to appoint an auditor (150 francs) and for the inspection of foundation documents (150 to 2,000 francs) are cited in art 13 of the Foundation Law Ordinance. If STIFA needs to apply to the court for supervisory measures, hourly fees of 150 francs are assessed.

Like all other jurisdictions surveyed by the OECD's «Global Forum on Transparency and Exchange of Information for Tax Purposes», Liechtenstein has committed to tax information exchange on request as provided for in art 26 of the OECD Model Convention. Liechtenstein will, however, only grant legal and administrative assistance in tax matters and fiscal crimes if this is stipulated in an international treaty applicable between Liechtenstein and the requesting state. On 1st July 2010, Liechtenstein had concluded bilateral tax treaties (TIEAs – short for «Tax Information Exchange Agreements» – or double taxation agreements) with 16 countries, 14 of them (e.g. the treaties with Germany, the UK, the US and France) providing for an exchange of information on reasonable request. The agreement between Liechtenstein and the UK is special in that it includes the «Liechtenstein Disclosure Facility» (LDF) offering UK taxpayers a unique opportunity of becoming UK tax compliant under very favorable terms (see www.marxerpartner.com/ldf for further information). Thanks to these agreements, Liechtenstein figures on the OECD White List as a jurisdiction having «substantially implemented the internationally agreed tax standard».

In all cases, however, Liechtenstein will only provide assistance to a foreign country provided a well-founded and specific request for information, which is subject to strict conditions, has been made. Amongst others, the request must contain information as to the identity of the taxpayer whose liability is in question; and it must state the precise facts of the case including the nature, form and time span of the requested information. There is no automatic exchange of information in tax matters and non-individualized inquiries (so-called «fishing expeditions») are not permitted.

## 14. What Can Marxer & Partner Do for You?

Marxer & Partner Attorneys-at-Law was founded in 1925. The oldest and largest law firm in Liechtenstein consists of approximately 30 lawyers and 60 administrative professionals and offers international companies and individuals comprehensive legal advice and support in all areas of law. Our activities focus mainly on foundation, trust, corporate, estate and tax law. As to foundations, we are frequently asked to give legal opinions, to represent the foundation or beneficiaries before Liechtenstein courts and administrative authorities or to act as arbitrators. Besides, we can also take on the establishment and administration of your foundation.

A foundation can be set up easily. There is no need for you to be present before a notary public, a court or an administrative authority. The foundation documents can be drafted in any language. Our lawyers will correspond with you in many different languages. We have 85 years of experience with foundation matters, especially in dealing with complex family and financial structures involving different legal systems. Over the decades, we have built up a large cooperative network with leading law firms, accountants, trust companies, asset managers and banks worldwide. Marxer & Partner is the Liechtenstein member of Lex Mundi (www.lexmundi.com), a worldwide association of leading independent law firms.

We are very happy to give you a personal overview of our services. Please feel free to contact any of our lawyers. For a list of our partners and associates, including biographical notes, see www.marxerpartner.com/en.

**Further Reading:**

- DOMINIQUE JAKOB: Die liechtensteinische Stiftung. Eine strukturelle Darstellung des Stiftungsrechts nach der Totalrevision vom 26. Juni 2008 («The Liechtenstein Foundation»), published by Marxer & Partner, Liechtenstein Verlag, Schaan 2009, ISBN 978-3-905762-03-7, German only.

- MARXER & PARTNER: Liechtensteinisches Wirtschaftsrecht («Liechtenstein Business Law»); Liechtenstein Verlag, Schaan 2009, ISBN 978-3-905762-04-4, German only.

**MARXER & PARTNER**

RECHTSANWÄLTE

Marxer & Partner | Attorneys-at-Law
Heiligkreuz 6 · 9490 Vaduz · Liechtenstein
Phone +423-235.81.81 · Fax +423-235.82.82
info@marxerpartner.com · www.marxerpartner.com/en