# Exhibit 46

Sworn by: Peter Harold Driver<br>
For: Applicant<br>
Number: First<br>
Exhibit: PHD1<br>
Date: 27 February 2018

# IN THE ROYAL COURT OF GUERNSEY

## (ORDINARY DIVISION)

**IN THE MATTER OF BSG RESOURCES LIMITED**

**AND**

**IN THE MATTER OF PART XXI OF THE COMPANIES (GUERNSEY) LAW, 2008**

---

## AFFIDAVIT COURT SHEET

---

| | |
|---|---|
| **Party Filing the Affidavit:** | BSG Resources Limited (the Applicant) |
| **Advocate for the Applicants:** | Ogier (Mathew Newman) |
| **Deponent:** | Peter Harold Driver |
| **The number of the Affidavit:** | First |
| **Date sworn:** | 27 February 2018 |
| **Number of pages:** | 1019 (including exhibit) |
| **Exhibit:** | PHD1 |

| | DOCUMENT/S EXHIBTED | DATE | PAGE/S |
|---|---|---|---|
| 1. | Statement of the Register for BSG Resources Limited ("**BSGR**") | 26/02/18 | 12 |
| 2. | Memorandum and Articles of Incorporation for BSGR | - | 16 |
| 3. | Migration documents for BSGR (letter from Carey Olsen to Greffe dated 23/3/07 (enclosing Certificate of Continuance) and Application to Royal Court dated 6 March 2007) | - | 40 |

| 4. | "Upwards" Group structure chart | 31/12/17 | 43 |
|---|---|---|---|
| 5. | "Downwards" Group structure chart | 31/12/17 | 44 |
| 6. | Comite Technique de Revue des Titres et Conventions Miniers ("**CTRTCM**") notification to VBG-Vale BSGR Ltd ("**VBG**") (now BSG Resources (Guinea) Limited) of its intention to recommend to the Strategy Committee of the Government of Guinea that the mining and exploration rights of VBG in Guinea be withdrawn | 21/02/14 | 45 |
| 7. | Basic Agreement between The Republic of Guinea and BSGR (including English translation) | 16/12/09 | 50 |
| 8. | CTRTCM recommendation to the Strategic Committee | 28/3/14 | 182 |
| 9. | BSGR's Request for Arbitration initiated with the International Centre for Settlement Disputes ("**ICSID**") against the Government of Guinea | 1/8/14 | 670 |
| 10. | BSG Resources (Guinea) Limited's (previously VBG) request for arbitration against the Republic of Guinea | 13/10/15 | 702 |
| 11. | BSGR's Memorial / Statement of Claim against the Republic of Guinea | 29/2/16 | 770 |
| 12. | Unaudited Company Financial Statements for BSGR for the year ended 31 December 2017 | 31/12/17 | 920 |
| 13. | Implementation Agreement between BSGR and Standard Chartered Bank and others | 30/09/14 | 948 |
| 14. | Report from BDO to BSGR in support of BSGR's Application for an Administration Order | 26/02/18 | 1010 |
| 15. | Profile / CV for Malcolm Cohen | - | 1016 |
| 16. | Profile / CV for William Callewaert | - | 1017 |
| 17. | Letter of Consent to Act from Malcolm Cohen to BSGR | 26/02/18 | 1018 |
| 18. | Letter of Consent to Act from William Callewaert to BSGR | 26/02/18 | 1019 |
| 19. | BDO's draft budget in respect of administration of BSGR for year one | - | 1020 |

CONFIDENTIAL
JA0047765

Sworn by: Peter Harold Driver<br>
For: Applicant<br>
Number: First<br>
Exhibit: PHD1<br>
Date: 27 February 2018

<u>**IN CAMERA**</u>

## IN THE ROYAL COURT OF GUERNSEY

## (ORDINARY DIVISION)

IN THE MATTER OF BSG RESOURCES LIMITED

AND

IN THE MATTER OF PART XXI OF THE COMPANIES (GUERNSEY) LAW, 2008

---

**AFFIDAVIT OF PETER HAROLD DRIVER IN SUPPORT
OF COMPANY'S APPLICATION FOR
AN ADMINISTRATION ORDER**

---

I, **PETER HAROLD DRIVER** of [Redacted – GDPR – Personal Data] having been duly sworn, being over 18 years of age, having personal knowledge of the facts sworn herein and being competent to testify as a witness hereby **MAKE OATH AND SAY AS FOLLOWS:**

1. I am a director of BSG Resources Limited ("**BSGR**"), which company's registered office address is West Wing, Frances House, Sir William Place, St Peter Port, Guernsey GY1 1GX. I make this affidavit on behalf of BSGR in support of its application dated 27 February 2018 for an administration order in respect of BSGR ("**Application**").

2. I am duly authorised by BSGR's board of directors ("**Board**") to make this affidavit.

3. In so far as the content of this affidavit is within my personal knowledge it is true, and in so far as it is not within my personal knowledge, it is true to the best of my information, knowledge and belief.

4. There is now produced and shown to me marked **"Exhibit PHD1"** a bundle of true copy documents. References to page numbers are references to that Exhibit. The Exhibit contains substantially commercially sensitive and highly confidential material and, as

such, the first part of the Application is for the matter to be heard *in camera* and for the Court file to be sealed. I am advised that submissions will be made on this point at the hearing of the Application.

**History and Background Information**

5   BSGR is a non-cellular limited liability company incorporated in Guernsey with registered number 46565. A copy of a Statement of the Register in respect of BSGR, dated 26 February 2018, is at pages 12 to 15 and a copy of BSGR's Memorandum and Articles of Incorporation are at pages 16 to 39.

6   BSGR was originally incorporated in Jersey as a limited liability company on 30 July 2003, with registration number 85774. However, the company was migrated to Guernsey on 9 March 2007 and so ceased to be registered in Jersey on that date and from thereon continued in Guernsey. A copy of the relevant documentation in this regard, obtained from the Guernsey Registry (including a letter from Carey Olsen to the Greffe dated 23 March 2007, a copy of the Certificate of Continuance of a Jersey Company Overseas and the Application to the Royal Court in Guernsey, stamped as granted by the Royal Court) is at pages 40 to 42.

7   BSGR is actively engaged through subsidiaries and associates in a wide range of activities which are related to the exploration, development, extraction, refinement and marketing of a diversified range of natural resource products in a number of sectors, including diamonds and power (including renewable energy). BSGR previously also actively engaged in the iron ore and ferronickel sectors.

8   The trading of BSGR is limited to advisory and technical services provided to a number of subsidiaries. Its trading interests can be categorised as follows:

   (a)   Diamond operation held through a subsidiary, Octea Limited (incorporated and registered in the BVI) with mining operations in the Republic of Sierra Leone;

   (b)   Power operation held through a subsidiary, West African Power Limited (incorporated and registered in Guernsey) with a 38% investment operating in the Federal Republic of Nigeria;

   (c)   Iron ore operation held through a subsidiary, BSG Resources (Guinea) Limited (although see paragraphs 12 to 24 below, noting that operations have currently ceased); and

   (d)   Oil and gas operation investment in Roslindale Pte Limited (although this is presently only valued in the region of US$1,000).

9   BSGR is not (and never has been) regulated by the Guernsey Financial Services Commission.

10   To my knowledge, there is no current application seeking to place BSGR into administration or compulsory liquidation and no resolution has been passed by BSGR to wind itself up under part XXII of The Companies (Guernsey) Law, 2008, as amended ("**Companies Law**").

CONFIDENTIAL                                                                    JA0047767

11    Two group structure charts showing (i) the 'upwards' group structure and (ii) the 'downwards' group structure as relevant to BSGR, are at page 43 and page 44 respectively.

**Recent History**

12    One of BSGR's most significant operations is in respect of world class iron ore deposits in Guinea, comprising:

12.1    An iron ore mining concession granted to BSG Resources (Guinea) SARL ("**BSGR Guinea**") on 19 March 2010 over an area in Simandou South, near the village of Zogota ("**Zogota Mining Concession**");

12.2    A mining and infrastructure agreement dated 16 December 2009 entered into by two subsidiaries of BSGR, BSGR Guinea and VBG-Vale BSGR Ltd ("**VBG**") (now BSG Resources (Guinea) Limited) with the Republic of Guinea regarding the rights and obligations arising from the Zogota Mining Concession ("**Basic Agreement**"); and

12.3    A prospecting permit granted to BSGR Guinea over an area referred to as Simandou Blocks 1 and 2 granted on 9 December 2008 ("**Blocks 1 and 2 Permit**").

13    In 2010, BSGR entered into a joint venture agreement with the Brazilian mining company, Vale S.A. in relation to the development of the three rights set out above.

14    In 2011, a new President of Guinea, Alpha Condé, came to power. Following President Condé's election, BSGR faced obstruction in developing its mining rights. In 2012, BSGR was informed that President Condé had set up a committee aimed at investigating how certain mining rights in Guinea had been obtained (the Comité Technique de Revue des Titres et Conventions Miniers ("**CTRTCM**")). Throughout the CTRTCM process, BSGR complained about the lack of due process and apparent prejudice being shown to it. BSGR denied – and continues to deny – the allegations made against it by the CTRTCM.

15    In response to the allegations of corruption made by CTRTCM against the wider BSG Group, the Board of BSGR initiated a review using an independent professional accountancy firm, to verify the accuracy of its internal controls, processes and payment procedures, including confirmation that payments made by the Group were proportionate and of an appropriate business nature. This review has not revealed any matters that support the allegations of wrongdoing.

16    However, in March 2014, the CTRTCM recommended to the Strategy Committee of the Government of Guinea that the Zogota Mining Concession, the Blocks 1 and 2 Permit and the Basic Agreement be cancelled, and the companies within BSGR's control be prevented from being rewarded those rights ("**Notification**"). Copies of the Notification and the Basic Agreement are at pages 45 to 49 and pages 50 to 181 respectively.

17    In April 2014, the Government of Guinea accepted the recommendations of the Strategy Committee of the Government of Guinea to strip VBG of its mining licences for Simandou and Zogota concession areas and to exclude VBG and BSGR from participating in the tender process to reallocate the mining titles.

CONFIDENTIAL    JA0047768

18  The Board firmly believes that the basis of the CTRTCM recommendation (a copy of which is at <u>pages 182 to 669)</u> is not legitimate, and the expropriation of VBG's mining titles to be the illegal practices of the Alpha Condé government in Guinea as illegally importuned, influenced, motivated and ultimately controlled by the illegal conduct of Mr George Soros and his co-conspirators.

19  In May 2013, BSGR initiated arbitration proceedings with the International Centre for Settlement Disputes ("**ICSID**") against Guinea. A copy of BSGR's Request for Arbitration initiated with ICSID against Guinea dated 1 August 2014 is at <u>pages 670 to 701.</u>

20  Following BSGR's re-purchase of Vale S.A.'s ("**Vale**") shares in VBG in March 2015, VBG was renamed to BSG Resources (Guinea) Limited and also issued an ICSID claim against Guinea dated 13 October 2015 in respect of its mining rights (<u>pages 702 to 769</u>). Subsequently, the two claims against Guinea were consolidated, and a Statement of Claim was issued on behalf of BSGR, VBG and BSGR Guernsey on 29 February 2016 (<u>pages 770 to 919</u>). BSGR is seeking the restitution of its mining titles and agreements as well as damages arising out of the revocation of these interests. The Statement of Claim summarises BSGR's position as follows:

"*In summary, the Claimants and their investments have been treated in an unlawful, unfair, inequitable and discriminatory manner by the Guinean State (including by its agencies and/or instrumentalities) and in a manner which demonstrated a blatant disregard and breach of both (a) the express undertakings the State itself had provided directly to the Claimants and (b) applicable Guinean and international law (which guaranteed protection to the Claimants and their investments)*".

21  The ICSID hearing was held between 22 May to 2 June 2017, in Paris. Guinea called most of BSGR's witnesses and one of its experts. BSGR called all of Guinea's witnesses. The hearing was broadly favourable for BSGR. As a result of the testimony of one of Guinea's witnesses, the Tribunal has ordered a forensic examination of several key documents which BSGR has disputed the authenticity of. Once this process is complete, there will be an opportunity for closing submissions and the Tribunal will then make its award. The Board has been advised to expect an award by the end of 2018 or early 2019.

22  Separately, Vale has filed a claim against BSGR in the London Court of International Arbitration ("**LCIA**"), seeking to recoup the circa USD1.3 billion it invested that it allegedly lost as a result of the expropriation by the Government of Guinea. The LCIA process is confidential, pursuant to Article 30 of the 1998 LCIA Rules, and specific procedural orders made by the LCIA Tribunal, which is one of the reasons why this affidavit must be kept under seal. The hearing was due to commence on 22 August 2016. However, on 5 August 2016, the Chairman of the Tribunal was removed by the LCIA on the basis of an appearance of bias. The Chairman was replaced, and a new hearing scheduled for February 2017. BSGR did not attend the hearing on the basis of serious concerns as to the Tribunal bias and unfairness, the unavailability of its chosen Counsel (which the Tribunal ignored), and the unavailability of certain witnesses.

23  The judgment is expected imminently and the Board has been advised that (whilst noting that there is no certainty as to the date, timing and amount of the award (and, ultimately,

CONFIDENTIAL                                                                                                                                    JA0047769

in whose favour), nevertheless it is highly likely that the judgment may be handed down in favour of Vale.

24   As a result of CTRTCM's review and the actions of the Government of Guinea, operations at the mine have ceased and the timing of the recommencement of operation is uncertain. In the light of this, the directors of BSGR have carefully considered the underlying assumptions and judgement made in calculating the asset values related to the Guinea project contained in the 2017 financial statements and because of the ongoing litigation proceedings continue to record the asset at a carrying value of USD nil. The Board continue to closely monitor those assumptions and judgements.

**Current Financial Position**

25   Based on the draft unaudited company financial statements for the year ended 31 December 2017 (a copy of which are at <u>pages 920 to 947</u>), the summary financial position of the company is illustrated below (noting that the company financial statements for the year ended 31 December 2017 have not been finalised as information on Amperion Power Distribution Company Limited is required):

**BSG RESOURCES LIMITED**
**UNAUDITED COMPANY STATEMENT OF FINANCIAL POSITION**
**AS AT 31 DECEMBER 2017**

|  | Notes | 2017 DRAFT USD'000 | 2016 Restated USD'000 |
|---|---|---|---|
| **ASSETS** |  |  |  |
| Cash and cash equivalents | 11 | 25 | 39 |
| Trade and other receivables | 12 | 1,007 | 1,076 |
| Related party loans receivable | 13 | 142,518 | 135,043 |
| Fair value of operations | 14 | 10,549 | 10,549 |
| **TOTAL ASSETS** |  | **154,099** | **146,707** |
| **EQUITY** |  |  |  |
| Share capital | 15 | 1 | 1 |
| Reserves |  | 132,345 | 127,274 |
| **TOTAL EQUITY** |  | **132,346** | **127,275** |
| **LIABILITIES** |  |  |  |
| Trade and other payables | 16 | 1,180 | 2,959 |
| Other financial liabilities | 17 | 16,000 | 16,000 |
| Related party loans payable | 18 | 4,573 | 473 |
| **TOTAL LIABILITIES** |  | **21,753** | **19,432** |
| **TOTAL EQUITY & LIABILITIES** |  | **154,099** | **146,707** |

CONFIDENTIAL                                                                                                   JA0047770

26    Prior to taking account of the contingent liabilities set out in paragraphs 28 to 31 of this Affidavit, the balance sheet indicates net assets of $132m.

27    The significant assets on the balance sheet as at 31 December 2017 are:

    (a)    <u>Related party loans receivable - $142.52m</u>

        Just under 99% of the balance relates to a secured loan to Octea Limited ("**Octea**"), the repayment date is 31 December 2021 and the loan bears interest at 6 month USD LIBOR +5% per annum. The loan is secured by a charge on the assets of Octea and repayable out of distributable profits subject to the repayment of any preferred finance loan. BSGR has provided a letter of support to Octea to meet Octea's obligations until Octea is able to settle its liabilities in the ordinary course of business.

    (b)    <u>Fair value of operations - $10.55m</u>

        This balance relates to the investment in West African Power Limited and the conversion from a loan to equity. The fair value is derived from BSGR's portion of the net book value of West African Power Limited's investment in Amperion Power Distribution Company Limited (noting that the net book value of West African Power Limited's investment in Amperion Power Distribution Company Limited is derived from that company's Annual Financial Statements, which are still in the process of being audited).

**Contingent Liabilities**

28    BSGR has two significant contingent liabilities as detailed below:

*Vale SA claim against BSGR*

29    The background to this claim is set out above. The LCIA has heard the case and judgment is expected imminently. As explained in paragraph 22 above, BSGR did not attend the hearing and the Board has been advised that it is highly likely that the judgment may be handed down in favour of Vale. The claim is looking to recoup circa USD 1.3bn. Although the precise quantum of the judgment cannot be predicted with any certainty, it is expected that it could be for at least the $500m which Vale had paid as the purchase price of its investment in the joint venture and that it might possibly also include some or all of the additional $750m which it had invested.

*Guarantee to Star West Investments Limited*

30    As at 31 December 2017, BSGR had provided two guarantees to Star West Investments Limited ("**Star West**") in respect of facilities provided to Octea and Koidu Limited. The total amount outstanding in respect of these facilities is $150m. The maturity date of both facilities is 30 September 2022, with repayments from June 2018 to September 2022 as a function of surplus cash exceeding $5m.

CONFIDENTIAL    JA0047771

31      The Board has taken advice in respect of the facility agreements (privilege is not waived in respect of this advice) and has been informed that they provide that the insolvency of BSGR qualifies as an event of default under the agreements.

**Standard Chartered Agreement**

32      As regards the liabilities of BSGR, notably it is a party to an Implementation Agreement relating to the restructuring of a US$92,000,000 amortising term loan facility agreement originally dated 28 January 2011, as amended and restated by amendment and restatement agreements dated 23 November 2011, 28 March 2013 and 30 September 2014 between BSGR, Group Parties, and Standard Chartered Bank ("**SC Agreement**"). A copy of the SC Agreement, which is dated 20 September 2016, is at <u>pages 948 to 1009</u>.

33      Under the terms of the SC Agreement, Standard Chartered Bank has taken assignment of the cashflows anticipated to be received into BSGR, leaving little or no cash coming into BSGR to fund the proposed administration. However, I explain further below (in paragraphs 51 and 52) why it is considered that this potential issue has been resolved.

**Litigation Funding Agreement**

34      In the interests of completeness, another material agreement is the Litigation Funding Agreement between Litigation Solutions Limited ("**LSL**") and (1) BSGR; (2) BSG Resources (Guinea) Limited; and (3) BSG Resources (Guinea) SARL ("**LFA**"), which relates to BSGR's involvement in the Soros Claim (as defined below). Further, there is a Security Agreement between the same parties to the LFA (the "**SA**"), which should be read in conjunction with the LFA.

35      The Board has taken preliminary legal advice in respect of the LFA (privilege is not waived in respect of this advice) and has been informed that the LFA would bind the parties even if an administration order is made in respect of BSGR (although LSL may terminate the LFA on 30 days' notice in certain circumstances that are not contingent on BSGR's solvency). Under the terms of the SA, BSGR has pledged and granted to LSL a security interest over any recoveries in the Soros Claim.

**Contingent Assets**

36      BSGR has two contingent assets as detailed below:

<u>BSGR's claim against the Government of Guinea</u>

37      The background to this claim is set out in paragraphs 12 to 21 above and the exhibited documents referred to in those paragraphs. As I have stated, the Board has been advised to expect an award by the end of 2018 or early 2019.

38      The Board has been advised (without waiving privilege) that BSGR's claims against Guinea are strong. However, it recognises that the outcome of any contested litigation process is subject to inherent uncertainty and that this claim will inevitably take some considerable time before it is finally resolved. The Board has been advised that in these circumstances it is not appropriate for it to attribute a value to this contingent asset when

CONFIDENTIAL                                                                                                                                            JA0047772

preparing its balance sheet or in the assessment of its balance sheet solvency in accordance with the Companies Law.

*BSGR's claim against George Soros*

39  These proceeding are the proceedings in the United States District Court, Southern District of New York, which are known as BSG Resources (Guinea) Limited, BSG Resources (Guinea) SARL, and BSGR v. George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund (Civil Action No. 1:17-cv-02726-JFK) ("**Soros Claim**").

40  The Soros Claim, which seeks at least $10bn in damages relating to claims in illegal interference with contract, fraud, defamation and other matters relating to Mr Soros' actions against BSGR, has been stayed pending the outcome of BSGR's claim against the Government of Guinea.

41  The Board is of the view that BSGR's claims against Soros are strong. However, it recognises that the final outcome of any contested litigation process is subject to inherent uncertainty and that this claim will inevitably take some considerable time before it is finally resolved. In these circumstances it is not appropriate for it to attribute a value to this contingent asset when preparing its balance sheet or in the assessment of its balance sheet solvency in accordance with the Companies Law.

**Trading Results**

42  BSGR's trading income derives from the management and technical advisory services provided to Octea Diamonds Limited (and the wider Octea Group of companies). The fees charged are based on the revenue generated by the operation from the services received. In the years ended 31 December 2016 and 2017, $180k and $68k was charged respectively.

**Solvency Test**

43  I am advised that for BSGR to be solvent both the balance sheet and the cash flow must indicate a solvent position i.e. a positive net asset position and being able to demonstrate an ability to pay its debts as and when they become due in the short to medium term.

44  Based on the advice received and the information available, the Board concludes that in order to comply with their fiduciary duties in determining BSGR's solvency on a balance sheet basis, in accordance with the Companies Law, it must now consider that the imminent judgment in the Vale claim should be recognised for accounting purposes as a contingent liability of BSGR for an amount of at least $500m, given the advice that the Board has received (in which privilege is not waived) as detailed above (notwithstanding BSGR's right to challenge any award).

45  Prior to providing for this liability, BSGR's net assets amounted to $132m, as stated above. The inclusion of the contingent liability in respect of the Vale claim would leave BSGR with a deficiency of assets of at least $368m and it is thus clearly insolvent on a balance sheet basis. Although BSGR is making two major outward claims, against

CONFIDENTIAL                                                                                                              JA0047773

Guinea and against George Soros (and his interests), the final outcome of these claims falls below the level of certainty which is believed to be required for them to be able to be included as assets in BSGR's balance sheet. Furthermore, even if BSGR were to win, it would still need to enforce its judgment against the defendants. In the Board's view, these two contingent claims cannot therefore be taken into account in determining BSGR's solvency in accordance with the Companies Law.

46   With regard to BSGR's cash flow solvency position, the legal advice which has been given to the Board (in which privileged is not waived) is that the likely judgment amount of the Vale claim of at least $500m will become immediately due and payable. BSGR's cash resources amount to only ~$15k and it has readily realisable debts and other assets of no more than $1.5m, and so upon the entering of an award if favour of Vale it will be unable to pay its debts as they fall due to the tune of at least $498.5m and is therefore also insolvent on a cash flow basis.

47   It is therefore the conclusion of the Board that BSGR is now, or is likely to become imminently, an insolvent entity. The Board considers that the appointment of administrators is the optimal step to protect the assets and allow realisations to be maximised for the benefit of, in the first instance, all creditors of BSGR.

**Administration Order**

48   I understand that in addition to showing the Court that BSGR is, or may become insolvent, the Board also needs to show that one of the purposes of the administration order is or may be achieved. At pages 1010 to 1015 is a report prepared by the proposed joint administrators of BSGR, which sets out how they envisage achieving the purpose of the administration order. This report has been seen and endorsed by the Board.

49   The proposed appointees are Malcolm Cohen of BDO LLP in London and William Callewaert of BDO Limited in Guernsey. I am aware that both are experienced insolvency practitioners and the Board has approved them as proposed appointees. Copies of their CVs setting out their experience and credentials are at pages 1016 and 1017 and copies of letters from them to the Board of BSGR confirming their consent to act as joint administrators are at pages 1018 and 1019.

50   A copy of the proposed joint administrators' schedule of charges, prepared pursuant to Practice Direction 3 of 2015 is contained in the joint administrators' report at page 1014, and I also refer to the details in the report more generally in that regard. A copy of the joint administrators' draft budget for the first year of the administration is at page 1020.

51   The proposed joint administrators have estimated the amount required to fund the first four months of the administration as being approximately $900,000. To ensure that the proposed joint administrators are able to fund the administration, they are investigating a number of mechanisms to enable Nysco Management Corp., BSGR's immediate parent, to pay the costs of the administration to the extent that BSGR does not have access to its own funds.

52   It is expected that cash inflows will be received by BSGR from the middle of 2018 in respect of the management fee due from the Octea subsidiaries and it is expected that

CONFIDENTIAL    JA0047774

these inflows will be sufficient to fund the administration from that point onwards. Failing that, the proposed joint administrators will need to negotiate with Standard Chartered to release funds from their security to enable the administration to achieve its objectives or alternatively to seek an extension to the funding line being provided by Nysco.

53   I would respectfully ask that the Court grant the Application in the terms sought.

| | |
|---|---|
| SWORN by the said<br>PETER HAROLD DRIVER<br>At St Peter Port<br>This 27th day of February 2018 | )<br>)<br>)<br>)    Redacted – GDPR – Personal Data |

Before me

Redacted – GDPR – Personal Data

~~Solicitor~~/Notary Public/Advocate of more than 5 years' call

Martyn Baudains
Notary Public
Redwood House
St Julian's Avenue
St Peter Port
Guernsey GY1 1WA
Channel Islands
T: +44 1481 721672



LIT-22150032-4

CONFIDENTIAL    JA0047775